John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone (949) 369-3700
Facsimile  (949) 369-3701

*Attorneys for Defendant
Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    Defendant. | Case No. 2:21-cr-491-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S MOTION TO DISMISS FOR LACK OF VENUE**<br><br>Hearing Date: November 23, 2021<br>Hearing Time: 8:00 a.m.<br>Estimated Time: 1 hour<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference:  Dec. 7, 2021<br>Trial:  Dec. 14, 2021<br>Last Day:  Dec. 29, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 23, 2021, at 8:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Stanley Blumenfeld, Jr., United States District Court Judge, located at 350 West 1st Street, Los Angeles, California 90012, Courtroom 6C, by and through his attorneys of record, the Honorable Jeffrey Lane Fortenberry will move, and hereby does move, to dismiss the indictment because it fails to allege facts establishing that venue properly lies in this judicial district.

This motion is based on this Notice, the Memorandum of Points and Authorities currently filed herewith, the files and records in this case, and any evidence and argument that may be presented at the hearing on this matter.

Date: November 2, 2021

BIENERT KATZMAN LITTRELL
WILLIAMS LLP

By:_____
John L. Littrell
Ryan V. Fraser
*Attorneys for Hon. Jeffrey Lane Fortenberry*

# TABLE OF CONTENTS

TABLE OF AUTHORITES .................................................................................ii

MEMORANDUM OF POINTS & AUTHORITIES ..................................... 1

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS.................................................................... 2

III. ARGUMENT.......................................................................................... 3

    A. The Essential Conduct of 18 U.S.C. § 1001 is Making a False Statement ................................................................................... 5

        1. Counts Two and Three (18 U.S.C. § 1001(a)(2))........... 5

        2. Count One (18 U.S.C. § 1001(a)(1)) ............................... 5

        3. Ninth Circuit Model Jury Instructions for 18 U.S.C. § 1001 ......................................................................................... 6

    B. Applying the "Essential Conduct Elements" Test ..................... 7

    C. The "Felt In" Test.......................................................................... 9

    D. Ninth Circuit Precedent............................................................. 12

IV. CONCLUSION ................................................................................... 13

# TABLE OF AUTHORITES

**Cases**                                                                                                **Page(s)**

*Garcia v. Benov*,
   715 F. Supp. 2d 974 (C.D. Cal. 2009) ................................................................... 13

*Hyde v. Shine*,
   199 U.S. 62 (1905) ................................................................................................... 1

*Miller v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) ................................................................................ 13

*Travis v. United States*,
   364 U.S. 631 (1961) .............................................................................................. 11

*United States v. Anderson*,
   328 U.S. 699 (1946) ........................................................................................ 4, 13

*United States v. Angotti*,
   105 F.3d 539 (9th Cir. 1997) .......................................................................... 12, 13

*United States v. Auernheimer*,
   748 F.3d 525 (3d Cir. 2014) ................................................................................... 1

*United States v. Bowens*,
   224 F.3d 302 (4th Cir.2000) ............................................................................ 9, 12

*United States v. Cabrales*,
   524 U.S. 1 (1998) .................................................................................... 4, 7, 8, 13

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012) ..................................................................................... 9

*United States v. Cores*,
   356 U.S. 405 (1958) ................................................................................................ 1

*United States v. Corona*,
   34 F.3d 876 (9th Cir. 1994) ................................................................................. 12

*United States v. John*,
   477 F. App'x 570 (11th Cir. 2012) ..................................................................... 7, 8

*United States v. Johnson*,
   323 U.S. 273 (1944) ......................................................................................... 1, 12

*United States v. Oceanpro Indus., Ltd.*,
   674 F.3d 323 (4th Cir. 2012) ............................................................................ 9, 10

*United States v. Pace*,
   314 F.3d 344 (9th Cir. 2002) ................................................................................. 3

*United States v. Ringer*,
   300 F.3d 788 (7th Cir. 2002) ................................................................................. 9

*United States v. Rodriguez-Moreno*,
   526 U.S. 275 (1999) ..................................................................................... passim

*United States v. Salinas*,
    373 F.3d 161 (1st Cir. 2004).................................................................4, 10, 11
*United States v. Serv. Deli Inc.*,
    151 F.3d 938 (9th Cir. 1998) ...........................................................................12
*United States v. Smith*,
    641 F.3d 1200 (10th Cir. 2011) .............................................................7, 8, 13

**Statutes**

18 U.S.C. § 1001................................................................................................ passim
18 U.S.C. § 1001(a)(1)...............................................................................................5
18 U.S.C. § 1001(a)(2)...........................................................................................5, 8
18 U.S.C. § 1014.......................................................................................................12
18 U.S.C. § 1512(i)...................................................................................................10
18 U.S.C. § 228(e) ....................................................................................................11
18 U.S.C. § 3237(a) ................................................................................................3, 8
18 U.S.C. § 924(c) ......................................................................................................5
18 U.S.C. §§ 1956 and 1957..................................................................................4, 5
8 U.S.C. § 1329.........................................................................................................10
U.S. Const. amend. VI ........................................................................................1, 2, 3
U.S. Const. art. III, § 2, cl. 3 .................................................................................3, 5

**Rules**

11th Cir. R. 36-2 .........................................................................................................7
Fed. R. Crim. P. 12 .....................................................................................................6
Fed. R. Crim. P. 12(b)(3)(i) .......................................................................................4
Fed. R. Crim. P. 18 ........................................................................................... passim

**Other Authorities**

"Fundamental Since Our Country's Founding": United States v.
    Auernheimer and the Sixth Amendment Right to Be Tried in the District in
    Which the Alleged Crime Was Committed,
    6 U. Denv. Crim. L. Rev. 37 (2016) .................................................................2

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.      INTRODUCTION**

"Questions of venue in criminal cases . . . are not merely matters of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276 (1944). Determining whether venue is proper in a judicial district involves "matters that touch closely the fair administration of criminal justice and public confidence in it." *Id.*

Restricting the venue of criminal trials by reference to where the alleged offense was *committed* mattered enough to the Founding Fathers that they complained specifically of facing distant criminal trials in the Declaration of Independence,[1] and addressed the issue of venue for criminal cases in two separate parts of the Constitution: Article III and the Sixth Amendment. *See United States v. Auernheimer*, 748 F.3d 525, 532 (3d Cir. 2014).

The Framers of the Constitution viewed venue as an important safeguard against the hardship associated with being forced to travel far from home to face criminal charges. *See United States v. Cores*, 356 U.S. 405, 407 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place."); *Hyde v. Shine*, 199 U.S. 62, 78 (1905) ("To require a citizen to undertake a long journey across the continent to face his accusers, and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he ought not to be subjected if the case can be tried in a court of his own jurisdiction."). Perhaps even more importantly, they were concerned about the composition of the jury and its impact on the fairness of the trial. Thus, the Sixth Amendment expressly requires not only that the defendant be tried by an "impartial jury," but also that the jury comprise only residents of "the State and district wherein the crime shall have been committed." U.S. Const. amend. VI ("In all criminal prosecutions, the

---

[1]     *See* Declaration of Independence para. 21 (U.S. 1776) (accusing the King of Great Britain of "transporting us beyond Seas to be tried for pretended offences.").

accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").

These important constitutional safeguards were intended to prevent precisely the kind of opportunistic venue shopping the government has engaged in here.

Congressman Fortenberry lives in Lincoln, Nebraska, a small city in Eastern Nebraska approximately 1500 miles from this Court. He splits his time between his home district and Washington, D.C. He has no meaningful connection to California.

This case concerns two alleged false statements. One was uttered in Nebraska; the other, in Washington, D.C. Neither statement was made in California.

The government's attempt to drag Congressman Fortenberry across the country to face a jury of Californians for these alleged offenses represents a gross abuse of power by the Department of Justice. It was precisely this type of abuse that led the framers to insist on the right to a jury in "the State and district wherein the crime shall have been committed." *See* Paul Mogin, *Fundamental Since Our Country's Founding:* United States v. Auernheimer *and the Sixth Amendment Right to Be Tried in the District in Which the Alleged Crime Was Committed*, 6 U. Denv. Crim. L. Rev. 37, 40 (2016).

Congressman Fortenberry has not committed any crime, and he should not be prosecuted in any judicial district. But if the government thinks otherwise, it must, at minimum, honor his fundamental right to an "impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. This Court should dismiss the indictment for failure to allege facts supporting venue in this district.

## II.     STATEMENT OF FACTS

Congressman Jeffrey Fortenberry has lived in Lincoln, Nebraska, since 1995. In 2004, he was elected to Congress as a Representative for Nebraska's First District. He has been reelected by Nebraskans nine times, most recently in 2020. As a member of the House of Representatives, Congressman Fortenberry splits his time between his home district in Nebraska and Washington, D.C. He has an office in Lincoln, Nebraska, and an office in Washington, D.C. He does not have an office or residence in California.

According to the Indictment, in 2016, Gilbert Chagoury, a "Nigerian-born, billionaire business[]person of Lebanese descent" arranged for $30,000 of "his money" to be contributed to Congressman Fortenberry's 2016 reelection campaign, through other individuals. Dkt. No. 1 at ¶¶ 3, 11. In furtherance of this alleged plot, Chagoury is said to have given the money to Toufic Baaklini, who in turn gave it to "Individual H" at a restaurant in Los Angeles in January 2016. *Id*. at ¶ 11. As alleged in the Indictment, "Individual H" then recruited other individuals to make donations to Congressman Fortenberry's 2016 reelection campaign at the fundraiser and reimbursed them in cash. *Id*.

The government does not allege that Congressman Fortenberry knew about Chagoury's scheme to funnel foreign donations to his campaign in 2016. He didn't. But this case is not about the 2016 fundraiser. It is about alleged false statements by Congressman Fortenberry three years later in Nebraska and Washington, D.C.

The indictment does not allege that Congressman Fortenberry committed any act in this district, nor that he intended his statements to reach this district. Instead, the Indictment alleges only that his statements in Nebraska and Washington, D.C., "affect[ed] the Federal Investigation in the Central District of California." *Id*. at ¶¶ 18, 20, 21.

### III.   ARGUMENT

"The trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Further, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These constitutional requirements are reinforced by Rule 18 of the Federal Rules of Criminal Procedure, which provides that "prosecution shall be had in a district in which the offense was committed."

"The government bears the burden of establishing venue by a preponderance of the evidence." *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002). It must meet this burden for each count of a multi-count indictment. *Id.* A "continuing offense" may be "prosecuted in any district in which [the] offense was begun, continued, or completed," 18

U.S.C. § 3237(a), but crimes that "began, continued, and were completed" within one district may only be prosecuted there. *United States v. Cabrales*, 524 U.S. 1 (1998).

Where, as here, an indictment fails to allege facts establishing venue for an offense, the Court should dismiss it on a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(i)

Congress can enact specific venue provisions for criminal statutes. *See United States v. Salinas*, 373 F.3d 161, 164-66 (1st Cir. 2004) ("If the statute under which the defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima)."). However, Congress did not do so in the case of 18 U.S.C. § 1001. In the absence of a specific venue provision, the Court must determine the *locus delicti* of the offense. This requires that the Court "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (citing *Cabrales*, 524 U.S. 1, 6–7 (1998)); *see also United States v. Anderson*, 328 U.S. 699, 703 (1946) ("*locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it").

In *Cabrales*, the Supreme Court held that venue was not proper in Missouri for a money laundering offense committed in Florida, even though the money that was being laundered was the proceeds of a drug deal in Missouri. The Court reasoned that the money laundering statutes involved—18 U.S.C. §§ 1956 and 1957—were "defined in statutory proscriptions . . . that interdict only the financial transactions (acts located in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered." *Id*. at 7. The Court pointed out that counts under review did not charge the defendant with a conspiracy with the Missouri defendants, nor as an aider and abettor to them. *Id*. Although the government was required 'to prove that the defendant *knew* she was dealing with funds derived from a "specified unlawful activity," the Court held that the location where that prior unlawful activity occurred was "'of no moment.'" *Id*. at 8 (citation omitted).

The next year, the Supreme Court held that venue was proper in the District of New Jersey for a charge of using or carrying a firearm during and in relation to a crime of

violence under 18 U.S.C. § 924(c), even though the firearm was not used or carried in New Jersey. *United States v. Rodriguez-Moreno* 526 U.S. 275 (1999). In that case, the crime of violence—kidnaping—was committed in multiple districts, including New Jersey. The Court reasoned that §924(c) required "two distinct conduct elements . . . the 'using and carrying' of a gun and the commission of a kidnaping." Because a crime of violence was a "necessarily conduct element" of the offense, the offense could be prosecuted in any of the districts where the kidnaping occurred. The Court distinguished *Cabrales* on the ground that whereas the defendant's violent acts were "essential conduct elements" of § 924(c), the existence of criminally generated proceeds was merely a "circumstance element" of money laundering under §§ 1956 and 1957. *Rodriguez-Moreno*, 526 U.S. at 280, n. 4.

The Supreme Court thus drew a critical distinction between "**essential conduct elements**," on the one hand, and mere "**circumstance elements**," on the other. This makes sense considering both the text of the Constitution and the principles behind it. After all, all the various constitutional and statutory rules relating to criminal venue refer specifically to the place where the crime was "committed." *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18.

### A. The Essential Conduct of 18 U.S.C. § 1001 Is Making a False Statement

#### 1. Counts Two and Three (18 U.S.C. § 1001(a)(2))

Counts Two and Three of the Indictment allege that Congressman Fortenberry uttered false statements to the FBI, the IRS, and the United States Attorney's Office in violation of 18 U.S.C. § 1001(a)(2). Dkt. No. 1 at 10-12. The first alleged false statement occurred "[d]uring an interview on March 23, 2019, by the FBI and IRS at his residence in Lincoln, Nebraska." Dkt. No. 1 at ¶ 20 (Count Two). The second alleged false statement occurred "[d]uring an interview on July 18, 2019, by the FBI and the USAO and with his counsel present, at his counsel's office in Washington, D.C." *Id*. at ¶ 21 (Count Three).

#### 2. Count One (18 U.S.C. § 1001(a)(1))

Count One of the Indictment alleges that "[f]rom on or about June 4, 2018, to in or about July 18, 2019," and "affecting the Federal Investigation in the Central District of

California," Congressman Fortenberry "knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device material facts . . . ." Dkt. No. 1 at ¶ 18.

The conduct alleged to have been committed by Congressman Fortenberry in support of this "scheme" consists primarily of the same alleged false statements that the government alleged in support of Counts Two and Three. Dkt. No. 1 at ¶¶ 19a (Nebraska statement); ¶19b (Washington, D.C. statement).[2] The Indictment also alleges that Congressman Fortenberry failed to file amended FEC reports with accurate information about the 2016 fundraiser, s*ee id*. at ¶ 19c, but the government does not allege that this omission occurred in California. Instead, the Indictment alleges only that the omission "affect[ed] the Federal Investigation in the Central District of California." *Id*. at ¶ 18.

### 3. Ninth Circuit Model Jury Instructions for 18 U.S.C. § 1001

According to the Ninth Circuit Manual of Model Criminal Jury Instructions, the elements of a false statements charge under § 1001 are as follows:

> First, the defendant made a false statement;
>
> Second, the statement was made in a matter within the jurisdiction of the [specify government agency or department];
>
> Third, the defendant acted willfully, that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful, and;
>
> Fourth, the statement was material to the activities or decisions of the [specify government agency or department]; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

Ninth Circuit Model Criminal Jury Instruction No. 8.73.

Only the first element of the instruction—requiring the false statement itself—describes the "essential conduct element" of the offense. The remaining elements describe "circumstance elements." *See Rodriguez-Moreno*, 526 U.S. at 280, n. 4.

Even though materiality is an element of the offense, it is not an "**essential conduct element**." *See id*. This is because whether a statement is material to the activities or

---

[2] Congressman Fortenberry will move separately to dismiss Count One on the ground that it is multiplicitous to Counts Two and Three. *See* Fed. R. Crim. P. 12.

6

HON. JEFFREY FORTENBERRY'S MOTION TO DISMISS FOR LACK OF VENUE

decisions of a government agency depends entirely upon circumstances wholly independent of the defendant's conduct. Thus, the "materiality" element of a § 1001 prosecution is conceptually similar to the "specific unlawful activity" element of a money laundering prosecution. *See Cabrales*, 524 U.S. at 7. Even though the government must prove it, that proof does not necessarily require any evidence of the defendant's conduct.

### B.     Applying the "Essential Conduct Elements" Test

Neither the Supreme Court nor the Ninth Circuit has applied *Cabrales* and *Rodriguez-Moreno* to a false statements case under 18 U.S.C. § 1001. However, the Tenth and Eleventh Circuits have, and both held that venue is proper only in the district where statements were made. *United States v. Smith*, 641 F.3d 1200, 1207–09 (10th Cir. 2011); *United States v. John*, 477 F. App'x 570, 572 (11th Cir. 2012) (unpub.).[3]

In *Smith*, the executive director of a non-profit business in Oklahoma was suspected of embezzling from the company's retirement plan. While the investigation was ongoing, the defendant resigned and moved to Minnesota. As part of the investigation, an FBI agent flew from Oklahoma to Minnesota to interview the defendant, and the defendant made statements regarding the Oklahoma investigation. Concluding that those statements were false, the government charged the defendant with a violation of § 1001 in Oklahoma. Over the defendant's objection, the jury was instructed as follows: "If you find, by a preponderance of the evidence, that it is more probable than not, that the substance of that [false] statement relayed facts, events, or circumstances which occurred in or related to the alleged wrongdoing occurring in this district, you must find venue is proper in this district and render a verdict of guilty." *Id*. at 1204. The Tenth Circuit reversed the conviction, finding that the "*locus delicti*" of a false statement offense is "where the defendant makes the false statement." *Id*. at 1207. The Court explained that "the only connection between Oklahoma and Mr. Smith's statements is that the subject-matter of the allegedly false statements relayed events that occurred in Oklahoma, and at the time there was an

---

[3]    Unpublished opinions of the Eleventh Circuit are "not considered binding precedent, but they may be cited as persuasive authority." Eleventh Cir. R. 36-2.

investigation in Oklahoma." *Id*. at 1208.

The government argued that because § 1001(a)(2) is a "continuing offense," venue was governed by 18 U.S.C. § 3237(a). *Id*. But the Tenth Circuit rejected that argument, reasoning that, although some § 1001 statements are continuing offenses, Mr. Smith's was not. *Id*. at 1208–09 (citing *Cabrales*, 524 U.S. at 8). As the court explained: "In this case, the alleged crime occurred during an interview conducted in Mr. Smith's home in Minnesota. The false statements began, continued, and ended during the interview." *Id*.

The Eleventh Circuit reached the same conclusion in *John*. In that case, the defendant made statements to an FBI agent in the Southern District of Florida related to a pending investigation in the Northern District of Florida. *John*, 477 F. App'x at 571. The court adopted the reasoning of *Smith* and held that venue was lacking in the Northern District. The court clarified that even though materiality was an element of a § 1001 charge, it could not, on its own, support a finding of venue because it was not a conduct element. "Even if we assume—without deciding—that John's statement was material to a government investigation in the Northern District of Florida," the Court reasoned, "John's *own offense conduct* began, continued, and was completed in the Southern District of Florida. Thus, venue was proper only in the Southern District of Florida . . . ." *Id*. at 572 (emphasis added).

Likewise, here, the sole facts alleged in support of the offenses charged in this Indictment are alleged statements uttered by Congressman Fortenberry in Nebraska and Washington, D.C. Those statements were not "continuing offenses." Like the statement made by the defendant in *Smith*, they "began, continued, and ended during the interview." *Smith*, 641 F.3d at 1208–09. The fact that the government alleges that there was a pending investigation in California cannot alone provide venue here, even if the government were able prove that the alleged false statements were "material" to that investigation.

Even if Count One is characterized as a "continuing offense" that began "on or about June 4, 2018" and continued to "in or about July 18, 2019," the same analysis applies because no part of the offense occurred in California. *See* Dkt. No. 1 at ¶ 18.

## C. The "Felt In" Test

For the government to establish venue, it must persuade this Court to find venue based on something other than Congressman Fortenberry's conduct. For this, the government relies on the so-called "felt in" or "effects" test.

In *United States v. Oceanpro Industries, Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012), the defendant was interviewed in Washington D.C. regarding conduct—trafficking in illegally caught striped bass—that occurred in Maryland. The government contended that the defendant's statements were false and prosecuted him in Maryland. The Fourth Circuit acknowledged *Cabrales'* holding that the *locus delicti* of the offense must be determined by examining the "essential conduct elements" of the offense. *Id*. at 328. But it held that venue could also be based on something *other than the conduct of the defendant*: where the "effects" of the defendant's conduct were "felt." *Id*. (citing *United States v. Bowens*, 224 F.3d 302, 314 (4th Cir.2000) (emphasis in original)).

The Court reasoned that that Congress "defined the effects in § 1001 to include the element of materiality." *Id*. Because "proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the defendant's] statement on that investigation . . . the District of Maryland had a substantial connection to [the defendant's conduct] . . . ." *Id*.[4] The Second Circuit reached a similar conclusion in *United States v. Coplan* 703 F.3d 46, 79 (2d Cir. 2012) ("Proving the materiality of Vaughn's false statements in Tennessee necessarily requires evidence that those statements were conveyed to or had an effect on the IRS investigators working in the Southern District of New York"); *see also United States v. Ringer*, 300 F.3d 788, 791–92

---

[4] The defendants in *Oceanpro* apparently conceded the core legal issue, assuming it had been decided adversely to them in *United States v. Bowens*, 224 F.3d 302 (4th Cir. 2000); *id*. at 329 (citing *Bowens*, 224 F.3d at 314) (holding that venue was proper where "the effects of the defendant's conduct are felt . . . when Congress has defined the essential conduct elements in terms of those effects."). But *Bowens* was not a false statements case, and the language in *Bowens* relating to the "effects" test was *dicta*. In fact, the convictions challenged in *Bowen* were reversed because the court found that the sole "essential conduct element" of the offense (harboring a fugitive) occurred in a different district. *Id*. at 309.

(7th Cir. 2002); *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004).[5]

The "felt in" test obliterates the critical distinction between "essential conduct elements" and "circumstance elements." *See Rodriguez-Moreno, 526 U.S. at 280, n. 4*. Contrary to Supreme Court precedent, the "felt in" test purports to permit a finding of venue for an offense base on factors ***wholly distinct from the defendant's conduct***. This is a dramatic deviation from the clear principles set forth in Article III, the Sixth Amendment, and Fed. R. Crim. P. 18, which constrain venue for an offense to the place where the offense was "committed." Neither *Cabrales* nor *Rodriguez-Moreno* contemplated such an obvious distortion of the venue doctrine. Indeed, the Supreme Court explicitly declined to endorse the so-called "effects" test in *Rodriguez-Moreno*, characterizing it as distinct from the question of *locus delicti*. *See Rodriguez-Moreno*, 526 U.S. at 279 n.2.

The flaw in *Oceanpro's* reasoning starts with the premise that Congress "defined the effects in § 1001 to include the element of materiality." *Oceanpro*, 674 F.3d at 328. But defining the "effects" of a § 1001 offense to "include the element of materiality" does not make materiality an essential *conduct* element of the offense; nor does it indicate that Congress intended to allow § 1001 venue to be based on materiality alone.

If Congress wanted to provide for venue in a § 1001 case in a district other than the one where the defendant committed the offense conduct, it knew how to do so. *See, e.g.*, 8 U.S.C. § 1329 (providing venue for charges of improper entry by an alien and reentry of a removed alien "at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended"). Congress has at times explicitly provided for venue where the "effects" of an offense are "felt." *See, e.g.,* 18 U.S.C. § 1512(i) (providing venue for witness tampering

---

[5] The First Circuit appeared to embrace the "felt in" test in *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) ("When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt."). But that language is *dicta* because *Salinas* did not involve a false statements prosecution under 18 U.S.C. § 1001.

prosecution "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred."); 18 U.S.C. § 228(e) (providing venue for failure to pay legal child support obligations prosecution in various places, including the "district in which the child who is the subject of the support obligation involved resided . . . .").

Section § 1001 has no special venue provision. Therefore, the *locus delicti* test controls. Here, the *locus delicti* is in Lincoln, Nebraska and Washington, D.C.

If the so-called "felt in" test were applied as the government suggests, it would permit prosecutors to manufacture venue for a false statements case in *any district they choose*, regardless of whether the defendant had any contact with that district or intended his statements to be conveyed there. After all, the government determines the site of an "investigation," not the defendant. The Federal Bureau of Investigation—the federal agency within whose jurisdiction the government contends Congressman Fortenberry's statements were made—operates in nearly every judicial district in the United States.[6] An investigation could originate from one or more, or even all districts in the United States, depending on the whim of the prosecutor and the FBI, creating endless potential for forum shopping. *See Salinas*, 373 F.3d at 169–70 ("Over time, one of the primary concerns motivating the limitation of venue has been the danger of allowing the government to choose its forum free from any external constraints."). The venue rules that were so carefully articulated by the framers of the Constitution cannot be satisfied so easily and arbitrarily. *See Travis*, 364 U.S. at 634 ("[V]enue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of a tribunal favorable to it.") (citation and quotation omitted). The "felt in" test is also so vague as to be impossible to apply, particularly in a § 1001 prosecution. Where, after all, is the "effect" of a false statement "felt?" And who decides where the "effect" of the statement is "felt?" How does this standard apply in cases where the government takes the position that it need not prove

---

[6] *See* https://www.fbi.gov/contact-us/field-offices. The United States Attorneys likewise operate in every judicial district in the United States. *See* https://www.justice.gov/usao.

that the statement influenced it at all? *See United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) ("The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.").

As the Supreme Court stated in *Johnson*, "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." *Johnson*, 323 U.S. at 276. The "felt in" test squarely conflicts with the plain language of Article III and the Sixth Amendment, as well as Rule 18. It also squarely conflicts with *Cabrales* and *Rodriguez-Moreno*. It is not the law in this Circuit, and it shouldn't be.

### D. Ninth Circuit Precedent

The Ninth Circuit has held that "[c]rimes consisting of a single noncontinuing act are 'committed' in the district where the act is performed." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir. 1994). There is no Ninth Circuit decision applying the "felt in" test to a § 1001 prosecution. Nor is there an appellate case holding that venue for a §1001 case can be established based solely on the "materiality" element.

The closest case is *United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997). In *Angotti*, the defendant was charged in the Central District of California with making false statements for the purpose of influencing the actions of bank officials in violation of 18 U.S.C. § 1014. *Id.* at 542. The statements were made in the Northern District of California, but they were received by bank officials in the Central District. *Id*. at 542. The Ninth Circuit concluded that "venue was therefore proper in the Central District, where the communication reached the audience *whom it was intended to influence* . . . ." *Id*. (emphasis added) (citation omitted). The Court also relied on "established caselaw relying on banking law and practice to determine the place of criminal conduct involving financial transactions." *Id*. at 544.[7]

---

[7] Judge Norris wrote a strong dissent, stating that "this holding has no support in the Sixth Amendment, in case law or in logic." *Id*. at 546 (Norris, J., dissenting).

12
HON. JEFFREY FORTENBERRY'S MOTION TO DISMISS FOR LACK OF VENUE

*Angotti* is distinguishable from this case for several reasons.

First, because *Angotti* preceded the Supreme Court's decisions in *Cabrales* and *Rodriguez-Moreno*, it made no effort to distinguish between "essential conduct elements" and "circumstance elements" of the offense, as required by those cases. *See Rodriguez-Moreno*, 526 U.S. at 280, n. 4. Therefore, *Angotti* was effectively overruled. *See Garcia v. Benov*, 715 F. Supp. 2d 974, 996 (C.D. Cal. 2009) ("When circuit authority is overruled by the Supreme Court, a district court or a circuit court panel is no longer bound by that authority, and need not wait until the authority is also expressly overruled by an *en banc* panel."); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003).

Second, Angotti has no bearing on the question whether the venue can be based solely on the materiality element of § 1001, because Angotti addressed a § 1014 charge, which has no materiality element. *See United States v. Wells*, 519 U.S. 482, 484–99 (1997).

Finally, *Angotti* relied on the continuing offense doctrine, and the fact that the defendant's statement was "intended to influence" a bank official in the Central District of California. *Angotti*, 105 F.3d at 542. But the continuing offense doctrine does not create venue in this case because none of the conduct alleged in the indictment began, continued, or was completed in the Central District. The Indictment does not allege that Congressman Fortenberry intended his statements to be conveyed to anyone other than the persons to whom they were made. *See Smith*, 641 F.3d at 1207. Nor does it allege that Congressman Fortenberry *intended* his statements to influence any government agency.

## IV.   CONCLUSION

"'[T]he location of the act or acts constituting'" the crime charged is what determines *locus delicti*." *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). In this case, the "act or acts constituting" the offense clearly occurred outside of this district. Under a straightforward reading of Article III, the Sixth Amendment, Fed. R. Crim. P. 18, and Supreme Court precedent, the government has failed to allege facts establishing venue in the Central District of California.

The Indictment should be dismissed.

1 | Date: November 2, 2021              BIENERT KATZMAN LITTRELL
2 |                                      WILLIAMS LLP
3 |
4 |                                     By:_____  _____
5 |                                         John L. Littrell
                                             Ryan V. Fraser
6 |                                          *Attorneys for Hon. Jeffrey Lane Fortenberry*