John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>*Defendant*. | Case No. 2:21-cr-00491-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE MATERIALITY**<br><br>Hearing Date: December 7, 2021<br>Hearing Time: 8:00 a.m.<br>Time Estimate: 20 minutes<br><br>Indictment: October 19, 2021<br>Pretrial Conference: December 7, 2021<br>Trial: December 14, 2021<br>Last Day: December 29, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the above time and date, in the courtroom of the Honorable Stanley Blumenfeld, Jr., United States District Court Judge, located at 350 West 1st Street, Los Angeles, California, 90012, Courtroom 6C, by and through his attorneys of record, the Honorable Jeffrey Lane Fortenberry will move, and hereby does move, to dismiss the indictment because it fails to allege that his statements or omissions were material. This motion is based on this Notice, the Memorandum of Points and Authorities concurrently filed herewith, the files and records in this case, and any evidence and argument that may be presented at the hearing on this matter.

Counsel for the parties met and conferred by telephone on November 8, 2021, regarding the contentions presented in this motion but were unable to resolve their differences.

Date:  November 9, 2021               BIENERT KATZMAN
                                      LITTRELL WILLIAMS LLP


                                      By:_____
                                         John L. Littrell
                                         Ryan V. Fraser
                                         *Attorneys for Hon. Jeffrey Lane Fortenberry*

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

The government's investigation revealed that Congressman Fortenberry was unaware of any illegal foreign or conduit contributions to his 2016 campaign. With no basis to charge the Congressman with a crime, the government instead concocted one.

This was a setup. The government proceeded in three steps.

First, in 2018 it directed an informant to **tell** Congressman Fortenberry that he had received an illegal conduit contribution in 2016 and that the money was "**probably**" from Gilbert Chagoury, a foreign national. Dkt. No. 1 at ¶ 15(b) (emphasis added).

Second, nearly a year later, the government sent an FBI agent to Congressman Fortenberry's home to ask him if what the informant said in 2018—uncorroborated by anything else—was actually true, which Congressman Fortenberry allegedly denied.

Third, months after that, Assistant United States Attorney Mack Jenkins asked Congressman Fortenberry if anyone had **told him** what the informant said during the 2018 call. When Congressman Fortenberry could not recall the precise details of the informant's call, the government charged him with the crime of making false statements.

This prosecution is the actualization of Justice Ruth Bader Ginsburg's grave concern regarding prosecutorial overreach in Section 1001 cases: that "an overzealous prosecutor or investigator—aware that a person has committed some suspicious acts, but unable to make a criminal case—will create a crime by surprising the suspect, asking about those acts, and receiving a false denial." *Brogan v. United States*, 522 U.S. 398, 416 (1998) (Ginsburg, J., concurring). Because Congressman Fortenberry's statements to investigators were not material, the Indictment should be dismissed.

### II. RELEVANT FACTS

In 2016, the government was investigating political campaign contributions made by Gilbert Chagoury, a foreign national, using other individuals as conduits, to Congressman Fortenberry's 2016 congressional campaign. The government was allegedly concerned with whether Congressman Fortenberry was aware of the illegal

1
MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE MATERIALITY

foreign contributions, and whether any person sought to impermissibly influence him in exchange for them. Dkt. No. 1 at ¶ 1. The government does not allege that Congressman Fortenberry *knew* about the illegal contributions when they were made in 2016, and it did not charge the Congressman with any substantive offense related to those contributions.[1]

On June 4, 2018, the government directed its informant, "Individual H," who had hosted a fundraiser for Congressman Fortenberry in 2016, to place a surreptitiously recorded phone call. During the 2018 call, which lasted about ten minutes, and spanned multiple topics unrelated to the 2016 fundraiser, the informant told Congressman Fortenberry something that he did not know before: that his campaign had received an illegal contribution from a foreign national in 2016.

Specifically, the government alleges that during the 2018 call, "Individual H" told Congressman Fortenberry that "prior to the 2016 Fundraiser, [Toufic] Baaklini provided Individual H with '$30,000 cash' to give to defendant FORTENBERRY's campaign." Dkt. No. 1 at ¶ 14. During the same call, "Individual H," also allegedly told Congressman Fortenberry that he had "distributed the $30,000 cash to other individuals to contribute to defendant FORTENBERRY's campaign at the 2016 Fundraiser," and that the money "**probably** did come from Gilbert Chagoury because he was so grateful for your support [for] the cause." *Id*. at ¶ 15a (emphasis added).

On March 23, 2019—nearly ten months later—the government sent agents to Congressman Fortenberry's home to interrogate him. *See Id*. at ¶19a. Congressman Fortenberry invited the agents into his home and tried to help them. He was not asked about the 2018 call from Individual H. But according to the government, Congressman Fortenberry's responses were false, because Congressman Fortenberry stated that he was not aware of Baaklini making illegal contributions or directing others to do so, *id*. at ¶19a(i), and he stated that "the individuals who contributed to the 2016 Fundraiser

---

[1] The $30,200 in alleged illegal conduit contributions represents approximately 3.7% of the total money Congressman Fortenberry raised for his 2016 campaign. *See* Federal Election Commission 2016 Financial Summary for Honorable Jeffrey L. Fortenberry, *available at* https://www.fec.gov/data/candidate/H4NE01064/?cycle=2016.

were all publicly disclosed." *Id*. at ¶20b. He also stated that "every campaign that he had received was publicly disclosed." *Id*. at ¶ 20c.

On July 18, 2019—more than one year later—Congressman Fortenberry was questioned again, this time by Assistant United States Attorney Mack Jenkins himself. *Id*. at ¶19b. Again, Congressman Fortenberry cooperated with the government and tried to help. This time, Congressman Fortenberry was asked about the 2018 call from Individual H. *See* id. at ¶ 19b(i). According to the government, Congressman Fortenberry made false statements when he denied that he had been "told by Individual H during the 2018 call that Baaklini had given Individual H $30,000 cash to help fund the 2016 Fundraiser," *id*. at ¶ 21(a), and stated that he was "not aware of any illicit donation made during the 2016 Fundraiser." *Id*. at ¶ 21(b). The Congressman also allegedly said that he ended the 2018 call with Individual H after Individual H made a concerning comment, and that he would have been "horrified" if he learned illegal campaign contributions were made. *Id*. at ¶ 19(b)(i)-(iv); *id*. at ¶ 21.

Notably, the government does not accuse Congressman Fortenberry of lying about the real facts surrounding his 2016 fundraiser. This case is entirely about Congressman Fortenberry's failure to accurately repeat back to the government the content of the ten-minute phone call that the government's informant placed to him.

### III.   ARGUMENT

The government's theory makes several unsupportable assumptions. First, the government baselessly assumes that Congressman Fortenberry perfectly recalled the informant's 2018 statements when he was questioned about them nearly a year later. Second, the government baselessly assumes that Congressman Fortenberry accepted and believed the informant's assertions as true. And third, the government baselessly posits that Congressman Fortenberry's 2019 statements about a 2016 event the government had ***finished investigating*** could influence any required determination yet to be made by the government. *See United States v. Weinstock*, 213 F.2d 699, 701 (D.C. Cir. 1956) (explaining that a materially false statement must have the capacity to influence a

determination required to be made). Because Congressman Fortenberry's 2019 statements and alleged omissions were not material, the Indictment should be dismissed.

### A.   Materiality is an Essential Element of the Offense

Congressman Fortenberry has been charged with one count of falsifying and concealing material facts, 18 U.S.C. § 1001(a)(1), and two counts of making a false statement, 18 U.S.C. § 1001(a)(2). These crimes require a statement or omission to be not simply false, but "materially" false with respect to a matter under investigation. Materiality requires more than mere "relevance" or relatedness to the matter being investigated by the government. To be material, a statement or omission must be "reasonably likely to influence the tribunal in making a determination *required to be made*." *Weinstock*, 213 F.2d at 701 (emphasis added). In other words, it must "ha[ve] a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988); *United States v. Beltran*, 136 F. App'x 59, 61 (9th Cir. 2005).

The materiality requirement ensures that misstatements to investigators are criminalized only when linked to the particular "subject of [their] investigation." *United States v. Kim*, 808 F. Supp. 2d 44, 59 (D.D.C. 2011); *cf. Kungys*, 485 U.S. at 774 (false date and birthplace statements in immigration application were not "material" as they were not "relevant to his qualifications [for citizenship]"). The requirement prevents law enforcement from fishing for falsehoods merely to manufacture jurisdiction over any statement—true or false—uttered by a subject. Because materiality is an essential element of all three counts in the indictment, it must be adequately pled as to each one.

#### 1.   Count One – Concealment of Material Facts

Count One alleges that Congressman Fortenberry "falsified, concealed, and covered up . . . material facts." Dkt. No. 1 at ¶ 18. The specific facts the government accuses Congressman Fortenberry of concealing were (a) that Congressman Fortenberry's campaign had "received illicit contributions at the 2016 fundraiser"; (b) that Congressman Fortenberry had "become aware" of that fact; (c) that Toufic Baaklini

had provided $30,000 cash to Individual H for Individual H and his associates to contribute to Congressman Fortenberry's campaign at the 2016 fundraiser; (d) that Congressman Fortenberry had "become aware" of that fact; and (e) that Gilbert Chagoury was the source of the money. Dkt. No. 1 at ¶ 18(a-e).

Even if one assumes that Congressman Fortenberry was aware of those facts, and even if one assumes that he willfully concealed those facts from the government, that concealment was not material to the investigation because all five of those facts were either already known by, or affirmatively manufactured by, the government.

As to alleged omissions (a), (c), and (e), those facts were already known to the government as of September 2016, when the government recruited Individual H as an informant. *See* Dkt. No. 1 at ¶ 13. As the government admits in the indictment, "Individual H informed the FBI of the conduit contributions Individual H and others made to defendant FORTENBERRRY's campaign at the 2016 Fundraiser." *Id*. Therefore, by September 2016, the investigation's goal was met: the government ascertained that Chagoury had illicitly donated to Congressman Fortenberry's 2016 congressional campaign using other individuals as conduits. *Id*. at ¶ 13. The government also knew that Congressman Fortenberry was unaware of the illicit contributions, and therefore, no one could have attempted to impermissibly influence him because of them.

As to alleged omissions (b) and (d), which accuse the Congressman of concealing his knowledge of the facts alleged in (a) and (c), the conclusion is even stronger because the government ***manufactured those facts***. After all, the government does not contend that Congressman Fortenberry knew of the illicit donations to his campaign in 2016 when they were made. It alleges only that he had "become aware" of those illicit contributions no later than the 2018 call placed to him by a government informant. *See Id*. at ¶ 20(a).

If the government is correct, and Congressman Fortenberry had "become aware" of those illicit contributions based on the 2018 call from Individual H, then the government cannot claim that his failure to disclose was material, because the government engineered the 2018 call in the first place and recorded it.

### 2. Count Two – Affirmative False Statements

Count Two alleges that Congressman Fortenberry falsely stated (a) that he was not aware of Baaklini making any illegal contributions, directing anyone to conduct illegal contributions, or providing money to anyone else to conduct conduit campaign contributions; (b) that the individuals who contributed to the 2016 Fundraiser were all publicly disclosed; and (c) that every campaign contribution that he had received was publicly disclosed. *Id*. at ¶ 20(a-c).

As to (b) and (c), Congressman Fortenberry's statements were literally true, as the government knows. Each of the individual contributors to the 2016 Fundraiser were disclosed to the FEC.[2] The government contends that those statements were false only because it assumes that Congressman Fortenberry heard, understood, and believed what Individual H told him during the 2018 call, and that he should have accepted as true that Chagoury and Baaklini were the actual sources of the 2016 donations. But even if the government were right, it would not make Congressman Fortenberry's statements material. FEC records are available to the government just as they are available to the public. Thus, whether a contribution was disclosed to the FEC is not debatable.

As to (a), Congressman Fortenberry's statement that he was not aware of Baaklini's scheme to funnel illegal contributions to his campaign was not material to the government's investigation because the government already knew about Baaklini's scheme based on information it received from Individual H in 2016. *See Id*. at ¶ 13. In fact, the government's only basis to allege that *Congressman Fortenberry* knew of those facts was the call that that Individual made to him in 2018 at the government's direction. *See Id*. at ¶ 20(a) (alleging that Congressman Fortenberry knew of the illegal contributions "as of no later than the June 2018 call with Individual H . . . ."). Even assuming the government was correct, and Congressman Fortenberry heard, understood, and believed what Individual H told him during the ten-minute call from 2018, those facts were already known to the government because ***it staged the call*** and recorded it.

---

[2] *See* https://www.fec.gov/data/candidate/H4NE01064/?cycle=2016

6
MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE MATERIALITY

Congressman Fortenberry's characterization of the call—to the extent it differed from the actual recording—told the government nothing it did not already know.

### 3. Count Three – Affirmative False Statements

Count Three alleges that Congressman Fortenberry falsely stated that (a) he "had not been told" by Individual H during the 2018 Call that Baaklini had given Individual H $30,000 cash to help fund the 2016 Fundraiser; and (b) he "was not aware" of any illicit donation made during the 2016 Fundraiser. Dkt. No. 1 at ¶ 21(a-b).

As to (a), Congressman Fortenberry's statements could not have been material because the government had a recording and transcript of the 2018 Call. Because the government already had objective, verifiable proof of what Individual H said to Congressman Fortenberry in 2018, Congressman Fortenberry's statement about that call added nothing to what the government already knew. As to (b), the only basis for the government's claim that Congressman Fortenberry was "aware" of illicit donations to his 2016 was the 2018 call that the government staged. *Id*. at ¶ 20(a). And unlike Congressman Fortenberry, who did not know that he was being recorded, the government had a complete recording and transcript of the call. *See Weinstock*, 213 F.2d at 701.

## IV. CONCLUSION

When an investigation yields no evidence that a person is culpable of the crime under investigation, bringing freestanding false statements charges against that person "escalate[s] completely innocent conduct into a felony." *See Brogan*, 522 U.S. at 412 (Ginsburg, J., concurring). The government should not be permitted to weaponize Section 1001 in this way. This Court should dismiss the Indictment.

Dated: November 9, 2021
BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: _____
John L. Littrell
Ryan V. Fraser
*Attorneys for Hon. Jeffrey Lane Fortenberry*