TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorney
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-2091/3289
    Facsimile:   (213) 894-0141
    E-mail:     mack.jenkins@usdoj.gov
                susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00491-SB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF VENUE; EXHIBITS A-C |
| v. | Hearing Date: 11/23/2021<br>Hearing Time: 8:00 a.m.<br>[Defendant's Estimated Length: 1 hour] |
| JEFFREY FORTENBERRY, | Indictment: 10/19/2021<br>Pretrial Conference: 12/7/2021 at 8:00 a.m.<br>Trial: 12/14/2021 at 8:00 a.m.<br>Last Day: 12/29/2021 |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins and Susan S. Har, hereby files its opposition to defendant JEFFREY FORTENBERRY's ("defendant") motion to dismiss for lack of venue.

This opposition is based upon the attached memorandum of points and authorities, the supporting exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 9, 2021                    Respectfully submitted,

                                           TRACY L. WILKISON
                                           Acting United States Attorney

                                           SCOTT M. GARRINGER
                                           Assistant United States Attorney
                                           Chief, Criminal Division


                                              /s/
                                           SUSAN S. HAR
                                           MACK E. JENKINS
                                           Assistant United States Attorneys

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

**Contents**

TABLE OF AUTHORITIES ................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 3

        A.      Overview of CDCA Investigation into Illegal Campaign
                Contributions and Foreign Influence by Subjects Residing and/or
                Operating in the Central District of California ............................... 4

        B.      2016: CDCA Subjects Funnel Illegal Campaign Contributions to
                Defendant at a Fundraiser in Los Angeles ..................................... 5

        C.      2018: Defendant Pushes a CDCA Subject to Host Another Fundraiser
                in Los Angeles for Him .................................................................. 6

        D.      March 2019: Defendant Lies to and Misleads CDCA Agents about
                the Contributions He Received from the CDCA Subjects ............. 7

        E.      July 2019: Defendant Requests Another Interview with CDCA
                Agents and Prosecutors and Doubles Down on His Lies to Them
                about Matters Material to the CDCA Investigation ...................... 8

III.    SECTION 1001 VENUE LAW .................................................................. 9

IV.     ARGUMENT ............................................................................................ 11

        A.      Making a Materially False Statement Is Essential Conduct Under
                Section 1001 ................................................................................... 11

        B.      Venue Is Proper in the District Affected by Defendant's Material Lies
                and Obstructive Acts ..................................................................... 14

        C.      The Indictment Establishes Proper Venue Based on Defendant's
                Material Lies Affecting This District ............................................ 16

        D.      Venue Is Also Proper in This District Because Defendant's False
                Statements Continued Into This District ....................................... 18

V.      CONCLUSION ........................................................................................ 22

i

1

## TABLE OF AUTHORITIES

2

DESCRIPTION                                                                                           PAGE

3

<u>Kirtsaeng v. John Wiley & Sons, Inc.</u>
    568 U.S. 519 (2013) ...................................................................................... 10

4

<u>Kungys v. United States,</u>
    485 U.S. 759 (1988) ...................................................................................... 15

5

6

<u>United States v. Angotti,</u>
    105 F.3d 539 (9th Cir. 1997) ........................................................... 9, 20, 21

7

<u>United States v. Bowens,</u>
    224 F.3d 302 (4th Cir. 2000) ....................................................................... 14

8

9

<u>United States v. Brennan,</u>
    452 F. Supp. 3d 225 (E.D. Pa. 2020) ................................................... 11, 12

10

<u>United States v. Cabrales,</u>
    524 U.S. 1 (1998) ........................................................................................... 9

11

12

<u>United States v. Candella,</u>
    487 F.2d 1223 (2d Cir. 1973) ......................................................... 10, 19, 20

13

<u>United States v. Coplan,</u>
    703 F.3d 46 (2d Cir. 2012) ................................................................... 10, 19

14

15

<u>United States v. Corona,</u>
    34 F.3d 876 (9th Cir. 1994) ........................................................................ 18

16

<u>United States v. Gaudin,</u>
    28 F.3d 943 (9th Cir. 1994) ........................................................................ 12

17

18

<u>United States v. Ghanem,</u>
    993 F.3d 1113 (9th Cir. 2021) ................................................................. 3, 16

19

<u>United States v. John,</u>
    477 F. App'x 570 (11th Cir. 2012) .............................................................. 13

20

21

<u>United States v. Johnson,</u>
    323 U.S. 273 (1944) ..................................................................................... 14

22

<u>United States v. Lukashov,</u>
    694 F.3d 1107 (9th Cir. 2012) ......................................................... 3, 14, 19

23

24

<u>United States v. Oceanpro Indus., Ltd.,</u>
    674 F.3d 323 (4th Cir. 2012) ......................................................... 10, 11, 14, 15

25

<u>United States v. Pace,</u>
    314 F.3d 344 (9th Cir. 2002) ........................................................... 9, 13, 18, 20

26

27

28

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                           <u>PAGE</u>

<u>United States v. Peterson</u>,
    538 F.3d 1064 (9th Cir. 2008) ...................................................................2, 14, 19

<u>United States v. Ringer</u>,
    300 F.3d 788 (7th Cir. 2002) ......................................................................11, 15

<u>United States v. Rodriguez-Moreno</u>,
    526 U.S. 275 (1999) ........................................................................................9, 13

<u>United States v. Salinas</u>,
    373 F.3d 161 (1st Cir. 2004) ......................................................................10, 19

<u>United States v. Serv. Deli Inc.</u>,
    151 F.3d 938 (9th Cir. 1998) ......................................................................15, 21

<u>United States v. Smith</u>,
    641 F.3d 1200 (10th Cir. 2011) ............................................................13, 20, 21

## TABLE OF AUTHORITIES (CONTINUED)

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

**<u>STATUTES</u>**

18 U.S.C. § 1001 ..................................................................................passim

18 U.S.C. § 3237(a) .................................................................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant, the Honorable JEFFREY FORTENBERRY ("defendant"), a U.S. Congressman sworn to serve his country and constituents, repeatedly lied in recorded statements to Los Angeles federal investigators conducting a criminal inquiry into illegal foreign and conduit contributions after the evidence led them literally to defendant's doorstep.   Defendant was a subject of the investigation because he received illegal foreign contributions from Nigerian billionaire Gilbert Chagoury, as part of Chagoury's scheme to influence U.S. politicians.  It is undisputed that defendant's campaign received the illicit money.  It is undisputed that defendant's statements to investigators regarding this topic were false.  It cannot be credibly disputed that such statements were material—indeed, they went to the heart of the investigation and were intended by defendant to minimize his knowledge of any wrongdoing and his campaign's acceptance of illegal foreign funds.  When confronted, defendant, realizing the peril of his situation but failing to realize the strength of the government's evidence, elected to eschew his oath and instead began his ill-fated campaign of concealment and lies.

Since 2015, the FBI, IRS, and the United States Attorney's Office ("USAO") in the Central District of California ("CDCA") have been investigating individuals operating within CDCA (the "CDCA Subjects") to route illegal foreign and conduit campaign contributions to various federal politicians, including to defendant (the "CDCA Investigation").  Defendant, an influential politician[1], (1) received illegal foreign and conduit contributions from the CDCA Subjects during a fundraiser in CDCA; (2) pushed to arrange for another fundraiser in CDCA with the CDCA Subjects, even after discussing the illegal source of the funds from the prior CDCA fundraiser with one of the CDCA Subjects; and (3) repeatedly and materially lied to and misled CDCA

---

[1] As a longtime Congressman, defendant serves on powerful committees that, among other things, appropriate all the expenditures made by the government and fund diplomatic operations and security assistance to foreign governments.

1  agents and prosecutors about the true source of the contributions from his CDCA

2  fundraiser and the involvement of the CDCA Subjects: a central focus of the CDCA

3  Investigation.[2]

4           Notwithstanding defendant's multiple lies to CDCA agents and prosecutors and

5  acts to obstruct the ongoing CDCA Investigation, defendant now complains that it would

6  be a "gross abuse of power" to require him to stand trial in the very district with which

7  he interfered.  Neither the case law nor common sense support his breathless hyperbole.

8  Venue lies where the essential conduct constituting the offense took place.  Scheming to

9  conceal or falsify material facts and making materially false statements are the essential

10 conduct elements of the charged section 1001 offenses.  And because materiality is

11 defined in terms of its effects on "the decision of the decisionmaking body to which [the

12 statement] was addressed," venue is proper where the effects of the defendant's material

13 lies were felt.  United States v. Peterson, 538 F.3d 1064, 1072 (9th Cir. 2008) (citation

14 omitted).  Here, venue is proper in the Central District of California because that is

15 where defendant directed his criminal scheme and false statements—towards CDCA

16 investigators and the CDCA Investigation—and where the effects and harm of

17 defendant's obstructive conduct could be and were felt.  And, as will be proven at trial,

18 venue here is additionally proper because defendant's criminal conduct continued into

19 this district, where his false statements were received, reviewed, discussed, and acted

20 upon by the affected investigative agencies.

21          Defendant's motion to dismiss should be rejected for what it actually is: a thinly

22 veiled attempt to forum shop away from the very district into which he so willingly

23 reached to obstruct an ongoing criminal investigation in the hopes of obtaining a friendly

24

25

26

27

28

---

[2]  Defendant is charged with a scheme to falsify and conceal materials, in violation of 18 U.S.C. § 1001(a)(1) (Count One), and making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts Two and Three).  (Dkt. No. 1 ("Indictment").)

2

1  jury pool where he serves as an elected politician.[3]  Defendant's reliance on an incorrect

2  understanding and application of venue law is fatal to his motion.

3  **II.     STATEMENT OF FACTS**

4         This case arises out of a significant federal criminal investigation in the CDCA

5  that resulted in several subjects admitting their criminal conduct and entering into

6  resolutions with the government.[4]

7         Because defendant's criminal acts were directed at, sought to obstruct, and

8  actually affected the CDCA Investigation in this district, the pertinent facts concerning

9  that investigation are set forth here.  A Rule 12(b)(3)(A)(i) pretrial motion challenging

10  venue must be denied if the indictment, taken as true, alleges sufficient facts on its face

11  to sustain venue.  United States v. Ghanem, 993 F.3d 1113, 1120 (9th Cir. 2021).  As

12  explained below, the facts alleged in the indictment sufficiently plead venue, and this

13  Court should deny defendant's motion based on those allegations alone.  At trial, venue

14  is a question of fact that must be proven by a preponderance of the evidence.  United

15  States v. Lukashov, 694 F.3d 1107, 1120 (9th Cir. 2012).  Accordingly, the government

16  proffers some of the facts that it expects to prove at trial, including facts that would

17  support a jury finding of venue.

18

19

20         [3] Defendant's attempt to recast his plight as a victim of "opportunistic venue shopping" by the government (Mot. at 2) is more hyperbole better befitting a political stump speech than is reflective of the facts of his case.   The facts unequivocally

21  establish that the CDCA investigators faithfully followed all of the evidence of (now proven) crimes committed in this district wherever that evidence led.  Defendant's self-

22  inflicted consequence of being "drag[ged] across the country to face a jury of Californians" (id.) materialized because he chose to repeatedly lie in voluntary

23  interviews to CDCA investigators investigating him.

24         [4] See, e.g., United States v. Toufic Baaklini, Case No. 2:21-CR-00160-DMG, Deferred Prosecution Agreement (C.D. Cal. Mar. 31, 2021); United States v. Joseph

25  Arsan, Case No. 2:21-CR-00159-PSG, Deferred Prosecution Agreement (C.D. Cal. Mar. 31, 2021); see also https://www.justice.gov/usao-cdca/pr/lebanese-nigerian-billionaire-

26  and-two-associates-resolve-federal-probe-alleged (links to full agreements for Gilbert Chagoury and Ray LaHood).

27         Filed concurrently with this opposition are Exhibits A-C.  Exhibit A is the Factual Basis for Chagoury's Deferred Prosecution Agreement; Exhibit B is the Factual Basis

28  for Baaklini's Deferred Prosecution Agreement; and Exhibit C is the Factual Basis for Ray LaHood's Non-Prosecution Agreement.

A.  **<u>Overview of CDCA Investigation into Illegal Campaign Contributions and Foreign Influence by Subjects Residing and/or Operating in the Central District of California</u>**

The CDCA Investigation has focused on illegal foreign and conduit contributions and foreign influence schemes orchestrated by several subjects residing and/or operating within CDCA.  (Indictment ¶ 1.)  As is relevant to this opposition, the CDCA Subjects are:

- **Gilbert Chagoury**, a Nigerian-born, billionaire businessperson of Lebanese descent.  (Indictment ¶ 3.)  Up until approximately 2015, Chagoury maintained a residence in Los Angeles County.  As a foreign national, Chagoury was prohibited from making donations and contributions directly or indirectly in support of any candidate for federal elected office in the United States.  (Id.)  Defendant knew of Chagoury, knew he was a foreign national, socially met Chagoury in person at least twice, and would pass on his regards to Chagoury via Baaklini.  (See id. ¶ 10.)
- **Toufic Baaklini**, a United States-based businessman who served as a proxy for Chagoury and assisted him with financial and political dealings in the United States.  (Indictment ¶ 4.)  Defendant had a personal and professional relationship with Baaklini.  (See Ex. B.)
- **Individual H**, a resident of Los Angeles with ties to Chagoury and Baaklini.  (Indictment ¶ 5.)  Defendant's campaign was introduced to Individual H through Baaklini.

This investigation began in 2015 when Los Angeles FBI learned of suspicious wire transfers from Chagoury to Individual H, who then routed similar amounts of money close in time to the campaign of a U.S. Representative in California.  (See Ex. A. at 2-3.)

Through the course of the CDCA Investigation, CDCA agents and prosecutors learned that the CDCA Subjects had conspired to funnel Chagoury's money to the campaigns of political candidates whom Chagoury favored because they shared a common political and/or religious cause.  (Ex. A. at 2.)  The CDCA Investigation revealed that from 2012 to 2016, Chagoury provided approximately $180,000 in illegal political contributions to four different United States political candidates—including defendant—with the assistance of Baaklini, Individual H, and others.  (See Exs. A, B.)

4

The CDCA Investigation also revealed that Chagoury, with the assistance of Baaklini, routed an additional $50,000 to then-United States Secretary of Transportation Ray LaHood, in the form of a purported "loan" that was never disclosed as required on Lahood's government ethics forms and was not paid back until after LaHood resolved his case with the CDCA. (See Ex. C.)

As part of the investigation, CDCA agents and prosecutors sought to learn whether and when any of the recipient politicians were aware of the illicit contributions to their campaigns; whether any person sought to impermissibly influence the recipient politician in exchange for the contribution; and whether any recipient politician took any official acts in connection with the illicit contributions. (Indictment ¶ 1.)

**B.    2016: CDCA Subjects Funnel Illegal Campaign Contributions to Defendant at a Fundraiser in Los Angeles**

In 2016, Chagoury arranged to funnel $30,000 of his money to defendant's campaign. (Indictment ¶ 11; Ex. A at 4-5.) To conceal the fact that he was the source of this contribution, Chagoury arranged for the funds to be delivered to Baaklini, who then provided that money in cash to Individual H to fund defendant's campaign. (Id.; see also Ex. B at 2-3.) In January 2016, Baaklini provided Chagoury's $30,000 in cash to Individual H at a restaurant in Los Angeles and further instructed Individual H to host a fundraiser for defendant during which other individuals (conduits recruited by Individual H) would contribute Chagoury's money to defendant's campaign. (Indictment ¶ 11; Ex. A at 4-5; Ex. B at 2-3.)

As instructed by Baaklini, Individual H hosted a fundraiser for defendant on February 20, 2016. (Indictment ¶ 11.) Defendant attended the fundraiser, which took place in Los Angeles. (Id.) The fundraiser raised a total of $33,400, which defendant later stated was a significant haul for an out-of-state representative. Of that amount, $30,200 was contributed by six conduits who had been recruited by Individual H and reimbursed with Chagoury's money. (See id.; Ex. A at 4-5; Ex. B at 2-3.)

5

Following the fundraiser and after being confronted by the FBI, Individual H began cooperating in the CDCA Investigation. (Indictment ¶ 13.)  The scope of the CDCA Investigation included determining (among other things) if and when defendant knew about the illegal funds he received in Los Angeles and whether defendant had any communications with Chagoury or Baaklini about the funds he received in Los Angeles. (Id. ¶ 12.)

### C.   2018: Defendant Pushes a CDCA Subject to Host Another Fundraiser in Los Angeles for Him

Defendant was up for re-election in November 2018.  In the spring of 2018, defendant reached out to Individual H. (Indictment ¶ 14.)  On a recorded call on April 9, 2018, after inquiring about how the "community in L.A." was doing, defendant asked Individual H to host another fundraiser in Los Angeles for him. (See id.)  Individual H agreed to speak to one of their mutual acquaintances about it.

Following up on defendant's request for another Los Angeles fundraiser to support his reelection, Individual H called defendant on June 4, 2018. (Indictment ¶ 14.)  Unbeknownst to defendant at the time, the call was surreptitiously recorded at the direction of the FBI.  During that call, Individual H expressly and repeatedly discussed with defendant that, during the last fundraiser, $30,000 in cash had been provided by Baaklini (originating from Chagoury) and provided to defendant through conduit donors whom Individual H reimbursed using Chagoury/Baaklini's cash. (Id. ¶¶ 14-15.)

As the jury will hear from the recording of that call, defendant did not express surprise or concern or seek clarification about Individual H's admissions that illegal foreign cash had been funneled to his campaign.  Instead, defendant simply continued to push for the second fundraiser, explaining that he hoped to "have some continuation of the fine generosity" that he had received from the first (illicitly funded) fundraiser and offering to speak with his friend Baaklini—a key facilitator of the illegal contributions to defendant's campaign—to see if he could again "help" with the fundraiser. (See Indictment ¶ 19(b)(iii).)  The call concluded with defendant noting that he had told

Baaklini to deliver his regards to Chagoury, who defendant correctly understood was "still in Paris."

After the call with Individual H, in which the host of the fundraiser confirmed the illegal source of the $30,000 defendant had accepted into his campaign, defendant did not amend any of his disclosures regarding the contributions to account for the true donors or disgorge the funds as required by the Federal Election Commission. (Indictment ¶ 16.)

### D.  **March 2019: Defendant Lies to and Misleads CDCA Agents about the Contributions He Received from the CDCA Subjects**

Given defendant's receipt of illegal campaign contributions, defendant's response to the June 4 call with Individual H, and defendant's failure to take any corrective steps following the June 4 call, there were common sense and compelling investigative needs for CDCA agents to travel to Nebraska to see if defendant would interview with the agents as part of the CDCA Investigation.  (See Indictment ¶ 20.)  The interview, which took place on March 23, 2019, was surreptitiously recorded.  And as the jury will hear from that recording, after the agents established they were from California and advised defendant that the interview was voluntary[5] and that it was a crime to lie to federal agents, defendant proceeded to mislead the CDCA agents and make repeated false statements about matters material to the CDCA Investigation during the approximately 20-minute interview.[6]

The CDCA agents' questions focused on the CDCA Subjects and the 2016 fundraiser in Los Angeles.  Defendant repeatedly denied knowing about any illegal conduit contributions to his campaign, including after being specifically asked about Individual H and Baaklini.  (Indictment ¶ 19(a)(i), ¶ 20.)  He denied receiving money from Chagoury.  (Id. ¶ 19(a)(iii).)  Defendant also falsely stated that "the only people

---

[5] The jury will also hear that defendant asked for and received the presence of local Nebraska police to serve as his escort during his voluntary interview with CDCA investigators.

[6] Contrary to defendant's suggestion, this is not a case in which defendant merely "uttered" a single false statement or two.  (See Mot. at 5.)

1    [he] received money for are on the financial disclosure." (Id. ¶ 19(a)(ii), ¶ 20(b)-(c).)  At

2    the conclusion of the interview, defendant asked the CDCA agents how to get in touch if

3    he recalled additional information, and the CDCA agents provided defendant with a

4    California phone number.

5    **E.      July 2019: Defendant Requests Another Interview with CDCA Agents
             and Prosecutors and Doubles Down on His Lies to Them about Matters
6            Material to the CDCA Investigation**

7           Following the March 23 interview, defendant (through counsel) proactively

8    reached back into this district and requested another interview with CDCA agents and

9    prosecutors.  At the defense's request, the interview took place in Washington, D.C. on

10   July 18, 2019, at the offices of defendant's then counsel.  Defendant was again advised

11   that the interview was voluntary and that it was a crime to lie to the federal government.

12          During the approximately two-hour, consensually recorded interview, defendant,

13   despite inviting CDCA agents and prosecutors across the country on a promise of

14   additional information, instead further misled the CDCA agents and prosecutors and

15   obstructed the CDCA Investigation.  Defendant stated that he had a call with Individual

16   H about the 2016 fundraiser,[7] but misleadingly claimed that Individual H had made only

17   a vague comment referencing Chagoury that caused him some undecipherable

18   "concern."  (Indictment ¶ 19(b)(iii).)  Defendant expressly denied that Individual H told

19   him that Baaklini had given Individual H $30,000 cash for the 2016 fundraiser.  (Id.

20   ¶ 21(a).)  Defendant also falsely stated that he was not aware of any illicit donations

21   made during the 2016 fundraiser.  (Id. ¶ 21(b).)  Defendant went so far as to proclaim

22   that if he had heard that Baaklini had given Individual H $30,000 cash to help fund the

23   fundraiser (a direct quote from Individual H during defendant's call), that would have

24   been "horrifying."  (Id. ¶ 19(b)(iv).)  Defendant also misleadingly stated that he had

25   ended the call after Individual H made the "concerning" comment when, in fact,

26

27   _____

28        [7] At the time of the interview, defendant was still unaware that the FBI had
     recorded the call or that Individual H was cooperating with the government.

8

defendant persisted in his goal of obtaining another Los Angeles fundraiser hosted by Individual H and facilitated by Baaklini.  (Id. ¶ 19(b)(iii).)

Defendant's scheme to falsify and conceal facts, as well as his false statements, were capable of impacting and, in fact, impacted the CDCA Investigation and the decisions of the CDCA agents and prosecutors.  (Indictment ¶¶ 18, 20, 21.)  As a direct result of defendant's criminal acts, CDCA agents and prosecutors conducted additional interviews of multiple witnesses, including Baaklini and Chagoury, to discuss defendant and determine possible motives for his lies; obtained and reviewed additional communications amongst witnesses and phone-related data; and re-analyzed previously obtained evidence.

## III.   SECTION 1001 VENUE LAW

"[V]enue law grows out of important concerns that a criminal jury trial be held near the place where the crime was committed and where prosecution can conveniently proceed."  United States v. Angotti, 105 F.3d 539, 541 (9th Cir. 1997), abrogated on other grounds by United States v. Cabrales, 524 U.S. 1 (1998).  When there is no express venue provision in a criminal statute, as is the case with 18 U.S.C. § 1001 and thus all counts charged here, venue is determined by the "locus delicti"; that is, "the nature of the crime alleged and the location of the act or acts constituting it."  Cabrales, 524 U.S. at 6–7 (citation omitted).   Under this two-part inquiry, courts must first identify the conduct that constitutes the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.  United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002).  In evaluating the first prong—the "nature of the crime"—courts look to the "essential conduct elements" of the offense.  See United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999).

Under section 1001(a), "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact [or] (2) makes any materially false, fictitious, or fraudulent

statement or representation" violates the statute. The jurisdictional language, which is phrased separately from the prohibited conduct, is a predicate circumstance of the conduct, rather than an essential conduct element. United States v. Oceanpro Indus., Ltd., 674 F.3d 323, 329 (4th Cir. 2012). Similarly, the mens rea requirement is a circumstance element that does not contribute to determining the locus delicti of the crime. Id. (citation omitted).

Thus, the essential conduct element of a section 1001 violation is the making of materially false statements, or the concealing of material facts. The majority of circuits have reached this same conclusion. In addition to holding that materiality is an essential conduct element of the offense, the majority of circuits have also held that venue lies where the impact of that materiality is felt. See United States v. Salinas, 373 F.3d 161, 167 (1st Cir. 2004) ("Section 1001 explicitly criminalizes only those false statements that are material. When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt. After all, since materiality is an element of the offense, a defendant cannot be convicted under section 1001 unless and until such a connection can be shown." (citation omitted))[8]; United States v. Coplan, 703 F.3d 46, 78-80 (2d Cir. 2012) (venue is proper in the Southern District of New York where false statements made to IRS investigators in Tennessee were conveyed to or had effect on IRS investigators working in SDNY; "[T]he essential conduct prohibited by § 1001(a)(2) is the making of a materially false, fictitious, or fraudulent statement. . . . Proving the materiality of [defendant's] false statements in Tennessee necessarily requires evidence that those statements were conveyed to or had an effect on the IRS investigators working in the Southern District of New York." ); United States v. Candella, 487 F.2d 1223, 1227-28 (2d Cir.1973) (same); Oceanpro Indus., Ltd., 674 F.3d at 329 ("[E]ssential

---

[8] Defendant protests that Salinas is dicta, but dicta "may be followed if sufficiently persuasive," even if it is not controlling. Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 548 (2013).

conduct prohibited by the statute is 'making any materially false statement'" and because "the essential conduct constituting the offense inherently references the effects of that conduct, venue is proper in the district where those prescribed [sic] effects would be felt." (citation omitted)); United States v. Ringer, 300 F.3d 788, 792 (7th Cir. 2002) (fact that defendant's false statements in Kentucky were reasonably likely to affect an investigation in Indiana established venue in Indiana for charged section 1001 violation).

District courts in the Ninth and Third Circuits have also reached the same conclusion.  See United States v. Zweig, No. 16-CR-00208-WHO-1, 2017 WL 3895708, at *5 (N.D. Cal. Sept. 5, 2017) ("Because materiality is an element of the offense under Section 1001, and a defendant cannot be convicted under Section 1001 without a showing of such materiality, venue may lie where the effect of the statement is felt and it is therefore rendered material."); United States v. Brennan, 452 F. Supp. 3d 225, 236-237 (E.D. Pa. 2020) (concluding that "§ 1001's 'essential conduct' is making a 'materially false statement,' rather than merely making any false statement," and that "Congress defined § 1001's essential conduct element in terms of its effect, making the effects-based venue analysis available").

## IV.   ARGUMENT

The Indictment alleges that defendant schemed to falsify and conceal material facts and materially lied to CDCA agents and prosecutors about matters affecting the CDCA Investigation.  (Indictment ¶¶ 18, 20, 21.)  Those alleged acts are the essential conduct criminalized by sections 1001(a)(1) and (a)(2).  Because defendant's materially false statements and scheme were designed to affect and did affect the CDCA Investigation in this district, the locus delicti of defendant's crimes is this district.

### A.   Making a *Materially* False Statement Is Essential Conduct Under Section 1001

Section 1001(a)(2) prohibits "mak[ing] any materially false, fictitious, or fraudulent statement or representation."  Likewise, anyone who "falsifies, conceals, or covers up by trick, scheme, or device a material fact" violates section 1001(a)(1).  A

conviction under either subsection of section 1001 requires the government to prove that defendant's actions and statements were both false (or constituted concealment) and material.  United States v. Gaudin, 28 F.3d 943, 951 (9th Cir. 1994).  Materiality is part of the nature, or essence, of the crime.  Accordingly, as held by the majority of circuits, the making of any materially false statements (or covering up material facts) is the essential conduct element for purposes of venue analysis.  (See Opp'n at 10-11 (collecting cases).)

Without citing any authority, defendant makes the conclusory assertion that the materiality requirement for a section 1001 charge is "wholly independent of the defendant's conduct" and therefore not an essential conduct element.  (See Mot. at 6-7.) This argument fails legally and does not pass a commonsense test.   Materiality, like falsity, bears on defendant's conduct—he is the one who must make a materially false statement.  See 18 U.S.C. §§ 1001(a)(1), (a)(2).  It is the reason why a defendant who chooses to lie about what he had for breakfast (not material) does not commit a federal crime but the defendant who lies about his knowledge regarding subjects who made illegal foreign and conduit contributions to his campaign (material) does.  See Brennan, 452 F. Supp. 3d at 235 (explaining that materiality is an essential conduct element because "[n]ot all lies are illegal under § 1001—only material lies.  Congress drew a line between proscribed and permissible conduct, and it used the word 'materially' to draw that line.").  The materiality element defines the defendant's conduct, not happenstance or circumstance.

In defendant's quest to limit venue strictly to where the false statement was "made" or "uttered," defendant looks only to the verbs of the statute and ignores the words "material" and "materially."  In doing so, defendant impermissibly relies on the restrictive "verb test," against which the Supreme Court has warned.  While the "verb test" can be used "as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language.  The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be

1    missed." Rodriguez-Moreno, 526 U.S. at 280 (emphasis added); see also Pace, 314 F.3d

2    at 349 n.2 (same).  As a result of defendant's rigid approach, he characterizes the

3    element conduct offense as making a false statement, as opposed to a materially false

4    statement, thereby missing other relevant statutory language that describes the very

5    conduct prohibited by the statute.  This was precisely what the Supreme Court instructed

6    courts not to do.

7         Even the two minority circuit cases that defendant cites do not compel a contrary

8    conclusion.  In United States v. Smith, 641 F.3d 1200 (10th Cir. 2011), the Tenth Circuit

9    held that venue was not proper in Oklahoma (the site of an ongoing investigation)

10   because the defendant made his false statements in Minnesota.  Id. at 1208.  The court

11   superficially acknowledged the Supreme Court's admonition against exclusive reliance

12   on the "verb test," but then incorrectly relied solely on the "verb test" to conclude venue

13   was proper only in the district "where the defendant makes the false statement."   Id. at

14   1207-08.  The Tenth Circuit failed to specifically analyze the materiality element or

15   explain why it excised the word "materially" from a statute that punishes individuals

16   who "makes any materially false . . . statement."  18 U.S.C. § 1001(a)(2).  The

17   unpublished Eleventh Circuit decision in United States v. John, 477 F. App'x 570 (11th

18   Cir. 2012), is even less persuasive.  There, the court merely parroted Smith's flawed

19   reliance on the "verb test" and similarly ignored the materiality requirement of

20   section 1001.[9]  See id. at 572.

21        The essential conduct prohibited by the statute is making a materially false

22   statement.  That conclusion—as shared by the majority of circuits—comports with

23   Supreme Court precedent, adheres to the text of the statute without excluding other

24

25   _____

     [9] What actually seemed to trouble the Eleventh Circuit was finding venue in the
     Northern District of Florida when the defendant "had never been in the Northern District
26   of Florida, placed a call to anyone in the Northern District of Florida, or mailed or sent
     anything to the Northern District of Florida before she was indicted."  Id. at 571.  In that
27   regard, even if John had any weight, it is distinguishable from the present case where
     defendant had a "community" in CDCA, traveled to CDCA, received illicit campaign
28   funds in CDCA, reached into CDCA to contact Individual H about arranging another
     fundraiser here, and reached back into CDCA to arrange for his second interview with
     CDCA investigators.

relevant language, and is consistent with Ninth Circuit law and common sense that the conduct prohibited by section 1001 is the making of a materially false statement and not just making any false statement.

### B.   Venue Is Proper in the District Affected by Defendant's Material Lies and Obstructive Acts

Congress may, consistent with the venue clauses of Article III and the Sixth Amendment, define the essential conduct elements of a criminal offense in terms of their effects, thus providing venue where those proscribed effects are felt.  United States v. Bowens, 224 F.3d 302, 312 (4th Cir. 2000).  This approach is consistent with the Supreme Court's observation that Congress may "provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates." United States v. Johnson, 323 U.S. 273, 275 (1944) (emphasis added); see also Lukashov, 694 F.3d at 1121 (same).

That is precisely what Congress did with section 1001.  Materiality within the meaning of that statute asks whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed."  Peterson, 538 F.3d at 1072 (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)).  By inserting the word "materially" into the conduct-focused language of section 1001, Congress "inherently reference[d] the effects of that conduct," Oceanpro Indus., Ltd., 674 F.3d at 329, and prescribed that a defendant be held to account in the very district affected or influenced by the "force propelled" from defendant's lies, Johnson, 323 U.S. at 275.

Venue is therefore proper where the effect of defendant's false statements is capable of being, or is, felt and rendered material.  The majority of circuits are uniform in this conclusion—and for good reason.  (See Opp'n at 10-11 (collecting cases).)  A defendant who directs his false statements to a decisionmaking body in this district to influence its decisions in this district should be held to account in the very district he sought to influence.  The decisionmaker is essentially the victim of the criminal act

14

seeking to illegally impair its decisionmaking.[10]  By way of analogy, if a defendant shoots a gun from one district and hits a victim in a second district, there would be no dispute that venue was proper in the victim's district.  Venue in the district affected by the false statement makes sense, particularly since proving materiality in a section 1001 case "necessarily requires evidence of the existence of the federal investigation in [the venued district] and the potential effects of [defendant's] statement on that investigation."  Oceanpro Indus., Ltd., 674 F.3d at 329; see also Ringer, 300 F.3d at 792 ("Proving that the investigation was reasonably likely to be affected by [defendant's] statements was the keystone to materiality in this case.").

Defendant catastrophizes that by permitting venue in the very districts that defendants seek to influence by their deceptive and false statements, prosecutors could manufacture venue "in any district they choose."  This argument is baseless.  As the Indictment alleges (and as the discovery provided to the defense establishes), the CDCA Investigation long predated defendant's false statements.  It is because of the well-established interests and topics of that robust and ongoing investigation (namely, into illegal foreign and conduit contributions, foreign influence, and bribery schemes) that defendant's voluntary statements to the investigators were material.  In other words, venue for a potential false statements prosecution was firmly established within this district by virtue of the long-standing criminal investigation here, which was operating well before defendant sought to obstruct it, and was where the CDCA agents and prosecutors took subsequent investigative steps as a direct result of defendant's obstructive acts.[11]

---

[10] Whether the defendant actually achieves his illicit goal is of no moment.  United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir. 1998) ("The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.").

[11] Defendant's parade of horribles is equally flawed.  Defendant asks where the effect of a false statement is felt. (Mot. at 11.)  The effect of defendant's false statements to CDCA agents and prosecutors about CDCA Subjects who were at the center of their CDCA Investigation were felt in the Central District of California. Defendant asks who decides where the effect of a statement is felt. (Id.)  Defendant is

*(footnote cont'd on next page)*

15

In sum, this Court should follow the persuasive authorities of the First, Second, Fourth, and Seventh Circuits and join the other district court in this circuit to address this issue and find that (1) the essential conduct element of a section 1001 violation is the making of a <u>materially</u> false statement, and (2) venue lies where the impact of that materiality is felt.

## C.    The Indictment Establishes Proper Venue Based on Defendant's Material Lies Affecting This District

The allegations in the Indictment, standing alone and taken as true, are more than sufficient to plead venue.  <u>See</u> <u>Ghanem</u>, 993 F.3d at 1120 ("An indictment does not have an apparent venue defect if 'it allege[s] facts which, if proven, would have sustained venue' in the district of trial." (citation omitted)).

<u>First</u>, the Indictment alleges that defendant engaged in the essential conduct that constitutes the charged crimes.  Count One alleges that defendant "falsified, concealed, and covered up by trick, scheme, and device <u>material</u> facts."  (Indictment ¶ 18 (emphasis added).)  Counts Two and Three allege that defendant "made <u>materially</u> false statements and representations" to the CDCA agents and prosecutors.  (<u>Id.</u> ¶¶ 20-21 (emphasis added).)  <u>Second</u>, the indictment alleges that defendant's essential conduct—that is, falsifying/concealing/covering up material facts and making materially false statements—"<u>affect[ed] the Federal Investigation in the Central District of California</u>." (<u>Id.</u> ¶¶ 18-21) (emphasis added).  Nothing more is needed.  <u>See</u> <u>Ghanem</u>, 993 F.3d at 1120.

But, as outlined above, the Indictment does provide more.  It lays out in great detail the genesis and nature of the CDCA Investigation; the precise issues and subjects

---

the one who decided to create those effects when he voluntarily made material false statements to CDCA agents and prosecutors in an effort to obstruct their ongoing investigation.  Defendant asks how this standard applies when the government "takes the position that it need not prove that the statement influenced it at all." (<u>Id.</u> at 11-12.)  The answer is that binding Supreme Court and Ninth Circuit precedent defining materiality applies, and that the government must prove that defendant's false statements had the natural tendency or ability to influence a federal decisionmaking body within the venued district.  Here, defendant's false statements both had the natural tendency to influence the CDCA decisionmaking bodies <u>and</u> had the actual effect of influencing those bodies pertaining to their decisions and activities in the Central District of California.

that the CDCA Investigation was investigating; the chronology and development of the CDCA Investigation as it related to this defendant; and the specific false statements and scheme that defendant directed towards the CDCA Investigation concerning the very same matters that were at the heart of the investigation.  Indeed, the Indictment makes abundantly clear the reasons why defendant's lies and misstatements were material to, and affected, the ongoing criminal investigation that was well-rooted in this district and concerned illegal campaign contribution activity taking place within CDCA and involving the CDCA Subjects.  Specifically, the Indictment alleges the following:

- CDCA investigators were conducting a federal criminal investigation into illegal political campaign contributions, in violation of federal election laws, including those made to defendant.  (Indictment ¶¶ 1, 6-8.)
- The subjects of the CDCA Investigation, including a foreign national, were illegally operating in the CDCA. (Id. ¶¶ 3-5, 6-8, 11.)
- The investigation sought to uncover whether and when any politicians including defendant, were aware they had received illegal contributions and/or whether any politicians, including defendant, had any conversations about taking certain actions in exchange for the illegal contributions.  (Id. ¶¶ 1, 12.)
- The CDCA Investigation learned that in January 2016, Chagoury used Baaklini, who used Individual H, to route $30,000 to defendant through conduits during a fundraiser in Los Angeles.  (Id. ¶¶ 3, 11.)  These acts violated the same federal election laws that were the subject of the CDCA Investigation.  (Id. ¶¶ 6-8.)
- Between March and June 2018, defendant reached out to Individual H, a resident of Los Angeles, to inquire about hosting another fundraiser in Los Angeles.  (Id. ¶¶ 5, 14.)  During a call on June 4, 2018, Individual H expressly told defendant that the $30,000 from the prior fundraiser was donated through conduits and probably did come from Chagoury (and thus that a crime was committed benefitting his campaign).  (Id. ¶ 15.)  Defendant continued to ask for another Los Angeles fundraiser and, following the call, did not amend his filings with the Federal Election Commission or disgorge the funds.  (Id. ¶¶ 16, 19(b)(iii).)
- As part of defendant's scheme to falsify and conceal material facts, he, among other things, falsely stated that he was unaware of any contributions made by foreign national to his campaign; that he ended the call with

17

Individual H after he made a "concerning comment"; and that he would have been horrified if he had learned that Baaklini had provided Individual H with the funds contributed to the CDCA fundraiser.  (Id. ¶¶ 14-15, 19.)

- On March 23, 2019, defendant made materially false statements in an interview "affecting the Federal Investigation in the Central District of California."  (Id. ¶ 20.)  Those materially false statements included that defendant was not aware Baaklini had made or directed any illegal contributions to defendant and that all individuals who donated to defendant were publicly disclosed.  (Id.)

- On July 18, 2019, defendant made materially false statements in an interview "affecting the Federal Investigation in the Central District of California."  (Id. ¶ 21.)  Those materially false statements included that Individual H had not told him that the $30,000 came from Baaklini and that he was not aware of any illicit donations made to him during the CDCA fundraiser.  (Id.)

These allegations, taken as true, amply demonstrate that venue is proper in this district because defendant's false statements were material to the CDCA Investigation.

## D.   Venue Is Also Proper in This District Because Defendant's False Statements Continued Into This District

For the reasons set forth above, the Court need not go further than the Indictment to find that venue is properly pled and to deny defendant's motion.  At trial however, the government will prove an additional ground establishing venue in this district: venue is proper here because defendant's materially false statements and obstructive acts continued into this district.

Crimes that are not unitary but instead span space and time, may be considered continuing offenses under 18 U.S.C. § 3237(a).  United States v. Corona, 34 F.3d 876, 879 (9th Cir. 1994).  Section 3237(a), in turn, dictates that "[a]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  Violations of 18 U.S.C. § 1001 may constitute a continuing offense.  See Pace, 314 F.3d at 352 ("'[M]aking' a false statement to a federal agency is a continuing offense and may be prosecuted in a district not only where the

false statement is initially provided but where it is ultimately received." (citation omitted)); see also Salinas, 373 F.3d at 166-67 (noting that "courts consistently treat section 1001 crimes as continuing offenses"). A continuing offense "does not terminate merely because all of the elements are met." Lukashov, 694 F.3d at 1121 (citation omitted).

When a defendant's materially false statements and deceptive acts, in violation of section 1001, are received by "the decisionmaking body to which it was addressed," Peterson, 538 F.3d at 1072, in the district where that body operates, the section 1001 offense continues into that district. The Second Circuit decision in United States v. Coplan is instructive on this point. There, the defendant was charged with making false statements to the IRS during a deposition in Tennessee concerning issues pertinent to an ongoing IRS investigation in the Southern District of New York. 703 F.3d at 57, 80. Although the defendant made the false statements in Nashville, "it [did] not follow that the crime then terminated, and that what transpired in Manhattan was irrelevant for venue purposes." Id. at 79 (quoting Candella, 487 F.2d at 1228). The Second Circuit reasoned that the defendant's false statements to IRS officials in the Nashville deposition "continued into the Southern District of New York, where his deposition transcript was reviewed and discussed by IRS officials in connection with the ongoing [investigation]." Id. at 80. And because the defendant's statements "continued to be false and continued to be in the jurisdiction of the United States when they finally reached Manhattan," venue was proper in the Southern District of New York. Id.[12]

The Ninth Circuit is in accord with the Second Circuit's analysis. In Angotti, the Ninth Circuit held that venue was proper in this district where defendant's false statements, in violation of 18 U.S.C. § 1014 (fraudulent loan application), were made in the Northern District and then transmitted here. 105 F.3d at 542-44. Citing Candella, the Ninth Circuit held that "the act of making a communication continues until the

---

[12] It is of no consequence whether the statements involved written or oral false statements, both of which are prohibited under 18 U.S.C. § 1001. Id. at 78 n.32.

19

communication is received by the person or persons whom it is intended to affect or influence." Id. (emphasis added). In 2002, after the Supreme Court decisions in Rodriguez-Moreno and Cabrales, the Ninth Circuit affirmed its reasoning in Agnotti. In United States v. Pace, the Ninth Circuit held that venue was proper in the District of Arizona, which received defendant's false tax return, even though defendant had the return prepared and signed in Ohio and New York. 314 F.3d at 352. Relying on Angotti, the Ninth Circuit explained:

> False statements may be "made" where they are ultimately received. . . . Thus, the crime of "making" a false tax return commences when one furnishes information essential to the return, and is not completed until the information is received by the party to whom it is addressed. This conclusion is consistent with Angotti, in which we held that "making" a false statement to a federal agency is a continuing offense and may be prosecuted in a district not only where the false statement is initially provided but where it is ultimately received. In so holding, we explained: "[t]he statements continued to be false ... not only when initially presented but also upon arrival[at the place] where the decision was reached...."
> …
> For such continuing offenses, venue is proper in any district in which the continuing conduct has occurred.

Id. at 352 (citations omitted) (emphasis added).

Even the sole published circuit case on which defendant relies supports the government's position. The Tenth Circuit in United States v. Smith, which incorrectly relied on the verb test, recognized the applicability of the continuing offense doctrine for section 1001 offenses. 641 F.3d at 1208 ("[G]iving a false statement may be a continuing offense, where the statement is 'made' in more than one district." (citation omitted)). In concluding that there was no venue in Oklahoma, the Tenth Circuit emphasized that the agent who interviewed the defendant in Minnesota did not record the statement or take notes during the interview (both occurred in defendant's case), and thus did not bring the memorialized statements back to Oklahoma, where the

investigation was pending.  Id. at 1208–09 ("The false statements began, continued, and ended during the interview.  The interview was not recorded, transcribed, or otherwise preserved for use in Oklahoma.").  It was under these narrow circumstances that the Tenth Circuit reasoned the defendant's statements were "made" exclusively in Minnesota.  Id. at 1209.

At trial, the government expects to present evidence that defendant's violations of section 1001 were continuing offenses that carried into this district.  Defendant's audience and intended recipient of his false statements were the CDCA agents and prosecutors, whom he knew full well were operating and investigating matters within this district.  Cf. Angotti, 105 F.3d at 543 (explaining that, for venue in false statements prosecutions, it is irrelevant whether the defendant "subjectively knew the identity of location of that official; that official is nonetheless the person to whom [the defendant's] statements were directed").  Defendant's false statements were "recorded, transcribed, and preserved for use" in the Central District of California where they were utilized to make investigative and charging decisions.  See Smith, 641 F.3d at 1208–09.  It was in this district that CDCA agents and prosecutors reviewed and discussed defendant's false statements and made decisions about the next steps in the CDCA Investigation, based on defendant's criminal conduct.  And although the government need not prove that defendant's actions actually affected the decisionmaking body, his actions had real effect.  See Deli Inc., 151 F.3d at 941.  As a result of defendant's scheme and false statements, CDCA agents and prosecutors, among other things, conducted additional interviews of multiple witnesses; obtained and reviewed additional communications and phone-related data; and re-analyzed previously obtained evidence.

Because defendant's criminal offenses were directed towards this district, continued into this district, and directly impacted the investigation within this district, venue is proper here.  Under these circumstances, including those that will be proven at trial, defendant should be held to "face a jury of Californians."

## V. CONCLUSION

The clear case law set forth by the majority of the circuits and the reasoning explained therein, the specific allegations of this Indictment, and common sense demonstrate that venue is proper here. For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss.