John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile:  (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT ONE OF THE INDICTMENT AS MULTIPLICITOUS OR TO COMPEL THE GOVERNMENT TO ELECT AMONG MULTIPLICITOUS COUNTS**<br><br>Hearing Date: December 7, 2021<br>Hearting Time: 8:00 a.m.<br>Time Estimate: 20 minutes<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Dec. 7, 2021<br>Trial: Dec. 14, 2021<br>Last Day: Dec. 29, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the above date and time, or as soon thereafter as this matter may be heard in the courtroom of the Honorable Stanley Blumenfeld, Jr., United States District Court Judge, located at 350 West 1st Street, Los Angeles, California 90012, Courtroom 6C, by and through his attorneys of record, the Honorable Jeffrey Lane Fortenberry will move, and hereby does move, to dismiss Count One the Indictment because it is multiplicitous, or in the alternative, to compel the government to elect to proceed on Count One or Counts Two and Three. This motion is based on this Notice, the Memorandum of Points and Authorities concurrently filed herewith, the files and records in this case, and any evidence and argument that may be presented at the hearing on this matter.

On November 8, 2021, defense counsel met and conferred with government counsel by phone concerning the multiplicity of Count One, but the opposing sides were unable to resolve their differences on this issue.

Dated: November 9, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By:_____
John L. Littrell
Ryan V. Fraser
*Attorneys for Hon. Jeffrey Lane Fortenberry*

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF FACTS

This indictment reflects the government's attempt to manufacture multiple false-statement charges based on Congressman Fortenberry's failure to recall a ten-minute phone call he received from a government informant in 2018.

In 2016, the government was investigating political campaign contributions made by Gilbert Chagoury, a foreign national, using other individuals as conduits, to Congressman Fortenberry's 2016 congressional campaign. The government was allegedly concerned with whether Congressman Fortenberry was aware of the illegal foreign contributions, and whether any person sought to impermissibly influence him in exchange for them. Dkt. No. 1 at ¶ 1. The government does not allege that Congressman Fortenberry *knew* about the illegal contributions when they were made in 2016, and it did not charge the Congressman with any substantive offense related to those contributions.[1]

On June 4, 2018, the government directed its informant, "Individual H," who had hosted a fundraiser for Congressman Fortenberry in 2016, to place a surreptitiously recorded phone call. During the 2018 call, which lasted about ten minutes, and spanned multiple topics unrelated to the 2016 fundraiser, the informant told Congressman Fortenberry <u>something that he did not know before</u>: that his campaign had received an illegal contribution from a foreign national in 2016.

Specifically, the government alleges that during the 2018 call, "Individual H" told Congressman Fortenberry that "prior to the 2016 Fundraiser, [Toufic] Baaklini provided Individual H with '$30,000 cash' to give to defendant FORTENBERRY's campaign." Dkt. No. 1 at ¶ 14. During the same call, "Individual H," also allegedly told Congressman Fortenberry that he had "distributed the $30,000 cash to other individuals to contribute to

---

[1] The $30,200 in alleged illegal conduit contributions represents approximately 3.7% of the total money Congressman Fortenberry raised for his 2016 campaign. *See* Federal Election Commission 2016 Financial Summary for Honorable Jeffrey L. Fortenberry, *available at* https://www.fec.gov/data/candidate/H4NE01064/?cycle=2016.

defendant FORTENBERRY's campaign at the 2016 Fundraiser," and that the money "***probably*** did come from Gilbert Chagoury because he was so grateful for your support [for] the cause." *Id*. at ¶ 15(a) (emphasis added).

On March 23, 2019—nearly ten months later—the government sent agents to Congressman Fortenberry's home to interrogate him. *See Id*. at ¶ 19(a). Congressman Fortenberry invited the agents into his home and tried to help them. He was not asked about the 2018 call from Individual H. But according to the government, Congressman Fortenberry's responses were false, because Congressman Fortenberry stated that he was not aware of Baaklini making illegal contributions or directing others to do so, *id*. at ¶ 19(a)(i), and he stated that "the individuals who contributed to the 2016 Fundraiser were all publicly disclosed." *Id*. at ¶ 20(b). He also stated that "every campaign that he had received was publicly disclosed." *Id*. at ¶ 20(c).

On July 18, 2019—more than one year later—Congressman Fortenberry was questioned again, this time by Assistant United States Attorney Mack Jenkins himself. *Id*. at ¶19(b). Again, Congressman Fortenberry cooperated with the government and tried to help. This time, Congressman Fortenberry was asked about the 2018 call from Individual H. *See id*. at ¶ 19(b)(i). According to the government, Congressman Fortenberry made false statements when he denied that he had been "told by Individual H during the 2018 call that Baaklini had given Individual H $30,000 cash to help fund the 2016 Fundraiser," *id*. at ¶ 21(a), and stated that he was "not aware of any illicit donation made during the 2016 Fundraiser." *Id*. at ¶ 21(b). The Congressman also allegedly said that he ended the 2018 call with Individual H after Individual H made a concerning comment, and that he would have been "horrified" if he learned illegal campaign contributions were made. *Id*. at ¶ 19(b)(i)-(iv); *id*. at ¶ 21.

Notably, the government does not accuse Congressman Fortenberry of lying about the real facts surrounding his 2016 fundraiser. This case is entirely about Congressman Fortenberry's failure to accurately repeat back to the government the content of the ten-minute phone call that the government's informant placed to him.

The government charged Mr. Fortenberry with two felony counts of making false statements, one based on the Nebraska statement (Count Two), and one based on the Washington, D.C., statement (Count Three). Both alleged false statements assume that Congressman Fortenberry heard, understood, and remembered the information he allegedly received from Individual H during the 2018 phone call. Both alleged false statements also rely on the assumption that he *believed* Individual H.

Not content with two felony charges, the government added a third for engaging in a "scheme" to conceal the same facts the Congressman supposedly learned during the 2018 phone call (Count One). The basis alleged for Count One is the same two alleged false statements that form the basis for Counts Two and Three. Like Counts Two and Three, Count One also assumes that Congressman Fortenberry heard, understood, and remembered the information he allegedly received from Individual H during the 2018 phone call, and believed him.

Congress did not intend to give the executive branch the power to gain a tactical advantage over a defendant by charging multiple felony counts based on the same allegedly false statement. At most, the government has alleged facts to support two counts, based on two statements separated by a span of three months. Count One is based on precisely the same facts as Counts Two and Three. It should be dismissed.

## II.   ARGUMENT

Multiplicity occurs when a single offense is charged in two or more counts, thereby producing two penalties for one crime in violation of the Constitution's Double Jeopardy Clause. *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005). "Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball v. United States*, 470 U.S. 856, 861 (1985). A court may not impose multiple punishments based on counts that charge the same conduct. *Id*. "Whether one or multiple offenses are charged can . . . raise difficult and subtle questions." Wright & Miller, 1A Fed. Prac. & Proc. Crim. 5th § 143 (footnote omitted).

> [T]he ultimate question of whether defendant is being twice charged with the same offense is one of legislative intent, to be ascertained from all the usual tools of statutory construction. Because a determination that separate offenses are involved makes possible multiple punishment for the same conduct, doubts should be resolved against turning a single transaction into multiple crimes unless Congress has indicated clearly that it contemplates separate crimes.

*Id*. (footnotes omitted).

This sort of defect in an indictment must be attacked before trial, Fed. R. Crim. P. 12(b)(3)(B)(ii), and there is good reason to cure it before trial, because, apart from the multiple-punishment threat, "a multiplicitous indictment [also] may improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one." *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991).

### A.   Count One Is Multiplicitous to Counts Two and Three Because § 1001(a)(2) Is a Lesser Included Offense to 1001(a)(1)

Where one act allegedly violates multiple statutes, the court must apply the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Under *Blockburger*, counts of an indictment are multiplicitous unless each violation "'requires proof of an additional fact which the other does not.'" *United States v. McKittrick*, 142 F.3d 1170, 1176 (9th Cir. 1998) (quoting *Blockburger*, 284 U.S. at 304). Counts are also multiplicitous where the conduct charged in one count is a lesser included offense to another count. *Rutlege v. United States*, 517 U.S. 292, 297 (1996); *United States v. Davenport*, 519 F.3d 940, 945 (9th Cir. 2008).

"The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . If the latter, there can be but one penalty." *Blockburger*, 284 U.S. at 302 (quoting Wharton's Criminal Law, 11th ed., § 34). Put another way, "[w]hen the impulse is single . . . one indictment lies, no matter how long the action may continue." *Id*.

Here, Counts Two and Three are lesser included offenses of Count One. The elements of false statement under § 1001 are: (1) the defendant made a false statement; (2)

the statement was made in a matter within the jurisdiction of a particular government agency or department; (3) the defendant acted willfully; and (4) the statement was material to the activities or decisions of a specific government agency or department.  Ninth Circuit Model Criminal Jury Instruction No. 8.73.[2]

Subsection (a)(1) of 18 U.S.C. § 1001 may require proof of facts that subsection (a)(2) does not.  For example, to sustain a conviction under § 1001(a)(1), the government must prove a trick, scheme, or device to conceal, and a corresponding duty to disclose the fact concealed.  *See United States v. White Eagle*, 721 F.3d 1108, 1116–17 (9th Cir. 2013); *United States v. Varbel*, 780 F.2d 758, 762 (9th Cir. 1986).  But the inverse is not true; §1001(a)(2) does not require proof of any fact not also required under § 1001(a)(1).  The Ninth Circuit reached that conclusion in *United States v. UCO Oil Co.*, 546 F.2d 833, 838 (9th Cir. 1976).  There, the Court explained:

> Congress, in enumerating several different types of fraudulent conduct in Section 1001, did not create separate and distinct offenses. We are satisfied that had the government used any particular false report as the basis for two counts, one charging a false statement and the other a concealment by trick, scheme or device, the indictment would be vulnerable to attack for multiplicity.

*Id.*

Although Congress has amended § 1001 since *UCO Oil*, those changes call for no different conclusion today.  As of *UCO Oil*, § 1001 provided:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

---

[2]   Congressman Fortenberry does not concede that Ninth Circuit Model Criminal Jury Instruction 8.73 accurately represents the law regarding 18 U.S.C. § 1001; he reserves the right to submit alternative jury instructions at trial.

(Version effective until Oct. 11, 1996.)  Subsequent amendments to the statute broke out the scheme, false-statement, and false-writing clauses into separate subparagraphs ((a)(1), (a)(2), and (a)(3)).  But the substance of the statute is the same.  The House Report on the 1996 amendments to § 1001, which created subsections (a)(1) through (a)(3), states that "[o]ther than establishing materiality as an element of all three offenses, the Committee does not view the offenses defined in paragraphs (1), (2) and (3) as changing already existing case law as it relates to the elements of the offenses."  H.R. Rep. 104-680, at 8 (1996), as provided by Westlaw online as a representation of 1996 U.S.C.C.A.N. 3935, 3942.  The use of the word "offenses" in the plural should not be taken literally.  There remains only one offense; subparagraphs (a)(1) through (3) merely set forth different *means* of violating § 1001.  *See United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006); *cited approvingly in White Eagle*, 721 F.3d at 1117.  Therefore, *UCO Oil*'s holding remains valid.  Charging the same false statement as a basis for a violation of § 1001(a)(2) and concealment under § 1001(a)(1) is multiplicitous.  *See UCO Oil*, 546 F.2d at 838.

### B. Count One Is Multiplicitous to Counts Two and Three Because All Three Counts Rely on Identical Factual Allegations.

Even if strict application of the *Blockburger* elements test resulted in a finding that § 1001(a)(2) is not a lesser included offense of § 1001(a)(1), the Court could find that Congress did not intend that thematically and functionally identical statements to the government be punished multiple times.  "[U]ltimately, the *Blockburger* test is simply a tool to apply if a court cannot discern Congressional intent."  *United States v. King*, 713 F.Supp.2d 1207, 1214 (D. Haw. 2010).  In addition to considering the elements of charges in the abstract, courts also review the indictment's case-specific factual allegations.  *Cf. Whalen v. United States*, 445 U.S. 684, 693–94 (1980); *United States v. Valenzuela*, No. SACR 05-107 JVS, 2006 WL 8435121, at *4 (C.D. Cal. Dec. 20, 2006) (citing *Whalen*, 445 U.S. at 694, to explain that "[t]he analysis may not stop" at applying the *Blockburger* test to the abstract elements of the charges).  In *Whalen*, the defendant received consecutive sentences for rape and felony murder; the rape was the felony underlying the felony-murder

conviction. *Id*. at 685–86.  Acknowledging that, in general, felony murder could be committed without rape, the *Whalen* Court reasoned that because, under the facts of the case before it, the rape was a lesser included offense to the murder charge—"proof of rape [was] a necessary element of proof of the felony murder"—the Double Jeopardy Clause barred consecutive punishment.  *Id*. at 694.

Following that approach in this case yields the same answer as *Blockburger*.  The government alleges the same statements made in Congressman Fortenberry's two meetings with the government (Counts Two and Three) as the conduct underlying the "trick, scheme, or device" alleged in Count One.  Thus, Counts Two and Three do not require "proof of an additional fact" not required by Count One.

### C. The Court Should Either Dismiss Count One or Compel the Government to Elect Between Count One or Counts Two and Three

While the Double Jeopardy Clause does not necessarily preclude *charging* multiplicitous counts, provided that only one punishment is imposed, *Ball*, 470 U.S. at 860, courts have discretion to cure the problem before trial by striking multiplicitous allegations or forcing the government to elect among them.  *See United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985).  One of the reasons the Court should do so here is that telling the jury that Congressman Fortenberry is accused of three separate crimes based on only two events may convey a false sense to jurors of the number of crimes alleged to be at issue. *See United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997).  Having multiple identical allegations prejudices Congressman Fortenberry because it increases the likelihood that the jury will assume that he must be guilty of at least some of the charges, encouraging a flawed compromise verdict.  *See United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992).

///
///
///
///

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss Count One of the indictment or compel the government to elect between Count One and Counts Two and Three.

Dated: November 9, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By:_____
   John L. Littrell
   Ryan V. Fraser
   *Attorneys for Hon. Jeffrey Lane Fortenberry*