John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile:  (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>        *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S NOTICE OF MOTION AND MOTION TO DISQUALIFY AUSA MACK JENKINS**<br><br>Hearing Date: Dec. 7, 2021<br>Hearing Time: 8:00 a.m.<br>Time Estimate: 15 minutes<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Dec. 7, 2021<br>Trial: Dec. 14, 2021<br>Last Day: Dec. 29, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the above date and time, in the courtroom of the Honorable Stanley Blumenfeld, Jr., United States District Court Judge, located at 350 West 1st Street, Los Angeles, California 90012, Courtroom 6C, by and through his attorneys of record, the Honorable Jeffrey Lane Fortenberry will move, and hereby does move, to disqualify Assistant United States Attorney ("AUSA") Mack Jenkins from prosecuting this case.  This motion is based on this Notice, the Memorandum of Points and Authorities concurrently filed herewith, the files and records in this case, and any evidence and argument that may be presented at the hearing on this matter.

Months before the indictment, defense counsel notified AUSA Jenkins of the defense's position that, if the case were indicted, AUSA Jenkins would have to recuse himself or be disqualified from prosecuting the case on behalf of the government because of his unique personal knowledge of the facts of this case and the likelihood that he would be called as a witness.  Counsel for the parties further discussed this issue on November 8, 2021, by phone, but were unable to resolve their differences.

Date: November 9, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: _Ryan V. Fraser_ _____
   Ryan V. Fraser
   John L. Littrell
   *Attorneys for Hon. Jeffrey Lane Fortenberry*

## <u>MEMORANDUM OF POINTS & AUTHORITIES</u>

### I.   INTRODUCTION

Counts One and Three of the indictment rely heavily on Congressman Jeffrey Fortenberry's responses to questions asked by Assistant United States Attorney ("AUSA") Mack Jenkins as part of an investigation that AUSA Jenkins was directing. Because AUSA Jenkins is a material witness in this case, he cannot ethically or constitutionally serve as an advocate for the government.  Even if AUSA Jenkins did not take the witness stand, his advocacy would be sure to result in impermissible vouching under *United States v. Edwards*, 154 F.3d 915 (9th Cir. 1998), among other authorities.

### II.   STATEMENT OF FACTS

According to the indictment, in 2016, Gilbert Chagoury, a "Nigerian-born, billionaire businessperson of Lebanese descent" arranged for $30,000 of "his money" to be contributed to Congressman Fortenberry's 2016 reelection campaign, through other individuals.  Dkt. No. 1 at  ¶¶ 3, 11.  In furtherance of this plot, Chagoury gave money to Toufic Baaklini, a trusted friend of Congressman Fortenberry, and Baaklini gave "Individual H" $30,000 cash at a restaurant in Los Angeles in January 2016.  *Id.* at ¶ 11.  Individual H then recruited individuals to make donations to Congressman Fortenberry's 2016 reelection campaign at the fundraiser and agreed to reimburse them with Chagoury's cash.  *Id*.  The government does not allege that Congressman Fortenberry knew Chagoury was behind illegal donations to his campaign in 2016.  He didn't.

Chagoury's plan went beyond Congressman Fortenberry.  Chagoury has admitted to attempting to funnel approximately $180,000 to at least four political candidates in the United States with Baaklini's help.  Chagoury Deferred Prosecution Agreement, *available at*  https://www.justice.gov/usao-cdca/press-release/file/1382076/download  (last visited Nov. 7, 2021).  None of the other political candidates to whom Chagoury funneled money has been prosecuted.  Presumably they did not know about Chagoury's plan, either.

But this case is not about the 2016 fundraiser.  It is about alleged false statements made by Congressman Fortenberry three years later in Nebraska and Washington, D.C.  The

HON. JEFFREY LANE FORTENBERRY'S MOTION TO DISQUALIFY AUSA MACK JENKINS

first alleged false statement was made to FBI Special Agent Todd Carter "[d]uring an interview on March 23, 2019, by the FBI and IRS at [Fortenberry's] residence in Lincoln, Nebraska." *See* Dkt. No. 1 at ¶ 19(a) (Count One); ¶ 20 (Count Two). The second alleged false statement was made directly to AUSA Jenkins himself during an interview on July 18, 2019, in Washington, D.C. *See id.* at ¶19(b) (Count One); ¶ 21 (Count Three).

The indictment alleges that these statements were "material" and "affect[ed]" a federal investigation. *Id.* at ¶¶ 18, 20, 21. AUSA Mack Jenkins himself was leading that investigation on behalf of the United States Attorney's Office. Having directed the investigation into Chagoury and Baaklini for making illegal campaign contributions to Congressman Fortenberry, AUSA Jenkins agreed not to prosecute them in exchange for their cooperation and confessions. *See* U.S. Attorney's Office, C.D. Cal., Press Release No. 21-057 of Mar. 31, 2021, Updated Apr. 1, 2021, "Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws" ("Gov. Press Release") *available at* https://www.justice.gov/usao-cdca/pr/lebanese-nigerian-billionaire-and-two-associates-resolve-federal-probe-alleged (linking to deferred-prosecution agreements of Chagoury & Baaklini) (last visited Nov. 7, 2021). AUSA Jenkins's team also recruited "Individual H" as an informant, and as a result of an undisclosed deal, the government didn't prosecute "Individual H," either.

With apparent approval from AUSA Jenkins, the FBI directed "Individual H" to place a secretly recorded call to Congressman Fortenberry on June 8, 2018. Using an informant to investigate a sitting member of Congress required AUSA Jenkins to seek approval high-up in the chain of command of the Department of Justice. *See* Justice Manual, Section 9-85.110; 9-7.302. Recording a call without Congressman Fortenberry's consent required the written approval of the Deputy Assistant Attorney General. *Id.* In other words, AUSA Jenkins was responsible for explaining to the Deputy Assistant Attorney General why it was appropriate to surreptitiously record Congressman Fortenberry, even though there was no evidence that he had done anything wrong.

HON. JEFFREY LANE FORTENBERRY'S MOTION TO DISQUALIFY AUSA MACK JENKINS

The result of this 2018 call was a recording that the government could try, and now is trying, to use as evidence that Congressman Fortenberry knew that the contributions he received in 2016 were from illegal foreign sources.  Even though the government must concede that Congressman Fortenberry didn't know about the illegal foreign source of donations to his campaign in 2016, it now argues, based on this call, that he knew in 2018.

Armed with Individual H's secretly recorded call, FBI Special Agent Carter paid a surprise visit to Congressman Fortenberry's Lincoln, Nebraska, home on March 23, 2019, and obtained another secret recording of Congressman Fortenberry.  AUSA Jenkins had to get written approval from the highest levels of the Department of Justice to record this conversation, as well.  *See* Justice Manual, Section 9-85.110; 9-7.302.

Three months after the Nebraska interview by Special Agent Carter, on July 18, 2019, AUSA Jenkins traveled to Washington, D.C., to interview Congressman Fortenberry himself, and AUSA Jenkins led the questioning on behalf of the government during the interview.  The statements charged as the basis for Count Three of the indictment were responses to questions AUSA Jenkins asked Congressman Fortenberry.  *See* Indictment ¶ 21.  Likewise, the Washington, D.C., statements charged as the basis for Count One were responses to questions AUSA Jenkins asked.  *See id.* ¶ 19(b)(i–iv).

## III.   ARGUMENT

Under California Rule of Professional Conduct 3.7(a) ("Rule 3.7(a)") and the case law below, because AUSA Jenkins is an essential percipient witness in this case, he must be disqualified from representing the government as an advocate here.  AUSA Jenkins personally elicited the Washington, D.C., statements by Congressman Fortenberry that gave rise to Counts One and Three, and he oversaw the investigation to which he contends those statements were material.  Even if AUSA Jenkins did not take the stand, he would commit impermissible vouching through his examination of other witnesses concerning the facts to which he himself was a percipient witness.  Meanwhile, at this early stage of the litigation, the government's burden in replacing AUSA Jenkins as an advocate remains relatively low.  For all these reasons, the Court should disqualify AUSA Jenkins from acting as counsel for

3

the United States in this matter at trial or any evidentiary hearing.

### A.   A prosecutor cannot act as both advocate and witness in the same trial or evidentiary hearing if doing so would prejudice the defendant.

Rule 3.7(a) generally prohibits any California lawyer from "act[ing] as an advocate in a trial in which the lawyer is likely to be a witness unless:"[1] their testimony relates to (1) an "uncontested issue" or (2) "the nature and value of legal services rendered"; or (3) the lawyer has informed written consent from the client, if applicable; or, if the lawyer represents the government, the lawyer has informed written consent "from the head [or designee of the head] of the office . . . by which the lawyer is employed." But the informed-consent exception is unavailable if the advocate-witness poses a "risk of prejudice" to the adverse party or the integrity of the judicial process. *See Doe v. Yim*, 269 Cal. Rptr. 3d 613, 622–23 (Cal. Ct. App. 2020).

*Prosecutor* advocate-witnesses pose special due process and vouching problems beyond Rule 3.7(a), even if they do not literally testify from the witness stand. *See, e.g.*, *Edwards*, 154 F.3d at 921 (validating the "concern that jurors will be unduly influenced by the prestige and prominence of the prosecutor's office," leading them to determine credibility by "improper factors" (quotation marks and citation omitted)); *United States v. Prantil*, 764 F.2d 548, 553–54 (9th Cir. 1985) ("enforcement of the[se] rule[s] is a matter of institutional concern implicating the basic foundations of our system of justice"); *People v. Donaldson*, 113 Cal. Rptr. 2d 548, 556–58 (Cal. Ct. App. 2001). When prosecutors act as advocates despite personal knowledge of important disputed facts—

---

[1]   Although Rule 3.7(a) explicitly mentions advocates "in a trial" only, it also applies at "a pretrial evidentiary hearing." *Doe v. Yim*, 269 Cal. Rptr. 3d 613, 620 (Cal. Ct. App. 2020); *see also People ex rel. Younger v. Super. Ct.*, 150 Cal. Rptr. 156, 163 (Cal. Ct. App. 1978) (deeming it "improper" for a prosecutor to have testified at a pretrial hearing concerning photographic identification procedures "and then resumed his role as counsel for the People at that very hearing and argued the fairness of the identification procedures about which he testified").

1
2
3
4

> improper vouching may occur in at least two ways. The prosecutor may either place the prestige of the government behind the witness or indicate that information not presented to the jury supports the witness's testimony. When the credibility of witnesses is crucial, improper vouching is particularly likely to jeopardize the fundamental fairness of the trial.

5

*Edwards*, 154 F.3d at 921 (quotation marks, alteration, and citations omitted).

6
7

### B.    Here, no exception to the advocate-witness rule applies, and testimony by AUSA Jenkins is genuinely needed.

8
9
10
11
12

The issues on which AUSA Jenkins has relevant testimony are far from "uncontested," as required by Rule 3.7(a)(1).  In particular, materiality is a contested element on which AUSA Jenkins has important personal knowledge.  AUSA Jenkins also has personal knowledge of the circumstances of Congressman Fortenberry's Washington, D.C., statements, which are another subject of reasonably likely dispute at trial.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Congressman Fortenberry must be able to use AUSA Jenkins's testimony to attack the indictment's claims that Fortenberry's statements "affect[ed]" the government's investigation. Dkt. No. 1 at ¶¶ 18 (Count One), 20 (Count Two), 21 (Count Three).  Indeed, "a factual inquiry" by the jury is "nearly always . . . necessary to determine what makes a difference to the decision-making body" for purposes of § 1001 materiality.  *United States v. Gaudin*, 28 F.3d 943, 948 (9th Cir. 1994), *aff'd*, 515 U.S. 506 (1995).  Questioning the leader of the decision-making process is a logical part of that inquiry.  Here, AUSA Jenkins personally oversaw the decision-making body and investigation that Congressman Fortenberry's statements allegedly affected.  Congressman Fortenberry must therefore have the option to call AUSA Jenkins to testify regarding materiality, and he plans to do so.  Electing to function as an advocate, after all, is not a tool available to a prosecutor to avoid being called to the witness stand by the defense.  *See Edwards*, 154 F.3d at 923 ("It is irrelevant whether a prosecutor is a crucial witness in a matter that favors the defense or in a matter that favors the prosecution, and it is irrelevant which side raises the question as to which his testimony is important.");  *Prantil*, 764 F.2d at 554 ("[A] material witness will [not] be able to exempt himself from the rigors of the fact-finding process by electing to

proceed as an advocate.").

Moreover, while disqualification can be appropriate even where a prosecutor is not an essential witness, *see Prantil*, 764 F.2d at 551–52 ("the defendant's obligation to resort to alternative means of adducing factual testimony is not absolute"), AUSA Jenkins is an essential witness.  No other witness can substitute for his insights into materiality because he negotiated and personally signed on behalf of the United States apparently *all* the deferred-prosecution agreements that resulted from this investigation.  *See* Gov. Press Release *available at* https://www.justice.gov/usao-cdca/pr/lebanese-nigerian-billionaire-and-two-associates-resolve-federal-probe-alleged (linking to deferred-prosecution agreements of Chagoury, Baaklini, Joseph Arsan, and Ray LaHood).

Beyond materiality, there is also the fact that AUSA Jenkins personally elicited Congressman Fortenberry's statements underlying Counts One and Three, and observed the demeanor and nonverbal cues of other interrogators and Fortenberry himself during the Washington, D.C., interview.  AUSA Jenkins saw and heard not only what is on the audio recording of the interview, but also its important off-the-record context.

For these reasons, the "uncontested issue" exception of Rule 3.7(a)(1) does not apply.  Obviously, the Rule 3.7(a)(2) exception does not apply, either, because the nature and value of legal services rendered are not an issue.

And finally, Rule 3.7(a)(3)'s informed-consent exception is unavailable due to the "risk of prejudice" to the integrity of the judicial process or Congressman Fortenberry as the adverse party.  *See Yim*, 269 Cal. Rptr. 3d at 622–23 (risk of prejudice to adversary forecloses informed-consent exception).  Again, as the Ninth Circuit explained in *Prantil*:

> [w]hen . . . the proposed testimony is germane to [the] adversary's case, the balance of hardships is no longer in equilibrium. Instead of merely mitigating the hardship to his client's cause, the attorney may wish to deprive an adversary of the benefits of his testimony by electing to appear as an advocate and not as a witness. Under the veil of "ethics," opposing counsel is deprived of a material witness while the witness, although unsworn, is permitted to be an advocate. This cannot be.

764 F.2d at 554.  Because Congressman Fortenberry has a genuine need for AUSA

Jenkins's testimony, the Court should reject any attempt to invoke Rule 3.7(a)(3) to argue that AUSA Jenkins can prosecute this case because his supervisor approves it.

### C. The replacement burden on the government is minimal because the judicial proceedings have only just begun.

Assuming, for the sake of argument, that the government's replacement burden could ever be a valid reason to relax the advocate-witness rule—and it should never be where, as here, the prosecutor's testimony is central to the defense—that burden is minimal at this stage of the litigation. Congressman Fortenberry is making this motion to disqualify AUSA Jenkins only twenty-one days after the Indictment was filed. If such minimal government inconvenience could prevent disqualification, it would virtually never be possible. Moreover, long before the government presented the case to the grand jury, defense counsel notified AUSA Jenkins of the defense's position that he would be subject to disqualification if he attempted to prosecute the case himself.

### D. Even if AUSA Jenkins did not literally take the witness stand to testify, his advocacy would result in impermissible prosecutorial vouching.

Even where neither side attempts to call a percipient-witness prosecutor to the stand, his or her "continued representation of the government [can] constitute[] a form of improper vouching that affect[s] the fundamental fairness of [a] trial." *Edwards*, 154 F.3d at 917. This is because, when prosecutors represent the government as advocates, they have a "special obligation" to avoid suggesting they have personal knowledge of important disputed facts. *Id.* at 921. Thus, the prosecutor may not "impart to the jury" his beliefs about the credibility of a witness. *See id.* Impermissible vouching can also occur where the prosecutor "'place[s] the prestige of the government behind [a] witness,'" *id.* (quoting *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980)), or otherwise suggests, even through nonverbal conduct, that information outside the admitted evidence supports particular testimony. *Edwards*, 154 F.3d at 921 (quoting *Roberts*, 618 F.2d at 533). Prosecutors may not "tak[e] advantage of the natural tendency of jury members to believe in the honesty of lawyers in general, and government attorneys in particular, and to preclude

the blurring of the 'fundamental distinctions' between advocates and witnesses." *Edwards*, 154 F.3d at 922 (quoting *Prantil*, 764 F.2d at 554).

In *Edwards*, 154 F.3d at 920, a prosecutor discovered a critical piece of physical evidence—a bail receipt linking the defendant to a bag in which drugs were found—during a recess from trial proceedings. A law-enforcement officer witnessed the discovery, and the prosecutor called him to testify to the event to introduce the receipt into evidence and eliminate the possibility of the evidence having been planted there. *Id.* The Ninth Circuit ruled that merely "by putting witnesses on the stand and having them testify regarding the circumstances under which he found the evidence, the prosecutor implicitly and improperly vouched for the accuracy of their testimony." *Id.* at 922.

Here, AUSA Jenkins cannot examine witnesses or deliver an opening statement, closing argument, or rebuttal without violating the same rules. Simply by eliciting or referring to testimony discussing the investigation that he personally oversaw, or the statements Congressman Fortenberry gave him, AUSA Jenkins would be implying a personal belief in the truth of the government's position, since he was personally involved in developing the evidence at issue. *Edwards*, 154 F.3d at 921, forbids placing the "prestige of the government" behind these personal observations and impressions.

Finally, perhaps most importantly, while *Edwards* forbids prosecutors from imparting personal beliefs about the credibility of witnesses in general, *id.*, here, the prejudicial effect on the defense is even more severe because the prosecutor's participation strongly implies beliefs about the credibility of the *defendant himself*. The government has already offered a preview of the flavor of its presentation, which serves to underscore the defense's concerns regarding vouching. *See, e.g.*, Gov.'s Opp'n to Mot. to Dismiss for Lack of Venue, Dkt. No. 18, at p. 1 (CM/ECF p. 7 of 28) ("When confronted, defendant, realizing the peril of his situation but failing to realize the strength of the government's evidence, elected to eschew his oath and instead began his ill-fated campaign of concealment and lies.").

HON. JEFFREY LANE FORTENBERRY'S MOTION TO DISQUALIFY AUSA MACK JENKINS

As *Edwards* explained, "all the prosecutor had to do in order to convey to the jury his belief—indeed his representation, based on personal knowledge—that" the bail receipt was legitimate evidence "was simply to continue to play the role of objective prosecutor. His continued participation in the trial was, in effect, an implicit guarantee to the jury" that the government's account of the events was "credible, honest" and "to be believed." *Id.* at 922.  Here, merely by presenting evidence or argument related to the Washington, D.C., statements, AUSA Jenkins would be vouching personally for Count Three's central allegation: that Congressman Fortenberry lied to AUSA Jenkins personally.  It would be near-impossible for jurors to separate AUSA Jenkins' advocacy on behalf of the government from the impression of AUSA Jenkins affirming to them, from his own personal belief and observations, that Congressman Fortenberry lied to him.  *See Edwards*, 154 F.3d at 921 (where "credibility of witnesses is crucial, improper vouching is particularly likely to jeopardize the fundamental fairness of the trial.").

## IV.    CONCLUSION

There is no way for advocacy by AUSA Jenkins to comport with the advocate-witness rule, prohibition against vouching, and *Edwards*.  Disqualification is required.

Date:  November 9, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: _____
      Ryan V. Fraser
      John L. Littrell
      *Attorneys for Hon. Jeffrey Lane Fortenberry*

HON. JEFFREY LANE FORTENBERRY'S MOTION TO DISQUALIFY AUSA MACK JENKINS