John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile:  (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-491-SB |
| *Plaintiff,* | Hon. Stanley Blumenfeld, Jr. |
| v. | **HON. JEFFREY LANE FORTENBERRY'S REPLY TO OPPOSITION TO MOTION TO DISMISS FOR LACK OF VENUE** |
| JEFFREY FORTENBERRY, | |
| *Defendant.* | Hearing Date: December 14, 2021 |
| | Hearing Time: 8:30 a.m. |
| | Indictment: Oct. 19, 2021 |
| | Pretrial Conference:  Feb. 8, 2022 |
| | Trial:  Feb. 15, 2022 |
| | Last Day:  Mar. 2, 2022 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.      INTRODUCTION ................................................................. 1

II.     ARGUMENT ........................................................................ 2

    A.      The Obligation to Allege Facts Establishing Venue in the
        Indictment .................................................................... 2

    B.      The Venue Doctrine ...................................................... 2

        1.      Materiality Is Not Conduct ................................... 4

        2.      Materiality Is Not a Special Venue Provision ...................... 7

        3.      The Judicially Created "Felt In" Test .................................. 9

    C.      The Continuing-Offense Doctrine Does Not Apply Here ........................... 11

III.    CONCLUSION ........................................................................ 12

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*United States v. Anderson*,
  328 U.S. 699 (1946).............................................................................2

*United States v. Angotti*,
  105 F.3d 539 (9th Cir. 1997)...............................................................12

*United States v. Bowens*,
  224 F.3d 302 (4th Cir. 2000)..................................................................7

*United States v. Cabrales*,
  524 U.S. 1 (1998).....................................................................................3

*United States v. Candella*,
  487 F.2d 1223 (2d Cir. 1973)...............................................................10

*United States v. Coplan*,
  703 F.3d 46 (2d Cir. 2012)........................................................9, 10, 11

*United States v. Gaudin*,
  115 S.Ct. 2310 (1995)..............................................................................8

*United States v. Ghanem*,
  993 F.3d 1113 (9th Cir. 2021) ..........................................................2, 11

*United States v. John,*
  *4*77 F. App'x 570 (11th Cir. 2012......................................................3

*United States v. Johnson*,
  323 U.S. 273 (1944).................................................................................7

*United States v. Oceanpro Indus. Ltd.*,
  674 F.3d 323 (4th Cir. 2012)..................................................................9

*United States v. Pace*,
  314 F.3d 344 (9th Cir. 2002).................................................................12

*United States v. Ringer*,
  300 F.3d 788 (7th Cir. 2002)............................................................9, 10

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999)......................................................................3, 4, 5, 6

*United States v. Salinas*,
  373 F.3d 161 (1st Cir. 2004).................................................................10

*United States v. Smith*,
  *6*41 F.3d 1200 (10th Cir. 2011 ...........................................................3

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

**Statutes**

18 U.S.C. § 1001 ................................................................................................passim
18 U.S.C. § 3237(a) .......................................................................................... 10
18 U.S.C. § 3232 ............................................................................................... 12
U.S. Const. amend. VI ........................................................................................ 3
U.S. Const. art. III, § 2, cl. 3 .............................................................................. 3

**Rules**

Fed. R. Crim. P. 18 ......................................................................................... 3, 12
Fed. R. Crim. P. 12(b)(3)(i) ................................................................................ 1

**Other Authorities**

Government Accountability Act of 1996
     H. Rep. 104-680, 104th Cong.,  2nd Sess. 1996,
     (1996 U.S.C.C.A.N. 3935, 3942-43)……………………………………...…………8

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

1  | **I.      INTRODUCTION**

2      This is not a motion for summary judgment.  It is a motion to dismiss based on a

3  defect in the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(i).  As the

4  government acknowledges in its opposition, it was required to allege facts sufficient to

5  establish venue in the Central District of California ("CDCA") <u>in the Indictment</u>.  *See* Dkt.

6  No. 18 at 3.  The Indictment alleged no criminal conduct by Congressman Fortenberry in

7  the CDCA, because there was none.  Instead, it alleged only that Congressman

8  Fortenberry's statements in Nebraska and Washington, D.C. "affect[ed] the Federal

9  Investigation in the Central District of California."  Dkt. No. 1 at ¶¶ 18, 10, 21.

10     This was a risky move.  Having alleged no criminal conduct in the CDCA, the

11  government elected to rely exclusively on the so-called "effects test" or "felt in" test, a

12  judicially created doctrine that has <u>never been adopted by the United States Supreme Court</u>,

13  and which has <u>never been applied to find venue in a § 1001 case in the CDCA</u>.

14     The government's tortured effort to explain the "felt in" or "effects test" only make

15  its flaws more manifest.  As it turns out, each circuit has its own slightly different

16  interpretation of the "effects" or "felt in" test.  The government's proposed amalgam of that

17  doctrine is even more opaque than the ones proposed by the various circuits.

18     There is an entrenched circuit split on the precise issue presented here:  whether

19  venue for a § 1001 case can be based solely on where the "effect" of an alleged false

20  statement is "felt."  This is a purely legal question, and an important one.  Rather than

21  engage seriously with the legal issue presented by this motion, the government used its

22  opposition to write a polemic about Congressman Fortenberry's alleged "ill-fated campaign

23  of concealment and lies."  Dkt. No. 1 at 1. This caustic approach serves neither the

24  government nor the Court; it only obfuscates the issue.  The answer to the question posed

25  in this motion does not turn on whether the Court favors one side's rhetoric over the other's.

26  It turns on a careful consideration of the origin and meaning of the venue doctrine, as

27  expressed in the Constitution, and interpreted by the Supreme Court.

28

## II.    ARGUMENT

### A.    The Obligation to Allege Facts Establishing Venue <u>in the Indictment</u>

The government cites *United States v. Ghanem*, 993 F.3d 1113, 1120 (9th Cir. 2021), for the proposition that a "pretrial motion to dismiss based on venue must be denied if the indictment, taken as true, alleges sufficient facts on its face to sustain venue."  Dkt. No. 18 at 3.  That's true.  But the inverse is also true:  if the indictment *fails* to state facts sufficient to sustain venue, the motion should be granted.  *See Ghanem*, 993 F.3d at 1120.

The point is this: at the motion-to-dismiss stage, <u>it is the facts alleged in the pleading that matter</u>, not what the government claims it can prove at trial.  In this case, the only allegation in the Indictment to support venue in the CDCA is that Congressman Fortenberry's statements "affect[ed] the Federal Investigation in the CDCA."  *See* Dkt. No. 1 at ¶¶ 18, 10, 21.  The Court must presume, for now, that this allegation is true.  *See Ghanem*, 993 F.3d at 1120.  The Court should not presume anything else.

Accordingly, long swathes of the government's melodramatic opposition that purport to describe "pertinent facts concerning [the government's] investigation" and "proffer[] some of the facts that it expects to prove at trial," *see* Dkt. No. 18 at 3–8, are irrelevant to the sole question presented here: whether the government has alleged facts in the Indictment that are sufficient to establish venue in this district.

### B.    The Venue Doctrine

Whether the allegations in this Indictment are sufficient to establish venue depends entirely on whether this Court adopts a variation of the so-called "effects" or "felt in" test.

The government acknowledges there is an entrenched circuit split on the issue of whether venue can be proper in a § 1001 case based solely on where the "effect" of a statement is "felt."  Dkt. No. 18 at 9–20.  The government also concedes that there is no Ninth Circuit precedent on the issue, nor any precedent from the CDCA.  *See id.*

Thus, this is an issue of first impression in this district, and an important one.

Congressman Fortenberry's position is straightforward: venue in a false-statements case is governed by the "*locus delicti*" test.  *See United States v. Anderson*, 328 U.S. 699,

703 (1946).  Because a false statement or omission is the "essential conduct element" of 18 U.S.C. § 1001, venue is proper for a false-statements prosecution in the place where an alleged false statement or omission occurred.  *See* Dkt. No. 14.  This is consistent with the Constitution, the Federal Rules of Criminal Procedure, and United States Supreme Court precedent.  U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18; *United States v. Cabrales*, 524 U.S. 1 (1998); *United States v. Rodriguez-Moreno* 526 U.S. 275 (1999).  It is also the approach taken by the Tenth and the Eleventh Circuits.  *See* Dkt. No. 14 at 7–8, 13 (discussing *United States v. Smith*, 641 F.3d 1200 (10th Cir. 2011), and *United States v. John*, 477 F. App'x 570 (11th Cir. 2012) (unpub.)).

By contrast, the government urges this Court to adopt an <u>alternative</u> to the *locus delicti* test, even though the Supreme Court explicitly declined to do so in *Rodriguez-Moreno*.[1]  It is not entirely clear, however, what authority the government wants this Court to follow.  The government's legal framework is referred to by various names, including the "effects" test and the "felt in" test.  The government's position relies on language from the First, Second, Fourth, and Seventh Circuits, but those decisions are not entirely in concert with one another.  The government's synthesis of the so-called "effects" or "felt in" test is even further removed from the text of the Constitution than the various tests offered by the other circuits who have attempted to articulate it.

At best, the government appears to offer two arguments in favor of the "felt in" test.  Both rely on Congress's use of the words "material" and "materially" in § 1001.  First, it argues that because the words "material" and "materially" appear in § 1001, the "essential conduct element" of the statute is not limited to the statement itself, but extends to the "materiality" of that statement.  *See* Dkt. No. 18 at 11–14.  This appears to be an attempt to fit the "effects" test into the framework of the *locus delicti* test by characterizing the

---

[1]    "The Government argues that venue also may permissibly be based upon the effects of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense. Brief for United States 16–17. Because this case only concerns the *locus delicti*, we express no opinion as to whether the Government's assertion is correct."  *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 n. 2 (1999).

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

1   "materiality" element of the statute <u>as conduct</u>.  But as set forth below, proving the

2   "materiality" element does not require proof of any <u>conduct</u> by the defendant.

3          Second, the government argues, contrary to the plain language of the statute, that the

4   materiality element of § 1001 functions as a <u>special venue provision</u>.  According to the

5   government, when Congress used the terms "material" and "materially" to *limit* the scope

6   of the false-statements statute, it simultaneously intended to *extend* venue for § 1001

7   prosecutions to "the whole area through which the force propelled by an offender operates."

8   Dkt. No. 18 at 14.  This argument—which appears to rely on the operation of the continuing

9   offense doctrine—abandons the *locus delicti* framework entirely.  But Congress cannot be

10  presumed to have used the term "materiality" as a special venue provision, and the plain

11  language and legislative history of the statute show that it didn't.

12                  **1.    Materiality Is Not Conduct**

13         The government engages in intellectual gymnastics to persuade the Court that

14  "materiality" is an "essential conduct element."   It starts with the argument that

15  "[m]ateriality is part of the nature, or essence, of the crime."  Dkt. No. 18 at 12.  That may

16  be true, but it does not convert "materiality" into a conduct element.   Indeed, the

17  government concedes that *mens rea* is not a conduct element.  Dkt. No. 18 at 9.  But surely

18  it is "part of the nature or essence" of the crime, just like materiality.

19         The government next contends that "[m]ateriality, like falsity, ***bears on*** defendant's

20  conduct" because "<u>he</u> is the one who must make a materially false statement."  Dkt. No. 14

21  at 12 (emphasis added).  But that is a *non sequitur*.  The Supreme Court did not instruct

22  lower courts to identify the elements that "bear on" a defendant's conduct when applying

23  the *locus delicti* test.  Rather, it instructed lower courts to <u>identify the conduct itself</u>.  *See*

24  *Rodriguez-Moreno,* 526 U.S. at 279 ("In performing this inquiry, a court must initially

25  <u>identify the conduct constituting the offense</u> (the nature of the crime) and then discern the

26  location of the commission of the criminal acts.") (emphasis added).

27         The answer to this question is simple and intuitive:  the "essential conduct element"

28  of a false-statement offense is making a false statement or omission.  The fact that *the*

*defendant* must make the false statement or omission, *see* Dkt. No. 18 ("he is the one who must make a materially false statement"), is not germane to that question. After all, the defendant also must form the *mens rea* in connection with the statement. But as the government concedes, *mens rea* cannot alone supply venue. *See* Dkt. No. 18 at 9.

The government attempts to drive the point home with a hypothetical, arguing that a defendant who "chooses to lie about what he had for breakfast (not material)" does not violate § 1001, but a defendant who lies "about his knowledge regarding subjects who made illegal foreign and conduit contributions to his campaign (material)" does. *Id*. at 12. This only highlights the flaw in the government's position. Materiality is defined by the government's investigative priorities, not the defendant's conduct. If the government chose to investigate what the defendant ate for breakfast, rather than campaign-finance violations, then the first statement would be material, and the second would be immaterial.

Finally, the government contends that Congressman Fortenberry's interpretation of the *locus delicti* test "looks only to the verbs of the statute and ignores the words 'material' and "materially.'" Dkt. No. 18 at 12. This, the government argues, is "precisely what the Supreme Court instructed courts not to do." *Id*. at 13 (citing *Rodriguez-Moreno*, 526 U.S. at 280). But this argument distorts Congressman Fortenberry's position and ignores the context in which the Supreme Court spoke. Far from condemning the verb test, *Rodriguez-Moreno* held that it "has value as an interpretive tool." 526 U.S. at 280. The Court *did* caution that it should not be "applied rigidly, to the exclusion of the other relevant statutory language," because that would "create[] a danger that certain conduct prohibited by the statute will be missed." *Id*. That was important in *Rodriguez-Moreno* because some of the essential conduct underlying the offense in that case—the commission of a crime of violence—was "embedded in a prepositional phrase." *Id*.

Congressman Fortenberry's position—that the "essential conduct element" of the crime of making a false statement is *making a false statement or omission*—is based on a common-sense interpretation of *all* of the *language* of 18 U.S.C. § 1001. It incorporates both the verbs of the statute, *see* § 1001(a)(1) ("falsifies, conceals, or covers up");

5

1001(a)(2) ("makes") as well as the nouns, *see* § 1001(a)(1) ("fact"), 1001(a)(2) ("statement").   Considering both the nouns and the verbs of the statute, the essential-conduct element of the offense is making a false statement or omission.

The government's position, by contrast, is far more problematic than the one rejected by the Supreme Court in *Rodriguez-Moreno*.   The government proposes to focus exclusively on the adjective ("material") and the adverb ("materially") of the statute while giving short shrift to the remaining language.  The words "material" and "materially" cannot bear the weight the government places on them.  In this case, the word "material" as it appears in Section 1001(a)(1) modifies the noun "fact," and the adverb "materially" modifies the adjective "false."  Neither modifies the <u>conduct</u> prohibited by the statute.[2]

Just as the "verb test" should not be applied mechanistically to obscure the conduct prohibited by the statute, *Rodriguez-Moreno*, 526 U.S. at 280, the government's awkward "adverb test" cannot transform a circumstance element into a conduct element.

---

[2]   The relevant language of the statute reads as follows:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a **material fact**;

(2) makes any **materially false**, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any **materially false**, fictitious, or fraudulent statement or entry;

. . . shall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1001.

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

1

2.      **Materiality Is Not a Special Venue Provision**

2

Alternatively, the government argues that the Court should construe the terms

3

"material" and "materially" as clumsy attempts by Congress to legislate a special venue

4

provision for § 1001.  *See* Dkt. No. 18 at 14 ("Congress may, consistent with the venue

5

clauses of Article III and the Sixth Amendment, define the essential conduct elements of a

6

criminal offense in terms of their effects, thus providing venue where those proscribed

7

effects are felt." (citing *United States v. Bowens*, 224 F.3d 302, 312 (4th Cir. 2000))).

8

It's true, as the government argues, that Congress *could have* provided "that the

9

locality of the crime shall extend over the whole area through which <u>force propelled by an</u>

10

<u>offender operates</u>."  *See* Dkt. No. 18 at 14 (emphasis in original) (quoting *United States v.*

11

*Johnson*, 323 U.S. 273, 275 (1944).[3]   But Congress didn't do so in the text of § 1001, as

12

the government concedes elsewhere in its brief.  *See* Dkt. No. 18 at 9.

13

*Johnson* underscores the importance of reviewing the text of the statute to discern

14

Congressional intent with respect to venue.   In *Johnson*, the government argued that the

15

Federal Denture Act, which banned the sale of dentures by persons unlicensed to practice

16

dentistry, provided for venue in "any State through which the dentures were carried."  *Id*.

17

at 274.  The Supreme Court found no basis in the text of the statute to interpret it that way.

18

The Court reasoned that "when Congress desires to give a choice of trial, it does so by

19

specific venue provisions giving jurisdiction to prosecute in any criminal court of the United

20

States through which a process of wrongdoing moves."  *Id*. at 276.  The text of the Federal

21

Denture Act banned the sale and receipt of dentures.  But unlike some other statutes, it did

22

not ban the "transportation" of banned goods.  Thus, the Court reasoned, venue was proper

23

only in the districts where dentures were sold or received.  *Id*. at 278.

24

---

25

[3]      The government's selective quote from *Johnson* is misleading.  It obscures the fact
that the Supreme Court was referring specifically to the continuing-offense doctrine.  *See*

26

*Johnson*, 323 U.S. at 275 ("<u>By utilizing the doctrine of a continuing offense</u>, Congress may,
to be sure, provide that the locality of a crime shall extend over the whole area through

27

which force propelled by an offender operates.") (emphasis added).  For the reasons stated
herein at II.C., the continuing offense doctrine does not help the government because no

28

part of the offense alleged in the Indictment occurred in the CDCA.

*Johnson* stands for the proposition that Congress should not be <u>presumed</u> to have created a special venue provision. When Congress wants to extend venue beyond the *locus delicti* of the offense, it must do so explicitly. *See* Dkt. No. 14 at 10–11.

There is no support in the plain text or legislative history of § 1001 for the notion that Congress intended the words "material" and "materially" to extend venue for § 1001 offenses beyond the district where the offense conduct took place.

Up until 1996, the word "materially" did not appear in the statute at all. *See United States v. Gaudin*, 115 S.Ct. 2310 (1995). In 1995, the statute read as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a **material fact**, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (version effective until October 11, 1996) (emphasis added). The word "materially" was added to § 1001 when it was amended in 1996. *See* H.R. Rep. 104-680, at 8 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3935, 3942. That amendment broke out the scheme, false-statement, and false-writing clauses of the former statute into separate subparagraphs ((a)(1), (a)(2), and (a)(3)). The new version of the statute retained the word "material" as a modifier to the noun "fact" in subsection (a)(1), and it used the word "materially" in subsections (a)(2) and (a)(3) to modify the adjective "false."

The legislative history provides no hint that Congress intended the terms "material" and "materiality" to expand the venue for the offense beyond the *locus delicti* framework. Rather, the 1996 Judiciary Committee described the statute as an effort to "resolve[] a conflict among circuits as to whether materiality is an element of all three offenses or merely the offense of falsifying as delineated in paragraph (3)." *Id.* (footnote omitted). "Other than establishing materiality as an element of all three offenses," the Committee did "not view the offenses defined in paragraphs (1), (2) and (3) as changing already existing case law as it relates to the elements of the offenses." *Id.*

### 3.    The Judicially Created "Felt In" Test

There is also no support in the text or legislative history of § 1001 for the government's sweeping announcement that "[v]enue is therefore proper where the effect of defendant's false statements is capable of being, or is, felt and rendered material." Dkt. No. 18 at 14. This appears to be an amalgam of the various "effects" or "felt in" tests articulated by the First, Second, Fourth and Seventh Circuits. The government argues that a "majority of circuits are uniform in this conclusion." *Id*. But the circuits are neither "uniform" nor do their conclusions support the government's made-up "felt in" test.

To be sure, the Fourth Circuit held that "Congress defined the effects in § 1001 to include the element of materiality," and "proving materiality necessarily requires evidence of the existence of the federal investigation in Maryland and the potential effects of [the defendant's] statement on that investigation . . . ." *United States v. Oceanpro Indus. Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012). Thus, the Court held, "the District of Maryland had a substantial connection to [the defendant's conduct]." This appears to be an effort to construe materiality as a special venue provision, insofar as it refers to Congress's intention to "define the effects in § 1001" in a way that is relevant to venue. *See infra* at II.B.2. It also appears to refer to the substantial contacts analysis applied by the Seventh and the Second Circuits. *See Oceanpro*, 674 F.3d at 329 (quoting *United States v. Ringer*, 300 F.3d 788, 792 (7th Cir. 2002)); *see also United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012).

The Seventh Circuit held that venue was proper in the Southern District of Indiana for a false statement uttered in Kentucky because "events took place there which were critical to proving the elements of the false statements case against [the defendant]." *Ringer*, 300 F.3d at 792. The Court reasoned that the "strong link to Ringer's conduct makes it relevant to determining venue, not as an explicit geographic element . . . but as a place where events took place that were necessary to establish venue." *Id*. (emphasis added). This appears to be an effort to treat materiality as conduct. *See infra* at II.B.1. It too incorporates a variant of the "substantial contact" test applied in the Second Circuit.

1      The Second Circuit held that venue was proper in New York for statements uttered

2 in an IRS deposition in Tennessee because the defendant's statements "continued into the

3 Southern District of New York, where his deposition transcript was reviewed and discussed

4 by IRS officials in connection with the ongoing [investigation]." *Coplan*, 703 F.3d at 78.

5 The Court reasoned that the defendant's statements "continued to be false and continued to

6 be in the jurisdiction of the United States when they finally reached Manhattan." *Id*. at 80

7 (citing *United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir. 1973)).  The Court also

8 applied a "substantial contacts" test to determine venue, which "[took] into account a

9 number of factors – the site of the defendant's acts, the elements and nature of the crime,

10 the locus of the effect of the criminal conduct, and the suitability of each district for accurate

11 factfinding." *Id*.  Although the Court acknowledged that the "substantial contacts" test was

12 "alternatively applied and ignored" by the Second Circuit, the Court elected to apply it to

13 Coplan's case because Coplan argued that prosecution in the district could result in a

14 hardship to him, prejudice him, and undermine the fairness of his trial. *Id*.  Coplan relied

15 on an awkward combination of the continuing-offense doctrine, *see* 18 U.S.C. § 3237(a),

16 and an expansive view of "conduct" that permits venue in any place where a statement

17 "continues to be false."  The "substantial contacts" analysis, a multi-factor test that is either

18 "applied or ignored" on a case-by-case basis, added yet another layer of arbitrariness.

19      Finally, the First Circuit articulated the "felt in" test as follows:

> [C]ourts consistently treat section 1001 crimes as continuing offenses, but that taxonomy is dictated by the terms of the statute. Section 1001 explicitly criminalizes only those false statements that are material.  When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt.

25 *United States v. Salinas*, 373 F.3d 161,167 (1st Cir. 2004) (citing *Ringer*, 300 F.3d at 790–

26 92, and *Candella*, 487 F.2d at 1227–28).  *Salinas* appears to interpret § 1001 as a

27 "continuing offense" in *every instance*, based on the fact that the statute includes a

28

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE

materiality element.[4]  *Salinas'* analysis is *dicta*, as the government acknowledges.  *See* Dkt. No. 18 at n.8.  But *Salinas* was cited in *Oceanpro* and *Coplan*, and the government urges this Court to apply its analysis here.

These cases cited by the government conflict with § 1001's plain language and often with one another.  They combine and misapply elements of the continuing-offense doctrine, the concept of special venue, and the *locus delicti* test.  Several of them incorporate some variation of the Second Circuit's home-grown "substantial contacts" test, which has no obvious statutory or Constitutional basis.  They make only passing reference to the Constitution and binding Supreme Court precedent.  They are not examples this Court should follow; they are a jumbled mess. *See also* Case Appendix, *infra*.

### C.    The Continuing-Offense Doctrine Does Not Apply Here

Finally, the government argues that it can establish venue based on an additional ground that was not pled in the Indictment—that Congressman Fortenberry's "materially false statements and obstructive acts continued into this district."  Dkt. No. 18 at 18.

The argument fails out of the gate because, as the government acknowledges, it did not allege in the Indictment that the Congressman's acts "continued into" the CDCA.  *See id.* at 18 ("At trial however, the government will prove an additional ground establishing venue in this district . . . .") (emphasis in original).  Rather, the government alleged conduct that occurred exclusively in other judicial districts.  The only allegation related to venue was that Congressman Fortenberry's statement and omissions "affect[ed] the Federal Investigation in the Central District of California."  Dkt. No. 1 at ¶¶ 18, 10, 21.

The government's analysis of the continuing-offense doctrine, based on facts it claims it may seek to present at trial, is irrelevant to this motion to dismiss.  *See Ghanem*, 993 F.3d at 1120 (venue defect was apparent from the face of the indictment because it failed to allege conduct in the Central District of California, and "no other facts are alleged . . . that would support venue under any of the venue statutes" (citing 18 U.S.C. §§ 3232–

---

[4]    Perhaps this is what the Second Circuit meant when it applied the continuing offense doctrine because Coplan's statements "continued to be false."  *Coplan*, 703 F.3d at 80.

39)).  Likewise, the government's reliance on *United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997), and *United States v. Pace*, 314 F.3d 344 (9th Cir. 2002), is misplaced.  Neither of those cases involved a false-statements prosecution under § 1001, and both relied on the continuing-offense doctrine.  *See Angotti*, 105 F.3d at 542; *Pace*, 314 F.3d at 352.

## III.   CONCLUSION

This Court should follow the plain language of the venue provisions of Article III, the Sixth Amendment, and Federal Rule of Criminal Procedure 18, as well as the well-reasoned Supreme Court decisions interpreting those venue provisions.  The answer in this case is clear: venue in a false-statements case is proper only in the district where the false statement or omission allegedly occurred.  Because this Indictment alleges no false statement or omission occurring in this district, it must be dismissed for lack of venue.

Date: November 16, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By:_____
John L. Littrell
Ryan V. Fraser
*Attorneys for Hon. Jeffrey Lane Fortenberry*

HON. JEFFREY LANE FORTENBERRY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF VENUE