TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-3289
    Facsimile:    (213) 894-0141
    E-mail:       mack.jenkins@usdoj.gov
                  jamari.buxton@usdoj.gov
                  susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFREY FORTENBERRY,<br><br>    Defendant. | Case No. 2:21-cr-00491-SB<br><br>GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS FOR FAILURE TO STATE AN OFFENSE<br><br>Hearing Date:  12/14/2021<br>Hearing Time:  8:30 a.m.<br><br>Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, J. Jamari Buxton, and Susan S. Har, hereby files its consolidated opposition to defendant JEFFREY FORTENBERRY's ("defendant")

Motion To Dismiss The Indictment For Failure To Allege Materiality (Dkt. No. 17) and Motion To Dismiss Count One For Failure To State An Offense (Dkt. No. 20).

     This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 23, 2021

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                                              PAGE


TABLE OF AUTHORITIES ................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.    INTRODUCTION .................................................................................. 1

II.    LEGAL STANDARD ............................................................................ 2

III.    ARGUMENT ........................................................................................... 3

    A.    Whether Investigators "Already Knew" the Truth Is Irrelevant to Materiality and to Hold Otherwise Would Incentivize Obstruction ............ 4

    B.    The Indictment Sufficiently Pleads Materiality ............................ 7

    C.    Count One States an Offense Under 18 U.S.C. § 1001(a)(1) ...... 11

IV.    CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

CASE(S)                                                                                                          PAGE

Brogan v. United States,
    522 U.S. 398 (1998) ............................................................................. 5, 8, 9

Kungys v. United States,
    485 U.S. 759 (1988) .................................................................................... 4

United States v. Blinder,
    10 F.3d 1468 (9th Cir. 1993) ............................................................... passim

United States v. Boone,
    951 F.2d 1526 (9th Cir. 1991) ................................................................... 4

United States v. Boren,
    278 F.3d 911 (9th Cir. 2002) ..................................................................... 3

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982) ..................................................................... 3

United States v. Facchini,
    832 F.2d 1159 (9th Cir. 1987) ................................................................... 5

United States v. Gaudin,
    515 U.S. 506 (1995) .................................................................................... 4

United States v. Givens,
    767 F.2d 574 (9th Cir. 1985) .......................................................... 3, 10, 14

United States v. Goldfine,
    538 F.2d 815 (9th Cir. 1976) .................................................................. 6, 7

United States v. Howard,
    430 F. App'x 569 (9th Cir. 2011) ............................................................ 7, 9

United States v. Markee,
    425 F.2d 1043 (9th Cir. 1970) .................................................................... 3

United States v. Moore,
    446 F.3d 671 (7th Cir. 2006) .................................................................... 12

United States v. Peterson,
    538 F.3d 1064 (9th Cir. 2008) ............................................................ 4, 5, 8

United States v. Rodriguez-Rodriguez,
    840 F.2d 697 (9th Cir. 1988) ..................................................................... 4

# TABLE OF AUTHORITIES (CONTINUED)

<u>DESCRIPTION</u> <u>PAGE</u>

<u>United States v. Rogers</u>,
 751 F.2d 1074 (9th Cir. 1985) ................................................................... 3

<u>United States v. Salinas-Ceron</u>,
 731 F.2d 1375 (9th Cir. 1984) ............................................................... 5, 7

<u>United States v. Serv. Deli Inc.</u>,
 151 F.3d 938 (9th Cir. 1998) ................................................................ 1, 4

<u>United States v. Stewart</u>,
 433 F.3d 273 (2d Cir. 2006) ..................................................................... 12

<u>United States v. Vaughn,</u>
 797 F.2d 1485 (9th Cir. 1986) ................................................................... 4

<u>United States v. White Eagle</u>,
 721 F.3d 1108 (9th Cir. 2013) ................................................... 11, 12, 14

**Other**

Fed. R. Crim. P. 7(c)(1) .................................................................................. 3

Fed. R. Crim. P. 12(b)(1) ................................................................................ 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Contrary to defendant's revisionist and misleading re-tellings, the only person who "set up"[1] defendant for this prosecution was defendant himself when he chose to obstruct a federal criminal investigation intentionally, repeatedly and proactively. That investigation sought to uncover what defendant knew about the foreign and conduit contributions his campaign received and any potential action he or others took because of that illegal money. It was in the context of this investigation that defendant, on two occasions and multiple times in each opportunity, affirmatively lied to investigators by denying knowledge of the illegal funds and the roles of the actors—his friends and associates—involved in the underlying scheme. Put simply: during an investigation into illicit money to defendant's campaign, defendant lied that he did not know about any illicit money to his campaign.

In an effort to escape the obvious materiality of defendant's falsities, as well as his clear duty not to affirmatively lie to and mislead federal investigators, defendant now resorts to distorting or ignoring Supreme Court and Ninth Circuit law governing the materiality and duty to disclose standards. These efforts fail.

Defendant argues that his—undisputedly—false statements were not material because the truth was already known to the investigators when he rendered his lies. (Dkt. No. 17 at 5) ("[T]he government cannot claim [defendant's] failure to disclose was material, because the government . . . recorded [the 2018 call].") But a false statement is material if it "is <u>capable</u> of influencing or affecting a federal agency" and "need not have actually influenced the agency." United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir. 1998) (emphasis in original). Unsurprisingly, binding precedent has repeatedly

---

[1] Dkt. No. 17 (describing a purported "set up" in "three steps" but omitting material and undisputed facts at each step, including falsely suggesting that defendant was charged because of a single question to which he replied he "could not recall"); Dkt. No. 20 (incorrectly describing the gravamen of his case as requiring a "duty to accept as fact . . . equivocal phrasing").

rejected the same defense that defendant now raises and has held that false statements can be material, even if the investigators "already knew" the truth. Defendant's other argument—that his statements were not material because the government had already "finished investigating"—also fails. (Dkt. No. 17 at 3.) Defendant's unsupported proclamation directly contravenes the allegations in the Indictment, the truth of which must be accepted at this pretrial motion stage. That Indictment alleges that the investigation into <u>defendant</u> as a subject (among others) was ongoing.

Defendant's motion seeking to dismiss Count One because it purportedly fails to allege a duty to disclose fares no better. Defendant relies on a case in which the charged conduct was <u>silence</u> or <u>inaction</u> (Dkt. No. 20 at 4); that holding is inapposite here where defendant proactively and affirmatively made false and misleading statements to investigators—conduct that supports a section 1001(a)(1) charge.

Because the case law forecloses defendant's arguments, this Court should deny defendant's motion to dismiss the Indictment for failure to allege materiality (Dkt. No. 17) and motion to dismiss Count One for failure to state an offense (Dkt. No. 20).

## II.    LEGAL STANDARD[2]

Defendant gives sparse treatment to the legal standard governing his motions.[3] Federal Rule of Criminal Procedure 12(b) allows a defendant to file a pretrial motion to dismiss an indictment for failure to state an offense if the motion "can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." <u>United States v. Jensen</u>, 93 F.3d 667, 669 (9th Cir. 1996) (citation omitted). This rule makes sense because at this stage of the proceedings, "none of the charges have been established by evidence"; moreover, the "unavailability of Rule 12 in determination of general issues of

---

[2] A detailed Statement of Facts describing the allegations of the Indictment are set forth in the government's Opposition to Defendant's Motion to Dismiss the Indictment for Lack of Venue. (Dkt. No. 18 at 3-9.) For brevity, it is not repeated here.

[3] Dkt. No. 17 (omitting any reference to the legal standard); Dkt. No. 20 at 4 (addressing the legal standard in a single sentence).

guilt or innocence helps ensure that the respective provinces of the judge and jury are respected." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002) (cleaned up). Accordingly, "in ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." Id. Courts must presume the truth of the allegations in the indictment. Jensen, 93 F.3d at 667; United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982) (same).

Indictments must "be a plain, concise, and definite written statement of the essential facts of the offense charged ..." Fed. R. Crim. P. 7(c)(1). An indictment need only "set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." United States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993) (citation omitted). "[I]t need not explain all factual evidence to be proved at trial. Id. (citing United States v. Markee, 425 F.2d 1043, 1047 (9th Cir. 1970). Generally, an indictment that "tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense. The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1985) (citations omitted).

Dismissal of an indictment is a "drastic step" that is disfavored as a remedy. United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985). Defendant's arguments in neither motion comes close to triggering such drastic action here.

### III.   ARGUMENT

Defendant is charged with a scheme to falsify and conceal material facts, in violation of 18 U.S.C. § 1001(a)(1) (Count One), and making materially false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts Two and Three). (Dkt. No. 1 ("Indictment").) The Indictment alleges defendant falsified and concealed facts about the illegal campaign contributions he received—and his knowledge thereof—during an ongoing investigation into illegal funds to defendant's campaign. These allegations

sufficiently plead materiality; it is no legal defense that investigators knew defendant was lying.

Count One is also properly alleged because defendant engaged in affirmative acts of concealment, including by making false and misleading statements, in furtherance of his scheme.

### A. Whether Investigators "Already Knew" the Truth Is Irrelevant to Materiality and to Hold Otherwise Would Incentivize Obstruction

The standard for materiality is well established. As the Supreme Court has explained, the test for materiality in false statement statutes like section 1001 is whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770 (1988); see also United States v. Gaudin, 515 U.S. 506, 509 (1995) (reaffirming definition of materiality in Kungys). Materiality for section 1001 violations is an issue of fact for the jury; "therefore, a district court may not determine the materiality of a statement as a matter of law." Serv. Deli Inc., 151 F.3d at 941.

The Ninth Circuit has repeatedly emphasized that the materiality requirement is satisfied if the statement is "capable of influencing" or affecting a federal agency. See, e.g., United States v. Boone, 951 F.2d 1526, 1545 (9th Cir. 1991); United States v. Rodriguez-Rodriguez, 840 F.2d 697, 700 (9th Cir. 1988); United States v. Vaughn, 797 F.2d 1485, 1490 (9th Cir. 1986). That is, "[t]he false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material." Serv. Deli Inc., 151 F.3d at 941 (citations omitted) (emphasis added). The comment to the Ninth Circuit Model Jury Instruction quotes this exact language from Deli in explaining how a jury should interpret materiality under § 1001. (Comment, Ninth Circuit Model Jury Instruction No. 8.73)

To that end, in evaluating when a statement is "capable of influencing," the proper test looks to "the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." United States v. Peterson, 538 F.3d 1064,

1072 (9th Cir. 2008) (quoting United States v. Facchini, 832 F.2d 1159, 1162 (9th Cir. 1987)); see also United States v. Salinas-Ceron, 731 F.2d 1375, 1377 (9th Cir. 1984), vacated on other grounds by 755 F.2d 726 (9th Cir. 1985) (same). Put differently, the relevant inquiry looks to the statement's "intrinsic capacity to influence, not its probability of causing influence." Peterson, 538 F.3d at 1072.

Defendant, however, turns the materiality standard on its head by positing that his false statements (denying knowledge about illegal campaign contributions) could not be material because the government "already knew" the true information (that defendant, in fact, knew his campaign received illegal contributions). (See Dkt. No. 17.) Defendant essentially argues that his actions could not have been material because they lacked a "probability of causing influence." Peterson, 538 F.3d at 1072; (see Dkt. No. 17 at 3-7.) The Supreme Court and Ninth Circuit have squarely rejected this "already knew" defense.

Defendant cherry-picks dicta from Justice Ginsburg's concurring opinion in Brogan v. United States, 522 U.S. 398 (1998). (Dkt. No. 17 at 1, 7). But in Brogan, the Supreme Court affirmed a false statement conviction where the defendant denied receiving any cash or gift from a management company to federal agents who already had company records showing the contrary. Id. at 399-401. Like defendant here, the defendant in Brogan argued his statement could not be material because: (1) only statements that actually affect or "prevent governmental functions" are criminalized under section 1001, and (2) "simple denials of guilt" where the investigators already knew the defendant is lying do not violate section 1001. Id. at 401-04.

The Court rejected both arguments. The first argument, the Court pointed out, impermissibly "elevate[s]" the materiality standard such that section 1001 would "not apply where a perversion of governmental functions does not exist." Id. at 403. Such a standard was clearly contrary to the text and purpose of section 1001, which reflected "the congressional intent to protect the authorized functions of governmental

5

departments and agencies from the perversion <u>which might result</u> from the deceptive practices described." <u>Id.</u> (citation omitted) (emphasis added).

As to the second argument, the Court held that materiality was found "whenever investigators are told a falsehood relevant to their task." <u>Id.</u> at 402. It explained:

> We cannot imagine how it could be true that falsely denying guilt in a Government investigation does not pervert a governmental function. Certainly the investigation of wrongdoing is a proper governmental function; <u>and since it is the very purpose of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function</u>.

<u>Id.</u> (emphases added). The Court <u>rejected</u> the notion (the same one raised by defendant here) that "a disbelieved falsehood does not pervert an investigation." <u>Id.</u> To hold otherwise would mean that whether a § 1001 crime was committed or not "turn[ed] upon the credulousness of the federal investigator (or the persuasiveness of the liar)"—an untenable proposition that has been rejected in other contexts. <u>Id.</u> at 402 & n.1 (citing example that "[t]he government need not show that because of the perjured testimony, the grand jury threw in the towel" since grand jurors "are free to disbelieve a witness and persevere in an investigation without immunizing a perjurer" (cleaned up)).

The Ninth Circuit has also routinely rejected a defense that a false statement is not material if investigators "already knew" the truth and were therefore unaffected. Indeed, such a formulation would incentivize persuasive liars and immunize terrible ones. By either measure, it would gut the import of the statute that was designed to punish and deter those who would seek to obstruct a federal inquiry, just as the defendant futilely attempted to do here. In <u>United States v. Goldfine</u>, 538 F.2d 815 (9th Cir. 1976), the Ninth Circuit rejected the defense that "since the Compliance Investigators knew the answer [about defendant's out-of-state-purchases, which he denied] and were not misled by the falsity, the statement was not materially false." <u>Id.</u> at 820–21. The court explained that "the conduct Congress intended to prevent by § 1001 was the willful submission to federal agencies of false statements calculated to induce

agency reliance or action, irrespective of whether actual favorable agency action was, for other reasons, impossible" and that under such test, defendant's statement was "clearly material." Id. at 821 (cleaned up); see also Salinas-Ceron, 731 F.2d at 1377 (district court erred in ruling the defendant's statement was not material "because the agents already knew that [the defendant] was carrying more than $5,000 when he made the false statement and therefore could not have been misled by it"; holding that the defendant's answers to the agents' questions, "obviously had the capability to influence the agents in the exercise of their duty to enforce the currency reporting requirement and thus were material despite the agents' knowledge of their falsity"); United States v. Howard, 430 F. App'x 569, 571 (9th Cir. 2011) (affirming § 1001 conviction in which defendant denied to one FBI agent that he knew about an arrest warrant for a fugitive after another FBI agent had already told defendant "to his face" about the outstanding warrant; "[a]s [the defendant's statement pertained to the FBI's investigation of [the fugitive's] flight from North Carolina, a jury could reasonably have found that the statement was material").

### B. The Indictment Sufficiently Pleads Materiality

The Indictment contains a fulsome "statement of facts and circumstances that . . . inform[s] the accused of the specific offense[s] with which he is charged" and sets forth all elements for the charged offenses, including materiality. Blinder, 10 F.3d at 1476.

The Indictment alleges that:

(1) Federal investigators were investigating "illegal political campaign contributions made by Gilbert Chagoury, a foreign national, using other individuals as conduits, to defendant JEFFREY FORTENBERRY's 2016 congressional campaign." (Indictment ¶ 1.)

(2) Federal investigators were seeking to uncover "whether and when any politicians were aware they had received illegal foreign national or conduit contributions and whether any person sought to impermissibly influence the recipient politician in exchange for the contributions." (Id.)

(3) As to defendant specifically, federal investigators were investigating:

      (a) whether defendant FORTENBERRY's congressional campaign received illegal conduit contributions at the 2016 Fundraiser;

      (b) if and when defendant FORTENBERRY knew about any conduit contributions to his campaign at the 2016 Fundraiser;

      (c) whether defendant FORTENBERRY'S congressional campaign had received illegal contributions indirectly from Chagoury, a foreign national, at the 2016 Fundraiser;

      (d) if and when defendant FORTENBERRY knew about any illegal foreign contributions from his congressional campaign received indirectly from Chagoury at the 2016 Fundraiser; and

      (e) if and when defendant FORTENBERRY had any direct or indirect communication with Chagoury or Baaklini about the contributions his campaign was to and did receive at the 2016 Fundraiser.  (Id. ¶ 12.)

(4) Defendant had knowledge about the illegal foreign and conduit contributions to his campaign at the 2016 Fundraiser.  (Id. ¶¶ 14-15.)

(5) Defendant repeatedly denied having any such knowledge, and made misleading statements, about the illegal foreign and conduit contributions to his campaign.  (Id. ¶¶ 19-21.)

(6) Defendant sought to conceal the illegal campaign contributions by intentionally not amending his FEC reports regarding the 2016 Fundraiser.  (Id. ¶ 19(c).)

Defendant's false statements and the information he sought to conceal were unequivocally material.  Defendant told the investigators falsehoods "relating to the subject of the investigation" and that were "relevant to their task."  Brogan, 522 U.S. 402.  It is easy to see how defendant's false statements had the "intrinsic capacity to influence" the investigation; namely, by diverting the federal investigators' focus and attention off of him, off of his campaign, and off of his relationships with the other involved subjects.  Peterson, 538 F.3d at 1072.

As binding precedent establishes and the Ninth Circuit Model Jury Instructions explain, it is of no consequence that the investigators "already knew" that defendant's statements were false and misleading.  (See Opp'n at 4-7.)  This argument has been

firmly rejected time and time again, including where the section 1001 charge was based on the fact that <u>another government agent</u> told the defendant the information that he later denied.[4]  <u>See, e.g.</u>, <u>Howard</u>, 430 F. App'x at 571 (defendant's false statement denying to the FBI that he knew about an arrest warrant, when an FBI agent earlier <u>told him</u> about the warrant, was material).  Defendant's argument would mean that there could be no false statement crime any time federal investigators had dutifully obtained significant evidence related to the crime they were investigating and thus knew when a subject was lying to them: an absurdity pointed out by the Supreme Court in <u>Brogan</u>.  This is a far cry from the "completely innocent conduct" for which Justice Ginsburg was concerned. <u>See Brogan</u>, 522 U.S. at 412 (Ginsburg, J., concurring).  It also ignores the practical investigative value in asking a subject questions to which investigators already know the answer—a routine and effective investigative practice—to gauge the subject's response, test credibility, and corroborate evidence by obtaining information from multiple sources.[5]

Finally, defendant's motion relies on two unsupported and false assumptions: (1) that the government "knew that Congressman Fortenberry was unaware of the illicit contributions, and therefore, [that] no one could have attempted to impermissibly influence him because of them"; and (2) that the government's investigation was effectively over "by September 2016" when it had learned about Chagoury's illicit role in the 2016 fundraiser from Individual H.  (Dkt. No. 17 at 5.)  These assumptions

---

[4] For this same reason, the government will move <u>in limine</u> under Rules 401 and 403 to preclude the defense from making such improper arguments based on an inaccurate statement of the law to the jury during the trial in this case.

[5] Defendant also misses the mark when he claims that his lies—that contributors to his campaign were publicly disclosed—were not material because "FEC records are available to the government just as they are available to the public." (Dkt. No. 17 at 6.) Materiality does not turn on whether the government is able to obtain the sought-after information through other sources; if a subject chooses to lie in a voluntary interview about that same information relevant to the investigation, it is material.  Moreover, this argument is illogical.  The significance of defendant's lies is that he <u>knew</u> the FEC records were inaccurate because defendant never corrected them, despite knowing that the information contained therein was false.  Pointing the government back towards the very records that defendant intentionally let go uncorrected <u>furthered</u> the obstruction and his concealment efforts.  It did not mitigate them.

9

directly contradict the allegations of the Indictment—the truth of which must be presumed. Jensen, 93 F.3d at 667.

What defendant ignores is that the investigation was ongoing because, among other things, federal investigators were investigating him, along with his friends and associates. That fact is repeatedly alleged in the Indictment. Uncovering the knowledge and role of the recipient politicians was generally a part of the investigation (Indictment ¶ 1), and it was a specific focus of the investigation into this defendant (id. ¶ 12). The Indictment alleges that "[a]s part of the Federal Investigation, the FBI, IRS, and USAO sought to determine . . . if and when defendant FORTENBERRY knew about any conduit contributions to his campaign at the 2016 Fundraiser," as well as "if and when defendant FORTENBERRY had any direct or indirect communication with Chagoury or Baaklini about the contributions his campaign was to and did receive at the 2016 Fundraiser." (Indictment ¶ 12 (emphasis added).) The commonsense inference is that the investigators sought such information because they, in fact, did not know what defendant knew about the illegal funds his campaign had received or the communications he had about those funds. See Givens, 767 F.2d at 584 ("The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.") The investigation's concerns that defendant knew about the illicit funds his campaign received, and that a larger bribery or improper influence scheme was possible, were heightened after the 2018 call when defendant expressed no surprise or concern about that fact but instead "continued to ask Individual H to host another fundraiser for defendant FORTENBERRY's campaign." (Indictment ¶¶ 19(b)(iii)-(iv).) Defendant also failed to "file an amended report with the FEC regarding the 2016 Fundraiser" or "disgorge the contributions"—obvious steps an innocent politician would take if he had newly learned about illicit funds infecting his campaign. (Id. ¶ 16.)[6] Far from "reveal[ing] that

---

[6] As set forth in the Indictment, defendant only disgorged the illicit funds after being interviewed by the FBI and USAO in July 2019. (Indictment ¶ 16.)

Congressman Fortenberry was unaware of any illegal foreign or conduit contributions to his 2016 campaign," defendant's responses and reaction to the 2018 call reasonably suggested to investigators the precise opposite. (See Dkt. No. 17 at 1.) As a result, investigators diligently sought to interview defendant and seek out the information that was at the heart of the investigation: what, when, how, and why defendant knew about the illegal contributions to his campaign. And that was when defendant chose to demonstrably lie about these same topics, further elevating investigators heightened concerns about defendant and directly causing them to continue and expand their investigation into him and others. That is the very definition of materiality.

Defendant's motion to dismiss the Indictment for failure to allege materiality should be denied.

### C. Count One States an Offense Under 18 U.S.C. § 1001(a)(1)

Defendant's motion to dismiss Count One for failure to allege a duty to disclose is equally flawed. Count One alleges that, from about June 4, 2018 to July 18, 2019, defendant "knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device material facts" about the illegal campaign contributions defendant received. (Indictment ¶ 18.) To carry out this scheme, defendant made false and misleading statements to federal investigators during two separate interviews and intentionally did not amend his filings with the FEC or disgorge the illicit funds. (Id. ¶¶ 16, 19.) As defendant's lead case United States v. White Eagle, 721 F.3d 1108 (9th Cir. 2013), establishes, such affirmative acts of concealment properly support a section 1001(a)(1) charge.

In White Eagle, the defendant was a Bureau of Indian Affairs employee who had come to learn that another employee was defrauding a government-administered credit program. 721 F.3d at 1111-12. The defendant did nothing to report the fraud to the government and was convicted under 18 U.S.C. § 1001(a)(1) for fraudulent concealment. Id. at 1117-18.

The Ninth Circuit reversed, explaining that the defendant's purported "silent statement"—that is, her failure to report or disclose another's fraud—could not support the section 1001(a)(1) conviction. Id. Notwithstanding the existence of an ethics regulation generally requiring government employees to "disclose waste, fraud, abuse, and corruption to appropriate authorities," the Ninth Circuit found that this regulation did not translate into a specific duty to disclose under which a person's silence or inaction could be prosecuted as a "false statement" under section 1001(a)(1). Id. (quoting 5 C.F.R. § 2635.101(b)(11)).

Notably, the Ninth Circuit distinguished its holding from cases where the defendant engaged in an "affirmative act of concealment," including, for example, by submitting a report that "omits particular information that by law must appear in the report" or by "respond[ing] to specific questions on a particular topic." Id. at 1117 (citations omitted). Such acts involved an affirmative false or misleading statement to the government and therefore could properly support a conviction under section 1001(a)(1). See id.; see also United States v. Stewart, 433 F.3d 273, 318 (2d Cir. 2006) (explaining that after the defendant voluntarily agreed to speak with investigators, the investigators' specific questions "triggered . . . duty to disclose the information").

White Eagle therefore confirms an obvious proposition: a defendant cannot affirmatively make a materially false or misleading statement to the federal government, and then claim as his defense that he lacked a "duty to disclose" the truth of what he lied about. See United States v. Moore, 446 F.3d 671, 677 (7th Cir. 2006) (element for scheme to conceal a material fact prohibited by § 1001(a)(1) is that "the defendant must make a statement, or have a duty to disclose the information" (emphasis added)). Count One alleges that defendant's scheme sought to falsify and conceal (1) that his campaign had received illegal contributions; (2) the means by which his campaign received those illegal contributions, including the subjects involved; and (3) defendant's own knowledge regarding the same. (Indictment ¶ 18.) Defendant participated in two interviews with the federal government and was "advised it was a crime to lie to the

12

federal government." (Id. ¶¶ 19(a)-(b)). Across the two interviews, defendant affirmatively made seven "false and misleading statements" in furtherance of his scheme. (Id.) Each false or misleading statement is specifically alleged. For example, it is alleged that on March 23, 2019, defendant falsely stated that "he was not aware of Baaklini ever making any illegal contributions, directing anyone to conduct illegal contributions, or providing money to anyone else to conduct conduit contributions to a political campaign." (Id. ¶ 19(a)(i).) As another example, on July 18, 2019, defendant misleadingly stated that "he ended the call with Individual H after Individual H made a 'concerning comment' during the call" and that "he would have been 'horrified' if he had learned from Individual H during the 2018 Call that Baaklini had provided Individual H money to contribute to the 2016 Fundraiser." (Id. ¶¶ 19(b)(iii)-(b)(iv).) These statements were false and misleading because defendant, in fact, was told by Individual H that Baaklini had provided Individual H with Chagoury's money with directions to give the funds to defendant's campaign via conduits. (Id. ¶¶ 14-15.) These facts are more than enough to "set forth the elements of the offense charged and . . . inform the accused of the specific offense with which he is charged."[7] Blinder, 10 F.3d at 1476.

Count One also alleges that, as part of this same criminal scheme, defendant intentionally caused his campaign not to file any amended FEC reports. According to the Indictment, "each federal campaign had to report to the Federal Election Commission the name and address of any individual providing a contribution of more than $50. (Indictment ¶ 6 (emphasis added).) That includes defendant, a federal politician who had specific evidence that his campaign had received money from Baaklini and

---

[7] Construed according to common sense, it is necessarily implied in the Indictment that the investigators asked defendant questions during the interviews. Nor must an indictment lay out a detailed, verbatim transcript of the interview. See Blinder, 10 F.3d at 1476 (indictments "need not explain all factual evidence to be proved at trial). Even if there had not been any questioning, defendant affirmatively lied and made misleading statements. Because he did not merely stay silent or take no action, White Eagle is of no help to defendant.

13

Chagoury. See Givens, 767 F.2d at 584 ("The indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied."). The Indictment further alleges that, despite defendant's duty to provide this reporting to the FEC—and in furtherance of his scheme "[t]o conceal the illegal conduit contributions, his knowledge of them, the illegal foreign contributions by Chagoury, and his suspicions of them,"—defendant intentionally chose not to "cause his campaign to file amended FEC reports with accurate information about the 2016 Fundraiser, including the true contributors and the amounts of their contributions." (Indictment ¶ 19(c).) This affirmative act of concealment in the face of a specific duty to disclose additionally and independently supports Count One.

Defendant had a duty not to make materially false or misleading statements to federal investigators. The moment defendant elected to participate in a voluntary interview and "respond to specific questions on a particular topic" posed to him by federal investigators, this "created a duty to disclose information." White Eagle, 721 F.3d at 1117. As defendant was advised, he could have declined to interview with the investigators. He also could have declined to answer any particular question throughout the interviews—a right he exercised with respect to certain questions during both interviews. What defendant could not do, and yet chose repeatedly to do, was lie to and mislead the investigators in attempt to conceal what he actually knew. Defendant is properly charged with all three counts in the Indictment, which "set[s] forth the elements of the offense[s] charged and contain[s] a statement of the facts and circumstances[.]" Blinder, 10 F.3d at 1476.

### IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss the Indictment for failure to allege materiality and motion to dismiss Count One for failure to state an offense.