TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:  (213) 894-0141
    E-mail:    mack.jenkins@usdoj.gov
                jamari.buxton@usdoj.gov
                susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00491-SB |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY AUSA MACK JENKINS** |
| v. | Hearing Date: 12/14/2021<br>Hearing Time: 8:30 a.m. |
| JEFFREY FORTENBERRY, | |
| Defendant. | Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, hereby files its opposition to defendant JEFFREY FORTENBERRY's ("defendant") motion to disqualify AUSA Mack Jenkins (Dkt. No. 21).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 23, 2021          Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/

SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

To conceal the fact that his campaign received illicit foreign and conduit contributions, and what he knew about it, defendant repeatedly lied to and misled federal investigators from three different agencies. Defendant is caught on a <u>recorded</u> phone call discussing the fact that his campaign had received the illegal funds. Defendant is captured in a second <u>recording</u> falsely denying to two federal agents (in the presence of local police) that he knew anything about illegal contributions to his campaign. Then, defendant is captured in a third <u>recording</u> further doubling down on his lies, this time in a room with his prior counsel, two FBI agents, an AUSA who is no longer assigned to the case[1], and AUSA Mack Jenkins.

Notwithstanding the multiple recordings, witnesses, and various forms of evidence confirming the largely undisputed facts of this case, defendant seeks to disqualify AUSA Jenkins by arguing he should have "the option" to call AUSA Jenkins to testify about materiality and unspecified "off-the-record" context during the second interview. (Mot. at 5-6.) These purported reasons are, even in the most favorable light, based on thin speculation and do not demonstrate the requisite "compelling need" to compel AUSA Jenkins' testimony. Moreover, because nothing about the proffered testimony is critical to the defense and because there are multiple other available sources for that same information, defendant's request appears driven by ulterior motives. <u>See</u> <u>United States v. Prantil</u>, 764 F.2d 548, 552 (9th Cir. 1985) (factoring whether defense's efforts to obtain the prosecutor's testimony "were motivated by any improper, unstated, purpose").

Defendant also preordains that "impermissible vouching" would occur at trial if AUSA Jenkins continued in his role as one of the government attorneys in this case. This argument fails because, among other reasons, defendant's innocence or guilt does not turn on agent credibility and AUSA Jenkins is not a crucial witness who personally

---

[1] This AUSA transferred to the United States Attorney's Office in Arizona.

discovered the "smoking gun" evidence in the case. Cf. United States v. Edwards, 154 F.3d 915 (9th Cir. 1998). Accordingly, defendant's gamesmanship via his latest motion should be rejected.

## II. ARGUMENT

### A. A Participating Prosecutor Cannot Be Compelled to Testify Unless the Defendant Shows a Compelling Need

"The federal courts have universally condemned the practice of a government prosecutor's testifying at a trial in which he is participating." United States v. Tamura, 694 F.2d 591, 601 (9th Cir. 1982). Under the advocate-witness rule, attorneys are generally prohibited from taking the witness stand to testify in the same case that they are litigating. United States v. Edwards, 154 F.3d 915, 921 (9th Cir. 1998). In practice, that means a prosecutor who is compelled to testify must withdraw from the conflicting role of advocate. See Prantil, 764 F.2d at 553. Because of the possibility for abuse and gamesmanship, particularly when a defendant seeks to call the prosecutor as a witness, id. at 554, courts "refuse to permit a prosecutor to be called as a witness in a trial in which he is participating unless there is a compelling need." United States v. Dupuy, 760 F.2d 1492, 1498 (9th Cir. 1985) (citation omitted) (emphasis added); United States v. Birdman, 602 F.2d 547, 553 (3d Cir. 1979) (government prosecutor should be permitted to testify at trial of case he is prosecuting "only in extraordinary circumstances or for compelling reasons" (emphasis added) (collecting cases)). A federal prosecutor "should not be called as a witness 'unless all other sources of possible testimony have been exhausted.'" United States v. West, 680 F.2d 652, 654 (9th Cir. 1982) (emphasis added) (quoting United States v. Torres, 503 F.2d 1120, 1126 (2d Cir. 1974)). "District judges have 'substantial latitude' in deciding whether counsel must be disqualified" in a criminal case. United States v. Thanh Viet Cao, 526 F. App'x 798, 800 (9th Cir. 2013) (citations omitted).

Given the strong presumption against compelling the prosecutor to testify (thereby forcing the individual prosecutor to give up the advocate role and prejudicing the

government's prosecution), it is of little surprise that courts regularly refuse requests for a prosecutor to testify absent the requisite showing of a compelling need and no alternative options. For example, in United States v. Dupuy, 760 F.2d 1492 (9th Cir. 1985), the Ninth Circuit affirmed the district court's ruling refusing to permit the defense to call the prosecutor as a witness when the prosecutor's written notes of (unrecorded) debriefings with the key informant, contradicting the informant's testimony, were available for use at trial. Id. at 1497-98. Specifically, the court found "there was no compelling need" when the defense "was allowed to use the prosecutor's notes on cross-examination" of the informant. Id. at 1498. The court further reasoned that there were three other available witnesses (agents) who were present during portions of the debriefing. Id.; see also United States v. Schwartzbaum, 527 F.2d 249, 253 (2d Cir. 1975) (defense "fell far short" of showing "compelling and legitimate need" to call government counsel as a witness when the subject for the requested testimony—a government-prepared memorandum—was directly available for use at trial); United States v. Ziesman, 409 F.3d 941, 950–51 (8th Cir. 2005) (no compelling need for AUSA testimony where the defendant sought to call AUSA about his belief that the defendant's former friends "set him up" in retaliation for his cooperation with federal authorities); United States v. Robles, 5 F.3d 543 (9th Cir. 1993) (no compelling need where purpose of proposed prosecutor testimony went to impeachment).

By contrast, compelling the prosecutor's testimony is permitted only when the proposed testimony is critical to the defense and there are no other alternative sources for that information. For example, in United States v. Prantil, the defendant, Prantil, was a criminal defense attorney charged with harboring and giving aid to a fugitive former client, who had been the defendant in a separate criminal case. 764 F.2d at 549. The prosecutor in Prantil's criminal case was the same prosecutor in the underlying case of the former client. Id. at 551. Prantil's "principal defense" in his own criminal case was that he (acting as a defense attorney) had engaged directly in ongoing negotiations with the prosecutor for the surrender of the fugitive former client. Id. Under those facts, the

3

Ninth Circuit held that Prantil had a "compelling need" to call the prosecutor, who had exclusive and direct knowledge of the facts "vital" to the defense. Id. at 552.  No other comparable witnesses were available: an FBI agent listened to "some, but not all" of the relevant discussions and the only other available witness was Prantil himself. Id.; accord United States v. Edwards, 154 F.3d 915, 922-23 (9th Cir. 1998) (explaining prosecutor was a "crucial witness" because he was the one who discovered for the first time in the middle of trial the "smoking gun" physical evidence that was "devastating to [the defendant's] only theory of defense").

### B. Defendant Cannot Show a Compelling Need for AUSA Jenkins to Testify

Defendant cannot show a compelling need for AUSA Jenkins to testify because none exists.  The defense's attempts to cast AUSA Jenkins as an "essential witness" who must testify about materiality and the "demeanor and nonverbal cues" of the participants in the second recorded interview strain credulity.  (Mot. at 5-6.)  These blanket and speculative topics are: (1) unsupported by any credible evidence; (2) far from critical or vital to the defense; and (3) related to information for which there are numerous equally competent alternative sources.

Defendant argues that he has a compelling need to "have the option to call AUSA Jenkins" about materiality because AUSA Jenkins is the one who "oversaw the decision-making body and investigation." (Mot. at 5.) (emphasis added).  This argument fails for several reasons.  *First*, it relies on defendant's fatally flawed misunderstanding of the "materiality" standard in Section 1001 prosecutions.  As explained in the government's opposition to defendant's motion to dismiss for lack of materiality (see Dkt. No. 27), materiality asks whether a false statement is "capable of influencing" the decisionmaking body. United States v. Peterson, 538 F.3d 1064, 1072 (9th Cir. 2008) (emphasis added). Accordingly, materiality turns on "the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." Id. (quoting United States v. Facchini, 832 F.2d 1159, 1162 (9th Cir. 1987)).  By contrast, in Prantil, the

4

1  obviousness of the defense's unique need for the prosecutor's testimony smacks the
2  reader in the face; only the prosecutor participated in and witnessed the attorney-
3  defendant's good-faith negotiations for the fugitive's surrender—facts that directly
4  contradicted the government's theory that the attorney-defendant acted to criminally
5  harbor or aid the fugitive.  764 F.2d at 551-52.  By contrast, here, given that the
6  decisionmaking body need not actually be influenced by the false statement nor rely on
7  the information for the statement to be material, United States v. Serv. Deli Inc., 151
8  F.3d 938, 941 (9th Cir. 1998), it is hard to see how AUSA Jenkins is a crucial witness or
9  what "vital" testimony he could possibly have to aid the defense.  See Prantil, 764 F.2d
10 at 552; see also Edwards, 154 F.3d at 922-23.  The hollowness of this argument is laid
11 bare because defendant fails to specify any key testimony he expects from AUSA
12 Jenkins about materiality.  Simply because the defense claims its ability to question
13 AUSA Jenkins is a "logical part" of the inquiry does not create the requisite
14 extraordinary or compelling reasons forcing recusal under Ninth Circuit law.  The fact
15 that defendant is making this extreme request not borne from any cognizable vital need
16 but instead to preserve a dubious trial strategy "option" further reinforces this point.

17         *Second*, even if there was some critical information about the investigation that
18 would bear on the materiality of defendant's false statements, there are multiple "other
19 sources of possible testimony."  West, 680 F.2d at 654.  The federal investigation in this
20 case was jointly conducted by three decisionmaking bodies: the Federal Bureau of
21 Investigation and Internal Revenue Service, as well as the U.S. Attorney's Office.  (Dkt.
22 No. 1 ¶¶ 1, 17, 20, 21.)  All three agencies worked together to make the investigative
23 decisions in this case.[2]  To the extent the defense seeks to question the steps taken by the
24 investigative bodies in this case, there are at least two FBI agents and one IRS agent

---

[2] That the U.S. Attorney's Office "negotiated and signed" other deferred prosecution agreements is a red herring and hardly proves AUSA Jenkins had unique or exclusive information about the materiality of defendant's false statements.  (See Mot. at 6.)  Obviously, only the U.S. Attorney's Office, the prosecutorial entity, can sign agreements to defer or decline prosecution.  Moreover, AUSA Jenkins is not the only AUSA reflected on those documents.

5

available to testify about those actions, as well as voluminous documentation provided in discovery of the decisions made and steps taken by these agencies in this investigation.[3] In the face of numerous other available sources of evidence, defendant cannot overcome the strong presumption against compelling a prosecuting attorney to testify. See United States v. Bin Laden, 91 F. Supp. 2d 600, 623 (S.D.N.Y. 2000) ("Where witnesses other than the prosecutor can testify to the same matters or conversations, no compelling need exists.").

*Third*, taking the rare step of forcing a prosecutor to recuse from a case on these facts—where the interviews were recorded and multiple witnesses were present at every stage of the investigation—would lead to absurd results in scores of cases. It would mean that the investigating prosecutor in every false statements or similar case where the U.S. Attorney's Office participated in the investigation could never be the same prosecutor who litigates the case after indictment, lest she be an "essential witness" for the defense as it relates to materiality. That cannot be. Cf. Bin Laden, 91 F. Supp. 2d at 623 ("In many criminal cases, defense counsel seek to make an issue out of the prosecutor's conduct, e.g., by cross-examining witnesses on whether prosecutors sought to influence their testimony or offered inducements for favorable testimony, and disqualification cannot be ordered every time this happens.")[4]

---

[3] Further showing the frivolousness of his motion, defendant ignores the fact that there is another AUSA formerly assigned to this matter who participated in the investigation, including the second interview, and would not require disqualification if defendant truly required a USAO representative to testify. In any event, for the reasons stated throughout, there is no legal or factual basis for any USAO representative to testify at defendant's trial.

[4] The superficial and speculative nature of defendant's purported "need" to call AUSA Jenkins is reason enough to question his true motives behind the disqualification motion. To take defendant's request at face value would mean that he seeks to call AUSA Jenkins to testify in support of his defense on the topic of materiality. Thus, defendant is asking this Court to believe that, based on absolutely no evidence and defying all common sense, he expects AUSA Jenkins will say that defendant's statements falsely denying his knowledge of illegal campaign contributions during a federal criminal investigation about illegal campaign contributions were not material. A far more reasonable prediction of any testimony by AUSA Jenkins—both on direct and on cross-examination by a government attorney—is that it would be, at a minimum, unhelpful to defendant's case.

(footnote cont'd on next page)

The defense's speculation that he needs to call AUSA Jenkins because he purportedly observed "demeanor and nonverbal cues" during a recorded interview with four other witnesses in the room is even more specious. (Mot. at 6.) Again, tellingly, defendant omits any material facts that might support this claim. Accordingly, the government and Court are left to wonder: what "off-the-record context" is there that defendant believes is material to his defense in a false statements case? And, for that matter, is of a nature that the four other witnesses in the room—that is, defendant's prior counsel, two federal agents, and an AUSA (who is no longer on this case)—could not testify about? What unidentified "off-the-record" context was simultaneously so powerful that it was vital to defendant's defense, yet also somehow so dramatically understated that only one person observed it, and that one person happened to be the lead prosecutor on defendant's case? Defendant offers no evidence for any of it. Such a scenario seems supported more by fantasy than fact.

---

The defense's intimation that there were nefarious or underhanded tactics in obtaining internal approvals during the investigation is both disingenuous and false. (See Mot. at 2-3.) As a preliminary matter, the Justice Manual does not confer any rights on defendant. Justice Manual, Section 1-1.200 ("The Justice Manual . . . is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigation prerogatives of DOJ."). Second, defendant incorrectly reads how the Justice Manual applies to his case. Contrary to defendant's claims, the Justice Manual did not require "written approval of the Deputy Assistant General" to record either the 2018 call with Individual H or the interview in Nebraska. (See Mot. at 2-3.) Specifically, section 9-7.301 (titled "Consensual Monitoring – General Use") provides that the internal guidelines regarding approvals for consensual monitoring "do not apply to consensual monitoring of telephone conversations" but only apply to recordings for "certain consensual verbal conversations . . . during a face-to-face conversation." Justice Manual, Section 9-7.301. Consistent with section 9-7.301, section 9-7.302 then specifically enumerates eight exceptions to the written approval requirement. Exception 6 is for "interception of telephone communications" and exception 7 is for "monitoring of communications during an interview conducted by a law enforcement officer in the course of his or her official duties, provided that the law enforcement officer consented to the monitoring." Id., Section 9-7.302.

Thus, neither the recorded phone call with Individual H (a consensually monitored/intercepted telephone conversation) nor the Nebraska interview (conducted by consenting law enforcement officers in the course of their duties) required "written approval from the highest levels of the Department of Justice," as defendant incorrectly claims. (See Mot. at 3.) Moreover, as defendant well knows from the provided discovery, the FBI sought and obtained appropriate approvals for these investigative steps. (See, e.g., Bates JF00002327-2335; JF00002448-2452; JF00002453-2460; JF00002482-2487; JF0011172-11175.)

The rule is not "that every AUSA who interviews a suspect is precluded from representing the government . . . regarding the suspect's statement. Far from it. The correct procedure, and one that the AUSA followed in this case, is to avoid interviewing a suspect except in the presence of a third person so that the third person can testify about the interview." United States v. Watson, 87 F.3d 927, 932 (7th Cir. 1996); United States v. Sayakhom, 186 F.3d 928, 944 (9th Cir.), amended, 197 F.3d 959 (9th Cir. 1999) (same). This rule was followed here. Defendant falls far short of establishing that he has a "compelling need" for AUSA Jenkins' testimony. Accordingly, his motion fails.

### C. Defendant's Preemptive Speculation That Vouching Would Occur Fails

Equivocating further on his "plan" to call AUSA Jenkins, defendant next attempts to argue that impermissible vouching would occur even if AUSA Jenkins did not testify.

The facts of this case are nowhere near the "highly unusual" and unique facts of the central case relied on by defendant, United States v. Edwards, 154 F.3d 915, 923 (9th Cir. 1998). That case involved a drug charge in which, two years after the arrest, the only evidence connecting the defendant to the black bag containing the drugs at issue was the "highly questionable hearsay testimony" of a third-party witness. Id. The trial began and defense counsel argued in opening that there was no evidence that linked the defendant to the bag. Id. A police officer testified that there was nothing inside the bag from which he could identify the owner. Id. But, in the middle of trial, the prosecutor, who had been inspecting the bag in the presence of two police officers, found a bail receipt with the defendant's name on it underneath the bottom insert. Id at 918-19. Through direct examination of a police officer, the prosecutor "re-enact[ed]" the discovery of the receipt before the jury and elicited testimony that he (the prosecutor) had been the one to find the receipt; e.g., "The [Assistant] U.S. Attorney, yourself, sir, pulled the board or whatever is at the bottom up, and first found [it]." Id. at 918-20. Thus, two years after the offense, the prosecutor had personally discovered in the middle of trial the "smoking gun" physical evidence that was "devastating to [the defendant's

8

only theory of defense." Id. at 922-23.  Obviously, "the issue of how and why the receipt suddenly turned up in the middle of trial was a critical issue in the case and the prosecutor was a crucial witness as to that question." Id. at 923.  Moreover, the prosecutor's direct examination revealed to the jury that he was the one who found the crucial piece of evidence, thereby both attributing the authority of the prosecutor's office to the receipt's discovery and implicitly vouching for the accuracy of the officer's testimony. Id. at 922.  It is no surprise that the Ninth Circuit, under those exceedingly-difficult-to-replicate facts, held that "[(1)] when a prosecutor is personally involved in the discovery of a critical piece of evidence, [(2)] when that fact is made evident to the jury, and [(3)] when the reliability of the circumstances surrounding the discovery of the evidence is at issue, the prosecutor's participation in the trial of the defendant constitutes a form of improper vouching." Id. at 923.

      Nothing about this present case, or AUSA Jenkins' role in it, remotely resembles the facts in Edwards.  AUSA Jenkins did not personally discover a critical piece of evidence in this case.  Nor is his fictitious "discovery" of a critical piece of evidence so intertwined with the determinative, contested issue at trial, such that the jury would have to be apprised of AUSA Jenkins' personal role in that discovery.  Rather, defendant claims impermissible vouching is inevitable merely because AUSA Jenkins engaged in a regular practice of a white collar/corruption prosecution—he participated in an interview of a defendant with agents present. (Mot. at 9.)  This case is much more analogous to United States v. Sayakhom, in which the AUSA, along with an investigator, participated in an interview of the defendant.  186 F.3d at 943.  During trial, the AUSA directly examined the investigator and elicited testimony about the warnings that the AUSA had given to the defendant during that same interview, putting the defendant on notice that her actions were unlawful. Id. at 944.  The Ninth Circuit held that the AUSA did not engage in improper vouching in eliciting her own words from the investigator, as she did not "impart to the jury a belief that [the investigator] was credible." Id.  Indeed, the instant case is even stronger than Sayakhom because here there will be no dispute of

what was said at defendant's second interview, as it was entirely recorded.  Moreover, it is difficult to envision how significant the issue of agent credibility will even be with respect to materiality, given the facts of this case under which materiality is manifest.

The jury will know that defendant lied about material facts because there are recordings proving he did.  AUSA Jenkins is not beholden to special knowledge or insight that would imply to the jury he has inside information; he is not the sole witness whose testimony is necessary to establish essential facts otherwise not ascertainable; and he has played no role as a percipient witness that is so intertwined with the key issue at trial such that his role as a prosecutor in and of itself amounts to vouching.  This Court should not sanction defendant's attempt to abuse the disqualification process.

**III.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to disqualify AUSA Jenkins.