John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile:  (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　*Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>　　　*Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S REPLY TO OPPOSITION TO MOTION TO DISQUALIFY AUSA MACK JENKINS**<br><br>Hearing Date: Dec. 14, 2021<br>Hearing Time: 8:30 a.m.<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022, 8:00 a.m.<br>Trial: Feb. 15, 2022, 8:30 a.m.<br>Last Day: Mar. 2, 2022 |

## I. INTRODUCTION

AUSA Mack Jenkins' insistence on advocating this case to the jury puts a lot at stake; most importantly, Congressman Jeff Fortenberry's constitutional rights as the defendant. Insofar as AUSA Jenkins's role as an advocate would deprive Congressman Fortenberry of the opportunity to call him as a witness, this includes, of course, the Congressman's Sixth Amendment rights of confrontation and compulsory process. *See United States v. Prantil*, 764 F.2d 548, 552 (9th Cir. 1985). In addition, preventing prosecutors from violating the advocate-witness rule and the related due process-based prohibition against vouching are matters of "'institutional concern implicating the basic foundations of our system of justice.'" *United States v. Edwards*, 154 F.3d 915, 922 (9th Cir. 1998) (quoting *Prantil*, 764 F.2d at 553). AUSA Jenkins's unavailability to be called as a witness by the defense and his advocacy despite personal knowledge of critical disputed facts would jeopardize these weighty constitutional guarantees. It also raises an unnecessary mistrial danger, because, among other reasons, AUSA Jenkins would effectively be advocating that the jury convict the Congressman for—according to Jenkins's evident personal belief—lying to his face. Even that mere insinuation would powerfully, but impermissibly, lead jurors to consider the possibility that Jenkins's argument is based on personal knowledge beyond the evidentiary record. *See Edwards*, 154 F.3d at 921–22 (noting that the prosecutor's involvement in the development of the evidence "necessarily advised the jury that he personally believed" the inference the government was arguing from that evidence and cautioning that, when credibility is crucial, "improper vouching is particularly likely to jeopardize the fundamental fairness of the trial"). Why invite these dangers of a constitutional violation?

One apparent reason is that AUSA Jenkins spent years overseeing and directing the investigation that led to this indictment. This helps explain the strong feelings animating the government's baseless allegations that Fortenberry's disqualification motion is frivolous gamesmanship. Ironically, AUSA Jenkins's high degree of personal investment

1

in the case and the government's flair for dramatic claims only point more strongly to the elevated danger of vouching in this trial.

The government's opposition significantly understates what is, in fact, a compelling need for the defense to use AUSA Jenkins's testimony. Most obviously, no other witness has Jenkins's personal knowledge—as the lead prosecutor in this case—of how Congressman Fortenberry's statements did or did not "affect[]" that Investigation, so as to make the statements "material" or not under 18 U.S.C. § 1001. Ninth Circuit law is clear that the government cannot preclude Congressman Fortenberry's access to AUSA Jenkins's unique personal knowledge by electing to have Jenkins serve as an advocate. *See Prantil*, 764 F.2d at 554 ("Surely the reasoning behind the advocate-witness rule does not contemplate that a material witness will be able to exempt himself from the rigours of the fact-finding process by electing to proceed as an advocate.").

The government's opposition also indicates failure to appreciate the vouching that would inevitably result from AUSA Jenkins's advocacy. The Court should disqualify AUSA Jenkins now, with plenty of time for the government to replace him, rather than accede to his insistence on a trial that will otherwise be laden with serious constitutional issues.

## II.   ARGUMENT

### A.   The defense has a compelling need for Mack Jenkins's testimony.

The Court should be skeptical of AUSA Jenkins's claims that his testimony is not helpful to the defense and other witnesses are adequate substitutes. *See* Opp. at 5–6, 6 n.4; Dkt. No. 28 at 7–8 of 12 (CM/ECF pagination).  In *Prantil*, the Ninth Circuit saw through similarly thin government objections. There, as here, the prosecutor was a witness to, and participant in, "some aspect of all of the events alleged" to satisfy the elements of the Indictment's charges. 764 F.2d at 551.  There, as here, the prosecutor refused to recuse himself or testify, "defend[ing] his decision . . . on the grounds that his testimony was unnecessary and cumulative to the defendant's case." *Id.*  In *Prantil*, the Ninth Circuit rejected the prosecutor's argument that the defendant could get adequate alternative

testimony from an FBI agent who had listened to "some, but not all, of the relevant discussions." *Id.* at 552. This Court should reject that argument in this case, too, for the reasons set forth below.

As noted in Congressman Fortenberry's disqualification motion; *see* Motion at 5; Dkt. No. 21 at 7 of 11 (CM/ECF pagination); in a prosecution under 18 U.S.C. § 1001, "a factual inquiry" by the jury is "nearly always . . . necessary to determine what makes a difference to the decision-making body" for purposes of the materiality element. *United States v. Gaudin*, 28 F.3d 943, 948 (9th Cir. 1994), *aff'd*, 515 U.S. 506 (1995). As the lead prosecutor who directed the investigation in this case, AUSA Jenkins *is* the "decision-making body."

The government overlooks *Prantil*'s instruction that the "quality and quantity of the alternate sources of evidence are proper subjects for comparison with [the testimony] sought directly from the participating prosecutor." 764 F.2d at 551–52.  While the government is correct that the U.S. Attorney's Office ("USAO") worked with the Federal Bureau of Investigation ("FBI") and Internal Revenue Service ("IRS") on the Federal Investigation at issue in this case, AUSA Jenkins was the leader of the pack, and the decisionmaker. The government contends "at least two FBI agents and one IRS agent" and could introduce "voluminous documents" about the Investigation's activities, *see* Dkt. No. 28 at 5–6.  But none of those agents could testify about how AUSA Jenkins viewed the evidence obtained in the investigation, including Congressman Fortenberry's statements, and how those statements influenced AUSA Jenkins's decisions.  None appear to have had the authority to take major actions unilaterally. Nor could any of them negotiate on behalf of the government or bind the government to the deferred-prosecution agreements that AUSA Jenkins provided to other individuals. *See* Motion to Disqualify at 6; Dkt. No. 21 at 8 of 11 (CM/ECF pagination).

So this case is really nothing like *United States v. Dupuy*, 760 F.2d 1492 (9th Cir. 1985), the government's first and leading "example" of how the government says courts regularly deny motions like this one. *See* Opp. at 3, Dkt. No. 28 at 5 of 12. In *Dupuy*, 760

F.2d at 1497–98, defense counsel sought to call a prosecutor to the stand only to impeach another witness in a trial in which there was already "approximately two weeks" of testimony impeaching that witness. Here, of course, Mack Jenkins is not an impeachment witness at all. *United States v. Robles*, 5 F.3d 543 (9th Cir. 1993), also cited by the government on the same page of its brief, is inapposite for the same reason. The government relies on *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982), too; Opp. at 2, Dkt. No. 28 at 4 of 12; which *Prantil* distinguished in like fashion: "The district court . . . was not faced with a defense request to place the participating prosecutor on the stand for purposes of duplicative impeachment." 764 F.2d at 552. *United States v. Bin Laden*, 91 F. Supp. 2d 600, 622 (S.D.N.Y. 2000), also cited by the government in opposition, is distinguishable, as well, because there, the charges did not make the government's case dependent on the defendants' statements affecting investigations that the prosecutors in question were leading. *United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996), quoted by the government on page 8 of its brief, is not even a case in which the defense sough to call the prosecutor to testify; it is a reversal of a suppression order remanding for the district court to give the government a fair suppression hearing.

In stark contrast to the scenarios presented in the government's cases, here, the defense needs to elicit testimony from AUSA Jenkins on, among other things, (1) his advance knowledge of the answers to the questions that he asked Congressman Fortenberry, (2) Jenkins's preparation before the Washington, D.C., interview to test whether Fortenberry's answers would match the insinuations Fortenberry received thirteen months before in the 2018 call from Individual H, and (3) the timeline of his decisions on how to charge and resolve cases against the Investigation's various other targets. These questions and answers are essential to any meaningful testing of the element of materiality and the Indictment's central allegation that Fortenberry's

statements "affect[ed]" Jenkins' Investigation.[1] The discovery documents provide no comparable quality of evidence to AUSA Jenkins's live testimony on the stand under cross examination.[2]

The government's insinuation that AUSA Jenkins's testimony on these topics would not be helpful to the defense, *see* Opp. at 6 n.4, recalls *Prantil* yet again:

> The irony to which the [advocate-witness] rule was subjected should have been apparent from the very nature of the prosecutor's posture before the court. Invoking the "compelling need" standard, the witness, as an adversary, dutifully informed the court that in his opinion his testimony was of no value to his opponent's case. Despite defense counsel's objections to the contrary, the trial court, without comment, ratified the prosecutor's perspective on the exculpatory value, not the admissibility, of his own testimony.

*Prantil*, 764 F.2d at 554. As *Prantil* instructs, the Court should not defer to AUSA Jenkins's self-serving characterization of the relative importance of his own testimony. And, for the reasons above, the Court should not accept the government's half-hearted allusions to documents, an FBI agent, and an IRS agent as comparable alternate sources. After all:

> Regardless of the prosecutor's view of the utility of his own testimony, the district judge is charged with the responsibility of making determinations as to the materiality of witness testimony. In so doing, the court must honor the

---

[1] This is true regardless of whether the government argues an actual effect or whether it falls back on the "capable of affecting" theory. Even if the government could present a "capable of affecting" theory of materiality to the jury in a trial of this Indictment—which it cannot constitutionally do, *see* Reply to Gov.'s Consolidated Opp. to Motions to Dismiss, Dkt. No. 34, at 2–3 of 4—evidence that AUSA Jenkins was not, in fact, influenced by Congressman Fortenberry's statements is admissible to rebut the claim that the statements were even "capable of influencing" the Federal Investigation.

[2] Meanwhile, the government is actively refusing the defense's requests to turn over internal USAO and FBI communications concerning the materiality of Congressman Fortenberry's statements. *See* Dkt. No. 30 at 9. This, among other circumstances, distinguishes our case materially from *United States v. Schwartzbaum*, 527 F.2d 249 (2d Cir. 1975), cited by the government on page 3 of its Opposition. In *Schwartzbaum*, 527 F.2d at 253, the memorandum at issue *was* available to the defense.

defendant's constitutional rights under the confrontation and compulsory process clauses of the Sixth Amendment.

*Prantil*, 764 F.2d at 552.

### B. The government misunderstands vouching and *Edwards*.

The government's opposition either misunderstands or seriously undervalues the danger of prosecutorial vouching. *See Edwards*, 154 F.3d at 921–22. While in this case, of course, AUSA Jenkins did not personally unearth physical evidence linking the defendant to contraband, the government reads *Edwards* far too narrowly. As *Edwards*'s explanation of its holding teaches, the risk of vouching is elevated wherever the prosecutor has personal knowledge of important disputed facts. And that is the situation here. Vouching in violation of *Edwards* is all but inevitable because of Jenkins's personal control of the Federal Investigation and the fact that he would be advocating to the jury, in effect, that Congressman Fortenberry personally betrayed him by sitting down at the table with him and lying to him.

Thus, while *Edwards*, 154 F.3d at 921, expressly forbids prosecutors from imparting personal beliefs about the credibility of witnesses in general, here, the prejudicial effect on the defense is even more severe because the prosecutor's participation strongly implies beliefs about the credibility of the defendant himself. This also impairs Fortenberry's constitutional right to testify. In addition, where the prosecutor is heavily integrated in developing the facts, as here, *Edwards* instructs that vouching occurs merely by the advocate-witness's "continu[ing] to play the role of objective prosecutor." *Id.* at 922. Under these circumstances, the prosecutor's performance as advocate serves as an "implicit guarantee to the jury" that the government's account of what happened is "credible, honest" and "to be believed." *Id.*

Though the government likens this case's vouching issue to *United States v. Sayakhom*, 186 F.3d 928, 944 (9th Cir.), *amended*, 197 F.3d 959 (9th Cir. 1999), it, too, presents key materially distinguishing features. In *Sayakhom*, the prosecutor's relevant involvement in developing the facts was limited to warning the defendant to stop selling

insurance without proper state approval, which the government offered as evidence of the defendant's knowledge that her conduct was illegal. 186 F.3d at 944. And the reason the prosecutor did not commit vouching was that his questioning of a witness to the warning did not impart any belief in that witness's credibility. *Id.* at 944–45. The prosecutor's giving of the warning was undisputed. *See id.* at 944. Here, in contrast, AUSA Jenkins's advocacy to the jury of the strongly disputed proposition that Congressman Fortenberry lied to him personally will encourage the jury to defer to him because he has personal knowledge of facts beyond the admitted evidence. (The *Sayakhom* trial "court [also] stated that it would permit the defense to call [the prosecutor] in question as a witness to test the accuracy" of the other evidence of the events in question, *id.* at 944, an opportunity which the government vigorously seeks to deny Congressman Fortenberry here.)

Vouching remains yet another reason why AUSA Jenkins must be disqualified.

### C. The government's assertion that the motion to disqualify has an improper purpose is baseless.

Congressman Fortenberry has moved to disqualify AUSA Jenkins to protect Fortenberry's constitutional rights to due process, confrontation, compulsory process, and a fair trial. Fortenberry's filing of this motion at the outset of the case, moreover, reflects not gamesmanship, but due regard for the government's resources, even as the government tries to convict him of an alleged crime that AUSA Jenkins designed. Rather than wait to raise the weighty ethical and constitutional issues presented by AUSA Jenkins's would-be advocacy through a motion *in limine* to be decided the week before trial, when the government would be hard pressed to replace him, Congressman Fortenberry asks the Court to resolve this dispute at the beginning of the case, alongside his attacks on the pleadings. *Cf. Prantil*, 764 F.2d at 552 ("[T]he defendant's request for [the AUSA's] recusal was made well in advance of trial. Even assuming that the government had alleged hardship stemming from the substitution of alternate government counsel, the defendant's timely demand diminished, if not eliminated, any consequent

inconvenience to the government's case."). The government's improper-purpose claim lacks any merit.

## III. CONCLUSION

For these reasons, Congressman Fortenberry respectfully submits that the proper course is to disqualify Mack Jenkins from participating in the trial other than as a witness.

Date: November 30, 2021

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: /s/ Ryan V. Fraser
John L. Littrell
Ryan V. Fraser
*Attorneys for Hon. Jeffrey Lane Fortenberry*