UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| Case No.: | 2:21-cr-00491-SB-1 | Date: | 12/29/2021 |
|---|---|---|---|

| Title: | *United States v. Jeffrey Fortenberry* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER RE: DEFENDANT'S MOTIONS [Dkt. Nos. 14, 17, 19, 20, 21]

    Federal officials in Los Angeles were investigating potential violations of federal election laws by politicians receiving campaign contributions from a foreign national who used others as conduits to make illicit contributions. The investigation focused on whether the politicians were aware they had received illegal contributions and whether anyone had sought to influence these politicians in exchange for the contributions. In the course of the investigation, federal officials interviewed Defendant Jeffrey Fortenberry, who is now charged with knowingly and willfully falsifying, concealing, and covering up material facts by trick, scheme, or device in violation of 18 U.S.C. § 1001(a)(1) (Count One); and making materially false statements in violation of 18 U.S.C. § 1001(a)(2) (Counts Two and Three). These charges relate to false statements Defendant allegedly made in two interviews with federal investigators in March and July 2019.

    Before the Court are five motions filed by Defendant. Defendant requests that the Court (1) dismiss this case for lack of venue, Dkt. No. 14, (2) dismiss this case for failure to allege materiality, Dkt. No. 17, (3) dismiss Count One for failure

to state an offense, Dkt. No. 20, and (4) dismiss Count One as multiplicitous, Dkt. No. 19. Defendant also moves the Court to disqualify Assistant United States Attorney (AUSA) Mack Jenkins. Dkt. No. 21. For the reasons set forth below, the Court **DENIES** Defendant's motions.

## BACKGROUND

On October 19, 2021, the government filed a three-count indictment that sets forth in detail the nature and scope of the federal criminal investigation, the relevant participants, the background on federal election law, and the results of and charges arising out of allegedly false statements made during the investigation. Indictment, Dkt. No. 1.

The Federal Bureau of Investigation (FBI), the Internal Revenue Service in Los Angeles (IRS), and the United States Attorney's Office for the Central District of California (USAO) were investigating illegal contributions to federal political campaigns made by a foreign national, Gilbert Chagoury, "a Nigerian-born, billionaire businessperson of Lebanese descent." *Id*. ¶ 3. Under federal election law, a foreign national is not allowed to contribute to candidates for federal political office, and candidates are precluded from knowingly accepting such contributions. *Id*. ¶ 7. Federal election law also prohibits so-called "conduit contributions" to candidates running for national office—i.e., contributions by one individual made in the name of another. *Id*. And to promote compliance and transparency, federal election law imposes reporting requirements, obligating a federal campaign to disclose the identity of anyone who contributes more than $50 to the Federal Election Commission (FEC). *Id*. ¶ 6. Defendant, a U.S. Representative for Nebraska's first congressional district since 2004, is knowledgeable about these election laws, including the prohibitions against foreign and conduit contributions and his disclosure obligations. *Id*. ¶ 9.

The Government alleges that Chagoury arranged for a $30,000 contribution to Defendant's re-election campaign. *Id*. ¶ 11. Chagoury's U.S.-based consultant, Toufic Baaklini, provided the $30,000 to Individual H at a restaurant in Los Angeles in January 2016. *Id*. Individual H was responsible for identifying individuals who would contribute these funds to Defendant's re-election campaign. *Id*. ¶¶ 5, 11. Individual H then hosted a fundraiser in Los Angeles on February 20, 2016 for Defendant's campaign, which Defendant attended. *Id*. At the fundraiser, Individual H and others he recruited made conduit contributions to Defendant's

campaign in the amount of $30,200, using the funds provided by Chagoury. *Id.* ¶ 11.

The FBI was informed about these conduit transactions by Individual H, who began cooperating with the federal investigation in September 2016. *Id.* ¶ 13. The FBI, IRS, and USAO sought to learn not only whether Defendant's campaign had received conduit contributions but also the extent to which Defendant knew about them. *Id.* ¶ 12. In the spring of 2018, Defendant contacted Individual H twice to inquire about hosting another fundraiser in Los Angeles. Individual H then called Defendant on June 4, 2018, and told him that: Baaklini provided Individual H "$30,000 in cash" for Defendant's 2016 campaign; Individual H gave the cash to other individuals to contribute to Defendant's campaign at the 2016 fundraiser; and the cash "probably did come from Gilbert Chagoury because he was so grateful for your support [for] the cause." *Id.* ¶¶ 14–15 (purporting to quote the conversation). Despite this information, Defendant did not file an amended report with the FEC disclosing the illegal contributions, nor did he return or otherwise disgorge these funds until after he was interviewed about them in July 2019 by federal officials. *Id.* ¶ 16.

Defendant was interviewed twice in 2019 about the illegal campaign contributions.

On March 23, 2019, federal investigators from the Central District of California interviewed him in his home state of Nebraska. During the interview, Defendant was informed that it was a crime to lie to the federal government. Yet Defendant allegedly made several false statements during the interview, including that: (1) he was unaware of Baaklini, Individual H, or a foreign national making any illegal contributions to his campaign, and (2) all individuals who contributed to the 2016 fundraiser were publicly disclosed. *Id.* ¶ 19(a).

On July 18, 2019, Defendant was interviewed for a second time. The second interview occurred after Defendant contacted the investigators in the Central District of California to request another meeting. At Defendant's request, the interview took place at his former counsel's office in Washington, D.C. *Id.* ¶ 19(b). After again being informed that it was a crime to lie to the federal government, Defendant allegedly made several misstatements, including that: (1) he was not told by Individual H during their 2018 phone call that Baaklini had given Individual H $30,000 to contribute to his campaign; (2) he was not aware of any illicit donations made during the 2016 fundraiser; (3) Individual H made a "concerning comment" during the call that caused Defendant to end the

conversation; and (4) he would have been "horrified" had he known Baaklini had provided funds to Individual H for Defendant's campaign. *Id*. ¶ 19(b). Following the July 2019 interview, Defendant disgorged the illegal contributions to his campaign. *Id*. ¶ 16.

Defendant was indicted by a grand jury in this district on October 19, 2021, for the allegedly false statements he made to federal investigators, in violation of 18 U.S.C. § 1001(a)(1) and 18 U.S.C. § 1001(a)(2). He now moves for dismissal and disqualification of the lead AUSA prosecuting this case.

## MOTIONS TO DISMISS

A defendant may move to dismiss an indictment "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3). But a motion to dismiss is not "a device for a summary trial of the evidence" and does not allow a court to "consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (cleaned up). "Because it is a drastic step, dismissing an indictment is a disfavored remedy." *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985). To survive a motion to dismiss, an indictment must only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged" so as to place the accused on notice of the offense charged. Fed. R. Crim. P. 7(c)(1); *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993) (indictment serves notice function). "An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985).

### A.   Lack of Venue

Defendant moves to dismiss this case for lack of venue because his allegedly false statements occurred during interviews that took place in Nebraska and Washington, D.C., making venue in this district improper. Venue Motion at 3.

The issue of proper venue in a criminal case has historical significance growing out of the concern by this country's founders, reflected in the Declaration of Independence, about Great Britain's practice of transporting colonists to England to be tried. *United States v. Cabrales*, 524 U.S. 1, 6 (1998). The founders guarded against this abuse by requiring that a criminal trial occur "in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3;

U.S. Const. amend. VI (granting the right of the accused to a trial "by an impartial jury of the State and district wherein the crime shall have been committed"); *see also* Fed. R. Crim. P. 18 (implementing the constitutional right).  It is the government's burden to establish venue by a preponderance of the evidence, but "direct proof of venue is not necessary 'where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid.'"  *United States v. Childs*, 5 F.3d 1328, 1332 (9th Cir. 1993) (quoting *United States v. Davis*, 666 F.2d 195, 199 (5th Cir. 1982)).

Where, as here, Congress fails to specify the place where the crime is committed, the locus delicti "must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *Cabrales*, 524 U.S. at 6–7 (internal quotation marks omitted) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)).  "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."  *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999); *see also Pace*, 314 F.3d at 349 (same).  Courts look to the "essential conduct elements" of the offense as defined by Congress to determine the nature of the crime.  *Rodriguez-Moreno*, 526 U.S. at 280 & n.4 (distinguishing between conduct elements and "circumstance element[s]" (citing *Cabrales*, 524 U.S. at 7)).

In this case, Defendant is charged with violating 18 U.S.C. § 1001(a). Section 1001(a) provides in relevant part:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> (1)  falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2)  makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> . . . shall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1001(a).

The venue question, as articulated by the U.S. Supreme Court, requires an identification of the criminal acts prohibited by this statute. *Rodriguez-Moreno*, 526 U.S. at 280. The acts proscribed by Section 1001(a) are plain enough—i.e., making a materially false statement or falsifying or concealing a material fact.[1] Yet Defendant argues that whether a false statement is "material" is a circumstance, rather than an essential conduct element, of the offense. Venue Motion at 6–7. This argument, however, misconstrues the distinction between circumstance and essential conduct. The venue task is to identify the illegal conduct as described in the applicable statute. Congress did not criminalize the act of making a false statement or the act of falsifying or concealing a fact. These acts are not crimes under Section 1001(a). To constitute a crime, these acts must be "material"—that is, they must be "capable of influencing or affecting a federal agency." *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998).

In attempting to characterize the materiality requirement as a "circumstance" of the crime, Defendant seeks to redefine the prohibited conduct by excising this requirement in violation of the venue test. The Supreme Court has cautioned against adopting an approach that "unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by the statute will be missed." *Rodriguez-Moreno*, 526 U.S. at 279. The Court also explained the difference between the circumstance and prohibited conduct of an offense. In *Rodriguez-Moreno*, the respondent was tried in New Jersey and convicted of using and carrying a firearm during a kidnapping in violation of 18 U.S.C. § 924(c)(1), which makes it a crime to use or carry a firearm "during and in relation to any crime of violence." *Id*. The respondent kidnapped the victim in New Jersey and obtained a gun and held it to the victim's head in Maryland. In rejecting the respondent's claim that venue was proper only in Maryland where he used a gun, the Court explained that it "interpret[ed] § 924(c)(1) to contain two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a gun and the commission of a kidnapping." *Id*. At this point in its analysis, the Court

---

[1] Neither the jurisdictional language nor the mens rea requirement is relevant in determining venue—the former has been deemed "a predicate circumstance," while the latter is considered a "circumstance element." *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012).

inserted a footnote to distinguish a conduct element from a circumstance of a crime:

> By way of comparison, last Term in *United States v. Cabrales*, we considered whether venue for money laundering . . . was proper in Missouri, where the laundered proceeds were unlawfully generated, or rather, only in Florida, where the prohibited laundering transactions occurred. As we interpreted the laundering statutes at issue, they did not proscribe "the anterior criminal conduct that yielded the funds allegedly laundered." *Cabrales*, 524 U.S. at 7. The existence of criminally generated proceeds was a circumstance element of the offense but the proscribed conduct—defendant's money laundering activity—occurred "'after the fact' of an offense begun and completed by others." [*Id*.]  Here, by contrast, given the "during and in relation to" language, the underlying crime of violence is a critical part of the § 924(c)(1) offense.

*Rodriguez-Moreno*, 526 U.S. at 280 n.4 (cleaned up).

The distinction drawn is clear:  the crime, for purposes of venue, is defined by the conduct Congress sought to proscribe, and not by "the anterior criminal conduct" that formed the "circumstance" giving rise to the prohibited conduct.  In *Cabrales*, the defendant engaged in the proscribed conduct of money laundering (which occurred in Florida), not drug trafficking (which occurred in Missouri).  The fact that the drug trafficking was the source of the illicit funds was incidental to—and not part of—the criminal acts that the defendant committed and for which she was charged.  *Cabrales*, 524 U.S. at 2 ("The money launderer must know she is dealing with funds derived from specified unlawful activity, here, drug trafficking, but the Missouri venue of that activity is . . . of no moment.").  In *Rodriguez-Moreno*, by contrast, the defendant used a gun during a kidnapping and was charged with a crime that prohibited these two criminal acts.  *Rodriguez-Moreno*, 526 U.S. at 281 ("Congress proscribed both the use of the firearm and the commission of acts that constitute a violent crime.").  Thus, an essential conduct element is a prohibited act committed by the defendant as defined in the statute.[2]  *See United States v. Bowens*, 224 F.3d 302, 310 (4th Cir. 2000) (explaining the

---

[2] At the hearing on Defendant's motions on December 13, 2021, Defense counsel acknowledged this distinction, noting that "classic circumstance" elements are "not within the control of the defendant."  Hearing Transcript at 14:14–15.

distinction between *Rodriguez-Moreno* and *Cabrales* and noting that "committing a crime of violence is conduct the defendant himself engages in as part of the gun offense"); *see also* United States v. Strain, 396 F.3d 689, 694 & n.5 (5th Cir. 2005) (holding that "[t]he issuance of the warrant and [the defendant's] knowledge of it, however, are 'circumstance elements' of the offense of harboring, insofar as they do not involve any proscribed conduct by the accused").[3]

As discussed, Section 1001(a) prohibits materially false statements. As such, the statute requires consideration of both the statement and its potential effect. Indeed, an exclusive focus on the location where the false statement was made without regard to where it was directed gives short shrift to the prohibited conduct as contemplated by the statute:

> [A] frequent aim of false statements made to federal investigators is to cast suspicion away from the declarant, "which in the ordinary course would have an intrinsic capability . . . to influence [a federal] investigation." When statements are aimed at misdirecting agents and their investigation, even if they miss spectacularly or stand absolutely no chance of succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001.

United States v. Lupton, 620 F.3d 790, 806–07 (7th Cir. 2010) (quoting United States v. Turner, 551 F.3d 657, 664 (7th Cir. 2008)); *see also* United States v. Salinas, 373 F.3d 161, 166–67 (1st Cir. 2004) ("When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt.").

---

[3] *Bowens* and *Strain* involved a conviction for harboring a fugitive in violation of 18 U.S.C. § 1071. The courts in those cases concluded that the conduct proscribed by the statute is the act of harboring a known fugitive, and that the place where the warrant issued for the fugitive's arrest was a circumstance of the crime because it did not involve any act by the defendant. The issuance of the warrant for the fleeing fugitive was instead the anterior conduct that gave rise to the criminalized act of harboring. As Bowens recognized, "[t]he essential conduct element of § 1071, 'harboring or concealing a person,' is not defined in terms of its particular effects." 224 F.3d at 313 (quoting the statute). "When Congress defines the essential conduct elements of a crime in terms of their particular effects, venue will be proper where those proscribed effects are felt." *Id*.

In other words, the act of making a materially false statement occurs not only where the statement is made, but also where it is directed. *See United States v. Coplan*, 703 F.3d 46, 79 (2d Cir. 2012) (proving that the false statements were material "necessarily require[d] evidence that those statements were conveyed to or had an effect on" the federal investigators in the district where the prosecution occurred). Because Defendant's allegedly false statements were directed at federal investigative efforts occurring in this district, the Court finds that venue is proper in the Central District of California.

Though the Ninth Circuit has not addressed the issue of venue in the context of Section 1001(a), this Court's holding is consistent with the conclusion reached by a majority of courts that have considered the question. *See Coplan*, 703 F.3d at 79; *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012); *United States v. Ringer*, 300 F.3d 788, 792 (7th Cir. 2002); *see also United States v. Brennan*, 452 F. Supp. 3d 225, 235 (E.D. Pa. 2020); *cf. Salinas*, 373 F.3d at 166–67 (discussing with approval cases finding venue proper under Section 1001(a) in the district "in which the effects of the false statement are felt"). The only published decision to reach a contrary conclusion asserts that "the *locus delicti* is where the defendant makes the false statement." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011). But the Tenth Circuit does not explain how the act of making a false statement—without consideration of its materiality—can be considered the prohibited act. The Eleventh Circuit followed *Smith* in a short unpublished decision. *United States v. John*, 477 F. App'x 570, 571 (11th Cir. 2012). Like the Tenth Circuit, the Eleventh Circuit failed to reconcile its holding with the venue test, which seeks to identify the nature of the crime by examining the prohibited acts defined by Congress so as to determine where those acts occurred. Absent materiality, a false statement is not conduct proscribed by law. Properly understood, materiality is not a mere circumstance of the offense—it is the essence of the criminal conduct.

Finally, the Defendant offers a prudential concern about construing the prohibited conduct to include the material effect of a false statement. Defendant argues that this construction would "permit prosecutors to manufacture venue for false statements in any district they choose, regardless of whether the defendant had any contact with that district or intended his statements to be conveyed there." Venue Motion at 11 (emphasis omitted). As a factual matter, this concern is not present in this case. The investigation into Defendant's activities by federal officials in this district arose out of a fundraiser that he conducted in Los Angeles. Defendant was interviewed twice—in Nebraska and Washington, D.C., respectively—about those activities in Los Angeles. And Defendant directed his

activities to the Central District of California when he contacted federal investigators in this district to request a second interview. As a legal matter, the concern about the potential for governmental abuse of process does not provide grounds for altering or misapplying the venue test. A defendant that is inexplicably hauled into an inconvenient forum may seek transfer to a more convenient one. Fed. R. Crim. P. 21(b) ("Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."); *see also United States v. Gonzalez*, 683 F.3d 1221, 1227 (9th Cir. 2012) ("Where an otherwise proper venue would be inconvenient or burdensome, a defendant may always move to transfer to another venue.").

Thus, Defendant's motion to dismiss for improper venue is denied.

B.   **Failure to Allege Materiality**

Defendant next moves to dismiss the indictment for failure to allege materiality because his allegedly false statements did not actually affect the Government's investigation. Materiality Motion.[4] But, as previously noted, "the materiality requirement of a § 1001 violation is satisfied if the statement is capable of influencing or affecting a federal agency . . . , and the agency need not rely on the information in fact for it to be material." *Serv. Deli Inc.*, 151 F.3d at 941 (emphasis omitted); *see also Kungys v. United States*, 485 U.S. 759, 770 (1988) ("The most common formulation of [materiality] is that a concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." (cleaned up)).

Confronted in the opposition to his motion with the correct test for materiality, Defendant pivots and argues for the first time in reply that the Government failed to allege in the indictment that the statements were "capable of influencing" the investigation. Dkt. No. 34, at 1. A party is not permitted to raise new arguments in reply. *United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2020 WL 2614958, at *5 (N.D. Cal. May 22, 2020) (arguments raised for the

---

[4] The parties have consolidated Defendant's Materiality Motion and his Motion to Dismiss for Failure to State an Offense in the Government's opposition, Dkt. No. 27, and Defendant's reply, Dkt. No. 34. The Court addresses both motions separately, however, as Defendant's grounds for dismissal do not overlap.

first time in reply are waived).  In any event, this new argument is without merit.  To avoid dismissal, the government generally need only provide allegations that track the elements of a charged offense.  *Givens*, 767 F.2d at 584.  "An indictment's failure, however, to allege materiality will not necessarily render the indictment insufficient.  Indeed, '[i]t is well settled, at least in this circuit, that an indictment need not allege the materiality of a false representation if the facts advanced by the pleader warrant the *inference of materiality*."  *United States v. Oren*, 893 F.2d 1057, 1063 (9th Cir. 1990); *see also United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (same).  The relevant inquiry, therefore, is whether the indictment in this case contains sufficient facts that raise an inference that the allegedly false statements either influenced or were capable of influencing the federal investigation.

The indictment satisfies this standard.  The Government alleges that it was investigating Chagoury's illegal campaign contributions, including "whether and when any politicians were aware they had received illegal foreign national or conduit contributions and whether any person sought to impermissibly influence the recipient politician in exchange for the contributions."  Indictment ¶ 1.  The Government further alleges that it was specifically investigating whether Defendant's campaign received illegal conduit contributions from Chagoury and if and when Defendant knew about these illicit contributions.  In the context of the objectives of the investigation as stated in the indictment, Defendant's allegedly false statements were capable of influencing the investigation, including its scope and direction, even if they did not actually do so.

Accordingly, Defendant's motion to dismiss for failure to sufficiently allege materiality is denied.

C.  **Failure to State an Offense**

Defendant moves to dismiss Count One for failure to state an offense.  Offense Motion.  Count One alleges that Defendant engaged in a scheme to falsify and conceal the illegal contributions to his campaign by making five materially false statements to federal investigators and failing to amend his FEC reports with accurate information about the illegal campaign contributions.  Indictment ¶ 18.  Citing *United States v. White Eagle*, 721 F.3d 1108, 1116 (9th Cir. 2013), Defendant attacks the indictment for failing to allege, as required to prove concealment, that he had an individual duty to disclose the purportedly concealed information.  Offense Motion at 3.  *White Eagle* does not support dismissal here.

With respect to Defendant's duty to disclose the five material facts when he spoke with federal investigators, "a conviction for concealment is proper . . . when a defendant responds to specific questions on a particular topic." *White Eagle*, 721 F.3d at 1117 (citing *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006), which held that a federal investigations "specific questions" created a duty to disclose the relevant information). "An indictment must be read in its entirety and construed in accord with common sense and practicality." *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995); *see also United States v. Awad*, 551 F.3d 930, 936 (9th Cir. 2009) (indictment pled sufficient facts "so that any reader would infer that the defendant acted with a bad purpose" despite the absence of "the word 'willfully'"). The indictment in this case alleges that Defendant made materially false statements in the course of an interview conducted by federal investigators. "Common sense would tell any reader" that the Government is alleging that Defendant had a duty to disclose the information sought by those investigators in their questioning. *Alber*, 56 F.3d at 1112.

Nor does *White Eagle* suggest that the allegation about Defendant's failure to amend his FEC reports is deficient. Silence in the face of "a specific reporting duty" may support a concealment claim. *White Eagle*, 721 F.3d at 1117 (noting that "a financial institution['s] fail[ure] to report particular transactions as required by law" constitutes concealment because it "is effectively a statement that no such transactions took place"); *see also United States v. Hopkins*, 916 F.2d 207, 215 (5th Cir. 1990) (upholding a conviction under Section 1001 for a defendant who did not directly make reports to the FEC but "caused another individual, the Treasurer of their political action committee," to report false information to the FEC). Here, the indictment alleges that Defendant was aware of the illegal contributions to his campaign, that he was familiar with the prohibitions against foreign and conduit contributions, and that his campaign had a duty to disclose the identity of individuals contributing more than $50. These alleged facts—coupled with the allegation that Defendant learned that Individual H distributed $30,000 in cash to multiple individuals who fictitiously identified themselves as the source of the contributions to his campaign—are sufficient to infer that Defendant had a duty to disclose the material facts to the FEC. The indictment alleges that he knowingly violated this duty in an effort "[t]o conceal the illegal conduit contributions" by failing to "cause his campaign to file amended FEC reports with accurate information about the 2016 Fundraiser." Indictment ¶ 19. This is sufficient to place Defendant on notice of the charge.

Thus, Defendant's motion to dismiss Count One for failure to state an offense is denied.

### D. **Multiplicity**

Defendant also moves to dismiss Count One as multiplicitous. Defendant argues that Counts Two and Three are lesser included offenses of Count One, and all three counts rely on the same factual allegations. Mult. Motion at 4–7.

"An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." United States v. Stewart, 420 F.3d 1007, 1012 (9th Cir. 2005). "The test for multiplicity . . . is whether each separately violated statutory provision 'requires proof of an additional fact which the other does not.'" United States v. McKittrick, 142 F.3d 1170, 1176 (9th Cir. 1998) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). Though a court may dismiss a multiplicitous charge before trial or potentially order the government to choose between the counts, United States v. Aguilar, 756 F.2d 1418, 1422 (9th Cir. 1985), multiplicity is ultimately a double jeopardy concern focused on avoiding "cumulative punishments for convictions on the same offense," Ohio v. Johnson, 467 U.S. 493, 500 (1984).

Count One alleges that Defendant "falsifie[d], conceal[ed], or cover[ed] up by any trick, scheme, or device a material fact," whereas Counts Two and Three allege that Defendant "ma[de] a[] materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(1)–(2). Each Section 1001(a) offense requires proof of a different fact:

> By its very terms, § 1001(a)(1) requires that an individual falsify, conceal or cover up by any trick, scheme, or device a material fact. Section 1001(a)(2) and 1001(a)(3) incorporate no such element. Correspondingly, § 1001(a)(2) requires that the accused make a "materially false, fictitious, or fraudulent statement of representation" and § 1001(a)(3) requires that the accused make or use "any false writing or document knowing the same to contain materially false, fictitious, or fraudulent statement or entry," whereas § 1001(a)(1) contains no such requirement.

United States v. Dose, No. CR04-4082 MWB, 2005 WL 1806414, at *11 (N.D. Iowa July 28, 2005); see also United States v. Huntress, No. 13-CV-199S, 2015 WL 631976, at *14 (W.D.N.Y. Feb. 13, 2015) (same). While making a false statement might be sufficient evidence that an individual "falsifie[d]" a material

fact, it is not necessary to prove a violation of Section 1001(a)(1). Section 1001(a)(1) does not "require[] proof," *Blockburger*, 284 U.S. at 304, of making a false statement, nor does Section 1001(a)(2) require proof that a defendant "falsifie[d], conceal[ed], or cover[ed] up by any trick, scheme, or device a material fact," 18 U.S.C. § 1001(a)(2). The Government's Section 1001(a)(1) count is consistent with this distinction: he is charged with engaging in a scheme to falsify *and conceal* material facts—as Defendant acknowledges in separately moving to dismiss Count One for "fail[ing] to allege a duty to disclose, as required for liability under 18 U.S.C. § 1001(a)(1)." Offense Motion at 1.

Defendant's reliance on *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976), is misplaced because that case addressed a different issue (duplicity, not multiplicity) and a prior version of Section 1001. In *UCO Oil*, the Ninth Circuit noted that the prior version of Section 1001 was "framed in a single paragraph and provid[ed] a single penalty," which did not suggest that Congress intended to create more than one offense. *Id*. at 836. It contrasted Section 1001 with 18 U.S.C. § 545, which broke out different offenses "in separate paragraphs," and the convictions upheld in *Blockburger*, where "[e]ach count was charged under a different section of the statute." *Id*. at 837. In reaching the conclusion that Section 1001 "did not create separate and distinct offenses," the court noted in dicta that if an indictment used the same false report "as the basis for two counts, one charging a false statement and the other a concealment by trick, scheme or device, the indictment would be vulnerable to attack for multiplicity." *Id*. at 838. Congress has since amended Section 1001 to divide each offense into separate subsections, *see* 18 U.S.C. § 1001(a), making it clear from the plain text that these are "separate but related offenses," H.R. Rep. No. 104-680, at 8 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 3935, 3935; *see also Garrett v. United States*, 471 U.S. 773, 779 (1985) ("Insofar as the question is one of legislative intent, the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress.").[5]

---

[5] Defendant cites a post-amendment case from the Second Circuit, *United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006), which held that "[t]he several different types of fraudulent conduct proscribed by section 1001 are not separate offenses, . . . rather they describe different means by which the statute is violated." The Second Circuit, however, did not address the significance of the amendment on the issue of multiplicity. Instead, the court addressed the question of duplicity and distinguished cases not specifically addressing that issue. *See id*. (noting that the court in *United States v. Diogo*, 322 F.2d 898 (2d Cir. 1963), was "not

      Defendant also argues that even if Section 1001(a)(2) is not a lesser included offense of Section 1001(a)(1), Count One is still multiplicitous because it relies on the same factual allegations as Counts Two and Three. The focus of the *Blockburger* test is the statute's elements, not the evidence that will be presented at trial. *See United States v. Kimbrew*, 406 F.3d 1149, 1151–52 (9th Cir. 2005) ("[I]t matters not that there is 'substantial overlap' in the evidence used to prove the two offenses, so long as they involve different statutory elements." (quoting *United States v. Cuevas*, 847 F.2d 1417, 1429 (9th Cir. 1988))). Further, the Government does not allege identical factual allegations for all three counts. Counts Two and Three are based on the statements Defendant made in two different interviews with federal investigators. Indictment ¶¶ 20–21. Count One is based not only on those statements, but also on the Government's allegations that Defendant made various misleading statements and did not amend his campaign's FEC reports in furtherance of a scheme to falsify, conceal, and cover up the illegal contributions. *Id*. ¶ 19.

      Accordingly, because the Congress created three separate offenses in Section 1001(a), and Count One is not based on identical factual allegations, the Court finds that Count One is not multiplicitous and denies Defendant's motion to dismiss.

## MOTION TO DISQUALIFY

      Defendant moves to disqualify AUSA Mack Jenkins on two principal grounds.

      First, Defendant contends that he "must . . . have the option" to call AUSA Jenkins as a witness. Disqualify Motion at 5. "As a general rule federal courts refuse to permit a prosecutor to be called as a witness in a trial in which he is participating unless there is a 'compelling need.'" *United States v. Dupuy*, 760 F.2d 1492, 1498 (9th Cir. 1985); *see also United States v. Prantil*, 764 F.2d 548, 552 (9th Cir. 1985) (applying the "compelling need" test).

      Defendant has not established a "compelling need" to call AUSA Jenkins as a witness. Defendant argues that he wishes to call AUSA Jenkins to testify about

---

addressing the issue of duplicitous pleading" in finding that "false representation and concealment are 'two distinct offenses'").

the effect of Defendant's statements on the federal investigation—a fact that, as discussed, the Government need not prove to establish materiality. See *Serv. Deli Inc.*, 151 F.3d at 941 (ability to influence suffices).  In any event, Defendant could obtain evidence of the effect of the statements on the investigation by calling other witnesses.  The investigation was jointly conducted with the FBI and IRS, whose agents could speak to the issue; and if Defendant required the testimony of a knowledgeable USAO representative, the Government has disclosed that another formerly assigned AUSA participated in the investigation and Washington, D.C. interview.  Dkt. No. 28, at 6 n.3.  Defendant also argues that he wants to call AUSA Jenkins as a witness because AUSA Jenkins "personally elicited" Defendant's allegedly false statements at the Washington, D.C. interview. Disqualify Motion at 6.  But there were many other witnesses present at Defendant's interview who heard the statement, and the statement itself was recorded.  See *United States v. Sayakhom*, 186 F.3d 928, 944 (9th Cir. 1999) ("Sayakhom could have challenged [the investigator's] account through the testimony of one of the other individuals, including Sayakhom herself or her former attorney, who attended the meeting." (footnote omitted)).

      Second, Defendant argues that AUSA Jenkins should be disqualified based on the advocate-witness rule and the attendant concern about prosecutorial vouching.  Citing *United States v. Edwards*, 154 F.3d 915 (9th Cir. 1998), Defendant maintains that AUSA Jenkins necessarily will convey a "personal belief in the truth of the government's position" if he elicits or references testimony about the investigation he oversaw.  Disqualify Motion at 8.

      *Edwards* is distinguishable.  The trial in that case started as an ordinary prosecution of a defendant for possession with the intent to distribute cocaine found in a black bag located in a car registered to a third party.  What made the facts in that case extraordinary was the prosecutor's discovery during trial of "a key piece of physical evidence"—a bail receipt bearing the defendant's name in the black bag, evidence the prosecutor likened to a "smoking gun that ties the defendant to the bag."  *Id*. at 917, 920.  This evidence became the focal point of the trial, and the defense attacked the credibility of the prosecutor's discovery, prompting the prosecutor to "spen[d] most of the rebuttal portion of his closing argument trying to convince the jury that the receipt had not been planted and that the evidence was reliable."  *Id*. at 920–21.  The Ninth Circuit observed that "[t]he prosecutor's implicit testimony was devastating to [the defendant's] only theory of defense, and it was a blow against which he had no way to defend."  *Id*. at 922.  In these circumstances, the Ninth Circuit concluded that the prosecutor's "continued participation in the trial was, in effect, an implicit guarantee to the jury that the

receipt was a trustworthy piece of evidence, that it had not been planted, and that the officers who testified regarding the circumstances of the receipt's discovery were credible." *Id*.

The facts in this case are not remotely similar, and Defendant cites no authority for the proposition that an AUSA who conducts a federal investigation cannot prosecute a resulting criminal case for a violation of Section 1001(a). While the Ninth Circuit has not addressed this specific issue, it has not construed *Edwards* so broadly as to preclude a prosecutor's participation in a trial whenever that prosecutor is a witness to relevant facts. *See United States v. Rangel-Guzman*, 752 F.3d 1222, 1225 (9th Cir. 2014) ("When a prosecutor interviews a suspect prior to trial, the 'correct procedure' is to do so 'in the presence of a third person so that the third person can testify about the interview.'" (quoting *United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996))). While AUSA Jenkins and others prosecuting this case must be careful to avoid vouching during the trial, *see id*. at 1225 (questioning a witness so as to essentially become a witness in the case), the Court cannot say that AUSA Jenkins's participation as a prosecutor in this case runs afoul of the advocate-witness rule.

Accordingly, the Court denies Defendant's motion to disqualify AUSA Jenkins.

## **CONCLUSION**

For the forgoing reasons, the Court **DENIES** Defendant's (1) motion to dismiss this case for lack of venue, (2) motion to dismiss this case for failure to allege materiality, (3) motion to dismiss Count One for failure to state an offense, (4) motion to dismiss Count One as multiplicitous, and (5) motion to disqualify AUSA Jenkins.