TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:   (213) 894-0141
    E-mail:      mack.jenkins@usdoj.gov
               jamari.buxton@usdoj.gov
               susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>       v.<br><br>JEFFREY FORTENBERRY,<br><br>    Defendant. | Case No. 2:21-cr-00491-SB<br><br>[PUBLIC VERSION] GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY; DECLARATION OF FBI SPECIAL AGENT TODD CARTER; EXS. 1-9<br><br>Hearing Date:   1/11/2022<br>Hearing Time:  8:30 a.m.<br><br>Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, hereby files a public version of its opposition to defendant JEFFREY FORTENBERRY's ("defendant")

motion to compel discovery (Dkt. No. 30), which was originally filed on December 14, 2021 (Dkt. No. 46) and placed under seal per the Court's Order on January 5, 2022 (Dkt. No. 65).

Pursuant to the Court's January 5, 2022 Order, paragraph 2, the government has met and conferred with the defense regarding the redactions contained herein. The defense has no objections.

Dated: January 12, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
  1500 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-3289
  Facsimile: (213) 894-0141
  E-mail:  mack.jenkins@usdoj.gov
      jamari.buxton@usdoj.gov
      susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFREY FORTENBERRY,<br><br>    Defendant. | Case No. 2:21-cr-00491-SB<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT' █████<br>█████████████████████████<br>████████████████████ █<br>――――――<br><br>Hearing Date: 1/11/2022<br>Hearing Time: 8:30 a.m.<br><br>Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, hereby files its

opposition to defendant JEFFREY FORTENBERRY's ("defendant") motion to compel discovery (Dkt. No. 30).

This opposition is based upon the attached memorandum of points and authorities, the supporting declaration and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 14, 2021

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    /s/
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTON                                                                    PAGE(S)

TABLE OF AUTHORITIES ................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ................................................................................. 1

II.     RELEVANT FACTS ............................................................................. 2

        A.      Discovery to Date ...................................................................... 2

        B.      The Parties' Discovery Requests and Responses ........................................ 5

        C.      ██████████████████████████████████████████████ .............. 9

III.    LEGAL STANDARD ........................................................................... 11

IV.     ARGUMENT .................................................................................... 13

        A.      ███████████████████████████ .............. 13

        B.      The Defense's Demand for Privileged, Internal Communications
                Fails ............................................................................... 166

                1.      The Government Has Already Produced Discoverable
                        Evidence Pertaining to Materiality ...................................... 16

                2.      The Defense Demands Internal Communications That Are Not
                        Discoverable Under Rule 16(a)(2) ...................................... 18

                3.      The Defense Demands Internal Communications That Are Not
                        *Brady* ............................................................... 19

        C.      The Defense's Demands for Information Regarding the "Department
                of Justice's Requirements" Fails ............................................... 24

V.      CONCLUSION ................................................................................. 25

1

TABLE OF AUTHORITIES

2

CASES                                                                    PAGE(S)

3

Brady v. Maryland,
4    373 U.S. 83 (1963) .................................................................... 12

5

Brogan v. United States,
6    522 U.S. 398 ............................................................................ 16

7

Giglio v. United States,
8    405 U.S. 150 (1972) ............................................................... 6, 12

9

Gollaher v. United States,
    419 F.2d 520 (9th Cir. 1969) .................................................... 18
10

Jencks v. United States,
11   353 U.S. 657 (1957) ................................................................. 12

12

Kungys v. United States,
13   485 U.S. 759 (1988) ................................................................. 16

14

Marshall v. Jerrico, Inc.,
    446 U.S. 238 (1980) ................................................................. 23
15

Morris v. Ylst,
16   447 F.3d 735 (9th Cir. 2006) .................................................... 23

17

Pennsylvania v. Ritchie,
18   480 U.S. 39 (1987) .............................................................. 12, 19

19

United States v. Serv. Deli Inc.,
20   151 F.3d 939 (9th Cir. 1998) ................................................. 16-17

21

United States v. Adamson,
22   291 F.3d 606 (9th Cir. 2002) .................................................... 17

23

United States v. Armstrong,
24   517 U.S. 456 (1996) ................................................................. 22

25

United States v. Bagley,
    473 U.S. 667 (1985) .............................................................. 12, 19
26

27

28

ii

1

TABLE OF AUTHORITIES (CONTINUED)

2

CASES                                                                        PAGE(S)

3

4
United States v. Blinder,
  10 F.3d 1468 (9th Cir. 1993) ........................................................................ 17

5

6
United States v. Edwards,
  42 F.R.D. 605 (S.D.N.Y. 1967) ................................................................... 18

7

8
United States v. Garcia-Paz,
  282 F.3d 1212 (9th Cir. 2002) .................................................................... 17

9
United States v. Ghailani,
  687 F. Supp. 2d 365 (S.D.N.Y. 2010) ........................................................ 18

10

11
United States v. Hernandez-Meza,
  720 F.3d 760 (9th Cir. 2013) ....................................................................... 18

12

13
United States v. Hopkins,
  2008 WL 4453583 (E.D. Cal. Oct. 3, 2008) ............................................... 15

14

15
United States v. Jack,
  263 F.R.D. 640 (E.D. Cal. 2010) ................................................................ 18

16

17
United States v. Kohring,
  637 F.3d 895 (9th Cir. 2011) ....................................................................... 23

18
United States v. Lucas,
  841 F.3d 796 (9th Cir. 2016) .................................................................. *passim*

19

20
United States v. Mayes,
  917 F.2d 457 (10th Cir. 1990) ............................................................... 12, 23

21

22
United States v. Michaels,
  796 F.2d 1112 (9th Cir. 1986) .................................................... 13, 20, 21, 23

23

24
United States v. Peterson,
  538 F.3d 1064 (9th Cir. 2008) ................................................... 16, 17, 21, 22

25
United States v. Mincoff,
  574 F.3d 1186 (9th Cir. 2009) ............................................................... 20, 23

26

27
United States v. Price,
  566 F.3d 900 (9th Cir. 2009) ................................................................. 12, 19

28

iii

TABLE OF AUTHORITIES (CONTINUED)

United States v. Rinn,
  586 F.2d 113 (9th Cir. 1978) ........................................................ 15

United States v. Welton,
  2009 WL 2390848 (C.D. Cal. Aug. 1, 2009) ............................... 15

Weatherford v. Bursey,
  429 U.S. 545 (1977) ...................................................................... 11

**Statutes**

18 U.S.C. § 3500 ................................................................... 11, 13

**Other**

Fed. R. Crim. P. 16 .............................................................. 6, 8, 11-12

Cal Bar Rule 3.1 ...................................................................... 1

Local Civ. Rule 7-3 ............................................................... 10

Local Civ. Rule 37-1 ............................................................. 10

Local Crim. Rule 57-1 .......................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant's motion seeking to compel already-produced, forthcoming, or privileged records again relies on false facts and misconstrued law.  The government has broadly provided discovery, including numerous records demonstrating why defendant's lies—denying what he knew about the illicit foreign and conduit contributions made to his re-election campaign to federal investigators looking into illegal campaign contributions—were material.  To date, the government has produced over 12,000 pages of records documenting the lifespan of the federal investigation going back to 2015—all months before trial.  Defendant's demand for internal, privileged communications by government attorneys and agents in connection with investigating or prosecuting the case—none of which contain discoverable facts under <u>Brady</u>—fails, as such communications are explicitly exempt from discovery.  Defendant's claim that he is immediately entitled to <u>Giglio</u> records also fails because the government has already explained that such records, to the extent not already produced, will be provided at a reasonable date in advance of trial once it has determined which witnesses it will call.  (<u>See</u> Dkt. No. 31, Ex. D ["Nov. 23 Letter"].)   In short, much of defendant's motion is unnecessary or premature and not tethered to any recognized legal basis for relief.

This motion is problematic for another reason.  ██████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████████████████  ██████ Moreover, despite being previously put on notice of the Court's meet-and-confer requirements[2],  Mr. Littrell again violated both this Court's Criminal Standing

---

[1] ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████

[2] Specifically, government counsel put the defense on notice after defense counsel failed to comply with those requirements before filing the motion challenging venue. (<u>See</u> Dkt. No. 14; see also Ex. 9.)

1

Order and the Local Rules for this district by filing the motion without engaging in the requisite meet and confer with government counsel. As a result, the government was deprived of the opportunity to correct these (and other) false allegations prior to the public filing of defendant's motion and was further deprived of the opportunity to seek relief by way of an under-seal filing or protective order—the common procedure when litigating purported <u>Giglio</u>/<u>Henthorn</u> material, particularly when, like here, the veracity of such information is dubious and the risk of unnecessary and significant damage to a public servant is high.

This Court should deny defendant's motion in full.

## II.   RELEVANT FACTS

### A.   Discovery to Date

The Indictment charges the following counts: Count One alleges that defendant engaged in a scheme to falsify and conceal material facts from on or about June 4, 2018 to about July 18, 2019. Counts Two and Three allege that defendant made false statements on or about March 23, 2019, and July 18, 2019, respectively.

Notwithstanding the relatively constrained date range of the charged offenses, the government has taken a very broad approach to discovery and provided records documenting the steps taken in the investigation going back to its inception in 2015.  By way of summary, the investigation began when Los Angeles FBI learned of suspicious wire transfers from Gilbert Chagoury, a Nigerian-born, billionaire businessperson of Lebanese descent (whom defendant has personally met with on multiple occasions) to Individual H, who then routed similar amounts of money close in time to the campaign of a U.S. Representative in California.  (See Dkt. No. 18 at 4.)  In the investigation that followed, the federal government learned that Chagoury provided approximately $180,000 in illegal political contributions to four different United States political candidates—including defendant—with the assistance of Toufic Baaklini (a good friend of defendant), Individual H (an acquaintance of defendant who hosted a fundraiser for him in 2016), and others.  (Id.)  Thus, from the start, the federal investigation was focused on illicit foreign and conduit contributions to recipient politicians; whether any person sought to impermissibly influence the recipient politician in exchange for the contributions; and whether any recipient politician took any official acts in connection with the illicit contributions.   (Indictment ¶ 1; see also Dkt. No. 18 at 3-9 (setting forth detailed Statement of Facts).)

Government's Exhibit 1 is a detailed, 21-page discovery log of all productions made to the defense so far.  That log shows that the government has produced over 12,000 pages of records dating back to 2015, including various reports; emails and text messages; witness statements; draft transcripts; court process; and relevant internal FBI administrative papers, including agency approvals.  The government has also produced over 60 audio/video recordings—all months before trial.

The log itself deliberately acts as a comprehensive chronology of the steps taken during the federal investigation, complete with dates and detailed descriptions of each event and/or evidentiary item.  As Exhibit 1 demonstrates, the government has provided records pertaining to the investigation into defendant, including:

- Evidence of the approximately $30,000 of illegal funds that defendant's campaign (indisputably) received in 2016, including witness statements and interview reports of the conduits, Baaklini, Chagoury, and Individual H;

- Communications between defendant and Baaklini, the main facilitator of the illegal campaign funds and evidence of defendant's friendship with Baaklini;

- Evidence of defendant's relationship with Chagoury and their strongly shared political and pro-Christian interests, including defendant's official acts he conducted at relevant times in furtherance of those interests;

- Defendant's communications with Individual H, including defendant's requests to Individual H to host another fundraiser in 2018;

- Defendant's communications with Individual H discussing the fact that $30,000 in contributions from the 2016 fundraiser had been provided by Baaklini (originating from Chagoury);

- Evidence of defendant's contact of Baaklini where he sought an in-person meeting immediately following his communication with Individual H about Baaklini being the source of the illegal funds;

- Defendant's Federal Election Commission filings, which remained uncorrected after learning he had received illicit funds;

- Defendant's recorded statements and affirmative lies to federal investigators denying knowledge of the illegal campaign funds he received;

- Records showing the subsequent investigative steps taken after defendant's interviews, such as conducting additional interviews of witnesses, including (1) a witness who specifically recalled warning defendant to be aware of illegal conduit contributions at the Los Angeles fundraiser, and (2) Baaklini, who specifically recalled that defendant expressed concern about the legality of the contributions defendant received at the Los Angeles fundraiser immediately after the event; and

- Records showing investigators obtaining and reviewing additional documents and phone data.

(See Ex. 1.)

But the government has not only produced evidence of the investigation into defendant.  In furtherance of the government's decision to provide discovery broadly in this matter, the government has also produced discovery relating to the investigation into the three other campaign contribution schemes involving Chagoury's money.[3]

### B.    The Parties' Discovery Requests and Responses

On November 10, 2021 and November 17, 2021, the defense requested information and discovery falling into five categories.  (See Dkt. No. 31, Exs. B, C.)  On November 23, 2021, the government provided a letter that included enumerated responses to the requests, identified relevant discovery already produced, and asked several clarifying questions.  (Nov. 23 Letter.)  The parties' requests and responses are as follows:

1) **Privileged Internal Communications.**  The defense sought all communications involving AUSAs Jenkins, Ketchel, Har; the U.S. Attorney; the Chief of the Criminal Division; FBI Special Agents Carter and Choe; or "any other person" relating to the allegation that defendant's statements affected the Federal Investigation.  (See Ex. B at 1.)  The defense sought "any and all communications" supporting allegations of materiality and venue in the Central District of California.  (See id. at 1-2.)

   a. **The government's response was three-part:**

      i. **Records Regarding Materiality and Venue Had Already Been Produced:**  Discovery was produced on November 1, 3, 8, and 12, 2021 detailing the chronology of the Federal Investigation from 2015 to present,

---

[3] Because of the sensitivities inherent in the other aspects of the federal investigation—some of which are still ongoing—as well as the highly detailed nature of its discovery log, the government has concurrently filed an application to seal Exhibit 1.

including the events leading up to and following defendant's interviews demonstrating how they were material to and affected the Federal Investigation.  (See Nov. 23 Letter at 1; see also Ex. 1.)

ii. **Privileged Records Were Withheld:**  Internal communications and documents are privileged under the government work product privilege.  (See Nov. 23 Letter at 1 (citing Fed. R. Crim. P. 16(a)(2)).

iii. **Request for Clarification.**  In light of the plain language of the privilege under Rule 16(a)(2), the government requested that the defense provide "specific legal authority" supporting their request for internal communications.  (Id.)

2) **Agreements Under Giglio.**  The defense requested writings or oral communications setting forth agreements with various witnesses "or any other government informant" and cited Giglio v. United States, 405 U.S. 150 (1972).  (See Ex. B at 2.)

a. **The government's response was three-part:**

i. **Records of Most Agreements Had Already Been Produced:**  Early productions of the requested agreements had already been made at JF00011270-00011360 (Agreements with Joseph Arsan, Toufic Baaklini, Gilbert Chagoury, and Ray LaHood).  (See Nov. 23 Letter at 2.)

ii. **Additional Records Were Forthcoming:**  The government advised that any remaining relevant Giglio evidence will be produced reasonably in advance of trial

6

after the government determines which witnesses it will call.  (<u>Id.</u>)

    iii.  **Clarification:**  With regard to the defense request for "oral" agreements, the government advised that there were no agreements between the government and witnesses that were not in writing and expressly agreed to by both parties.  (<u>Id.</u>)

**3)** ██████████████████████████████████████
██████████████████████████████████████
████████████████████████████

    a.  **The government explained that <u>relevant records were forthcoming</u>:**  The government advised that relevant <u>Giglio</u> evidence will be produced reasonably in advance of trial after the government determines which witnesses it will call.  (Nov. 23 Letter at 2.)

**4)** **Records Regarding DOJ "Requirements."**  The defense requested information and communications relating to purported Department of Justice "requirements" for "secretly recording Congressman Fortenberry" and for "using a 'ruse' to interrogate Congressman Fortenberry."  (<u>See</u> Ex. C.)  The defense referenced only section 9-7.302 of the Justice Manual.  (<u>Id.</u> at 1.)  No other sections of the Justice Manual or "requirements" were cited.  (<u>See</u> <u>id.</u>)

    a.  **The government's response was four-part:**

        i.  **<u>Records of Internal Approvals Had Already Been Produced</u>:**  FBI approvals for the investigation had already been provided at the specified Bates-numbered documents.  (Nov. 23 Letter at 2-3.)

ii. **Privileged Records Were Withheld:** Internal communications and documents are privileged under the government work product privilege. (Id. at 3-4 (citing Fed. R. Crim. P. 16(a)(2)).

iii. **Request for Clarification.** The government requested that the defense specify the purported Department of Justice "requirements." The government also referred the defense to its explanation of the inapplicability of Section 9-7.302. (Nov. 23 Letter at 2-3 (citing to Dkt. No. 28 at 7).) The government also reminded the defense that it had made the same baseless allegations regarding the failure to obtain approvals directly in its charging decision appeal to the Office of the Deputy Attorney General ("ODAG") and that ODAG permitted the indictment to proceed and made no reference to any lacking approvals. (Nov. 23 Letter at 3.)

iv. **Clarification.** The government also clarified that it was not clear to what "ruse" they were referring, that defendant was not interviewed pursuant to a ruse, but that approval for the use of a ruse had been obtained and directed the defense to already produced documents at JF0002453-2460 and JF0002482-2487. (Id. at 3-4.) [4]

The government concluded by reminding defense counsel of its four requests for reciprocal discovery. (Id. at 4.) The government asked defense counsel to confirm it would provide reciprocal discovery and an expected date for the production. (Id.)

---

[4] The defense also requested audio and/or video recordings and copies of transcriptions or summaries of witness statements and interviews related to the investigation. (Def.'s Ex. B at 2.) The government advised that it had already provided the requested records and that any additional such records that are made or created would be promptly provided. (Nov. 23 Letter at 2.) Defendant's motion does not seek to compel these records.

8

**C.** ███████████████████████████████████████

After the government provided its Nov. 23 Letter, the defense did not respond to any of the government's requests for clarification as to what Department of Justice requirements the defense was referencing or provide any legal authority for requiring the production of privileged internal communications.  Nor did the defense respond by providing any legal authority as to why it was entitled to any forthcoming Giglio disclosures immediately, as opposed to reasonably in advance of trial, or by proposing its own schedule for such disclosures.  The defense also did not respond to the government's inquiries about reciprocal discovery.

Rather, on the Sunday of Thanksgiving weekend (November 28, 2021 at 12:24 p.m.), Mr. Littrell sent an email to government counsel announcing that he would file a motion to compel discovery along with a motion to suppress defendant's statements "this week" with a hearing date for both motions of Tuesday, "December 21".  (See Ex. 2 at 3.)  Although the email provided a paragraph full of specific details supporting its motion to suppress, the motion to compel simply referenced "the discovery that you declined to produce as set forth in your November 23, 2021 letter."  (Id.)  But the government's letter was not a blanket declination; in fact, it agreed to produce some of the exact discovery that is the subject of this motion.  Mr. Littrell concluded his email by asking, "Please let us know if you think we can resolve either of these disputes without filing these motions."  (Id. at 4.)

The very next morning (Monday, November 29, 2021 at 10:41 a.m.), before the government had a chance to respond to Mr. Littrell's Sunday email that purported to solicit the government's views, without any meet and confer, and a day early according to his proposed briefing schedule,[5] Mr. Littrell filed a 15-page motion to compel discovery.  (See Ex. 3 (ECF Notice).)  ████████████████████████████

---

[5] Consistent with normal scheduling, defendant did not file his motion to suppress until the next day, and after the government again raised the issue of defendant's failure to meet and confer.

9

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████████████████████████████

4    Under this Court's Criminal Standing Order, a moving party must "[m]eet and

5 confer before filing a motion and describe the resolution efforts in the notice of motion."

6 (Dkt. No. 8 ["Court's Standing Order"] at 4.)  The Local Rules for the Central District of

7 California set forth similar meet and confer requirements.  <u>See</u> Local Crim. Rule 57-1;

8 Local Civ. Rule 37-1 (requiring parties to "confer in a good-faith effort" to eliminate or

9 narrow need for motion; requiring "counsel for the moving party to arrange for this

10 conference); <u>see also</u> Local Civ. Rule 7-3 (requiring a meeting, "preferably in person," to

11 "thoroughly" discuss the substance of any motion and any potential resolution "at least"

12 seven days prior to filing the motion).

13    By filing this motion without a meet and confer in violation of the Court's

14 Standing Order and the Local Rules, defense counsel prematurely and unilaterally cut off

15 the parties' ongoing discussion regarding the scope and timing for the production of

16 discoverable records; ████████████████████████████████████

17 ██████████████████████████████████████

18 ████████████████████████████████████████

19 ██████████████████████████████████████████

20 ████████████████████████    Each of these avoidable results is precisely why meet-

21 and-confers exist.  Violation of the meet-and-confer requirement had real and

22 foreseeable consequences.  ███████████████████████████

23 ██████████████████████████████████████████████

24 ██████████████████████████████████████████

25 ████████████████████████████████████████████████

26 █████████████████████   ████████████████████

27 ██████████████████████████████████████████

28 ██████████████████████████████████████████

1

2

As stated above, this is not Mr. Littrell's first violation of the meet and confer requirement. The defense failed to meet and confer prior to filing its motion to dismiss for lack of venue. (See Dkt. No. 14; Ex. 9.) Tellingly, the notice for that motion does not describe any meet and confer efforts as required. (Dkt. No. 14 at 1; see Court's Standing Order at 4 (ordering moving party to "[m]eet and confer before filing a motion and describe the resolution efforts in the notice of motion").) At the time of that filing, government counsel put Mr. Littrell on notice of his violation and advised that, as a professional courtesy, it would not raise the issue with the Court but that the government expected compliance with the Court's order moving forward.[6]

## III.   LEGAL STANDARD

"There is no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one." <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977). There are three sources of the government's discovery obligations in a criminal case.

*First*, Rule 16 of the Federal Rules of Criminal Procedure establishes guidelines for pretrial production by the government of seven categories of material (set forth in subsections(a)(1)(A)-(G)), including documents and objects within the government's possession, custody, or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). The rule contains a carve-out for items that are otherwise discoverable under Rule 16(a)(1)(E). Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Rule 16(a)(2) also excludes discovery or inspection of statements

---

[6] Consistent with that representation, the government opposition to defendant's venue motion makes no reference to defendant's failure to meet and confer.

11

made by prospective government witnesses except as provided in 18 U.S.C. §3500 (the Jencks Act).[7]  Id.

*Second*, under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the government must turn over evidence in its possession that is favorable to the defense or that may be used by the defense for impeachment purposes.  Specifically, <u>Brady</u> "requires disclosure only of evidence that is both favorable to the accused <u>and</u> material either to guilt or to punishment.  <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985) (citations omitted).  Evidence is material under <u>Brady</u> only if there is a "reasonable probability" of a different result, had the evidence been disclosed to the defense.  <u>Id.</u> at 682.  Put another way, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>  The Ninth Circuit has suggested, without explicitly so holding, that "inadmissible evidence can be material under <u>Brady</u>, if it could have led to the discovery of admissible evidence."  <u>United States v. Price</u>, 566 F.3d 900, 911 (9th Cir. 2009) (citation omitted).

Under <u>Brady</u>, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."  <u>Bagley</u>, 473 U.S. at 675 & n.7 (collecting cases).  That is because "<u>Brady</u> does not permit a defendant to sift through information held by the government to determine materiality."  <u>United States v. Lucas</u>, 841 F.3d 796, 807 (9th Cir. 2016) (citing <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 59 (1987)); <u>see also</u> <u>United States v. Mayes</u>, 917 F.2d 457, 461 (10th Cir. 1990) ("The constitution does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" (quoting <u>Jencks v. United States</u>, 353 U.S. 657, 667 (1957)).  Rather, "[i]t is the government, not the defendant or the trial court, that decides <u>prospectively</u> what information, if any, is material and must be disclosed

---

[7] It is worth noting that Rule 16 also provides for reciprocal discovery by the defendant.  Fed. R. Crim. P. 16(b)(1).  To date, despite requests, defendant has not provided any reciprocal discovery.  In the same way that Rule 16(a)(2) limits a defendant's access to certain, privileged documents, Rule 16(b)(2) affords the defense the same protections.  Fed. R. Crim. P. 16(b)(2).

under <u>Brady</u>."  <u>Lucas</u>, 841 F.3d at 807 (emphasis in original).  The government need not submit "close questions regarding materiality to the court for <u>in camera</u> review."  <u>Id.</u>; <u>United States v. Michaels</u>, 796 F.2d 1112, 1116 (9th Cir. 1986) ("Nor does <u>Brady</u> require the trial court to make an <u>in camera</u> search of the government files for evidence favorable to the accused." (citation omitted)).

Third, under 18 U.S.C. § 3500 (the Jencks Act), statements by a government witness that relate to the subject matter of the witness's testimony are required to be disclosed to the defense <u>after</u> the witness has testified.

**IV.    ARGUMENT**

**A.**   ████████████████████████████████████████████████
████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████.

████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████



█████████████████████████████ ███████████████

██████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████ .

As the government already explained to defense counsel in its November 23 Letter, relevant <u>Giglio</u> evidence (to the extent it exists) will be provided reasonably in advance of trial for the witnesses the government decides to call. The government's intended timing for the disclosures—reasonably in advance of trial, as opposed to prior to the witness testifying—already goes above what <u>Giglio</u> requires. <u>See United States v. Rinn</u>, 586 F.2d 113, 119 (9th Cir. 1978) (explaining that because Giglio material "merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying"); <u>United States v. Welton</u>, No. CR 09-00153 MMM, 2009 WL 2390848, at *7 (C.D. Cal. Aug. 1, 2009) ("Because evidence which is potentially impeaching merely goes to a witness' credibility, courts generally hold that disclosure in advance of trial is not required" (citation omitted)) (collecting cases). That includes any agreement with Individual H, which, in any event, has now been produced. <u>Rinn</u>, 586 F.2d at 119 ("[S]ince information concerning 'favor or deals' merely goes to the credibility of the witness, it need not be disclosed prior to the witness testifying."); <u>United States v. Hopkins</u>, No. CR S-05-0538 EJG GGH, 2008 WL 4453583, at *2 (E.D. Cal. Oct. 3, 2008) ("[T]he common sense perception that a witness' bias or reputation for prevaricating, for example, is only important if the witness actually testifies.").

---

[10] ██████████████████████████████████████

██████████████████████████████████████

**B.    The Defense's Demand for Privileged, Internal Communications Fails**

Defendant demands privileged internal communications involving the U.S. Attorney; the Chief of the Criminal Division of the U.S. Attorney's Office; Assistant U.S. Attorneys currently or previously assigned to this matter; and FBI special agents assigned to the investigation relating to the materiality of defendant's statements, as well as venue in this district.  (Ex. B. at 1-2.)

Defendant's demand should be rejected because: (1) the government has already produced discoverable evidence pertaining to the materiality element under section 1001, as well as venue in this district; (2) the internal communications that the defense seeks are explicitly exempt from discovery pursuant to Rule 16(a)(2); and (3) the internal communications are not discoverable under Brady because they are neither "favorable to the accused" nor "material either to guilt or to punishment."

1.    The Government Has Already Produced Discoverable Evidence Pertaining to Materiality

Again, defendant chooses to ignore binding Supreme Court and Ninth Circuit law on materiality, rather than contend with Kungys v. United States, 485 U.S. 759 (1988), Brogan v. United States, 522 U.S. 398 (1998), United States v. Serv. Deli Inc., 151 F.3d 938 (9th Cir. 1998), United States v. Peterson, 538 F.3d 1064 (9th Cir. 2008), and the rest.

The government will not repeat its extensive explanation and analyses of controlling precedent defining materiality within the meaning of section 1001.  (See Dkt. No. 27 [Consolidated Opp'n to MTD for Failure to State and Offense]; see also Dkt. No. 18 at 14-16 [Opp'n to MTD for Lack of Venue].)  The government only briefly summarizes that materiality is satisfied if the statement "had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities."  (Ninth Circuit Model Jury Instruction No. 8.73.)  As the Ninth Circuit has explained ad nauseam, the false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material.  See, e.g., Serv. Deli

<u>Inc.</u>, 151 F.3d at 941 (citations omitted) (emphasis added).  Accordingly, the materiality inquiry looks to the statement's "intrinsic capacity to influence, not its probability of causing influence."  <u>Peterson</u>, 538 F.3d at 1072.[11]

To that end, the government has provided to the defense all recordings of defendant's false and misleading statements to federal investigators, draft transcripts of those statements, and FBI reports summarizing those statements.  (<u>See</u> Ex. 1.)  Proof of materiality can be found by even a cursory skim through that evidence.  The government has also provided evidence of each step taken in the investigation into defendant, from the events leading up to the 2016 fundraiser where defendant's campaign received illicit funds, to the follow-up steps federal investigators took after defendant repeatedly lied in a second interview that defendant requested, and everything in between.  The government even voluntarily provided evidence of the investigative steps it took in connection with <u>other</u> recipient politicians (including seeking interviews of other politicians) so that the defense could have a complete picture of the scope and nature of the larger federal investigation.

The discovery that the government provided thoroughly documents defendant's false statements and shows why lying about the illegal foreign and conduit contributions to his campaign by his friends and associates—to federal investigators looking into

---

[11] Contrary to defendant's characterization, the government has always faithfully and consistently adhered to the controlling definition of materiality under binding Supreme Court and Ninth Circuit precedent.  (<u>See</u> Dkt. Nos. 18, 27; <u>see also</u> Dkt. No. 28 at 4-5.)  The Indictment expressly alleges that defendant is charged with falsifying, concealing, and covering up by trick, scheme, and device <u>material</u> facts and knowingly and willfully making <u>materially</u> false statements and representations.  (Dkt. No. 1 ¶¶ 18, 21, 21 (emphasis added).)  The Indictment also alleges venue in this district by alleging defendant's interviews affected the investigation "in the Central District of California," where the investigation was ongoing.  (<u>See id.</u> (emphasis added).)  The Indictment provides more than fair notice to defendant by "inform[ing] the accused of the specific offense with which he is charged."  <u>United States v. Blinder</u>, 10 F.3d 1468, 1476 (9th Cir. 1993) (citation omitted).  Nothing about the language of the Indictment restricts the government's ability to apply the correct law of materiality.  Nor does applying the correct law of materiality constitute a constructive amendment, which occurs only when there is either a different complex of facts presented at trial or a new crime charged.  <u>United States v. Adamson</u>, 291 F.3d 606, 615 (9th Cir. 2002); <u>accord United States v. Garcia-Paz</u>, 282 F.3d 1212, 1217 (9th Cir. 2002) (government not required to prove specific knowledge of smuggling marijuana when indictment alleged importing marijuana and the statute did not require specific knowledge).

illegal foreign and conduit contributions to politicians by those same actors—"had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities."  (Ninth Circuit Model Jury Instruction No. 8.73.)

> 2.    The Defense Demands Internal Communications That Are Not Discoverable Under Rule 16(a)(2)

Defendant's demand for internal communications should be rejected because they are exempt from discovery under Rule 16(a)(2) and defendant offers no credible argument to overcome this Rule.

Although Rule 16(a)(1)(E) generally requires production of government-possessed documents and objects "material to preparing the defense," there is an exception to this general rule.  Specifically, "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are exempt from discovery.  Fed. R. Crim. P. 16(a)(1)(E)(i), (a)(2).  Accordingly, defendant's citations to United States v. Ghailani, 687 F. Supp. 2d 365 (S.D.N.Y. 2010), and United States v. Hernandez-Meza, 720 F.3d 760 (9th Cir. 2013)—which only deal with Rule 16(a)(1)(E) and not the carve-out—are inapposite.  (See Mot. at 7-9.)

Courts routinely deny requests for internal government communications, even when, as here, the defense suggests the communications might show bias.  Gollaher v. United States, 419 F.2d 520, 527 (9th Cir. 1969) (defense not entitled to discovery of intra-agency communications, despite defense's claim that such communications might show agency bias in pursuing prosecution); see also United States v. Jack, 263 F.R.D. 640, 645 (E.D. Cal. 2010) (internal government communications exempt from discovery under Rule 16(a)(2)); United States v. Edwards, 42 F.R.D. 605, 606 (S.D.N.Y. 1967) (internal Government memoranda of conversations between the defendant and government agents exempt from discovery under Rule 16).  So too should the Court deny defendant's request here for internal government communications.

3.    The Defense Demands Internal Communications That Are Not *Brady*

Defendant now attempts to recast his request for internal communications by claiming he is entitled to them under Brady.  But there are no internal communications with exculpatory facts or evidence bearing on materiality, as the defense speculates.  And defendant has not even attempted to satisfy, let alone satisfied, the required threshold showing he must make that the government is withholding favorable evidence.  Nor could he, legally or factually.

To be discoverable under Brady, the evidence must be both favorable to the accused and material either to guilt or to punishment.  Bagley, 473 U.S. at 674.  Here, defendant cannot and has not established even the first of these two requirements—that there are internal communications "favorable to the accused"; that is, evidence that "helps bolster the defense case or impeach the prosecutor's witnesses . . ."  Price, 566 F.3d at 913 n.14 (citations omitted).

United States v. Lucas is controlling on Brady disclosures.  In that case, the defendant sought internal communications between the U.S. Attorney's Office, state prosecutors, and local law enforcement that might support the defense's suspicion that "federal and state authorities had colluded in prosecuting" the defendant—a legally valid defense that could bar the federal prosecution.  841 F.3d at 800-01, 803.  Like defendant here, the defendant in Lucas claimed he was entitled to these communications under Brady, despite the government's affirmative representation that it did not possess evidence of inter-sovereign collusion.  Id. at 807.  In rejecting the defendant's request, the Ninth Circuit reaffirmed Supreme Court precedent holding that "it is the State that decides which information must be disclosed."  Id. (quoting Ritchie, 480 U.S. at 59-60.)  "[I]t is the government, not the defendant or the trial court, that decides prospectively what information, if any, is material and must be disclosed under Brady."  Id. (emphasis in original).  Under that "settled practice," the prosecutor is "the initial arbiter of materiality and disclosure and is not required to submit even "close questions regarding materiality to the court for in camera review."  Id. at 809.

19

1   Moreover, the Court explained, the prosecutor's decision on disclosure is final,

2 "[u]nless defense counsel becomes aware that other exculpatory evidence was withheld

3 and brings it to the court's attention." Id. at 808.  In other words, the defendant must "do

4 more than speculate that Brady material exists" and "demonstrate that the government

5 improperly withheld favorable evidence." Id. at 808, 809 (emphasis added); see also

6 United States v. Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009) (burden on the defendant

7 to "identif[y] any potentially exculpatory evidence that was not disclosed to him").

8   In support of its argument that the internal communications contained exculpatory

9 evidence of collusion, the defense in Lucas proffered a news article on federal

10 "intervention" into state firearm prosecutions; two affidavits, one from the defendant and

11 one from defense counsel; an argument of the allegedly "weak" federal interest in the

12 case; and a claim based on the perfect or suspicious timing of when the state sentence

13 concluded and federal prosecution began. Id. at 801-02, 806.  The Ninth Circuit held

14 that the defendant's proffer was insufficient to compel discovery and that he had had not

15 made the requisite showing that the government improperly withheld favorable

16 evidence.[12] Id. at 808; see also Michaels, 796 F.2d at 1116 (the defendant's "mere

17 speculation about materials in the government's files" does not require making the

18 materials available for the defendant's inspection or an in camera search of the

19 government files for evidence favorable to the accused" under Brady).

20   Defendant's argument here is much less meritorious than the defendant's failed

21 argument in Lucas.  For one, defendant does not even argue that the privileged

22 communications contain evidence "favorable to the accused"; instead, defendant

23 seemingly grafts the broader Rule 16(a)(1)(E)(i) "material to preparing the defense"

24 standard onto the Brady standard and demands all communications "relating to" the

25 materiality of defendant's statements; the "impact of his statements"; "about

26 [defendant's] statements"; and "related to [the government's] assessment of

---

[12] In the alternative, the defense also argued they were entitled to these records under Rule 16. Id. at 802.  The Court held that the defendant had not even met the requisite materiality threshold to bring it within the contours of discoverable material under Rule 16. Id. at 806.

[defendant's] statements and the investigative steps that were taken as a result of those statements." (<u>See</u> Mot. at 7-8; Ex. B.)  In other words, defendant suggests that if government actors simply <u>talked about</u> defendant's statements, this would constitute exculpatory evidence under <u>Brady</u>.  It does not.  Defendant's claim fares no better than the rejected defense argument in <u>Michaels</u>, where the defendant sought to compel the agents' rough interview notes (not just typed interview summaries), arguing that the "more inherently reliable" notes could "substantiate and prove" that the package containing the explosive device was never actually mailed, an element of the charged crime of mailing an explosive device.  <u>Michaels</u>, 796 F.2d at 1115.  The defendant's attempt to invoke <u>Brady</u> and tie the discovery request to an element of the crime fell flat where the defendant merely speculated that "arguably, based on the sanitized summaries, it appeared that the notes also would be material or helpful" and reveal potential discrepancies.  <u>Id.</u> at 116.  The Court called out the defendant's request for what it was: a fishing expedition "so that he could search through [the notes] for anything useful."  <u>Id.</u>

Indeed, defendant has neither (1) articulated what exculpatory evidence he believes is contained within the government communications nor (2) attempted to proffer anything to support that non-articulated theory.  It is unclear what internal government communications could even say that would be exculpatory on the issue of materiality when, again, materiality turns on the "intrinsic capacity [of defendant's false statements] to influence" the agency and "not its probability of causing influence."  <u>Peterson</u>, 538 F.3d at 1072.  Moreover, common sense dictates that any internal government communications discussing a politician caught on multiple recordings lying about his knowledge of his receipt of illicit campaign funds during a government investigation into illicit campaign funds would <u>bolster</u> materiality, not diminish it.

Defendant's only attempt to articulate why the internal communications might be "favorable to the accused" rests on a chain of unsupported speculations that would paint the collective prosecutorial decision-making process as a series of petty reactions by irascible actors.  Defendant speculates that the communications may "reveal" that

prosecutors or agents "expressed anger or indignation about" defendant's lies, then speculates that one or more prosecutors or agents might have found defendant's statements "personally upsetting" and, because of this hypothetical upset, speculates that they "went on to focus the investigation on Congressman Fortenberry out of spite." (Mot. at 9-10.)  In addition to being based exclusively on conjecture, this argument is illogical and legally devoid.  In defendant's fanciful scenario, he would have already rendered his false and misleading statements in furtherance of his scheme to conceal material facts.  Thus, how would an agent's "upset" cause <u>defendant to reach out and voluntarily request another interview</u>, so that he could make more false and misleading statements and further his scheme to conceal material facts?  (<u>See</u> Dkt. No. 35, Decl. of Trey Gowdy ¶¶ 11-12 (defendant "was keenly interested in sharing information with federal authorities"; defense counsel "arranged for a second meeting.")  This same insinuation of nefarious intent could be made any time a defendant lies, and diligent federal investigators conduct additional investigation to confirm the lies were willful or to explore motive —are those investigators acting out of spite when they do so or are they simply following basic investigative steps?[13]  In any event, even if every single one of defendant's wild suppositions were true, this <u>still</u> would not constitute exculpatory evidence that undermines the capability of defendant's false statements to influence or affect the federal agency.  <u>See, e.g.</u>, <u>Peterson</u>, 538 F.3d at 1072; <u>cf. United States v. Armstrong</u>, 517 U.S. 456, 464, 116 (1996) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."); <u>Marshall v. Jerrico, Inc.</u>, 446 U.S. 238, 248

---

[13] Paradoxically, defendant attempts to distinguish the Ninth Circuit holding in <u>Gollaher</u> that government communications were not discoverable by arguing that, there, the defense was denied internal communications that would show bias in pursuing the prosecution.  (<u>See</u> Mot. at 10.)  There is no daylight between what the defense in <u>Gollaher</u> sought to prove via internal communications (alleged bias in pursuing a prosecution) and what defendant seeks (alleged bias in pursuing the investigation leading to prosecution).

(1980) (prosecutors "are necessarily permitted to be zealous in their enforcement of the law").[14]

Defendant makes no attempt to proffer any support for his theory. For instance, he does not point to any existing discovery (like typed interview summaries) that might indicate there is exculpatory evidence elsewhere. See Michaels, 796 F.2d at 1115. Defendant may protest that he does not know what the communications contain because he has not received them—but that is exactly what Brady contemplates. See id. at 1115-16; Lucas, 841 F.3d at 808-09; Mincoff, 574 F.3d at 1200. And that is because "Brady does not permit a defendant to sift through information held by the government to determine materiality," Lucas, 841 F.3d at 807, or "embark on a 'broad or blind fishing expedition among documents possessed by the Government,'" Mayes, 917 F.2d at 461, especially when the claim to discovery is based on nothing more than speculation.

Finally, even if there were internal government communications with evidence "favorable to the accused," production of the communications is not required. At most, defendant would be entitled to the "underlying exculpatory facts" contained or described in the communications—not the communications themselves. Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006); United States v. Kohring, 637 F.3d 895, 908 (9th Cir. 2011) ("[W]hile the prosecution did not have a duty to disclose the e-mail itself or the opinion work product in the e-mail, it did have a duty to disclose the non-cumulative underlying exculpatory facts in the e-mail." (citation omitted)). But the Court need not reach that speculative hypothetical.

---

[14] This reasoning is particularly apt, given defense counsel's statement at the end of the motions hearing in this matter on December 13, 2021. There, Mr. Littrell proclaimed that the "core defense" was that defendant's case was the result of a "political prosecution." As an initial matter, of course, this claim does not actually amount to a legal or factual defense to section 1001 violations (as opposed to, for example, factual innocence). In addition, this claim ignores the clear record that defendant's case was opened and every substantive investigative step was taken and approved from 2015 to 2020 (see Ex. 1), during a prior presidential administration and under prior attorneys general. As the Court pointed out at the hearing, questioning the motive of a collective prosecution can be done in every federal case. But such proclamations, without more, do not create discovery rights.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.**   **The Defense's Demands for Information Regarding the "Department of Justice's Requirements" Fails**

The government voluntarily disclosed in discovery the internal agency requests and approvals for this case, even though the government asserts such internal documents fall outside the government's discovery obligations and are not ordinarily provided.  The government directed defense counsel to those approvals in the discovery.  (Nov. 23 Letter at 2-3.)  Next, the government clarified for defendant that section 8-7.302 of the Justice Manual—the sole "requirement" that the defense cited in its letter—did not apply to this case.  (Id. at 2; see also Dkt. No. 28 at 7.)  The government did so notwithstanding the fact that the Justice Manual does not confer any rights on defendants (see Justice Manual, Section 1-1.200), and after defendant had—without a modicum of supporting evidence—vehemently and repeatedly asserted as fact the applicability of this section, going so far as to push another misguided attack on the integrity of the investigation that the government failed to adhere to internal policies and misled the Office of the Attorney General to secure the "required" approvals.  (See Dkt. No. 21 at 2-3.)  Yet, in a footnote, defendant now correctly walks that false claim back and concedes that the government "appears to be correct" regarding the non-applicability of Section 9-7.302.  (Mot. at 5.)

Even before indictment, although under no obligation to do so and not the typical practice, the government reached out to Mr. Gowdy and then Mr. Littrell and accommodated defendant's multiple requests to push back the date of his indictment to allow him to make an internal appeal to ODAG, which prepares the Justice Manual, and under which the Public Integrity Section sits.  Mr. Littrell made the same baseless allegations of noncompliance with the Justice Manual directly to the Deputy Attorney General and Principal Associate Deputy Attorney General.  ODAG permitted this indictment to proceed and did nothing to give credence to defendant's claims about lack of approvals.  (Nov. 23 Letter at 3.)

Despite defense counsel's sole citation to section 8-7.302, failure to respond to the government's inquiry for clarification, and violation of the meet-and-confer obligations, counsel's latest pivot is to attack the government for not disclosing privileged documents

24

as to whether the Public Integrity Section was consulted, pursuant to a different section (9-85.110) of the Justice Manual.  (Mot. at 14-15.)  While it is specious on what grounds defendant is "entitled" to this information, the fact remains that all necessary approvals and consultations were obtained and conducted, and government counsel has so apprised defense counsel.   Defendant's persistent attempts to spin his narrative otherwise cannot change that fact.

## V.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to compel discovery and further strike the filing from the docket and order the defense to file a clean copy.