John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile:  (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　*Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>　　　　*Defendant.* | Case No. 2:21-cr-491-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S NOTICE OF MOTION AND SECOND MOTION TO SUPPRESS STATEMENTS**<br><br>Next Hearing Date:[1] February 8, 2022<br>Next Hearing Time: 8:00 a.m.<br>Time Estimate: none requested<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022<br>Trial: Feb. 15, 2022<br>Last Day: Mar. 2, 2022 |

---

[1] An oral argument on this Motion is not requested.

**TO THE HONORABLE COURT, ALL PARTIES, AND THE PARTIES' ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, by and through his attorneys of record, the Honorable Jeffrey Lane Fortenberry moves to suppress his statements of March 23 and July 17, 2019, on the grounds previously argued and briefed, as well as alternatively on the grounds discussed in the concurrently filed Memorandum of Points and Authorities below, to the extent these grounds are deemed beyond the scope of his November 30, 2021, motion to suppress the same statements. The defense neither requests nor objects to a further oral argument on suppression of the statements.

This motion is based on this Notice, the Memorandum of Points and Authorities concurrently filed herewith, the parties' previous filings and arguments on Fortenberry's November 30, 2021, motion to suppress statements, the files and records in this case, and any evidence and argument that may be presented at any hearing on this matter.

Counsel for the respective parties met and conferred via email and phone on January 18, 2022, concerning the subject of this motion but were unable to resolve their differences. The government objects to the filing of this motion to suppress raising grounds other than those raised in the initial motion to suppress, stating that "[i]f the Court denies [the] pending motion to suppress and [the defense] believe[s it] ha[s] proper grounds to make a reconsideration motion, [the defense] can pursue that mechanism and the government will respond with its position."

In response, the defense respectfully submits that it would be more efficient to complete the record on statements suppression before any ruling from the Court, obviating reconsideration if the prior motion were to be denied. In submitting this filing as a separate motion, the defense is also mindful of the Court's warning against raising a new argument other than by a new motion. *See* Dec. 29, 2021, Order Re: Defendant's Motions, CM/ECF doc. no. 59, at 10–11.

///
///

Date: January 18, 2022               BIENERT KATZMAN
                                     LITTRELL WILLIAMS LLP

                                     By: __/s/ Ryan V. Fraser_____
                                         John L. Littrell
                                         Ryan V. Fraser
                                         *Attorneys for Hon. Jeffrey Lane Fortenberry*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS & AUTHORITIES ........................................................... 1

I.    INTRODUCTION ................................................................................................ 1

II.    MATERIAL FACTS ............................................................................................ 1

III.    FUNDAMENTAL FAIRNESS AND CONTRACT AND ESTOPPEL PRINCIPLES CALL FOR SUPPRESSING THE NEBRASKA AND WASHINGTON, D.C., STATEMENTS. ............................................................... 5

    A.    The Court should suppress the Washington Interview to approximate the remedy of rescission, which is available under California law to those whose ostensible consent to a contract was induced by fraud. ........................................................................................ 5

    B.    Equitable estoppel calls for suppressing Fortenberry's Nebraska statements. ................................................................................................. 8

IV.    CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Berger v. United States*,
  295 U.S. 78 (1935) ......................................................................................... 9

*Gee v. Timineri*,
  56 Cal. Rptr. 211 (Cal. Ct. App. 1967) ........................................................... 7

*Johnson v. Lumpkin*,
  769 F.2d 630 (9th Cir. 1985) ...................................................................... 5, 7

*Morrow v. Super. Ct.*,
  36 Cal. Rptr. 2d 210 (Cal. Ct. App. 1994), as modified ................................. 9

*Pauly v. U.S. Dep't of Agric.*,
  348 F.3d 1143 (9th Cir. 2003) ........................................................................ 8

*Santobello v. New York*,
  404 U.S. 257 (1971) ....................................................................................... 5

*United States v. Carrillo*,
  709 F.2d 35 (9th Cir. 1983) ............................................................................ 5

*United States v. Gamboa-Cardenas*,
  508 F.3d 491 (9th Cir. 2007) .................................................................... 8, 10

*United States v. Goodrich*,
  493 F.2d 390 (9th Cir. 1974) .......................................................................... 5

*United States v. Hemmen*,
  51 F.3d 883 (9th Cir. 1995) ............................................................................ 8

*United States v. Hudson*,
  609 F.2d 1326 (9th Cir. 1979) ................................................................ 5, 7, 9

*W. Pac. Elec. Co. v. Dragados/Flatiron*,
  534 F. Supp. 3d 1209 (E.D. Cal. 2021) .......................................................... 7

*Young v. Flickinger*,
  242 P. 516 (Cal. Ct. App. 1925) ..................................................................... 7

**Statutes**

18 U.S.C. § 1001 ................................................................................... 3, 5,7 11

Cal. Civ. Code § 1567 ........................................................................................ 8

Cal. Civ. Code § 1572 ..................................................................................... 7, 8

Cal. Civ. Code § 1689(b)(1) ............................................................................ 7, 9

# MEMORANDUM OF POINTS & AUTHORITIES

## I.  INTRODUCTION

The government obtained cooperation statements and other information from Congressman Jeffrey Fortenberry through his reasonable detrimental reliance on what the government misled him to believe by deceiving his attorney. Fortenberry has previously moved to suppress these statements on promissory-estoppel grounds. In response, the government argues, among other things, that the government made him no "promise" of the kind that would support promissory estoppel. Fortenberry disagrees, but submits the instant motion to suppress in the alternative, because the admissibility of Fortenberry's statements should not and does not depend on whether the government's statements to Fortenberry's counsel, Trey Gowdy, are characterized as "promises" or misrepresentations of fact or law. Allowing the government to use evidence obtained by the prosecutor's misleading of defense counsel would violate multiple equitable and contractual sources of protection applicable to cooperating defendants under the Due Process Clause.

By his motions to suppress, Fortenberry invokes all such protection. In this second motion to suppress, Fortenberry seeks suppression of his statements on the grounds that they were fraudulently induced by material misrepresentations from the government that he reasonably relied on. Alternatively, equitable estoppel should bar the government from admitting Fortenberry's Nebraska statements against him.

## II.  MATERIAL FACTS[2]

Pursuant to the advice of his attorney, Trey Gowdy, Congressman Fortenberry would not have participated in a follow-up interview with the government after the March 23, 2019, FBI interview at his home in Lincoln, Nebraska ("the Nebraska Interview"), without an assurance from the government regarding his status and place in the government's investigation. *See* Exhibit A to Prior Suppression Motion, Declaration of Harold Watson

---

[2] Fortenberry incorporates by reference his briefing and exhibits and the government's exhibits previously submitted on his initial motion to suppress statements (the "Prior Suppression Motion").

Gowdy, III ("Gowdy Decl.") ¶¶ 11–14. Assistant United States Attorney ("AUSA") Mack Jenkins was the lead prosecutor overseeing the government's investigation at the time. When Mr. Gowdy contacted the FBI to seek information about the investigation and asked Fortenberry's status in it, the FBI referred Mr. Gowdy to AUSA Jenkins. *Id.* at ¶ 8; Exh. C to Prior Suppression Motion. In or about early April 2019, Mr. Gowdy asked AUSA Jenkins "specifically . . . whether Mr. Fortenberry was considered a subject, target, or witness in [Jenkins's] investigation," referencing widely understood terminology among federal criminal practitioners. Gowdy Decl. ¶ 10; *see also id.* (providing the definitions of the terms); Exh. C to Prior Suppression Motion (regarding the approximate date). AUSA Jenkins responded that Congressman Fortenberry was not a target but a subject who was "trending toward" being a mere witness. Gowdy Decl. ¶ 12.

Before that, the FBI had sought and obtained AUSA Jenkins's approval for the Nebraska Interview and, apparently, the manner in which it was conducted. *See* Exh. B to Prior Suppression Motion. The FBI explicitly memorialized its intent to use the Nebraska Interview in pursuit of expected criminal charges against Fortenberry. *Id.* ("Reason(s) for the interview and the general subject matter of the interview" section). As a California prosecutor, AUSA Jenkins had a duty "to supervise the work of subordinate . . . nonlawyer . . . agents." *See* Cal. R. Prof'l Conduct 3.8 cmt. 6. Counsel for Fortenberry have argued that this record raises the inference that Jenkins shared the FBI's charging intent at the time. *See, e.g.*, Reply Re Nov. 30, 2021, Mot. to Suppress Stmts at 11–13. The government has declined to submit any declaration to the contrary from Jenkins.

In addition, about nine months before the Nebraska Interview, at direction of the FBI, a government informant referred to as "Individual H" in the Indictment communicated factual assertions or insinuations to Fortenberry in a "2018 Call," as the Indictment refers to it, that the FBI secretly recorded. The government contends the 2018 Call gave Fortenberry notice that his campaign had received illegal donations in 2016. *See* Indictment *generally* & at ¶¶ 14, 15, 16, 19.a.i–iii, 19.b.i.–iv, 19.c, 20.a–c, 21.a–b. The FBI used the recording of the 2018 Call in preparing for the Nebraska Interview and referenced it in its

request for approval to conduct the Nebraska Interview. *See* Exh. B to Prior Suppression Motion.

It was with that background that, in or about April 2019—after the Nebraska Interview—AUSA Jenkins responded to Mr. Gowdy's question of whether Fortenberry was a target in the investigation by denying that Fortenberry was a target and representing that Fortenberry was instead a subject who was "trending toward" being a mere witness. *See* Gowdy Decl. ¶ 12. However, in fact, the government then regarded Fortenberry as having "dug himself a medium-sized hole" for having "provided incomplete and inaccurate information" in the Nebraska Interview. Opposition to Prior Suppression Motion ("Opp'n") at 1. The government believed Fortenberry was in a "perilous situation" as a result of having made "misleading statements" in the Nebraska interview. *Id.* Fortenberry anticipates no dispute that AUSA Jenkins used the secret recording of the 2018 Call in preparing his questions for Fortenberry at the follow-up interview attended by Gowdy on July 17, 2019, in Washington, D.C ("the Washington Interview"). *See* Indictment at ¶¶ 19.b.i.–iv, 21.a–b; Ex. B to Opp'n at 57:29–30 (CM/ECF doc. no. 47-2, p. 57 of 84).

At the outset of the Washington Interview, in an apparent reference to his prior communications with Mr. Gowdy, AUSA Jenkins acknowledged that he and Fortenberry had a "contract if you will" pertaining to that interview. Exh. B to Opp'n at 2:27–28 (CM/ECF doc. no. 47-2, p. 2 of 84).

AUSA Jenkins went on to interrogate Fortenberry concerning details of the 2018 Call, *see, e.g., id.* at 57:29–30, a recording of which, again, the government possessed before April 2019, but did not disclose to Gowdy or Fortenberry until even later than January 2020. *See* Gowdy Decl. ¶ 13. Concerned by the manner of Jenkins's questioning, during a pause, Gowdy asked Jenkins whether the interview was "some bullshit 1001 case," in a reference to 18 U.S.C. § 1001, because Gowdy had "believed AUSA Jenkins when he told [Gowdy] the Congressman was a subject trending toward a witness during [their] initial call. [And i]f [Jenkins] somehow viewed [Fortenberry's] status differently, [Gowdy] wanted to know that immediately." *Id.* at ¶¶ 17–18. Gowdy "would not have advised Congressman

Fortenberry to return to the interview" if Jenkins had not answered in the negative, as he did, in response to the "bullshit 1001" question, needing no clarification. *Id.* at ¶¶ 18–19. Gowdy was "satisfied by AUSA Jenkins's reassurances, so the interview resumed." *Id.* at ¶ 19–20.

Then, still with no update to Gowdy or Fortenberry as to any a change in Fortenberry's status in the investigation from "subject trending toward witness," the government asked, after the Washington Interview, "whether Congressman Fortenberry would waive the attorney-client privilege so the government could interview his FEC attorney," in reference to the attorney who had advised Fortenberry concerning election-law matters after the 2018 Call. *Id.* at ¶ 20. Fortenberry gave the government that waiver, as well as other additional cooperation information, in further reliance on the government's prior and uncorrected assurances regarding his status in the investigation. *See id.*

AUSA Jenkins, however, in fact concluded that Fortenberry's responses in the Washington Interview were "inconsistent" with the recording of the 2018 Call, and has not denied that he reached that conclusion upon hearing Fortenberry's responses during the Washington Interview or very soon thereafter. This is the natural inference raised by Exhibit C to the Opposition to the Prior Suppression Motion, a January 18, 2020, email from Jenkins to Gowdy, in which Jenkins notifies Gowdy, apparently for the first time, that the government "ha[d] evidence that [was] inconsistent with the version of events [Fortenberry] provided to the FBI/USAO, specifically regarding events surrounding the LA fundraiser, the content of [the 2018 Call], and the actions [Fortenberry] took as a result of that call." On this record, with no contrary explanation in a declaration from AUSA Jenkins, it appears that he knowingly misled Mr. Gowdy initially in April 2019, and then throughout the following months until January 2020, regarding his beliefs of the state of the evidence and his charging intent.

Later, the government sought and obtained separate three false-statement counts in the operative Indictment, charging Fortenberry with violating 18 U.S.C. § 1001(a)(1) and

(2) in both his Nebraska Interview and in his Washington Interview based primarily on the recordings of those interviews and the recording of the 2018 Call.

### III. FUNDAMENTAL FAIRNESS AND CONTRACT AND ESTOPPEL PRINCIPLES CALL FOR SUPPRESSING THE NEBRASKA AND WASHINGTON, D.C., STATEMENTS.

"[A]s a general rule, fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected." *Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985) (citing *Santobello v. New York*, 404 U.S. 257, 262–63 (1971); *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir. 1979); *United States v. Goodrich*, 493 F.2d 390, 393 (9th Cir. 1974)). The Ninth Circuit applies contract principles to "cooperation agreements," as well. *See United States v. Carrillo*, 709 F.2d 35, 37 (9th Cir. 1983).

    **A.**    **The Court should suppress the Washington Interview to approximate the remedy of rescission, which is available under California law to those whose ostensible consent to a contract was induced by fraud.**

Here, AUSA Jenkins acknowledged that he and Fortenberry had an informal agreement—a "contract if you will"—in relation to Fortenberry's cooperation and the Washington Interview. Exh. B to Opp'n at 2:27–28. Indeed, Fortenberry would not have been there to cooperate further if not for the prior conversations between his attorney and Jenkins, in which Jenkins assured Gowdy that Fortenberry was not a target and was even trending away from being a target. Gowdy Decl. ¶¶ 11–14.

Given *Justice Manual* § 9-11.151's concrete definition of "target," AUSA Jenkins's assurances in that prior discussion were representations of fact and law, and if those representations were knowing or negligent, they were therefore "deceit" under California law. *See* Cal. Civil Code § 1710. That is, if Jenkins saw the government's evidence leaving Fortenberry in a "perilous situation" and "medium-sized hole," Opp'n to Prior Suppression Motion at 1, then Fortenberry was at least a putative defendant, making it a misrepresentation for AUSA Jenkins to deny that Fortenberry was a "target." "Deceit" under California law includes either the "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true," Cal. Civ. Code § 1710(1); or "[t]he

assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," Cal. Civ. Code § 1710(2).

Moreover, AUSA Jenkins concealed from Mr. Gowdy the fact that Jenkins had a recording of the 2018 Call, in which he apparently believed Fortenberry learned supposed facts that Fortenberry denied in the Nebraska Interview, which was also secretly recorded and in Jenkins's possession, which he also concealed from Mr. Gowdy. *See* Gowdy Decl. ¶¶ 13–14. Therefore, when AUSA Jenkins stated that Fortenberry was not a target and "trending" away from being a target, while suppressing the fact that Jenkins had recordings that, in his view, apparently constituted "substantial evidence" (and more) of violations of 18 U.S.C. § 1001(a)(1) and (2) by Fortenberry in the Nebraska Interview, Jenkins appears also to have committed "deceit" under California Civil Code § 1710(3), which is defined as "[t]he suppression of a fact, by one who . . . gives information of other facts which are likely to mislead for want of communication of that fact."

For the same reasons, Fortenberry's ostensible consent to the contract with Jenkins was not "free" under California Civil Code §§ 1566 and 1567, because it was induced by "fraud," which, as shown below, shares much of the definition of "deceit." *See* Cal. Civ. Code § 1572. Therefore the "contract" pursuant to which Fortenberry provided the Washington Interview is subject to rescission, *see* Cal. Civ. Code § 1689(b)(1) (fraud ground for rescission), which Fortenberry here seeks by moving to suppress his statements.

"[A]pparent consent is not real or free when obtained through . . . [f]raud." Cal. Civ. Code § 1567. "Fraud" includes actual fraud, which, in similar fashion to "deceit," consists of:

>1.   The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
>2.   The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
>3.   The suppression of that which is true, by one having knowledge or belief of the fact;
>
>4.   A promise made without any intention of performing it; or,

>     5.     Any other act fitted to deceive.

Cal. Civ. Code § 1572; *see also* Nov. 30, 2021, Motion to Suppress Statements at 8–9 ("Given that the Nebraska Interview had already taken place, with AUSA Jenkins's approval and upon his instruction, [his] representation necessarily implied that the government was not [then] planning to charge Congressman Fortenberry with any crime based on the Nebraska Interview. In fact, the opposite was true."); Gowdy Decl. ¶ 13 ("If I had known that a recording of the call existed, I would not have agreed to have Mr. Fortenberry participate in an interview without first receiving a copy of the tape and transcript.").

As noted above, outside the criminal setting, such "fraud" in inducing contractual agreement would entitle the victim to rescission. *See* Cal. Civ. Code § 1689(b)(1) (fraud ground for rescission); *W. Pac. Elec. Co. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1248 (E.D. Cal. 2021) (denying summary judgment on rescission cause of action premised on half-truth fraud). "'[R]escission,' . . . means to restore the parties to their former position." *Young v. Flickinger*, 242 P. 516, 517 (Cal. Ct. App. 1925) (emphasis added); *see also Gee v. Timineri*, 56 Cal. Rptr. 211, 217 (Cal. Ct. App. 1967) ("The contract sued on was, it appears, either entered into as the result of a mutual mistake of fact or as the result of a fraudulent representation. Upon the showing made, defendant was entitled to ask that the contract be rescinded and the status quo *restored* . . . ." (emphasis added)).

Fortenberry therefore seeks a remedy from the Court that would at least restore him to the position from whieh he went into the Washington Interview and subsequent cooperation in reliance on AUSA Jenkins's misleading statements to Mr. Gowdy. As a matter of due process, criminal defendants must be entitled to at least this much protection. *Cf., e.g., Lumpkin*, 769 F.2d at 633; *Hudson*, 609 F.2d at 1328. This would mean suppressing at least the Washington Interview, because, but for the misrepresentations to Mr. Gowdy, the Washington Interview would not have occurred. *See* Gowdy Decl. ¶¶ 11–14.

### B. Equitable estoppel calls for suppressing Fortenberry's Nebraska statements.

The related doctrine of equitable estoppel also applies to this fact pattern and should estop the government from arguing that Fortenberry committed a crime in his Nebraska Interview. "To establish grounds for estoppel against the government," Fortenberry "must demonstrate that the four traditional elements of equitable estoppel are met." *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007). Those are:

> "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct."

*Id.* (quoting *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995)). In addition, because Fortenberry seeks to apply equitable estoppel against *the government*, he must establish two additional factors: "([5]) 'the government has engaged in affirmative misconduct going beyond mere negligence' and ([6]) 'the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest.'" *Id.* (quoting *Pauly v. U.S. Dep't of Agric.*, 348 F.3d 1143, 1149 (9th Cir. 2003) (quotation marks omitted)).

Here, all four traditional elements and the two special government factors are satisfied. First, AUSA Jenkins appears to have gone into the Washington Interview with a belief that the 2018 Call and the Nebraska Interview were substantial incriminating evidence against Fortenberry, since Jenkins designed his questions based on the details of each, and the government has described Fortenberry as being in a "perilous situation" as a result of those two events before any later developments. *See* Opp'n to Prior Suppression Motion at 1. Second, Mr. Gowdy and Congressman Fortenberry had the right to believe AUSA Jenkins intended his representations of Fortenberry's status in the investigation to be relied upon since Gowdy asked his questions of Jenkins in the context of considering whether Fortenberry would cooperate further. *See* Gowdy Decl. ¶¶ 9–14. Third, Gowdy and

Fortenberry did not know that the 2018 Call or Nebraska Interview had been recorded or how the government interpreted evidence of such events at the time. *See id.* at ¶¶ 13–14. Fourth, Fortenberry clearly relied on Jenkins's representations by granting the Washington Interview and later waiving his attorney-client privilege and providing further information. *See id.* at ¶¶ 11–14.

Fifth, the government appears to have gone beyond mere negligence, given that Jenkins fails to declare anything to rebut the inference raised by this record that he deliberately misled Gowdy. Sixth, allowing the government to benefit from misconduct by acting contrary to its representation to defense counsel would cause a serious injustice because it would reward prosecutorial deceit. This would be severely inconsistent with cherished passages extoling and guaranteeing prosecutorial virtue. *See, e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law . . . . [W]hile he may strike hard blows, he is not at liberty to strike foul ones."); *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir. 1979) ("The federal courts have long been cognizant of the responsibility of federal prosecutors meticulously to fulfill their promises."); *Morrow v. Super. Ct.*, 36 Cal. Rptr. 2d 210, 217 (Cal. Ct. App. 1994), as modified (Jan. 5, 1995) ("Courts expect even higher ethical standards from prosecutors.").

Sixth, Fortenberry's remedy of suppressing the Nebraska Interview will not unduly harm the public interest. The government struggles to identify how it was actually misled by Fortenberry's statements in Nebraska or Washington. Moreover, granting suppression of the Nebraska Interview pursuant to equitable estoppel would still leave the government able to pursue a conviction at trial on Count 3 and the part of Count 1 that is related to the Washington Interview and the alleged FEC violation. Thus, the government would still have ample opportunity to seek to vindicate the interests that it interprets to be implicated here

under 18 U.S.C. § 1001.

Therefore, the Court should apply equitable estoppel to hold the government to the position it conveyed to Mr. Gowdy—that its evidence of the Nebraska Interview was not "substantial evidence" of a crime—because Fortenberry relied on that reasonably and detrimentally in granting the Washington Interview and providing additional later cooperation. Although later evidence may have further influenced the government's interpretation of the Nebraska Interview, the bulk of the government's support for Count 2 was already available to the government going into the Washington Interview, when the not-a-target and "trending"-toward-witness representations were made. *But see* Opp'n to Prior Suppression Motion at 1 (government's current depiction of its then-available evidence as already strongly indicating a false statement). Equitable estoppel exists to prevent such an abrupt and unsupported change in position after detrimental reliance by the counterparty. *Cf. Gamboa-Cardenas*, 508 F.3d at 502.

## IV. CONCLUSION

For the foregoing reasons, as well as those previously argued, Congressman Fortenberry respectfully moves the Court to suppress his Nebraska and Washington, D.C., statements.

Date: January 18, 2022             BIENERT KATZMAN
                                   LITTRELL WILLIAMS LLP

                                   By:  /s/ Ryan V. Fraser
                                        John L. Littrell
                                        Ryan V. Fraser
                                        *Attorneys for Hon. Jeffrey Lane Fortenberry*