1  John L. Littrell, State Bar No. 221601
2  jlittrell@bklwlaw.com
   Ryan V. Fraser, State Bar No. 272196
3  rfraser@bklwlaw.com
4  BIENERT KATZMAN
   LITTRELL WILLIAMS LLP
5  903 Calle Amanecer, Suite 350
   San Clemente, California 92673
6  Tel: (949) 369-3700
7  Fax: (949) 369-3701

8  *Attorneys for Defendant*
   *Hon. Jeffrey Lane Fortenberry*
9

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY FORTENBERRY'S NOTICE OF FILING *AMENDED* MEMORANDUM OF POINTS & AUTHORITIES RE: MOTION TO TRANSFER VENUE [Dkt. 87]**<br><br>Hearing Date: February 8, 2022<br>Hearing Time: 8:00 a.m.<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022<br>Trial: Feb. 15, 2022<br>Last Day: March 2, 2022 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, by and through his attorneys of record, Hon. Jeffrey Fortenberry moves to transfer the proceeding to the District of Nebraska for convenience and in the interest of justice, pursuant to Federal Rule of Criminal Procedure 21(b), and, in support thereof, submits the attached *Amended Memorandum of Points and Authorities*, which differs from the memorandum of points and authorities submitted yesterday (at Dkt. 87), in that it addresses and analyzes the location of defense witnesses, which yesterday's filing did not. Congressman Fortenberry withdraws yesterday's memorandum of points and authorities, which need not be reviewed.

Respectfully submitted,

Dated:  January 25, 2022

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By:_____
     John L. Littrell
     Ryan V. Fraser
     *Attorneys for Defendant*
     *Hon. Jeffrey Lane Fortenberry*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ I

TABLE OF AUTHORITIES ....................................................................................... II

I.   INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF FACTS .................................................................................. 2

III. ARGUMENT ....................................................................................................... 4

    A.   The Court should transfer to Nebraska under Federal Rule of Criminal Procedure 21(b) for convenience and the interest of justice. ......................................................................................................... 4

        1.   Congressman Fortenberry's location favors transfer. ......................... 5

        2.   The location of witnesses favors transfer. .......................................... 6

        3.   The location of the events at issue favors transfer. ............................ 7

        4.   The location of documents favors transfer. ........................................ 7

        5.   Disruption of Rep. Fortenberry's business favors transfer. ................ 8

        6.   It would be less expensive to the parties to try the case in Nebraska. ............................................................................................. 8

        7.   The location of counsel is neutral. ...................................................... 8

        8.   The accessibility of the trial location favors transfer. ........................ 9

        9.   The docket condition of Nebraska favors transfer. ............................ 9

        10.  Special Factors: the suspension of jury trials in CDCA favors transfer. ............................................................................................. 11

        11.  The interests of justice favor transfer to Nebraska. .......................... 12

IV. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Hyde v. Shine*,
  199 U.S. 62 (1905) ............................................................................................. 5, 8

*Klopfer v. State of N.C.*,
  386 U.S. 213 (1967) ............................................................................................. 11

*Platt v. Minn. Mining Co.*,
  376 U.S. 240 (1964) ............................................................................................... 5

*United States v. Brockman*,
  No. CR 20-00371 WHA, 2021 WL 28374 (N.D. Cal. Jan. 4, 2021) ................ 11, 12

*United States v. Gonzalez*,
  683 F.3d 1221 (9th Cir. 2012) ............................................................................. 12

*United States v. Johnson*,
  323 U.S. 273 (1944) ............................................................................................. 13

*United States v. Maldonado-Rivera*,
  922 F.2d 934 (2d Cir. 1990) .................................................................................. 5

*United States v. Marion*,
  404 U.S. 307 (1971) ............................................................................................. 11

*United States v. McDonald*,
  740 F. Supp. 757 (D. Alaska 1990) .................................................................. 5, 8

*United States vs. Coppola*,
  No. CR 14-117-BLG-SPW-02, 2016 WL 3926254 (D. Mont. July 18, 2016) .......... 10

**Statutes**
18 U.S.C. § 3161(c)(1) ............................................................................................ 11
U.S. Const. amend. VI ........................................................................................... 11

**Rules**
Federal Rule of Criminal Procedure 21(b) ...................................................... passim

**Other Authorities**
20 Fed. Prac. & Proc. Deskbook § 45 (2d ed., Apr. 2019 Update) ......................... 5

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.      INTRODUCTION**

On November 2, 2021, Congressman Fortenberry moved to dismiss this case for lack of venue because the alleged false statements that form the basis for this case occurred in Nebraska and Washington, D.C., not in California. Dkt. No. 14.

On December 29, 2021, this Court denied the motion to dismiss for failure to allege proper venue. Dkt. No. 59. However, the Court noted that "[a] defendant that is inexplicably hauled into an inconvenient forum may seek transfer to a more convenient one" under Federal Rule of Criminal Procedure 21(b). *Id.* at 10.

Congressman Fortenberry respectfully submits that transfer to the District of Nebraska under Rule 21 is appropriate. California has always been an impractical forum for this case. None of the alleged offense conduct occurred in California. Congressman Fortenberry lives in Nebraska and works in Washington, D.C.

Most of the government's civilian witnesses reside outside of California, and five of Congressman Fortenberry's tentative witnesses (including himself) live in Nebraska. Other relevant factors, including the congested docket of the Central District and the lower costs associated with trying this case in Nebraska, also favor transfer there.

The Court's recent suspension of jury trials through the end of February 2022 makes a Rule 21 transfer even more appropriate. In addition to the personal hardship that this unfounded accusation has caused Congressman Fortenberry, it is also affecting the election for Nebraska's First Congressional District. Congressman Fortenberry has held that seat for nearly eighteen years, having been re-elected by Nebraska's First District by healthy margins every two years since 2004. The Indictment in this case has changed the dynamic of the race. Congressman Fortenberry now faces challengers from both the left and the right. His primary opponent has cited the pending charges in this case as a reason voters should turn Congressman Fortenberry out of office and instead vote for them. The primary election in Nebraska is scheduled for May 10, 2022. Congressman Fortenberry needs to quickly proceed to trial and clear his name.

If a trial cannot go forward safely in California—which is thousands of miles away from the site of the alleged offense conduct anyway—then it should go forward in Nebraska, where jury trials are being conducted with reasonable precautions.

## II.   STATEMENT OF FACTS

On October 19, 2021, Congressman Fortenberry was indicted in this case. Dkt. No. 1. Congressman Fortenberry first appeared on the Indictment in this case on October 20, 2021. Dkt. No. 6. Trial was set for December 29, 2021. *Id*.

On October 19, 2021, the same day Congressman Fortenberry was indicted in this case, the Department of Justice put out a press release stating that Congressman Fortenberry had been charged with three felony offenses because he "repeatedly lied to and misled authorities during a federal investigation into illegal contributions to Fortenberry's re-election campaign made by a foreign billionaire in early 2016." [1]

On November 2, 2021, Congressman Fortenberry moved to dismiss this case for failure to allege that venue was proper in the Central District of California. Dkt. No. 14. He argued that the sole conduct alleged as the basis for the offense took place in Nebraska and Washington, D.C., and none occurred in California. *Id.* at 2, 8, 11, 13.

On November 15, 2022, this Court continued the trial date from December 14, 2021 to February 15, 2022. Dkt. No. 23. The order specified "***the parties should not expect a further continuance***." *Id*. (emphasis in original).

On November 15, 2022, Democratic State Senator Patty Pansing Brooks announced that she would challenge Congressman Fortenberry in the 2022 midterm election.[2] The same day, the Nebraska Democratic Party released a statement saying "Rep. Fortenberry has lied to Nebraskans, lied to the FBI and is now indicted. Sen. Pansing Brooks will restore dignity to the office and bring her full heart to get work done for the people of Nebraska."

---

[1] https://www.justice.gov/usao-cdca/pr/us-rep-jeff-fortenberry-charged-scheme-deceive-federal-investigators-probing-illegalb

[2] https://omaha.com/news/state-and-regional/govt-and-politics/state-sen-patty-pansing-brooks-officially-running-for-jeff-fortenberrys-house-seat/article_0a9b682a-462a-11ec-b653-3bd91438c885.html

*Id*.  By January 11, 2022, Senator Pansing Brooks had raised nearly $210,000 for her campaign for Congress.[3]

On December 29, 2021, this Court denied the motion to dismiss for lack of venue. Dkt. No. 59.  Acknowledging that this was an issue of first impression, the Court held that venue was proper because Fortenberry's statements were "directed at federal investigative efforts occurring in this district." *Id*. at 9.  However, the Court noted that "[a] defendant that is inexplicably hauled into an inconvenient forum may seek transfer to a more convenient one" under Fed. R. Crim. P. 21(b).  *Id*. at 10.

On January 3, 2022, the Chief Judge of the Central District of California ordered that all jury trials in the district be suspended for a period of three weeks, through January 24, finding that the suspension "serves the ends of justice and outweighs the interests of the public and defendants in a speedy trial." [4]  The Court found that there "has recently been an increase of suspected and confirmed COVID-19 cases within the courthouses of the Central District of California" and that "conducting jury trials would place court personnel, attorneys, parties, and prospective jurors at undue risk." *Id*.

On January 16, 2022, Republican State Senator Mike Flood announced that he would challenge Congressman Fortenberry in the 2022 primary.[5]  Flood specifically cited the Indictment in this case as his reason for running for Congress.  "We're here today because of the situation that Congressman Fortenberry is in as it relates to the indictment." *Id*.  "If our nominee has to focus on fighting felony criminal charges, instead of defeating a serious Democrat opponent... this seat is in jeopardy[.]" *Id*.

On January 19, 2022, the Chief Judge extended the suspension of jury trials through February 28, 2022.[6]  The Chief Judge found that the number of COVID-19 cases in the

---

[3] https://omaha.com/news/national/govt-and-politics/pansing-brooks-reports-nearly-210k-in-campaign-donations/article_cd5b6297-b92b-54dc-ac18-0995f5c95145.html

[4] https://www.cacd.uscourts.gov/sites/default/files/general-orders/Order_22-001.pdf.

[5] https://www.3newsnow.com/news/local-news/nebraska-state-senator-mike-flood-joins-the-race-for-house-district-1-against-jeff-fortenberry

[6] https://www.cacd.uscourts.gov/sites/default/files/general-orders/Order_22-002.pdf.

Central District had "substantially increased," with Los Angeles reporting a 93.9% increase compared to two weeks prior, and that there had been over 100 COVID-19 related cases reported by employees of the United States Courthouses and Probation and Pretrial Services Offices in the Central District of California." *Id.* Thus, the Chief Judge found, "extending the temporary suspension of jury trials is necessary to continue to protect public health and safety, as well as ensure the continuous performance of essential functions and operations of the Court." *Id.* The Chief Judge also noted that the order "may be further extended as necessary." *Id.*

On January 21, 2022, Nebraska Governor Pete Ricketts and former Governor Dave Heineman endorsed Senator Flood, also referencing the Indictment.[7] Heineman said "[i]n modern political times in Nebraska, Jeff Fortenberry is the only Nebraska Congressman that has ever been indicted on felony criminal charges. His actions have resulted in a dilemma for Nebraska's first district voters[.]" *Id.* "We respect and appreciate his service, but we don't want to risk losing the seat to a Democrat."

Nebraska's primary election is scheduled to be held on May 10, 2022.[8]

The Court has not scheduled a new trial date.

### III. ARGUMENT

#### A. The Court should transfer to Nebraska under Federal Rule of Criminal Procedure 21(b) for convenience and the interest of justice.

"Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). This flexible rule permits "easy transfer" in cases where venue may be technically proper in a faraway district, but pragmatic concerns and fundamental fairness dictate that a defendant

---

[7] https://www.ketv.com/article/nebraska-pete-ricketts-dave-heineman-endorse-mike-flood-congress/38844614

[8] https://sos.nebraska.gov/sites/sos.nebraska.gov/files/doc/elections/2022/2022_Election_Calendar.pdf

be tried closer to home. *See* Charles Alan Wright & Mary Kay Kane, 20 Fed. Prac. & Proc. Deskbook § 45 (2d ed., Apr. 2019 Update).

The following ten factors guide the decision whether to transfer under Rule 21(b): (1) the location of the defendant; (2) the location of witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of the defendant's business if transfer were denied; (6) the expense to the parties; (7) the location of counsel; (8) the accessibility of the trial location; (9) the docket condition of each district involved; and (10) any other special elements that might affect the transfer. *See Platt v. Minn. Mining Co.*, 376 U.S. 240, 243–44 (1964). None of these factors is dispositive; the court decides how much weight to give each one. *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

### 1. Congressman Fortenberry's location favors transfer.

"The primary concern of Rule 21(b) is to 'minimize the inconvenience to the defense.'" *United States v. McDonald*, 740 F. Supp. 757, 761 (D. Alaska 1990) (quoting Wright, Federal Prac. & Proc., Crim. 2d § 343, at 260 (1982)). This makes sense considering the Sixth Amendment's concern for ensuring the rights of defendants not to be tried in districts far from their homes, and to which they have little connection. *See Hyde v. Shine*, 199 U.S. 62, 78 (1905) ("To require a citizen to undertake a long journey across the continent to face his accusers, and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he ought not to be subjected if the case can be tried in a court of his own jurisdiction."). Congressman Fortenberry lives in Lincoln, Nebraska. As a member of the House of Representatives, Mr. Fortenberry must spend time in his district to meet with his constituents and serve their interests. His contacts to this district are minimal. Therefore, the first factor strongly favors transfer.

///
///
///

**2.     The location of witnesses favors transfer.**

The government has indicated it intends to call the following witnesses at trial:

| Witness | Location |
|---|---|
| Alexandra Kendrick | Washington, D.C. Area |
| Jessica Furst Johnson | Washington, D.C. Area |
| Toufic Baaklini | Washington, D.C. Area |
| SA Todd Carter | Washington, D.C. Area / International /Los Angeles Area |
| Individual H | Los Angeles Area |
| SA Edward Choe | Los Angeles Area |
| IRS CI James O'Leary | Los Angeles Area |

The defense tentatively intends to call the following witnesses at trial:

| Witness | Location |
|---|---|
| Congressman Fortenberry | Lincoln, Nebraska |
| Celeste Fortenberry | Lincoln, Nebraska |
| Jeffrey Bleimeister | Lincoln, Nebraska |
| Michael Schmidt | Lincoln, Nebraska |
| Nibras Bisetkey | Omaha, Nebraska |
| Trey Gowdy | South Carolina |
| Dr. Alan Castel | Los Angeles Area |
| Jeffrey Danik | Florida |

About half of the government's witnesses reside in or around Los Angeles, and half are on the East Coast. But all but one of the government's Los Angeles-based witnesses are government agents, whose job requires travel (and who have traveled as part of this investigation). Of the government's civilian witnesses, only one out of four—Individual

H—lives in Los Angeles. Meanwhile, only one of Congressman Fortenberry's tentative witnesses lives in Los Angeles, and five (including him and his wife) reside in Nebraska.

Therefore, the location of the witnesses favors transfer.

### 3. The location of the events at issue favors transfer.

The conduct that is the basis for this prosecution is Congressman Fortenberry's statements in Nebraska and Washington, D.C. *See* Dkt. No. 1. Neither of those statements occurred in California. Dkt. No. 59 at 4. The Indictment does not allege that any of the offense conduct occurred in California. *See* Dkt. No. 14.

This factor strongly favors a transfer.

### 4. The location of documents favors transfer.

Congressman Fortenberry does not foresee a dispute in this litigation over the condition or character of an original document. So, in this digitized era, it would ordinarily make sense to give the location of documents relatively limited weight.

However, in this case the review of discovery is governed by a restrictive protective order that prevents Congressman Fortenberry from reviewing certain sensitive documents outside the presence of defense counsel or a member of the defense team. *See* Dkt. No. 13 at ¶ 5(g) ("Defendant may see and review Cooperator Materials only in the presence of the Defense Team, and the Defense Team shall ensure that defendant is never left alone with any Cooperator Materials."). Thus, the relevant location is the place where both a member of the "defense team" and Congressman Fortenberry can be present. Given Congressman Fortenberry's responsibility to his constituents, it is inconvenient for him to travel to California to review discovery with the defense team. As a result, to review documents with the Congressman and prepare for trial, the defense must travel to Nebraska or Washington, D.C.[9] Therefore, the location of the documents favors transfer.

---

[9] The government has indicated that it does not object to the defense team reviewing documents with Congressman Fortenberry using Zoom or videoconferencing software, but that is tedious, more time-consuming, and ultimately inadequate.

### 5.  Disruption of Rep. Fortenberry's business favors transfer.

The public interest in minimizing the disruption of Congressman Fortenberry's legislative work is obviously very strong and holding the proceedings in Nebraska will greatly reduce the disruption that would occur if transfer were denied. Indeed, Congressman Fortenberry has already had to miss both pretrial hearings in this case due to scheduled votes in the House of Representatives. *See* Dkt. Nos. 43, 70. Accordingly, this factor strongly favors a transfer.

### 6.  It would be less expensive to the parties to try the case in Nebraska.

Trying the case in Nebraska would be less expensive for both parties due to the reduced costs associated with transporting and housing witnesses. If the case were tried in California, the government would have to fly most of its civilian witnesses across the country. Trying this case in Nebraska reduces the travel required for witnesses, and the cost of hotel and incidental expenses is significantly lower in Nebraska than in California.[10] Cf. *Hyde*, 199 U.S. at 78; *McDonald*, 740 F. Supp. at 761. This factor favors a transfer.

### 7.  The location of counsel is neutral.

Although Congressman Fortenberry's counsel is in California, counsel must spend considerable time in Nebraska to advise the Congressman and prepare for trial. Thus, as far as the defense is concerned, the cost and burdens associated with traveling to Nebraska and remaining there for trial are less than the costs of going back and forth.

Although the government's counsel resides in California, the government has presumably spent considerable resources traveling already to interview witnesses, including many on the East Coast. So, the burden to the government of traveling to Nebraska for trial

---

[10] *See* https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=NE&fiscal_year=2022&zip=&city= (Lodging Per Diem Rate for Omaha - $110, for all other locations - $96, Meals and Incidentals Per Diem Rate for Omaha - $64, for all other locations - $59); *compare* https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=CA&fiscal_year=2022&zip=&city=los%20angeles (Lodging Per Diem Rate for Los Angeles - $182, Meals and Incidentals- $74).

8

*AMENDED* MEMORANDUM OF POINTS & AUTHORITIES
RE MOTION TO TRANSFER VENUE

should be given only moderate weight. This is particularly true given that the government predicts this trial will last less than one week.

### 8. The accessibility of the trial location favors transfer.

Nebraska's federal courts are in Omaha and Lincoln. Both are convenient to Congressman Fortenberry, as well as his family and community. Omaha is served by airports with convenient flights from either Washington D.C. or California.[11]

Nebraska is also roughly equidistant from both California and Washington D.C., the two places where almost all the government's witnesses and counsel in this case reside. Accordingly, this factor favors a transfer.



### 9. The docket condition of Nebraska favors transfer.

The District of Nebraska has a far less congested docket than the Central District of California does. There are three active judges and no judicial vacancies in Nebraska. *See* Declaration of John Littrell at ¶ 2; Exhibit A (United States District Courts—National

---

[11] See https://www.aa.com/en-us/flights-from-los-angeles-to-omaha; https://www.aa.com/en-us/flights-from-dallas-to-omaha.

*AMENDED* MEMORANDUM OF POINTS & AUTHORITIES
RE MOTION TO TRANSFER VENUE

Judicial Caseload Profile, Nebraska).[12]  In the 12-month period ending June 2021, the District of Nebraska had 1,508 case filings, which amounted to 503 per judge (including 184 felony filings).  *See id.*  There were 496 weighted filings per judge during that time.[13]  *Id.*  Felony cases remained pending for an average of **11.3 months**.  *Id.*  In the 12-month period ending June 30, 2021, the average number of trials per judge was 16.  This is down slightly from the averages of previous years, and up from 14 the year before.  *See Id.*

By contrast, the Central District of California is exceptionally congested.  *Cf. United States vs. Coppola*, No. CR 14-117-BLG-SPW-02, 2016 WL 3926254, at *6 (D. Mont. July 18, 2016) (denying Rule 21 transfer from Montana to the Central District of California due to docket congestion).  There are currently 28 judgeships in the Central District of California.  *See* Declaration of John Littrell at ¶ 3; <u>Exhibit B</u>.[14]  However, 5 of those judgeships remain vacant.[15]  As of June 30, 2021, the median number of months that judgeships in CDCA remained vacant was 91.5 months.  *Id.*  In the 12-month period ending June 2021, the total number of case filings in the Central District of California was 17,597.  The total number of cases pending was 14,655.  *Id.*  That amounts to a total of 628 filings per judgeship, which is about 25% greater than the number of filings per judgeship in Nebraska.  *Id.*  The number of weighted filings per judge was 691, which was about 39%

---

[12] available online at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf

[13] Weighted filings consider the complexity and time-consuming nature of the civil and criminal cases assigned per district.  *United States vs. Coppola*, No. CR 14-117-BLG-SPW-02, 2016 WL 3926254, at *6 (D. Mont. July 18, 2016)

[14] available online at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf

[15] https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies

greater than in Nebraska. *Id.* Felony criminal cases remained pending for an average of **17.8 months** in CDCA, which is 57.5% higher than in Nebraska.

Meanwhile, the number of trials conducted in the Central District has dropped off considerably. Whereas in previous years was an average of 10 to 13 trials per judge, in the 12-month period ending June 30, 2021, there were only 4. *Id*; *see United States v. Brockman*, No. CR 20-00371 WHA, 2021 WL 28374, at *6 (N.D. Cal. Jan. 4, 2021) (finding Rule 21(b) transfer from Northern District of California to Southern District of Texas was appropriate because the transferee district showed "substantially less docketing delay," even taking into account the delay caused by the transfer itself).

Therefore, docket conditions strongly favor a transfer to Nebraska.

### 10. Special Factors: the suspension of jury trials in CDCA favors transfer.

Finally, the Central District of California's recent suspension of jury trials through the end of February 2022 strongly favors transfer to the District of Nebraska. This is particularly important in this case because Congressman Fortenberry has a compelling need to have his case tried as soon as possible to avoid both the personal and political harm that has been caused to him by this pending indictment.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to a speedy trial is "one of the most basic rights preserved by our Constitution." *Klopfer v. State of N.C.*, 386 U.S. 213, 226 (1967). This is because a pending prosecution "seriously interfere[s] with the defendant's liberty, whether he is free on bail or not, and [] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320–321 (1971).

Congressman Fortenberry first appeared on the Indictment on October 20, 2021. He therefore had a right to be tried no later than December 29, 2021. Dkt. No. 22. 18 U.S.C. § 3161(c)(1). The Congressman requested only a brief continuance of the trial to February

11
*AMENDED* MEMORANDUM OF POINTS & AUTHORITIES
RE MOTION TO TRANSFER VENUE

15, 2022, to give his counsel time to prepare. This Court made clear that further continuances should not be expected. *See* Dkt. No. 23.

The suspension of jury trials in this district through February 28, 2022, makes impossible the trial date that both parties and the Court agreed to and relied on. Moreover, it is not clear how long jury trials will remain suspended. As the Chief Judge made clear in his order, the suspension of jury trials could be renewed beyond February 28, 2022. Therefore, it is not clear when the Court will accommodate this case.

By contrast, the District of Nebraska has not suspended jury trials, despite the complications of COVID-19. *See* Declaration of John Littrell at ¶ 4; Exhibit C. Instead, the District of Nebraska has implemented protocols designed to safely conduct jury trials during the pandemic. These protocols include summoning extra jurors and maintaining a social distance of three feet between them during trial. During times of substantial or high transmission, all participants must wear masks. *Id*. Indeed, jury trials are scheduled to go forward in February 2022 despite the pandemic. *Id*. at ¶ 3. *See Brockman*, 2021 WL 28374, at *6 (finding transfer to less congested judicial district appropriate where the original district had "suspended all in-person proceedings for the time being due to the rate of COVID-19 transmission and the critical dearth of ICU capacity" but the transferee district intended to resume jury trials.). The fact that Nebraska is conducting jury trials, and California is not, strongly favors a transfer.

### 11. The interests of justice favor transfer to Nebraska.

Finally, the Court must evaluate whether transfer to Nebraska is in the interests of justice. *See* Fed. R. Crim. P. 21(b). It is not clear whether this factor should be considered in addition to the *Platt* factors, or as subsumed by them.

Considered alone, this factor favors transfer because the statutory basis for venue in this case results in a serious hardship to the defense. *See United States v. Gonzalez*, 683 F.3d 1221, 1227 (9th Cir. 2012). This Court held that venue was proper in California because the Congressman's statements were "directed at federal investigative efforts occurring in this district[.]" *Id*. But as this Court acknowledged in its ruling, circuit courts

are split on the question of whether venue in a false statements case can be based on place where the "effects" of the defendant's statement are "felt." Dkt. No. 59 at 9. Although this Court sided with the circuits that endorsed the "felt-in" test, it acknowledged that at least two circuits have rejected that test. *See id*.

The "felt-in" test, like the continuing offense doctrine, imposes a great hardship on the defendant and heightens the potential for prosecutorial abuse. *Cf. United States v. Johnson*, 323 U.S. 273, 275 (1944) (noting that the "leeway" provided by Congress with regard to continuing offenses "not only opens the door to needless hardships to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution."). The surest way to counterbalance that hardship and prevent abuse is to order a discretionary transfer under Rule 21(b).

## IV. CONCLUSION

For the foregoing reasons, Congressman Fortenberry respectfully requests that the Court transfer his case to the District of Nebraska pursuant to Rule 21(b).

Respectfully submitted,

Dated: January 25, 2022

**BIENERT KATZMAN
LITTRELL WILLIAMS LLP**

By: _____
   John L. Littrell
   Ryan V. Fraser
   *Attorneys for Defendant*
   *Hon. Jeffrey Lane Fortenberry*