TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:   (213) 894-0141
    E-mail:      mack.jenkins@usdoj.gov
                  jamari.buxton@usdoj.gov
                  susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-CR-00491-SB |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S EX PARTE APPLICATION FOR SPEEDY TRIAL ACT FINDINGS OF EXCLUDABLE DELAY</u> |
| v. | |
| JEFFREY FORTENBERRY, | |
| Defendant. | **CURRENT TRIAL DATE: 02-15-22**<br>**PROPOSED TRIAL DATE:  03-15-22** |

The United States of America, by and through its counsel of record, Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, seeks entry of an order excluding time from the Speedy Trial Act calculation of excludable delay, and continuing the trial in this matter.  Defendant Jeffrey Fortenberry opposes this <u>ex parte</u> application, but defense counsel John Littrell represents that he does not have a conflict for the government's proposed March 15, 2022 trial date.

## BACKGROUND

The Indictment in this case was filed on October 19, 2021. Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on October 20, 2021. The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial begin on or before December 29, 2021. On October 20, 2021, the Court set a trial date of December 14, 2021. Thereafter, the Court issued an order continuing the trial date to February 15, 2022 and found the interim period excludable in computing the time within which trial must commence pursuant to the Speedy Trial Act.

Defendant is on bond pending trial. The government estimates that its case-in-chief in this matter will last approximately 2-3 days. The government has produced discovery to the defense, including over 13,000 pages of written communications, reports, transcripts, articles, and other records and over 60 audio/visual recordings.

On January 11, 2022, the Court took under submission defendant's motion to compel discovery and motion to suppress statements. (Dkt. No. 71.) On January 18, 2022, defendant filed a second motion to suppress statements, which is not set for a hearing. (Dkt. No. 80.) On January 24, 2022, defendant filed a motion to change venue, which is set for a hearing on February 8, 2022. (Dkt. Nos. 87, 89, 92.) Pursuant to the Court's Criminal Standing Order, the parties are currently briefing joint motions in limine, which they plan to file on February 3, 2022 to be heard on February 8, 2022. As of the dates of this application, these pretrial motions are either pending a ruling or have yet to be fully briefed and heard.

By this application, the government seeks an order from this Court finding that the time between February 15, 2022 and March 15, 2022 should be excluded from the calculation of the time in which trial must commence, and continuing the trial to March 15, 2022.

//
//

## COVID-19 AND THE SUSPENSION OF JURY TRIALS

In March 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials. C.D. Cal. General Order No. 20-02 (Mar. 13, 2020). Although jury trials resumed in 2021, on January 3, 2022, following the alarming spread of the Omicron variant, the Chief Judge ordered a three-week suspension of all jury trials. C.D. Cal. Order of the Chief Judge No. 22-001 (Jan. 3, 2022). Upon a majority vote of the Executive Committee, that suspension was extended for five weeks through and including February 28, 2022. C.D. Cal. Order of the Chief Judge No. 22-002 (Jan. 19, 2022).

The temporary suspension of jury trials has been one of the many health and safety restrictions adopted in response to COVID-19. During the pandemic, the Court has imposed limitations on access to Court facilities, suspended grand jury proceedings, and maximized the use of video-teleconference and telephonic hearings. See, e.g., C.D. Cal. Order of the Chief Judge No. 21-105 (Oct. 4, 2021); C.D. Cal. General Order No. 21-08 (Jun. 11, 2021); C.D. Cal. General Order No. 21-03 (Mar. 19, 2021); C.D. Cal. Order of the Chief Judge No. 20-179 (Dec. 7, 2020); C.D. Cal. General Order No. 20-09 (Aug. 6, 2020); C.D. Cal. General Order No. 20-08 (May 28, 2020); C.D. Cal. General Order No. 20-02 (Mar. 13, 2020).

The Court's orders have been based on the California Governor's declaration of a public-health emergency in response to COVID-19 and the Centers for Disease Control's guidance to reduce exposure to the virus and slow its spread. See, e.g., General Order 20-02, at 1; Chief Judge Order 20-042, at 1-2; General Order 20-09, at 1. Local conditions have necessitated an especially robust response. California has reported over 7.5 million COVID-19 cases and over 78,000 deaths. See https://covid19.ca.gov/state-dashboard/. The Central District of California has been one of the hardest hit areas in the nation, with over 4 million reported cases and over 48,000 deaths. See https://www.nytimes.com/interactive/2021/us/california-covid-cases.html.

State and local orders at various times during the pandemic have required residents to stay home, prohibited travel, closed businesses, and suspended in-person schooling. See, e.g., California Executive Order N-33-20 (Mar. 19, 2020); Safer at Home, Public Order Under City of Los Angeles Emergency Authority (Mar. 19, 2020); California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020); Blueprint for a Safer Economy, https://covid19.ca.gov/safer-economy/. At one point during the pandemic, ICU availability in the Central District of California dropped to 0.0%. C.D. Cal. Order of the Chief Judge No. 21-002, at 1 (Jan. 6, 2021).

Given these facts, the Central District has implemented temporary jury trial suspensions to protect public health, reduce the size of public gatherings, and avoid unnecessary travel. See General Order 20-09, at 1; General Order 20-02, at 1-2. When jury trials resumed in May 2021, safety protocols were developed to protect the health and safety of trial participants. To limit the number of simultaneous jury trials, the First Street federal courthouse in downtown Los Angeles permitted only two jury trials to commence each week and only one per floor. Guidance promulgated by the Court covered a range of subjects, including courtroom ventilation and cleaning, masks and face shields, physical distancing, venireperson seating, courtroom layout options, sidebar proceedings, and juror deliberations. https://www.cacd.uscourts.gov/sites/default/files/documents/Conducting%20Jury%20Trials%20During%20the%20COVID-19%20Pandemic.pdf.

More recently, however, with the spread of the Omicron variant and breakthrough cases among vaccinated individuals, the United States has experienced a dramatic increase in COVID-19 cases. On January 3, 2022, the United States reported a record number of new cases, surpassing one million new cases in a single day for the first time during the pandemic. See https://www.cnbc.com/2022/01/04/us-counts-over-1-million-new-daily-covid-cases-in-global-record-.html. The Central District has been especially hard hit. At the beginning of January 2022, the average daily case count in Los Angeles County alone jumped nearly 400% from

December 2021.  See https://www.nytimes.com/interactive/2021/us/california-covid-cases.html.  On average, every infected person in the county was transmitting the virus to two other people.  See https://www.latimes.com/california/story/2022-01-03/california-coronavirus-transmission-rate-now-at-highest-point-since-pandemic-began.  Accordingly, on January 3, 2022, in order "to protect public health and safety, as well as ensure the continuous performance of essential functions and operations of the Court," the Chief Judge ordered a three-week suspension of jury trials "through and including January 24, 2022."  Chief Judge Order 22-001 at 2-3.

Thereafter, on January 19, 2022, the Executive Committee voted to extend the temporary suspension for five weeks "through and including February 28, 2022."  Chief Judge Order 22-002 at 3.  That decision was supported by findings that the seven counties comprising the Central District of California had all experienced substantial increases in reported COVID-19 cases.  Id.  Over the course of the week preceding the Executive Committee's vote, those seven counties averaged a total of nearly 63,000 newly reported cases every single day.  Id. at 2-3.  And during that same week, there were 106 confirmed or suspected COVID-19 cases reported by Court employees in the Central District.  Id. at 3.

"[G]iven the extreme transmissibility of the Omicron variant and the high level of community transmission in the Central District of California," the Chief Judge's Order found that "conducting jury trials would place court personnel, attorneys, parties, and prospective jurors at great risk of contracting COVID-19, thereby threatening the health of those individuals, placing further strain on an already overburdened healthcare system, and jeopardizing the ability of court personnel to perform essential functions and operations of the Court."  Id.  Accordingly, the Order concluded that the temporary suspension of jury trials "serves the ends of justice and outweighs the interests of the public and defendants in a speedy trial."  Id. at 3-4.

//
//

## DISCUSSION

The time between February 15, 2022 and March 15, 2022 should be excluded from the Speedy Trial Act calculation of the date by which trial must commence.

The Speedy Trial Act generally requires a trial to begin within 70 days of indictment or initial appearance, whichever occurs later, 18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of the charges (with or without prejudice) if that deadline is not met, § 3162(a)(2).

Certain periods of time, however, are excluded from the Speedy Trial Act's trial clock. Id. § 3161(h). Some periods of time are automatically excluded, including periods of delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion. Id. § 3161(h)(1)(D). Other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Id. § 3161(h)(7)(A).

In this case, the time between February 15, 2022 and March 15, 2022 should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A) and, the extent applicable, under 18 U.S.C. § 3161(h)(1)(D).

Although General Orders and Chief Judge Orders have addressed district-wide health concerns and made Speedy Trial Act findings under § 3161(h)(7)(A), see, e.g., Chief Judge Order 22-002 at 2-3; General Order 20-02, at 2 ¶ 4; General Order 20-09, at 2 ¶ 6(a), individualized findings are also required. Ends-of-justice continuances are permissible only if "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). "[W]ithout on-the-record findings, there can be no exclusion." Zedner v. United States, 547 U.S. 489, 507 (2006). The period of

exclusion must also be "specifically limited in time." United States v. Lewis, 611 F.3d 1172, 1176 (9th Cir. 2010).

As the above facts reflect, the ends of justice justify excludable time here. The COVID-19 pandemic warrants an ends-of-justice continuance. See United States v. Olsen, --- F.4th ----, 2022 WL 60361 (9th Cir. 2022). Olsen "provide[d] guidance on the application of the Speedy Trial Act's ends of justice provision, 18 U.S.C. § 3161(h)(7)(A), in the context of the challenges presented by the COVID-19 pandemic." Id. at *7. The Ninth Circuit rejected the view that the pandemic permits ends-of-justice continuances only if it makes trials impossible, and explained that § 3161(h)(7)(A)(i) requires a court to grant a continuance if denying one would result in a miscarriage of justice, considering the unique facts of the case and any safety precautions the Court has adopted due to the pandemic. Id. at *7-9.[1]

The Ninth Circuit set forth a non-exhaustive list of factors relevant to the application of the ends-of-justice provision "in the context of the COVID-19 pandemic":

> (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant

---

[1] Other cases considering the application of the ends-of-justice provision to natural disasters or other crises have likewise taken a flexible approach, affording district courts wide discretion to manage their cases through challenging circumstances. See, e.g., Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy Trial exclusion after eruption of Mount St. Helens); accord United States v. Stallings, 701 F. App'x 164, 170-71 (3d Cir. 2017) (same, after prosecutor had "family emergency"); United States v. Hale, 685 F.3d 522, 533-36 (5th Cir. 2012) (same, where case agent had "catastrophic family medical emergency"); United States v. Scott, 245 Fed. Appx. 391, 394 (5th Cir. 2007) (same, after Hurricane Katrina); United States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (same, after a "paralyzing blizzard" and the informant was hospitalized); United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (same, after the September 11 attacks).

are dismissed; and (7) whether the district court has the ability to safely conduct a trial.

Id. at *9. Those factors "facilitate[] the proper balance of whether the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in convening a speedy trial." Id.

Although the current Court-ordered suspension prevents the government from prosecuting any jury trials through and including February 28, 2022, Olsen applies no matter whether jury trials remain suspended on the date when the defendant's trial is set. Nothing in the Ninth Circuit's reasoning limits its opinion's application to circumstances in which trials remain suspended. See id. at *3 (noting the challenges in determining both "when and how to conduct jury trials without endangering public health and safety" (emphasis added)). The "challenges presented by the COVID-19 pandemic," id. at *7, would also include, for instance, restrictions on the number of jury trials that may proceed simultaneously and the backlog of cases that accumulate during periods of trial suspension. Those factors arise uniquely "in the context of the pandemic," id. at *9, and not from "general congestion of the court's calendar," 18 U.S.C. § 3161(h)(7)(C) (emphasis added).

Here, the factors outlined in Olsen support a continuance. The COVID-19 pandemic has required people to take extreme measures to limit contact, and the Central District of California has ordered temporary suspensions of jury trials to safeguard public health. Jury trials are currently suspended, and the prior suspension of trials resulted in a substantial backlog of cases. Moreover, even when jury trials previously resumed, the Central District limited the number of simultaneous trials in order to maintain social distancing and protect all trial participants.

Failure to grant a continuance would make a continuation of the proceeding impossible because trials are currently suspended. Defendant might thereby avoid prosecution, which would be a miscarriage of justice. Furthermore, a continuance is necessary to protect parties, witnesses, jurors, venirepersons, counsel, and Court

personnel. Accordingly, a continuance of the trial date in this matter will serve the ends of justice and outweigh the interests of the public and defendant in a speedy trial.

An ends-of-justice delay is particularly appropriate in this case because defendant is not detained pending trial; he has previously agreed to a two-month continuance of the trial; and defendant (a federal public official) faces important charges alleging that he made materially false statements to, and engaged in a scheme to falsify and conceal facts from, federal agencies, for which he has not taken any accountability to date. Moreover, the Central District has determined that its ability to safely conduct trials depends on limiting the number of jury trials that can occur simultaneously. This trial poses a special safety risk because it involves numerous witnesses and their counsel, some of whom must travel, and thus would put themselves and others at risk if they were to come to court during this crisis. Multiple public agencies have recommended against unnecessary travel, particularly for vulnerable populations.

In addition, due to the restrictions imposed by current public-health concerns--particularly given the complexity of this case--it is also unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within Speedy Trial Act time limits. A review of the docket shows that there has been extensive pre-trial litigation in this case, with more to follow. Under these unusual and emergent circumstances, denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

//
//
//
//
//
//
//
//

Based on the foregoing, the Court should enter a case-specific order finding excludable time under 18 U.S.C. §§ 3161(h)(1)(D) and (h)(7)(A). However, nothing in the Court's order should preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence. For example, to the extent applicable, time should also be excluded based on delays resulting from any pretrial motions under 18 U.S.C. § 3161(h)(1)(D).

Dated: January 27, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

   /s/
SUSAN S. HAR
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA