TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:  (213) 894-0141
    E-mail:  mack.jenkins@usdoj.gov
           jamari.buxton@usdoj.gov
           susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00491-SB |
|---|---|
| Plaintiff, | JOINT MOTION *IN LIMINE* NO. 1: GOVERNMENT'S MOTION TO EXCLUDE IMPROPER ARGUMENT RE: MATERIALITY; DECLARATION OF SUSAN S. HAR |
| v. | |
| JEFFREY FORTENBERRY, | |
| Defendant. | Hearing Date:  2/8/2022<br>Hearing Time:  8:00 a.m. |
| | Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

      Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, and defendant

1

JEFRREY FORTENBERRY ("defendant"), by and through his counsel of record, John Littrell and Ryan Fraser, hereby file their joint Motion in Limine No. 1 regarding the government's motion to preclude improper arguments that misstate the law and definition of materiality.

**The government seeks to preclude the defense from improperly arguing or suggesting (1) materiality requires defendant's statements to have actually affected the agency's decisions or activities, either as a matter of law or because of the way the Indictment is pled; or (2) that the subjective intent or state of mind of the individual investigators is relevant to the jury's analysis of materiality. Such arguments and references would prejudice the government by improperly elevating the definition of materiality beyond what the law requires and would confuse and mislead the jury.** Defendant opposes the motion.

Dated: February 3, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Dated: January 31, 2022

_____/s/ per email authorization_____
JOHN LITTRELL
RYAN FRASER

Attorneys for Defendant
JEFRREY FORTENBERRY

# GOVERNMENT'S MOTION

## I.  INTRODUCTION

Defendant is charged with a scheme to falsify and conceal material facts, in violation of 18 U.S.C. § 1001(a)(1) (Count One), and making materially false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts Two and Three).  The issues at trial are whether defendant willfully made materially false statements—and falsified, concealed, or covered up material facts by a scheme—to federal investigators.

Facing undisputed evidence of the falsity of his statements, defendant has, throughout this litigation, repeatedly sought to elevate and distort the standard of materiality beyond what is required by law.  Specifically, defendant has continuously asserted that, to prove materiality, the government must show that defendant's false statements <u>actually</u> affected the investigation—either because the law so requires or, more recently, because the Indictment purportedly pled only an "actual influence theory."  Further, defendant has argued that materiality can be undermined based on the subjective intent or state of mind of the individual investigators who heard defendant's false statements because they already knew the truth; took steps in the investigation because they were biased, upset, or offended; or because the investigation was purportedly already over when defendant lied to them.  Defendant is wrong about both the law and facts and should not be permitted to confuse or mislead the jury in this way.

Accordingly, the government seeks to preclude the defense from arguing to the jury either that materiality requires defendant's statements to have actually affected the agency's decisions or activities or that the subjective intent or state of mind of the individual investigators should affect the jury's analysis of materiality.

## II.  ARGUMENT

Instruction No. 24.10 of the Ninth Circuit Criminal Model Jury Instructions sets forth that an element of a section 1001 violation for making a false statement is: "the statement was material to the activities or decisions of the [agency]; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or

activities." As the Court has already ruled, this is the correct articulation of the law. (Dkt. No. 59 ["Dec. 29, 2021 Order"] at 10-11.) The Supreme Court and Ninth Circuit have repeatedly and consistently explained that the test for materiality is whether the statement "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770 (1988); United States v. Serv. Deli Inc., 151 F.3d 938, 941 (9th Cir. 1998). From that well-established test, some common principles have emerged:

- Materiality is evaluated based on the intrinsic capabilities of the false statement itself.[1]
- Materiality is satisfied if the false statement related to the subject of the investigation or was relevant to the investigator's task.[2]
- Actual influence on the agency is irrelevant.[3]
- Materiality is not undermined even if actually influencing the specific federal investigators was impossible.[4]

Taken together, the case law makes clear that, *first*, section 1001 materiality is concerned with the <u>inherent qualities of the statement</u>. And that is because materiality,

---

[1] See, e.g., United States v. Peterson, 538 F.3d 1064, 1072 (9th Cir. 2008); United States v. Facchini, 832 F.2d 1159, 1162 (9th Cir. 1987); United States v. Salinas-Ceron, 731 F.2d 1375, 1377 (9th Cir. 1984), vacated on other grounds by 755 F.2d 726 (9th Cir. 1985).

[2] See, e.g., Brogan v. United States, 522 U.S. 398, 402 (1998); United States v. Vaughn, 797 F.2d 1485, 1490 (9th Cir. 1986) ("Section 1001 prohibits the making of material false representations to a government agency regarding a matter within the agency's discretion." (emphasis added)); see also United States v. Flynn, 507 F. Supp. 3d 116, 132 (D.D.C. 2020) (rejecting the argument that materiality requires more than "mere relevance" or that there be a reasonable likelihood of influence and explaining "that is not the law").

[3] See, e.g., Brogan, 522 U.S. at 402-03; Serv. Deli Inc., 151 F.3d at 941; United States v. Boone, 951 F.2d 1526, 1545 (9th Cir. 1991); United States v. Burke, 425 F.3d 400, 409 (7th Cir. 2005) ("That the prosecutors knew (or thought they knew) the answers to the questions they asked Burke does not make the information less material."); United States v. Lupton, 620 F.3d 790, 806–07 (7th Cir. 2010) ("We do not require the statement to actually influence the agency to which it was directed, or even that the agency rely on the statement in any way.").

[4] See, e.g., United States v. Goldfine, 538 F.2d 815, 821 (9th Cir. 1976) (materiality is "irrespective of whether actual favorable agency action was, for other reasons, impossible"); Salinas-Ceron, 731 F.2d at 1377 (false statements material "despite the agents' knowledge of their falsity").

2

1   like falsity, is about the defendant's conduct, and not the conduct of the individual agent
2   or other third party.  See United States v. Brennan, 452 F. Supp. 3d 225, 236 (E.D. Pa.
3   2020) (explaining that the essential conduct prohibited by section 1001 "is making a
4   '*materially* false statement,' rather than merely making any false statement"); (see also
5   Dec. 29, 2021 Order at 6, 8-9.)

6       *Second*, section 1001 looks to whether the statement had the intrinsic capability
7   (or natural tendency) of affecting the activities of the government agency.  Section 1001
8   reflects "the congressional intent to protect the authorized functions of governmental
9   departments and agencies from the perversion which might result from the deceptive
10  practices described."  Brogan, 522 U.S. at 403 (citation omitted).  United States v.
11  Whitaker, 848 F.2d 914 (8th Cir. 1988), put it well:

> [M]ateriality involves only the capability of influencing an agency's governmental functions, i.e., does the statement have a "natural tendency to influence or is it capable of influencing agency decision?"  The issue is whether the statements, viewed alone, were capable of influencing the function of the FDIC.  It is irrelevant what the agent who heard the statement knew at the time the statement was made.

17  Id. at 916 (citations omitted) (emphases added).  As Brogan and Whitaker illustrate, the
18  purpose of section 1001 is to protect the functioning of the agency as an entity.  For
19  these reasons, Instruction No. 24.10 instructs that a statement is material if it "had a
20  natural tendency to influence . . . the agency's decisions or activities" and not if it
21  actually influenced the decisions of the individual agent who heard the statement.

22      Consistent with that law, this Court explained that the "correct test for materiality"
23  is whether the false statement is "capable of influencing or affecting a federal agency"
24  and not whether the agency "rel[ied] on the information in fact."  (Dec. 29, 2021 Order
25  at 10 (quoting Serv. Deli Inc., 151 F.3d at 941).)  Quoting United States v. Lupton, the
26  Court further explained: "When statements are aimed at misdirecting agents and their
27  investigation, even if they miss spectacularly or stand absolutely no chance of
28  succeeding, they satisfy the materiality requirement of 18 U.S.C. § 1001."  (Dec. 29

Order at 8 (emphasis added).)  The Court's correct articulation of the materiality standard is the law of the case.  See Musacchio v. United States, 577 U.S. 237, 244–45 (2016) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (citation omitted)).

But even after the Court set forth the controlling definition of materiality, defendant has continued to argue a contrary standard.  In particular, defendant argues that the Indictment forecloses the government from relying on the correct standard of materiality (i.e., that the statement had a "natural tendency" to influence) and that presentation at trial of anything other than an "actual influence theory" would constitute a constructive amendment or variance.  The Court already rejected this argument, which defendant improperly raised for the first time in his reply brief to a failed motion to dismiss.  (See Dkt. No. 34 at 1-2; see also Dkt. No. 30 (Motion to Compel Discovery) at 8 (arguing that the government did not plead the "capable of affecting theory of materiality").  That is, the Court concluded that the Indictment properly alleged materiality and, specifically, that defendant's false statements were capable of influencing the investigation.  (Dec. 29, 2021 Order at 11.)  There can be no constructive amendment (or variance) at trial when the presentation of evidence aligns with what was alleged; and here, the Indictment alleged that defendant's statements were material and therefore, had the natural tendency to influence the investigation.[5]  See United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002) (constructive amendment occurs when there is a different complex of facts presented at trial or a substantially altered crime; fatal variance occurs when proof involves a single, materially different set of facts (from the indictment) that prejudices defendant's substantial rights).

Defendant also continues to recycle arguments from his failed motion to dismiss (see Dkt. No. 17), including that materiality can be undermined based on the subjective intent or state of mind of the investigators to whom defendant lied because they already

---

[5] Defendant has repeatedly referred to the materiality standard as the "capable of influencing *theory*."  Supreme Court and Ninth Circuit law defining materiality as having the natural tendency to influence the agency's decisionmaking is an articulation of the controlling *law*, not a "theory" that the government can opt to pursue or not.

4

knew the truth; took investigative steps because they were biased, upset, or offended; or because the investigation was purportedly already over when defendant lied.[6] Such arguments are at odds with the cases defining materiality as an objective standard by which the jury is to look at "the intrinsic capabilities of the false statement itself" and not the "possibility of the actual attainment of its end." Peterson, 538 F.3d at 1072; Facchini, 832 F.2d at 1162 (materiality test is "the intrinsic capabilities of the false statement itself" and "is not measured by effect or magnitude"). They are also contrary to the cases explaining that materiality is "irrespective of whether actual favorable agency action was, for other reasons, impossible," Goldfine, 538 F.2d at 821, and that the fact that prosecutors knew the answers did "not make the information less material," Burke, 425 F.3d at 409. Most recently, exemplifying defendant's misconstruction of the law, defense counsel repeatedly argued that evidence of a prosecutor's intent to "punish" defendant for his lies would be relevant to undermine materiality.[7] In fact, federal investigators seeking to hold an individual accountable for a crime, to include punishment, is not evidence of a bad purpose—it establishes fulfillment of duty. In any event, the agent's subjective knowledge and intent do not undermine materiality and allegations of illegitimate intent are unsupported by credible evidence.

Indeed, the defense's argument would elevate the materiality standard three degrees above what the law requires. Beyond demanding that the government prove the false statement actually influenced the agency's decisions and activities (causation; one degree), defendant also demands that the government prove those consequent decisions and activities were both objectively legitimate and necessary (two degrees) and made only with the purest of subjective investigative intents and purposes by the individual government agents (three degrees). None of that is supported by the case law.

---

[6] Quite the contrary, none of the central subjects of the FECA investigation (namely, Gilbert Chagoury, Toufic Baaklini, and Joseph Arsan) had resolved their cases before defendant's two interviews in March and July of 2019. See https://www.justice.gov/usao-cdca/pr/lebanese-nigerian-billionaire-and-two-associates-resolve-federal-probe-alleged (with links to agreements).

[7] (See Tr. of January 11, 2022 Hr'g at 14-17.)

5

# DEFENDANT'S OPPOSITION TO MIL No. 1

**1. The government must prove Congressman Fortenberry's statements had an actual effect on the government's investigation because that is the theory the government presented to the grand jury, and the basis for the indictment.**

The government could have, but did not, allege in the Indictment that Congressman Fortenberry's statements were "capable of" influencing the investigation. Instead, the government alleged that Congressman Fortenberry made statements "in an interview **affecting** the Federal Investigation in the Central District of California." Dkt. No. 1 at ¶¶ 18 (Count 1), 20 (Count 2), 21 (Count 3) (emphasis added). When the government presented an **actual affect** theory of materiality to the grand jury, it bound itself to present the same theory to the *petit jury* (if it obtained an indictment). *See United States v. Adamson*, 291 F.3d 606, 612, 616 (9th Cir. 2002) (citing *Stirone v. United States*, 361 U.S. 212, 215–16 (1960); *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983)); *see also United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014) (defining constructive amendment as altering the terms of the indictment, "either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them").

The government contends the Court has already ruled against the defense on this point. *See* Dkt. No. 59 at 10. But the Court ruled only that the government had adequately *pled* materiality, not whether its *proof* of materiality matched the theory that it presented to the grand jury. As the Court emphasized, an indictment need only provide allegations that track the elements of the crime charged, and in this Circuit an indictment need not allege materiality at all. *Id*. at 11. Congressman Fortenberry respectfully requests that the Court confine the government's proof to the theory of the case it presented to the grand jury to avoid a constructive amendment of the indictment, or in the alternative, a fatal variance.

///

///

///

**2. The subjective intent of the prosecutors is relevant to rebut the government's proof of materiality, even under a "capable of influencing" theory.**

Congressman Fortenberry's theory of the defense in this case is that he did not lie to the government. He told the truth as he knew and understood it. However, Congressman Fortenberry also intends to defeat the government's showing of materiality by establishing that his statements could not have affected the investigation because it was a setup in which the outcome was predetermined from the start. *See* Defendant's Opposition to Government MIL #2. Even if materiality is a wholly objective standard, Congressman Fortenberry has a right to present this defense. Evidence of the investigators' subjective intent is relevant to determine (1) what decision the government was trying to make, and (2) whether the statements *in this case* were capable of influencing that decision.

> **a. Evidence of the investigators' subjective intent is relevant to determining the scope of the investigation and the decision the government was trying to make in this case.**

Even assuming materiality is an objective standard, it cannot be completely divorced from the facts of the case. The government must still prove that Congressman Fortenberry's statements affected *this* investigation, not some theoretical investigation. The only question is what level of abstraction applies.

The Ninth Circuit recognizes materiality depends on context. *United States v. Serv. Deli Inc.*, 151 F.3d 938, 942 (9th Cir. 1998) ("[W]e conclude that Service Deli's denial of its price sharing conduct was, *in the circumstances of this case*, a material misrepresentation." (emphasis added); *see United States v. Bonds*, 784 F.3d 582, 585 (9th Cir. 2015) (*en banc*) (Kozinski, J., concurring) ("We evaluate the statement in the context in which it was made." (cleaned up)). Sister circuits agree. *See, e.g., United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) ("Analysis of the misrepresentations must be in the context in which they were made."); *Weinstock v. United States*, 231 F.2d 699, 702 (D.C. Cir. 1956) ("Materiality must be judged by the facts and circumstances in the particular case."). As the D.C. Circuit explained, "What might [be] material under other facts and circumstances

or in another context [may be] inconsequential and of no weight under the circumstances and in the context actually existing." *Id*. at 703.

This focus on context makes sense. Materiality does not exist in a vacuum, and jurors cannot decide whether a statement had the capacity to influence an agency's decision without understanding what the agency's decision was and under what circumstances it was made. *See United States v. Gaudin*, 515 U.S. 506, 512 (1995) (explaining jurors must first decide "what decision was the agency trying to make" to determine materiality); *United States v. Abrahem*, 678 F.3d 370, 373 (5th Cir. 2012) ("[T]he first step in the analysis is to ask two questions of purely historical fact (1) what statement was made, and (2) what decision the agency was trying to make. The third question is whether . . . the statement was material to the decision the agency is trying to make." (cleaned up)). This contextual analysis is wholly consistent with an objective focus on "the intrinsic capabilities of the false statement itself." *United States v. Goldfine*, 538 F.2d 815, 820 (9th Cir. 1976) (internal quotation marks omitted); *see United States v. Johnson*, 19 F.4th 248, 257 (3d Cir. 2021) ("Deciding whether a statement is 'material' still requires a court to determine the subsidiary question of 'what decision was the agency trying to make?'" (cleaned up)).

If this investigation a setup with a pre-ordained outcome, as Congressman Fortenberry contends, then nothing the Congressman said could have affected the government's decision-making. Indeed, in that case, there would be no decisions to influence. And determining whether this investigation was a setup depends on the subjective intent of the prosecutors and agents in this case.

### b. Evidence of investigators' subjective intent is relevant to rebut the government's proof of materiality under an objective standard.

Congressman Fortenberry must have an opportunity to present evidence and argument regarding the subjective intent of the prosecutors to pursue this investigation, not as a search for the truth, but instead to vindicate their personal feelings (for example, indignation or animus toward the Congressman based on a false conclusion that he lied to investigators), or political bias (the desire to undermine a Republican candidate).

Whether a particular statement actually influenced an agency's decision-making is a relevant factor for the jury to consider when determining materiality, even under an objective materiality standard. *See United States v. Garcia-Ochoa*, 607 F.3d 371, 378 (4th Cir. 2010) ("Actually influencing an agency to act is proof positive that a statement is capable of influencing an agency to act."); *United States v. Williams*, 865 F.3d 1302, 1310 n.12 (10th Cir. 2017) (similar).

The common-sense proposition that evidence of actual effects is relevant to an inquiry into potential effects is consistent with Ninth Circuit case law generally approving admission of subjective evidence to resolve objective questions. For example, in determining whether a reasonable person would consider a statement a threat—an objective standard—jurors may consider the actual listener's reaction to the statement. *See United States v. Bagdasarian*, 652 F.3d 1113, 1119 (9th Cir. 2011). To resolve whether a threat had lost its force, requiring a prison escapee to surrender—an objective test—jurors "[o]f course" may consider "evidence of a defendant's subjective beliefs," which "will always be relevant to the objective analysis." *United States v. Lopez*, 885 F.2d 1428, 1433-34 (9th Cir. 1989), overruled on other grounds by *Schmuck v. United States*, 489 U.S. 705 (1989). *See also United States v. Phan*, 27 F. App'x 822, 823 (9th Cir. 2001) (unpublished) (holding, on whether defendant was in custody, his "subjective view is relevant, but not determinative because we look at the objective circumstances involved").

Congressman Fortenberry has a Constitutional right to present evidence that his statements did not actually influence the government's decisions and activities *in this case*. *See United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) ("This right [to present a defense] includes, at a minimum, the right to put before a jury evidence that might influence the determination of guilt." (cleaned up)). The evidence supports that conclusion, see Government's MIL #2. This is particularly true if the government presents evidence that Congressman Fortenberry's statements *did* affect its investigation, as the government plans to do. *See United States v. Waters*, 627 F.3d 345, 357 (9th Cir. 2010). To permit the government to present evidence and argument of an actual effect, but not give Congressman

Fortenberry the opportunity to prove no actual effect, would create an "imbalance in the evidence" and leave the jury with a "a one-sided picture" of the facts. *Id*.

### 3. The investigators' subjective intent is relevant to determining whether this investigation falls within an authorized government function.

The prosecutors' subjective intent in this case is also relevant to whether Congressman Fortenberry's statement is within the jurisdiction of the United States, which is another element the government must prove. *See* Ninth Circuit Model Criminal Jury Instruction No. 24.10. "To satisfy section 1001's jurisdiction requirement, the false statement must concern the 'authorized functions of an agency or department' rather than 'matters peripheral to the business of that body.'" *United States v. Facchini*, 874 F.2d 638, 641-42 (9th Cir. 1989) (*en banc*) (quoting *United States v. Rodgers*, 466 U.S. 475, 479-80 (1984)). "To establish jurisdiction, the information received must be directly related to an authorized function of the federal agency." *Facchini*, 874 F.2d at 642.

The FBI and the Department of Justice are authorized to detect and prosecute crimes against the United States. *Rogers*, 466 U.S. at 479-80. But they are not authorized to pursue personal vendettas or promote or defeat political candidates. Congressman Fortenberry has the right to present evidence and argument that this investigation was motivated by animus and bias, rather than an attempt to detect and prosecute crimes against the United States.

**GOVERNMENT'S REPLY**

Defendant should be precluded from making improper arguments that contravene precedential law. He <u>cannot</u> argue to the jury that the government has not proven materiality because:

- his statements did not actually affect the individual investigators;
- it was "impossible" for the individual agents and prosecutors to be affected by his statements; or
- the investigators acted out of some unestablished bias, animus, offense, or other subjective emotion.

Defendant sets up a strawman argument when he argues that the context, or the subject, of the investigation, is relevant to materiality. But no one is arguing otherwise. Indeed, that is what the cases cited by the government confirm: so long as defendant's statements are related to the subject of the agencies' investigation, they are material. <u>Brogan v. United States</u>, 522 U.S. 398, 402 (1998) (materiality is when "investigators are told a falsehood <u>relevant to their task</u>" (emphasis added)); <u>United States v. Vaughn</u>, 797 F.2d 1485, 1490 (9th Cir. 1986) ("Section 1001 prohibits the making of material false representations to a government agency <u>regarding a matter within the agency's discretion.</u>" (emphasis added)); <u>see also</u> <u>United States v. Flynn</u>, 507 F. Supp. 3d 116, 132 (D.D.C. 2020) (rejecting the argument that materiality requires more than "mere relevance" and explaining "that is not the law").

But it does not follow that, because materiality is satisfied if the statement pertained to the <u>subject</u> of the investigation, that materiality also requires the statement to have also had <u>some potential or possibility of actually and successfully interfering with or obstructing the investigation</u>. The two are not coextensive, and the latter defense argument has been cut off by the Supreme Court and Ninth Circuit time and time again. Thus, defendant's unsupported logical leap regarding materiality in this regard fails. (<u>See</u> Opp'n at 3 ("If this investigation [was] a setup with a pre-ordained outcome, as

Congressman Fortenberry contends, then nothing the Congressman said could have affected the government's decision-making.").)

The evidence that the government will put on at trial regarding the investigation will be objective; that is, evidence of the actions taken by the government as a collective entity, following defendant's false statements, which include "decision-making" and "outcome[s]" related to other subjects of the investigation (e.g., Chagoury, Baaklini). (See id.) In that regard, the subjective intents or motives of the individual agents are irrelevant. It does not undermine the fact of the objective next step taken in the investigation—for instance, to obtain cell-site data for defendant and Baaklini to evaluate if their geo-locations showed any in-person meetings or to question Chagoury about his relationship with defendant—regardless of whether hypothetically an individual agent subjectively thought these investigative steps were unnecessary (which was not the case).

At every opportunity, defendant has attempted to imbue the phrase "capable of influencing" with a meaning that is rejected by the law. "Capable of influencing" in the context of section 1001 does not mean literal capability or possibility; it means the statement intrinsically had the "natural tendency to influence" the agency's decisions because it related to its investigation. (See Ninth Circuit Model Jury Instruction No. 24.10.) Defendant should be precluded from using the trial as the next opportunity to make his legally improper arguments.