TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:  (213) 894-0141
    E-mail:    mack.jenkins@usdoj.gov
                jamari.buxton@usdoj.gov
                susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00491-SB |
|---|---|
| Plaintiff, | JOINT MOTION *IN LIMINE* NO. 2: GOVERNMENT'S MOTION TO EXCLUDE IMPROPER REFERENCE OR EVIDENCE REGARDING ALLEGED POLITICAL PROSECUTION; DECLARATION OF SUSAN S. HAR |
| v. | |
| JEFFREY FORTENBERRY, | |
| Defendant. | |
| | Hearing Date: 2/8/2022 |
| | Hearing Time: 8:00 a.m. |
| | Indictment: 10/19/2021 |
| | Pretrial Conference: 2/8/2022 at 8:00 a.m. |
| | Trial: 2/15/2022 at 8:00 a.m. |
| | Last Day: 3/2/2022 |

      Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, and defendant

1

JEFRREY FORTENBERRY ("defendant"), by and through his counsel of record, John Littrell and Ryan Fraser, hereby file their joint Motion in Limine No. 2 regarding the government's motion to exclude improper reference or evidence related to any alleged political prosecution.

**The government seeks to exclude any evidence or argument attacking the prosecution or prosecution team as politically motivated, or suggesting the potential consequences of the indictment, conviction, or sentence on the 2022 United States Congress elections, the Congressional makeup, defendant's constituents, or defendant, as irrelevant and inadmissible under Rules 401 and 403. Such arguments and references would unfairly prejudice the government by encouraging the jury to render verdicts based on considerations other than the jury instructions and the facts, confuse and mislead the jury, and waste time.** Defendant opposes the motion.

Dated: February 3, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

　　/s/
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Dated: January 31, 2022

　　/s/ per email authorization
JOHN LITTRELL
RYAN FRASER

Attorneys for Defendant
JEFRREY FORTENBERRY

# GOVERNMENT'S MOTION

## I. INTRODUCTION

In his ongoing campaign to deflect and distract from his own crimes and largely undisputed conduct, defendant seeks instead to put the government on trial and politicize and personalize the charges. The defense seeks to make improper arguments about the prosecution team's purported political motives, and introduce purported evidence that is misleading, irrelevant, and prejudicial. The alleged political motivations of the prosecution team are not legally relevant to the materiality element (or any other valid legal defense) and are inadmissible under Rule 401. Further, evidence of the purported political reasons for, and consequences of, the prosecution are unduly prejudicial—particularly when, as here, the defense lacks a good-faith factual basis for making such claims; they are also confusing and misleading to the jury and a waste of time. Indeed, such arguments and evidence would encourage jury nullification, in contravention of the law that verdicts be based on the law and evidence. See Merced v. McGrath, 426 F.3d 1076, 1079–80 (9th Cir. 2005) (nullification is "a violation of a juror's sworn duty to follow the law as instructed by the court."). It would also open up the trial to rebuttal evidence showing the integrity of the prosecution and prosecutions of other public officials of all political parties by the CDCA USAO.

Accordingly, the government seeks to exclude any evidence (including through cross-examination) and arguments regarding: (1) the alleged political affiliations or activities of the individual members of the prosecution team; (2) the purported "political motivations" behind the investigation and prosecution, including through improper references to "Biden's FBI" or the "California prosecutor," and (3) the potential political impact of the indictment, conviction, or sentence, including on the 2022 United States Congress elections, the Congressional makeup, defendant's constituents, or defendant.

## II. ARGUMENT

This prosecution stems from an investigation that began in 2015 and focused on a Nigerian billionaire who financially supported prominent members of both political

parties. But the defense seeks to argue that the investigators were biased towards defendant (a Nebraska Republican) and used this prosecution to defeat a Republican incumbent. Consistent with his pre-trial litigation tactics and statements to the press, defendant seemingly intends to inject politics into his trial as much as possible, including with evidence of his party affiliation and political career, the status of which party held the White House when he was indicted, and the timing of the 2022 midterm elections.

Such evidence is inadmissible under Rules 401 and 403. The defense should also be precluded from falsely arguing or suggesting to the jury that any decisions made in this case were based on political considerations, particularly since defendant cannot show how any purported bias affected the investigative steps taken in this case or the ultimate charging decision, all of which were reviewed and approved at multiple levels throughout the Department of Justice.

### A. Argument or Evidence That the Prosecution Was "Politically Motivated" Is Legally Irrelevant and Not an Issue for the Jury

In addition to being misleading, defendant's proposed arguments and "evidence" regarding the alleged political motivations of the prosecution are irrelevant to the charges. Whether the prosecution was "politically motivated" does not have any tendency to make to a fact of consequence here more or less probable. See Fed. R. Evid. 401; United States v. Scrushy, 721 F.3d 1288, 1305 (11th Cir. 2013) ("Whether the decision to prosecute [the defendant] was motivated by improper reasons has no bearing on the integrity of the trial or the verdict."). It does not make it more or less likely that defendant made false statements, that the statements were made in a matter within the jurisdiction of the government agency, that defendant acted willfully, or that his false statements were material.

Throughout this litigation, defendant has sought to distort the materiality element in the hopes of transforming his unfounded contention that the prosecution was "political motivated" into a legally viable defense. These efforts continue to fail. As explained more fully in the government's Motion in Limine No. 1, the materiality standard is an objective one. Importantly, as the Court has already ruled (Dkt. No. 59 at 6, 10-11),

materiality is about defendant's conduct and the intrinsic capabilities of the false statements that he chose to make.  There is no authority for the defendant's proposition that the subjective motivation of the individual investigators is relevant to the materiality analysis; to the contrary, case law explains that the subjective knowledge of the investigators is irrelevant to materiality.  (See MIL No. 1.)

Accordingly, there is no legal basis for the jury to hear the defense's false suggestions about the political motivations of the prosecution team.  Given the systemic costs of reviewing of decisions to prosecute—including the risk of "chill[ing] law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and . . . undermin[ing] prosecutorial effectiveness by revealing the Government's enforcement policy," Wayte v. United States, 470 U.S. 598, 607–08 (1985)—the Supreme Court has held that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  United States v. Armstrong, 517 U.S. 456, 464, 116 (1996) (citation omitted); see also United States v. Napper, 553 F. Supp. 231, 232 (E.D.N.Y. 1982) (rejecting defense request to argue to the jury that "prosecution was selectively brought as part of a concerted government effort to suppress [religious] activities"; "[S]elective prosecution claim is therefore a question of law properly determined only by the Court, and may not be argued before the fact-finders").

Indeed, defendant's claim alleging some sort of improper motive to prosecute defendant based on his political affiliation is nothing more than a Trojan Horse for a selective prosecution claim.  But recognizing the futility of pursuing that path, defendant seeks to bypass the appropriate legal vehicle to make his claim and instead seeks to taint the jury with his baseless claims.  Tellingly, the selective prosecution cases hold that "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  Armstrong, 517 U.S. at 463; United States v.

Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) (issue of selective prosecution "is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged" (citations omitted)).  Rather than contend with the rigorous standards of a selective-prosecution claim, the defense shoehorns his unfounded legal claim of political bias into the "materiality" element (an issue of fact) to get the argument before the jury.

> **B.     Argument or Evidence Regarding the Alleged Political Motivations or Consequences of the Prosecution Are Prejudicial Under Rule 403**

Permitting the issue of the investigators' purported "political motivations" to go before the jury would present a high risk of unfair prejudice, confuse and mislead the jury, and waste time.  See Fed. R. Evid. 403.  Evidence is not admissible simply to create sympathy or outrage on the part of the jury or to encourage them to render a decision based on something other than the facts of the case.  See Old Chief v. United States, 519 U.S. 172, 180 (1997) (unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

If the defense were permitted to (falsely) suggest that the federal government—which is entrusted to enforce the nation's criminal laws faithfully and fairly without considering a person's race, religion, gender, political association, or other protected factors—chose to investigate and prosecute this defendant based on political considerations, there would be a high risk that an ordinary juror (of any political affiliation) would be outraged and seek to punish the government as an institution with verdicts inconsistent with the jury instructions and evidence.  It would make no difference that the government had proven beyond a reasonable doubt the elements of the charged offenses against this defendant.  Similarly, evidence regarding the potential consequences of defendant's prosecution would serve no purpose other than to encourage the jury to act out of sympathy or other improper considerations—political or otherwise—as opposed to "arriving at an impartial verdict as to the guilt or innocence of the accused," as the jury is required to do.  United States v. Reed, 726 F.2d 570, 579 (9th

Cir. 1984); see also Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is therefore irrelevant to the jury's task.").

The other dangers under Rule 403 are also acutely present.  Presentation of such information would confuse the issues and mislead the jury by suggesting that the jury's role in assessing the materiality element should somehow be influenced by the alleged political motivations of the individual investigators.  That is not the law.  It would also lead to a huge waste of time.  If the jury were permitted to hear defendant's political prosecution arguments, the government would then be forced to waive its deliberative process privilege and put on evidence to show that defendant was, in fact, not singled out for his politics.  Among other things, the government would need to show that: (1) the CDCA U.S. Attorney's Office, including the lead prosecutor in this matter, has prosecuted defendants of a variety of political affiliations, including numerous Democrats[1]; (2) this six-year investigation was carried out under administrations and Attorneys General of both parties, resulted in a resolution of a case against a more high-profile Republican (Ray LaHood) accused of similar conduct *without* charges, and was centered around a wealthy benefactor of both political parties (Gilbert Chagoury); and (3) the collective FBI and USAO decision-making processes, including the supervisors conducting various levels of review and approval, did not take into consideration defendant's politics or any political consequences of the investigation or indictment.

Neither the section 1001 statute nor the Federal Rules of Evidence transforms a false statements prosecution in this way.  Defendant should be precluded from creating a fabricated sideshow at trial on issues with no probative value to the charged offenses.

---

[1] See, e.g., United States v. Ronald S. Calderon, et al., Case No. CR 14-103-CAS; United States v. Michael Kimbrew, Case No. CR 17-459-RGK; United States v. Jose Huizar, et al., Case No. 20-326(A)-JFW; United States v. Mark Ridley Thomas, et al., Case No. 21-485-DSF; United States v. David H. Wright, Case No. CR 21-559-SB; United States v. Thomas H. Peters, Case No. CR 22-09-SB.

**DEFENDANT'S OPPOSITION TO USA'S MIL No. 2**

1. **Evidence and argument regarding personal and political bias of the prosecution team is relevant and goes to the core of the defense.**

As set forth in the Opposition to MIL #1, the defense has a right to present evidence that this investigation was not a search for the truth, nor was it the product of an authorized government function. The defense maintains that Congressman Fortenberry was set up by the government and that this investigation had a preordained outcome of securing his conviction. In that case, Congressman Fortenberry's statements could not have affected the investigation. The personal bias and political affiliation of the prosecutors are relevant to explain why Congressman Fortenberry was set up by the government. He has a right to make that argument in his defense, and it is supported by the evidence.

a. 

[REDACTED]

Congressman Fortenberry is a conservative Republican lawmaker who has successfully represented Nebraska's First Congressional District since 2005. He is known for his honesty and forthrightness. He is the father of five daughters, a practicing Catholic, and internationally known defender of human rights and human dignity. His voting record also shows a strong correlation to the agenda of former President Donald Trump.[3]

**b. AUSA Jenkins' bias may have played a role in the decision-making.**

The evidence also supports the argument that that AUSA Jenkins' political affiliation and bias (whether implicit or explicit) may have played a role in this investigation.

In support of that argument, the defense proffers the following:

According to the government, it has been investigating Gilbert Chagoury's efforts to funnel illegal donations to U.S. candidates since 2016. Dkt. No. 1. The government identified the primary participants in that scheme, including Gilbert Chagoury, Toufic Baaklini, and Individual H. All three cooperated with the government's investigation. None of them told the government that Congressman Fortenberry knew about Chagoury's illegal scheme at the time. Nonetheless, the government used Individual H to "plant" the facts of Chagoury's illegal donations by having Individual H insinuate them to Congressman Fortenberry during a ten-minute call in June 2018 which the FBI recorded.

Government agents then surprised Congressman Fortenberry in his home ten and a half months later. Rather than announce his purpose, FBI Special Agent Todd Carter used the ruse of a "national security investigation," and lied to Congressman Fortenberry, saying he was from Omaha, when he was from California. The evidence shows that even before the Nebraska interview in March 2019, Special Agent Carter was planning to charge Congressman Fortenberry with campaign finance crimes. *See* Dkt. No. 35 at 4, Ex. B. Knowing that those crimes may not stick, Special Agent Carter attempted to set up a false

---

[2] *See* Exhibit A (Schedule A (FEC Form 3X) Itemized Receipts).
[3] https://projects.fivethirtyeight.com/congress-trump-score/jeff-fortenberry/

statements offense. *See id.* The government refuses to acknowledge whether AUSA Jenkins saw or approved the memo setting out Special Agent Carter's intent. *See id.*

After the Nebraska interview, Congressman Fortenberry reached out to AUSA Mack Jenkins through his counsel, former Republican Congressman Trey Gowdy, intending to help the government in what he believed was a national security investigation. AUSA Jenkins mistakenly assumed that Congressman Fortenberry's purpose was to confess to making a false statement to Special Agent Carter during the Nebraska interview.[4] This unfortunate mutual misunderstanding played a significant role in the investigation that followed. To ensure that Congressman Fortenberry would participate in the Washington, D.C. interview, AUSA Jenkins told Gowdy that Congressman Fortenberry was a "subject, trending toward a witness."[5] This was false because the evidence shows that the government already intended to build a criminal case against him. *Id.*

When AUSA Jenkins traveled to Washington, D.C. to interview Congressman Fortenberry in July 2019, he did not hear the confession he was expecting. Believing that Congressman lied to him, and feeling a sense of indignation, Jenkins became even more resolved to punish him for what he believed to be an insult and a waste of his time.

Then, the government waited two years to present this case to a grand jury in California. At the time of the statements at issue in this case (2019) Donald Trump was the President, and William Barr was the Attorney General. This case was charged in 2021, after Trump was replaced by President Biden, and Barr was replaced by Merrick Garland. ███████████████████████████████████████████████████████

Based on these facts a jury would be entitled to find that Jenkins' decision-making during this investigation was motivated by bias, either conscious or unconscious.

Although AUSA Jenkins' bias against Republicans is explicit, his bias against Congressman Fortenberry may not be. AUSA Jenkins may not even be aware of it. This

---

[4] The defense proffers that if called as a witness in this case, AUSA Jenkins would confirm this. *Cf.* Dkt. No. 21 (Motion to Disqualify AUSA Mack Jenkins) at 5.

[5] *See* Dkt. No. 35 (Motion to Suppress Statements) at 4.

is why the Department of Justice trains all of its law enforcement agents and prosecutors to detect and counteract implicit bias.[6] AUSA Jenkins has a strong reputation for integrity and may well have believed that every decision he made in this case was driven by an impartial search for the truth. But jurors would be entitled to conclude that Jenkins' actual or implicit bias influenced his decision-making in this case, even if he made an earnest effort to avoid that. Certainly, the defense has a good faith basis to make the argument.

**2. Evidence of the prosecutor's personal and political bias is admissible.**

The government argues that the prosecutor's bias is irrelevant because it has no "tendency to make a fact of consequence here more or less probable." MIL #2 at 2. But to prove materiality, the government must show that this was a lawful investigation and that Congressman Fortenberry's statements were at least capable of influencing it. If this was a politically motivated setup, then the Congressman's statements were not material because the outcome was predetermined from the start. Congressman Fortenberry has a right to present that defense to the jury, and evidence of the prosecutor's bias supports it.

The government argues that the prosecution's charging decision is not subject to judicial review. *See* MIL #2 at 3. But Congressman Fortenberry is not challenging the government's charging decision, and he therefore does not need to satisfy the standard that applies to a motion to dismiss this case due to selective prosecution. *See United States v. Armstrong*, 517 U.S. 456 (1996). Instead, evidence and argument about the prosecution's bias are relevant to defeat the materiality element in a § 1001 prosecution, which is unique in that it requires examination of both the legitimacy of the prosecution and the government's decision-making during the investigation. *See* Defense Opposition to Gov. MIL #1. That distinguishes this case from *Wayte v. United States*, 470 U.S. 598 (1985).

Finally, the government argues that permitting Congressman Fortenberry to present evidence of the prosecutor's bias would prejudice the government, confuse and mislead the

---

[6] https://www.justice.gov/opa/pr/department-justice-announces-new-department-wide-implicit-bias-training-personnel ("Social science has shown that all individuals experience some form of implicit bias but that the effects of those biases can be countered through training.").

jury, and waste time. Gov MIL #2 at 4. But Fed. R. Evid. 403 does not preclude all prejudicial evidence, it merely precludes evidence whose probative value is *substantially outweighed* by unfair prejudice. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). It would not be a waste of time, nor need it be confusing to the jury, to identify the prosecution's bias and the argue that the decision-making in this case was motivated by that bias. And doing so could defeat the government's proof of materiality, an element of the offense. The government argues that there is a "high risk that an ordinary juror (of any political affiliation) would be outraged and seek to punish the government as an institution" if evidence of the prosecutor's bias were presented. But the government is free to argue that the investigation was not motivated by bias in this case, and the defense agrees that the government should be permitted to present evidence to support that argument.

The defense also would not object to a limiting instruction to the jury that it can consider evidence related to the prosecutor's bias only in determining whether the government has met its burden of proof regarding materiality, and for no other purpose. Moreover, the defense would not object to a jury instruction defining implicit bias.

# Defendant's Exhibit A

# [Filed Provisionally Under Seal]

**GOVERNMENT'S REPLY**

Defendant has repeatedly attacked the charges in this case as a "political prosecution," a claim he says is his "core defense." (12/13/21 Hr'g Tr. at 43:17-19.) Without any supporting legal authority, defendant contends that this baseless and inflammatory allegation—<u>i.e.</u>, a prosecutor's purported bias—should go to the jury. Yet this flies in the face of case law squarely holding that a defense allegation that the prosecutor brought a case for an improper reason is <u>not a defense on the merits to the criminal charge</u>. <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996). Rather, defendant's claim that the prosecutor brought the charges for a discriminatory reason is an issue "properly determined only by the Court, and may not be argued before the fact-finders." <u>United States v. Napper</u>, 553 F. Supp. 231, 232 (E.D.N.Y. 1982); <u>see also</u> <u>United States v. Abboud</u>, 438 F.3d 554, 579 (6th Cir. 2006) ("The question of discriminatory prosecution relates not to the guilt or innocence . . . and "is a matter for the court, not the jury." (citation omitted)); <u>United States v. Regan</u>, 103 F.3d 1072, 1082 (2d Cir. 1997) (selective prosecution claim is "ultimately separate from the issue of [the defendant's] factual guilt.").

Faced with no legal support to improperly convert a court issue of discriminatory prosecution into a jury one, defendant now claims that he "<u>is not challenging the government's charging decision</u>." (Opp'n at 4 (emphasis added).) This is an about-face of defendant's proclaimed "core defense" that the prosecution was a "politically motivated setup." (<u>Id.</u>) In the <u>same opposition</u>, defendant argues the government "waited two years to present this case" in 2021 "after Trump was replaced by President Biden, and Barr was replaced by Merrick Garland." (<u>Id.</u> at 3.) These facts have no relevance unless they are to attack the legitimacy of the charging decision in this case, which is a selective prosecution claim and not an issue for the jury.

Defendant's claim is also factually meritless. ███████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████ In order to cover

1

this attack with a sheen of relevance, defendant attempts several leaps of logic to tie these donations to a *political bias against defendant that tainted this prosecution*.

Defendant fallaciously assumes that political donations by an AUSA are probative of political bias that affects his ability to fulfill his constitutional oath. He is wrong. Federal prosecutors take a sworn oath to execute faithfully their duties under the Constitution. 28 U.S.C. § 544. Those duties include the fair exercise of prosecutorial discretion based rationally and objectively on the merits of the case, and not based on any type of bias. (See Justice Manual, §§ 9-27.001, 9-27.260.) At the same time, federal prosecutors, like every other American citizen, including defense counsel, have a First Amendment right to engage in the democratic process by making legal political contributions. These two concepts are not mutually exclusive: attorneys can both perform their duties fairly, ethically, and responsibly, and, in their private capacity, exercise their First Amendment rights. One does not obviate the other, and there is no basis to conclude an exercise of the latter (constitutional) right suggests a violation of the former (constitutional) duty. Contrary arguments serve only to chill attorneys' participation in the democratic process and should not be countenanced.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████

Perhaps most strikingly, defendant acknowledges: "AUSA Jenkins has a strong reputation for integrity and may well have believed that every decision he made in this case was driven by an impartial search for the truth" and "made an earnest effort to avoid" any bias. (Opp'n at 4.) Yet defendant persists in presenting to the jury an

unsupported claim of a secret bias hidden from even AUSA Jenkins. (Id.) Contriving to manufacture bias and then tie it to any role in defendant's specific case is reminiscent of defendant's earlier unfounded and rejected attack on a federal agent and is equally flawed here. (See Dkt. No. 30.)

The government's investigative techniques in this case were lawful and permissible and do not support defendant's disguised selective prosecution claim. See, e.g., United States v. Slaughter, 891 F.2d 691, 696 (9th Cir. 1989); United States v. Simpson, 813 F.2d 1462, 1466 (9th Cir. 1987) (law enforcement can use "artifice and stratagem" and informants). If defendant wished to challenge them, the appropriate vehicle is a suppression motion (which defendant already filed). But, as the government already explained to defendant,[1] if that vehicle fails and absent any factual support, defendant cannot confuse, mislead, and waste the jury's time by insinuating some illegality or impropriety with the government's investigation at trial. See United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998) ("Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render . . . a verdict on the government's investigation.").

The Court should prevent defendant's latest and increasingly personal political attacks from injecting baseless and immaterial allegations against a prosecutor into the trial by granting the government's motion in limine.

---

[1] The government provided the defense with a motion in limine to exclude defendant's proposed expert, retired FBI Special Agent Jeffrey Danik. After review, defense counsel stated that he would no longer seek to call Mr. Danik.

## Government's Exhibit 1

## [Filed Provisionally Under Seal]

# Government's Exhibit 2

# [Filed Provisionally Under Seal]

**<u>Government's Exhibit 3</u>**

**<u>[Filed Provisionally Under Seal]</u>**