TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. pending)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3289
    Facsimile:  (213) 894-0141
    E-mail:  mack.jenkins@usdoj.gov
               jamari.buxton@usdoj.gov
               susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00491-SB |
|---|---|
| Plaintiff, | JOINT MOTION *IN LIMINE* NO. 4: GOVERNMENT'S MOTION TO EXCLUDE DR. ALAN CASTEL, PH.D., AS AN EXPERT WITNESS; DECLARATION OF J. JAMARI BUXTON; GOV. EXS. A-B; DEF. EXS. 1-4 |
| v. | |
| JEFFREY FORTENBERRY, | |
| Defendant. | |
| | Hearing Date: 2/8/2022<br>Hearing Time: 8:00 a.m. |
| | Indictment: 10/19/2021<br>Pretrial Conference: 2/8/2022 at 8:00 a.m.<br>Trial: 2/15/2022 at 8:00 a.m.<br>Last Day: 3/2/2022 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States

1

Attorneys Mack E. Jenkins, Susan S. Har, and J. Jamari Buxton, and defendant JEFRREY FORTENBERRY ("defendant"), by and through his counsel of record, John Littrell and Ryan Fraser, hereby file their joint Motion in Limine No. 4 regarding the government's motion to exclude Dr. Alan Castel, Ph.D., as an expert witness.

**The government seeks to exclude Dr. Castel as an expert witness on the grounds that Dr. Castel's proposed testimony is within the knowledge and experience of the average juror and therefore would not help the trier of fact to understand the evidence or to determine a fact in issue, as required under Federal Rule of Evidence 702 and related case law, and that the proposed testimony is inadmissible under Federal Rule of Evidence 403 in that it contains minimal probative value, invades the province of the jury, and creates a substantial risk of undue delay and waste of time.**

Defendant opposes the motion.

Dated: February 3, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

　/s/
J. JAMARI BUXTON
MACK E. JENKINS
SUSAN S. HAR
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Dated: January 31, 2022

　/s/ per email authorization
JOHN LITTRELL
RYAN FRASER

Attorneys for Defendant
JEFRREY FORTENBERRY

# GOVERNMENT'S MOTION

## I. INTRODUCTION

The average juror is already well-aware of the concepts about which defendant's memory expert, Dr. Alan Castel, Ph.D., seeks to opine – including that "memory in general can be fallible" in surprising ways, that "[s]tored memories . . . can be malleable," and that "memory fidelity and accuracy tend to decline" as we get older – even if he or she is not familiar with the precise scientific language Dr. Castel and others use to label these concepts. Because these concepts are within the ordinary knowledge and experience of the jury, Dr. Castel's proposed testimony cannot "help the trier of fact to understand the evidence or to determine a fact in issue," thus compelling exclusion under Federal Rule of Evidence 702 and related case law. For this same reason, Dr. Castel's proposed testimony holds minimal probative value, whereas there is a substantial countervailing risk that permitting Dr. Castel to give unhelpful testimony would invade the province of jury, result in undue delay, and waste time, thus running afoul of Rule 403, as well. In short, the Court should bar Dr. Castel from testifying.

## II. FACTUAL BACKGROUND

On December 14, 2021, defendant noticed Dr. Castel as an expert "on the study of human memory, attention, and cognitive aging." (Ex. A). In particular, defendant's expert notice states that Dr. Castel will offer the following opinions, among others: (i) "[t]he processes of encoding and recalling memories are often less reliable than lay people tend to believe"; (ii) "[s]tored memories can . . . be malleable"; (iii) "memory of details is driven in part by the motivation to remember them"; (iv) "[a]s we get older, our memory fidelity and accuracy tend to decline"; (v) "[w]e . . . tend to retain and operate on only the simplest gist of information that is required to make a decision"; (vi) "we tend to use background information . . . to fill in gaps in actual memory of a particular event"; (vii) "[m]emory is transient" and "becomes less and less accessible with the passage of time"; (viii) "interference from other experiences and events . . . can lead to difficultly recalling previous experiences and events"; (ix) "repeated questioning about

an event can . . . alter or bias the memory of that event"; and (x) "we sometimes recall information but misattribute the source." (Id. at 1-2.)

After the government noted it would move to exclude Dr. Castel's opinions as either already within the knowledge of an average juror or because the opinions were not tethered to this case, defendant supplemented Dr. Castel's expert notice on January 24, 2022. (Ex. B.) In the supplemental notice, defendant states that Dr. Castel will also "analy[ze] . . . the FBI and USAO interviews of [defendant] on March 23 and July 17, 2019" and detail factors that "*may* have influenced [defendant's] ability to retrieve memory." (Id. at 1) (emphasis added). Specifically, Dr. Castel will additionally opine that: (i) "[defendant] retrieved his memory of the [Individual H] Call several times" between the call and his interviews with the government, which may have "alter[ed] [the memory's] contents though modifications and reconstruction"; (ii) "[defendant] could have remembered a phone call that seemed concerning as a gist without remembering all the precise information conveyed," and future conversations about the call "could have caused his memory to become even more gist-based"; and (iii) repetitive government questioning about his campaign receiving illegal contributions "could [have] influence[d] the manner in which [defendant] attempted to retrieve information from his memory of the [Individual H] Call, and the accuracy of the memory." (Id. at 1-2.) The Court should bar defendant from offering these opinions.

## III. ARGUMENT

Expert testimony is admissible if it is relevant and reliable.[1] Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007); see also Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes

---

[1] Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

2

1  primarily to relevance.") (cleaned up); Daubert, 509 U.S. at 591 ("[e]xpert testimony
2  which does not relate to any issue in the case is not relevant and, ergo, non-helpful.")
3  (cleaned up).  Under the reliability requirement, the expert testimony must "ha[ve] a
4  reliable basis in the knowledge and experience of the relevant discipline." Primiano, 598
5  F.3d at 565.  The burden is on the proponent of the expert testimony to show, by a
6  preponderance of the evidence, that the admissibility requirements are satisfied. Lust By
7  & Through Lust v. Merrell Dow Pharm., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

        **A.**     **Dr. Castel's Proposed Expert Testimony Will Not Assist the Jury**

9  As a general matter, memory, perception, and the fallibility of human recall – that
10 is, how people may remember, misremember, or forget past events – are within the ken
11 of the jury.  See, e.g., United States v. Labansat, 94 F.3d 527, 530 (9th Cir. 1996) ("It is
12 common knowledge that memory fades with time."); United States v. Carter, 410 F.3d
13 942, 950 (7th Cir. 2005) ("In general, . . . jurors understand that memory can be less than
14 perfect."); R.D. v. Shohola, Inc., No. 3:16-CV-01056, 2019 WL 6053223, at *11 (M.D.
15 Pa. Nov. 15, 2019) ("the notion that memories deteriorate over time is well within the
16 understanding of a jury without the aid of an expert . . . Likewise, the concept that
17 witnesses can vehemently recall events in a faulty matter is readily understood and is
18 something that falls within the common experience of jurors.")  (internal citation
19 omitted); United States v. Heine, No. 3:15-CR-00238-SI-2, 2017 WL 5260784, at *3 (D.
20 Or. Nov. 13, 2017) ("that memories are fallible and may deteriorate over time . . . is
21 within the ken of the ordinary juror").  Along these lines, courts exclude expert
22 testimony regarding memory where, as here, it will not be helpful to the jury.  See
23 United States v. Libby, 461 F. Supp. 2d 3, 4 (D.D.C. 2006) (excluding expert testimony
24 regarding "the widely-accepted findings from the science of memory"); Heine, 2017 WL
25 5260784, at *1 (D. Or. Nov. 13, 2017) (excluding expert testimony about "the
26 functioning and fallibility of human memory").
27 In Libby, a defendant charged with obstruction of justice and multiple counts of
28 false statements and perjury sought to argue at trial (1) that it was the government's

3

witnesses, and not him, who misremembered the facts and the substance of the various conversations detailed in the indictment and (2) that any errors he may have made in describing the events were occasioned by confusion or faulty memory, and not any wilful intent to misrepresent the truth.  461 F. Supp. 2d at 4.  To support his faulty memory defense, defendant sought to introduce expert opinion testimony regarding thirteen scientific principles of human memory, including "the process by which memory is encoded, stored, retained, and retrieved and various scientific bases for memory errors."  Id. at 5.  As here, the defendant in Libby asserted that the proffered expert testimony "[would] assist the jury by providing information about the findings of memory research that are not already known to the jurors," see id., and that "jurors are generally unaware of the frequency and causes of honest errors of recollection, and . . . underestimate the fallibility of memory."  See id. at 9.

The court rejected these arguments, explaining that the average juror understands various and complex concepts of memory, if not the scientific language and methodology underlying those concepts:

> [O]n a daily basis the average juror is personally faced with innumerable questions of memory and cognition, as everyone in their daily lives is called upon to store, encode, and retrieve information he or she has been subjected to.  Although the average juror may not understand the scientific basis and labels attached to causes for memory errors, jurors inevitably encounter the frailties of memory as a commonplace matter of course . . .  Accordingly, the jury does not need a tutorial on the science of 'content borrowing,' 'memory conjunction,' or 'source misattribution' errors to appreciate that people sometimes experience mistaken memories.

Id. at 12-13.  Because the defendant failed to show that the thirteen areas of proposed expert testimony were "either so complex or counter-intuitive that jurors do not understand them," see id. at 13, the court concluded that the expert's opinions would not help the jury and barred them from testifying.  Id. at 18; see Heine, 2017 WL 5260784, at *3.

4

The Court should reach the same outcome here. As in Libby, the average juror already understands, for example, that the processes of forming and recalling memories is not always reliable, that memories can change and deteriorate over time, that motivation to remember can impact memory, that we often fill in gaps in memory, and that we sometimes misattribute the source of information. (See Ex. A.) Because the jury here does not "need a tutorial . . . to appreciate that people sometimes experience mistaken memories," see Libby, 461 F. Supp. 2d at 13, Dr. Castel's proposed testimony is unhelpful and should be excluded.

### B. Dr. Castel's Proposed Testimony Should be Excluded Under Rule 403

The Court should additionally bar the proposed expert testimony under Rule 403. See Fed. R. Evid. 403; see Daubert, 509 U.S. at 595 (because "[e]xpert evidence can be both powerful and quite misleading," judges "weighing possible prejudice against probative force under Rule 403 . . . exercise[] more control over experts than over lay witnesses."). Because jurors are already familiar with the concepts of memory, its probative value "is limited to merely drawing more attention to those principles." See Libby, 461 F. Supp. 2d at 18. This minimal value is "substantially outweighed by considerations of undue delay and waste of time." See id. Likewise, permitting the expert testimony "may cause jurors to surrender their own common sense in weighing the testimony," which "would amount to an invasion of the jury's province." See id.; see Shohola, Inc., No. 3:16-CV-01056, 2019 WL 6053223, at *10 ("Left unregulated, memory expert testimony can invade the fundamental province of the jury—determining witness credibility.") Indeed, jurors may replace their own views on a witness' credibility with Dr. Castel's. For example, the supplemental notice opines that one of the government's witnesses may have experienced "interference from her memory" of previous calls with defendant when the FBI asked her about another call, (see Ex. B at 2), an apparent attempt to supplant the jury's findings regarding credibility. The Court can avoid this unquestionable danger by barring Dr. Castel's unhelpful testimony.

**Congressman Fortenberry's Contentions in Opposition**

The defense's right to present expert testimony is "fundamental." *U.S. v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002). Here, the government does not dispute that Prof. Castel's opinions result from reliably applying reliable principles and methods to sufficient facts from this case. *See* Fed. R. Evid. ("FRE") 702(b)–(d). Rather, the government claims his testimony would not "help" the jury under FRE 702(a), because the jury already intuitively knows and understands what Prof. Castel would say; and, for the same reason, the probative value would be substantially outweighed by the time it would take under FRE 403.

The government's motion should be denied because it fails to account for how central the memory nuances at issue are to the jury's core decision: whether Congressman Fortenberry lied. *Cf. U.S. v. Stever*, 603 F.3d 747, 755–57 (9th Cir. 2010) (constitutional implications of excluding a "major part of the attempted defense"). In addition, the attached research establishes the government's foundational premise is wrong. The reality is that laypersons tend to underestimate or entirely overlook the memory phenomena at issue here. Prof. Castel's testimony, then, does not merely help the jury reach an educated decision; it is essential to ensuring a fair trial.

**1. This case's unique factual timeline makes Prof. Castel's opinions essential to the jury's analysis of memory.**

The jury will have to decide whether Congressman Fortenberry lied to the government in interviews on or about March 23 and July 17, 2019, in light of what "Individual H" told him in a secretly recorded phone call on June 4, 2018. *See* Indictment ¶¶ 19–21 (referring to this as "the 2018 Call"). Significantly, Fortenberry had multiple conversations regarding the 2018 Call before the first government interview about it. During those intervening conversations, Fortenberry retrieved his memory of the 2018 Call and received feedback from others about its significance. This happened again during the March 23, 2019, FBI/IRS interview, in which the agents subjected Fortenberry to repetitive, suggestive, and stress-inducing questioning about the subject matter of the 2018 Call. In the July 2019 interview, this recurred, resulting in an even greater cumulative impact.

There is also the testimony of Jessica Furst Johnson to consider in light of the widely misunderstood memory factors that Prof. Castel would explain. As Fortenberry's election-law attorney, she consulted with him and his chief of staff a few days after the 2018 Call and during the following week. Furst Johnson told the FBI that Fortenberry was often needlessly nervous or concerned about campaign-finance issues in his calls with her, and she did not remember their conversation in June 2018 being any different.

### 2. These facts implicate memory principles that research shows laypersons misunderstand.

Prof. Castel would explain to the jury that prior retrievals of memory and feedback from others can actually alter the memories themselves, varying the motivation and ability to remember particular details and leading the memories to become more gist-based. Yet, without hearing from an expert, about half (47.6%) the United States population would assume such possibilities do not exist, because this segment believes memory substantially *does not change*, once formed. *See* Exhibit ("Ex.") 1, Simons & Chabris, "*What People Believe*" at 5 (PLoS ONE 2011). Perhaps even more problematically, 63% of laypersons tend to think "human memory works like a video camera, accurately recording the events we see and hear so that we can review and inspect them later." *Id.*; *see also* Ex. 2, Simons Interview (accounting for prevalence of this mistaken perception) https://blogs.scientificamerican.com/thoughtful-animal/ memory-i-dont-think-it-means-what-you-think-it-means-an-interview-with-dan-simons/. Laypersons tend to "mistakenly expect [motivation to remember] to be just as effective when it arises after information is encountered as when it arises beforehand." Ex. 3, Kassam et al., *Misconceptions of Memory: The Scooter Libby Effect*, 20-5 Psychological Science 551, 552 (2009).

Without the benefit of Prof. Castel's expert testimony, jurors may assume from the mere recordings of the 2018 Call and government interviews of Fortenberry, or from Furst Johnson's expected testimony—since many believe that memory works like a recording, *see* Ex. 1 at 5—that Fortenberry must have lied to the government or that he did not make a fulsome disclosure to Furst Johnson in June 2018.

Jurors may also assume Fortenberry's call to Furst Johnson in June 2018 must have been very important to her then, because it is now an issue in the trial. *Cf.* Ex. 3. However, Furst Johnson's motivation to remember the details of her call with Fortenberry in June 2018 may not have been nearly as strong as it became when the FBI interviewed her about it fourteen months later. As a result of failing to account for this change, jurors would likely assume incorrectly that Furst Johnson would have remembered what Fortenberry told her if he had been fully candid with her regarding the 2018 Call. *But see id.* (showing that prevalent lay assumptions of motivation to remember are mistaken). Prof. Castel's testimony would sensitize jurors to the need to account for changing motivation to remember in drawing inferences from her testimony concerning the facts of consequence.

Similarly, Prof. Castel would explain the significance of Furst Johnson's apparent use of a schema in her recall of her communications with Fortenberry. It could lead her to fail to recount what was different in the June 2018 call from her other experiences discussing campaign-finance issues with Congressman Fortenberry. *See* Castel Notice Letter, Ex. B to Gov.'s Motion. In addition, the agents subjected Furst Johnson, like Fortenberry, to suggestive questioning—in particular, a hypothetical question. *Id.* Prof. Castel would be able to explain the possible effect of such questioning on Furst Johnson's memory. *See id.* Without hearing from Prof. Castel, on the other hand, many jurors would apparently consider this mode of questioning irrelevant, even though it could alter the memories at issue. *See* Ex. 1 at 5 (discussing the common lay assumption "that 'once you have experienced an event and formed a memory of it, that memory does not change'").

In light of these misconceptions of the nuances of memory, without Prof. Castel's testimony, jurors would regard the Fortenberry interview recordings and Furst Johnson's testimony as significantly stronger support for the government's case than they actually are.

**3. The factual record in the government's cases was materially different than it is here.**

Here, in contrast to *U.S. v. Heine*, 3:15-CR-238-SI-2, 2017 WL 5260784, at *2 (D. Or. Nov. 13, 2017) (emphasizing the lack of a claim "of suggestive or other improper

questioning in the prior interviews of any of the witnesses or their prior statements that affected later recall"), Prof. Castel's testimony would make the impact of the government's repetitive, suggestive questioning on witnesses' memory salient to the jury. Also unlike the situation in *Heine*, *id.* at *3 ("[a]t this level of generality, this information is within the ken of the ordinary juror"), here, Prof. Castel would correct *particular* misconceptions of memory implicated by this case—including changing motivations to remember, schema, gist-based memory, and the opportunities for prior retrievals and feedback to alter memories.[1]

*U.S. v. Libby*, 461 F. Supp. 2d 3 (D.D.C. 2006), meanwhile, is obviously nonbinding as an out-of-circuit district-court case, which, according to Westlaw, no published decision of any circuit court of appeals has mentioned in *Libby*'s fifteen-plus years. Moreover, in *Libby*, in contrast to this record, "the research showing that jurors do not understand [the memory] concepts [at issue was] limited to . . . eyewitness identification and [so] its findings ha[d] limited, if any, applicability in other respects." *Id.* at 11. Here, that is not true. In fact, some of the research cited here was performed <u>in direct response to</u> the *Libby* court's ruling. *See* Ex. 3. The research cited here concludes that "[e]xpert testimony . . . could well help to overcome [the public's common] misinterpretations" of particular memory phenomena that Prof. Castel would explain. Ex. 1 at 7; *see also* Ex. 4, Akhtar et al., *The "common sense" memory belief system and its implications*, 22(3) Int'l J. of Evid. & Proof 289, 300 (2018) ("[T]o put it more bluntly, many common sense beliefs [regarding memory] are *contradicted* by beliefs based on scientific research."

The government's concern of jurors replacing their own views with those of

---

[1] The government also cited *U.S. v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996), for the proposition that "[i]t is common knowledge that memory fades with time," but the opinions to be offered from Prof. Castel here are far more nuanced and they are tailored to this case's unique facts. *See id.* (explaining that, in *Labansat*, the mere passage of time was "[t]he principal challenge to the eyewitnesses' identification"). Moreover, in *Labansat*, the Ninth Circuit reviewed with multiple layers of deference. *Id.* (abuse of discretion, IAC standard, requiring "clear and convincing evidence" of prejudice).

4

Prof. Castel is also misplaced, given their opportunity to cross-examine and FRE 704(b). *See Finley*, 301 F.3d at 1015 (allowing expert testimony on a defendant's mental state unless compelled by the testimony); *U.S. v. Smithers*, 212 F.3d 306, 317 n.5 (6th Cir. 2000) (expert testimony's tendency to unduly impress jurors was "improper factor upon which to exclude").

### 4. The Court should admit Prof. Castel's testimony.

This case presents unique facts necessitating expert testimony on the specific memory phenomena identified in the defense's notices. Thus, admitting Prof. Castel's testimony would follow the Ninth Circuit's and other circuits' latest guidance on expert testimony related to psychology and memory. *See, e.g., Finley*, 301 F.3d at 1013–14 ("recogniz[ing] the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge" and citing *U.S. v. Vallejo*, 237 F.3d 1008, 1019–20 (9th Cir. 2001)); *U.S. v. Brownlee*, 454 F.3d 131, 144 (3d Cir. 2006) (noting the irony of holding that expert opinion would waste time or confuse issues raised *by prosecution evidence*); *Smithers*, 212 F.3d at 311–12, 312 n.1 (noting jurors' prevalent "wrong" assumptions about memory). The research before the Court here shows that jurors are likely to rely on several faulty assumptions in weighing the evidence, if the evidence presented does not include Prof. Castel's testimony. *Cf. Finley*, 301 F.3d at 1010, 1013–14 (cautioning against overestimating jurors' common understanding); *U.S. v. Weiss*, 579 F. Supp. 1224, 1236 n.30 (S.D.N.Y. 1983) (admitting expert testimony that "a memory lapse was not indicative of willful lying").

**GOVERNMENT'S REPLY**

Defendant's opposition illustrates why Dr. Castel should be barred from testifying in this case. Courts have made clear that expert testimony regarding a witness' credibility invades the province of the jury and is therefore impermissible. See United States v. Candoli, 870 F.2d 496, 506 (9th Cir. 1989) ("The jury must decide a witness' credibility. An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility.") (cleaned up); Nimely v. City of New York, 414 F.3d 381, 398 (2d Cir. 2005) ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."); United States v. Call, 129 F.3d 1402, 1406 (10th Cir. 1997) (explaining that "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony" and is often excluded because "it usurps a critical function of the jury and because it is not helpful to the jury, which is capable of making its own determination regarding credibility."); United States v. Benedict, 855 F.3d 880, 885 (8th Cir. 2017) ("[W]eighing evidence and determining credibility are tasks exclusive to the jury.") (cleaned up). Yet that is precisely what Dr. Castel intends to do: attack the credibility of government witness Jessica Furst Johnson and her anticipated testimony that defendant failed to tell her anything of note regarding his "discomfort" over potentially illegal campaign contributions in June 2018.

According to defendant, Dr. Castel will opine, for example, that Johnson's testimony regarding the 2018 call may be flawed because "Johnson's motivation to remember the details of her call with [defendant] . . . may not have been nearly as strong as it became when the FBI interviewed her about it fourteen months later." (See Opp. at 3.) Dr. Castel will further opine that "Johnson's apparent use of a schema in her recall of her communications with defendant," in which defendant was "often needlessly nervous or concerned about campaign-finance issues," could cause Johnson "to fail to recount

1

what was different in the June 2018 call." (See id. at 1, 3.) Still yet, Dr. Castel will explain to the jury "the possible effect of [suggestive government] questioning on [] Johnson's memory," (see id. at 3), again calling into question the trustworthiness of Johnson's anticipated testimony. Indeed, defendant does not attempt to hide that one of Dr. Castel's central purposes as an expert witness is to discredit another witness. He states: "without Prof. Castel's testimony, jurors would regard . . . Johnson's testimony as significantly stronger support for the government's case than [it] actually [is]." (Id. at 3.) This proposed expert testimony amounts to a blatant attack on witness credibility, and the Court should exclude Dr. Castel for that reason alone.

      The Court should likewise exclude Dr. Castel because his testimony will not help the jury, which is already familiar with the various concepts about which he seeks to opine, if not the technical labels he attaches to those concepts. See Fed. R. Evid. 702 (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"); United States v. Libby, 461 F. Supp. 2d 3, 12-13 (D.D.C. 2006) ("[O]n a daily basis the average juror is personally faced with innumerable questions of memory and cognition, as everyone in their daily lives is called upon to store, encode, and retrieve information he or she has been subjected to . . . Accordingly, the jury does not need a tutorial on the science of 'content borrowing,' 'memory conjunction,' or 'source misattribution' errors to appreciate that people sometimes experience mistaken memories.") Contrary to defendant's assertion, the scientific research and interview he attaches to his opposition do not prove that Dr. Castel's testimony will help the jury. (See Opp. at 3-5; Def. Exs. 1-4.) They simply re-state what defendant said in his original disclosure of Dr. Castel: that some studies show people have misconceptions about memory. But the existence of these types of studies does not render expert testimony about memory indispensable. (See Opp. at 1) ("Prof. Castel's testimony . . . does not merely help the jury reach an educated decision; it is essential to ensuring a fair trial.") If so, such testimony would never be excluded, as every juror would have something to learn about memory, which likely comes into play in every case to some

2

degree. Cf. Libby, 461 F. Supp. 2d at 14 (excluding expert testimony of one expert where the defendant offered another expert's research and testimony that the "principles which [the first expert] would testify to are not commonly understood by jurors.")

Defendant implies, citing United States v. Stever, 603 F.3d 747 (9th Cir. 2010), that he will be denied his Sixth Amendment right to present a defense if the Court bars Dr. Castel from testifying. (See Opp. at 1.) Stever is distinguishable. There, the Ninth Circuit held that the district court denied that right to a defendant convicted of drug offenses by denying his motion to compel discovery regarding Mexican drug trafficking organizations (DTO) operating in the same area and by barring him from arguing at trial that a DTO was responsible for the marijuana found on his property. Id. at 751, 755-57. Here, by contrast, the Court will neither strip defendant of his defense (i.e., that he forgot about his June 2018 conversation with Individual H about illegal campaign contributions) nor of his ability to explore and make that defense through cross-examination by excluding Dr. Castel. Nor, for that matter, is the "Ninth Circuit's . . . latest guidance on expert testimony related to psychology" applicable here. (See Opp. at 5.) In United States v. Finley, 301 F.3d 1000 (9th Cir. 2002), cited by defendant, the Ninth Circuit found that the district court erred in striking defendant's proposed expert testimony regarding defendant's "atypical belief system." Id. at 1004. While the court noted that expert testimony can be helpful "when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge," see id. at 1013, it said that case dealt with a unique mental disorder few jurors would naturally understand. See id. ("Jurors are unlikely to know that psychologists have identified a personality disorder that explains why a seemingly normal person could reject or distort certain overwhelmingly true information.")

Unlike Finley, every juror has experience with and understands the difficulties of memory. Evaluating a witness' memory and believability is squarely in the juror's domain. (See Ninth Circuit Model Instruction Nos. 1.7, 6.9 (Credibility of Witnesses).) Nothing in this case requires an expert to explain it to them.