## Government's Exhibit B



January 24, 2022

<u>**VIA E-MAIL ONLY**</u>

Mack E. Jenkins, Assistant United States Attorney
Susan S. Har, Assistant United States Attorney
Jamari Buxton, Assistant United States Attorney
United States Attorney's Office
Central District of California
312 N. Spring St., Suite 1500
Los Angeles, California 90012
mack.jenkins@usdoj.gov
susan.har@usdoj.gov
jamari.buxton@usdoj.gov

In re:   *United States v. Fortenberry*, C.D. Cal. case no. 2:21-cr-491-SB
Supplemental Expert Notice as to Alan Castel, Ph.D.

Dear Assistant United States Attorneys Jenkins, Har, and Buxton:

We write to supplement our December 14, 2021, notice of our intent to elicit at trial, under Federal Rule of Evidence 702, opinion testimony from Professor Alan Castel, Ph.D.

In addition to the opinions previously noticed, we anticipate eliciting Prof. Castel's analysis of the FBI and USAO interviews of Congressman Fortenberry on March 23 and July 17, 2019, and the FBI interview of Jessica Furst Johnson on or about August 9, 2019, all based on Prof. Castel's review of relevant audio recordings and transcripts, and other discovery evidence, as well as his specialized knowledge in the field of human memory:

1. **March 23 and July 17, 2019, interviews with Fortenberry**

The following factors, among others, may have influenced Fortenberry's ability to retrieve memory in the March and July 2019 government interviews.

**Prior retrievals**: In the time between the June 4, 2018, call from Ayoub (the "Ayoub Call") and the interviews by the government, Fortenberry retrieved his memory of the Ayoub Call several times, which is potentially important because retrieving certain memories can alter their contents through modifications and reconstruction. The outcome of prior retrievals can be a different memory of the event, and that may have happened to Fortenberry.



**Gist**: Human memory does not always retain information in its exact form. Rather, we tend to remember general themes, or gist. This may often be the case when it comes to memories of conversations. We may not remember the exact words used but may be able to remember more generally a theme or message from the conversation. In this case, Fortenberry might have remembered a phone call that seemed concerning as a gist without remembering all the precise information conveyed. To the extent Fortenberry then went on to have conversations about the Ayoub Call with others, that process could have caused his memory to become even more gist-based. In addition, it is possible that information Fortenberry received after the Ayoub Call influenced the significance he attached to different aspects of his memory of the Ayoub Call, creating an issue of varying motivation to remember across time.

**Repetitive, suggestive questioning, and stress**: The manner in which memory is probed can influence what information is retrieved. Repetitive and suggestive questioning can potentially bias and contaminate memory—both during one interview and when presented again at a later interview. In this case, Fortenberry was repeatedly asked whether his campaign received illegal contributions. That could influence the manner in which Fortenberry attempted to retrieve information from his memory of the Ayoub Call, and the accuracy of the memory. Despite Fortenberry stating that he could not remember certain details, the repetition of questions pertaining to the event could then change his memory of it, especially if the manner of the questioning caused stress. Ideally, memory would be probed with open-ended questions and without introducing or suggesting particular information or themes. Suggestibility can alter memory, especially when someone is repeatedly questioned, has had his request for a break denied, and/or is frequently interrupted when trying to retrieve specific aspects of one's memory.

## 2. August 2019 Jessica Furst Johnson interview

**Schema**: Schemas influence how we encode and interpret incoming information and can be used to fill in gaps in memory, consistent with past similar events. As a possible example in this case, Jessica Furst Johnson noted in her recorded FBI interview that Fortenberry was nervous or worried in many of her interactions with him before their June 2018 call. As a result, during that FBI interview, she often characterized her June 2018 call with Fortenberry as being of a similar nature to prior calls. She noted on multiple occasions that she remembered either nothing unusual from her June 2018 call with Fortenberry or nothing inconsistent with this schema or pattern.

Jessica Furst Johnson also may have experienced **interference** from her memory of the calls she had had with Fortenberry before the June 2018 call when agents questioned her about the June 2018 call in particular. This interference could lead her to characterize the call in question as being similar to prior calls, as she noted that nothing seemed out of the ordinary for Fortenberry in the June 2018 call.

Even after she said repeatedly that she did not remember the call, the agents used repeated questions and presented her a hypothetical, which could bias her and lead her to **reconstruct** a supposed memory of the event. She noted in her FBI interview the possibility that the questioning



*United States v. Fortenberry*
Mack Jenkins, Susan Har, and Jamari Buxton, AUSAs
Page 3

could lead her to create a memory; that would be consistent with the reconstructive nature of memory.

Johnson noted in her interview with the agents that she was not at her office and was traveling for an alumni event when she took the June 2018 call from Fortenberry, which could have **interfered with her encoding** of the information Fortenberry conveyed to her in that call.

Time-inconsistent **motivation to remember** could also be at play in Jessica Furst Johnson's interview. She may not have appreciated the importance of what Fortenberry told her during their June 2018 call. This could have led her to fail to store contemporaneously a memory of important details of that call. In August 2019, when agents repeatedly questioned her about it, she may have been strongly motivated to remember it. But her ostensible memory was by then influenced by awareness that the information in question had taken on increased importance.

\*       \*       \*

Congressman Fortenberry reserves the rights to supplement this notice and to elicit expert testimony regarding other matters that may arise during trial. The defense may further elicit from Prof. Castel additional opinions in rebuttal to testimony to be offered by the government.

Sincerely,

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

John L. Littrell
Ryan V. Fraser