John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700
Fax: (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**JOINT MOTION *IN LIMINE* NO. 6**<br><br>**HON. JEFFREY FORTENBERRY'S MOTION TO EXCLUDE EVIDENCE OF IRRELEVANT TEXTS, PHONE CALLS, AND EMAILS [Fed. R. Evid. 401–404, 801–802, 901, 1001–1004]**<br><br>Hearing Date: February 8, 2022<br>Hearing Time: 8:00 a.m.<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022<br>Trial: Feb. 15, 2022<br>Last Day: March 2, 2022 |

**TO BE EXCLUDED: Evidence of irrelevant text messages, emails and phone calls.**

**REP. FORTENBERRY'S CONTENTIONS IN SUPPORT OF THE MOTION**

The government has declined to provide notice of the specific evidence it intends to offer at trial, but it has indicated that it does intend to present some text messages, phone calls and emails, including some that do not include Congressman Fortenberry, to establish the relationship between Fortenberry and the other parties on the communications. These communications are irrelevant, substantially more prejudicial than probative, and hearsay.

**1. Further description of evidence to be excluded by this motion.**

In discovery, the government has disclosed reports and evidence related to voluminous email and text-message communications, including communications involving Congressman Fortenberry, Toufic Baaklini, Andrew Doran, and others dating from early 2017. These messages include an apparent text message from Doran to Baaklini on January 10, 2017, asking, "Were you able to talk to Mark about EP and Fort miscommunication?" and the apparent March 28, 2017, text messages below, summarized as follows by the government:

| Sender | Recipient | Message |
|---|---|---|
| Fortenberry | Baaklini | We need to see you quickly. Please call and come over. |
| Baaklini | Fortenberry | My attorney believes it could be productive for all of us to get together including any attorney who represents your interests. His name is [*name redacted*], at [*name of law firm redacted*], and his phone number is [*phone number redacted*]. |
| Doran | Baaklini | My friend, is everything ok? |
| Doran | Baaklini | I think you may have phoned Fort by mistake. |
| Baaklini | Doran | Oh no thanks. I will call you after 5pm. |

Similarly, according to an FBI report in discovery, in February 2017, the FBI interviewed Baaklini regarding a scheme of conduit campaign contributions. *See, e.g.*, Bates-stamped discovery page JF00002485, which is part of Exhibit B to Fortenberry's Motion to Suppress Statements (Dkt. 35-002). The FBI report says that "[a]ccording to Pen Register Data

1

and toll records, after this interview, there were numerous calls and text messages between Baaklini, Fortenberry, Drew Bowling . . . , Fortenberry's staffer, and Fortenberry's campaign consultant Alexandra Kendrick . . . . The content of these communications is unknown." *Id.*

**2. Legal bases for exclusion: Fed. R. Evid. 401–404, 801–802, 901, 1001–1004.**

These communications and others related to them have unclear relevance to the charges of the Indictment, invite prejudicial speculation by jurors, and are not properly noticed as 404(b) evidence. The authenticity of those communications has not been established. Moreover, many of those communications are hearsay. The foregoing evidence also implicates substantial dangers under Federal Rule of Evidence 403 that would outweigh any probative value for a permissible purpose. Those dangers include the unfair prejudice of misleading the jury to speculate on whether improper communications took place having to do with Congressman Fortenberry. This evidence also confuses the issues, since the messages have no clear relationship to the offense charged. This evidence wastes time by inviting a mini-trial over the meaning of ambiguous communications from an unclear context. The authenticity of the apparent text messages and emails is also unclear. *See* Fed. R. Evid. 901, 1001–1004.

Congressman Fortenberry respectfully requests that the Court exclude all statements like the ones described above unless the government (1) identifies each statement it wishes to introduce, (2) establishes its authenticity, (3) articulates its relevance, and how that relevance is not outweighed by the danger of unfair prejudice, and (4) establishes that the statement is not hearsay, or that it is admissible because of an exception to the hearsay rule.

# GOVERNMENT'S OPPOSITION

## I. INTRODUCTION

Defendant's motion states the obvious: in order to admit text messages, emails, and other records as evidence at trial, the government will need to establish that each item is relevant, authentic, and is either not hearsay or falls within one or more exceptions to the hearsay rule. (See Mot. at 2.) Yet in advance of trial, or even before the time required for the government to furnish an exhibit list, defendant – without identifying any purportedly problematic text message, email, or other record the government proposes to admit at trial beyond two communications and an FBI report – asks the Court for a blanket order excluding all this evidence on the grounds it is "irrelevant, substantially more prejudicial than probative, and hearsay." (See id. at 1); cf. Stonefire Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013) (court declining to scrutinize "blanket [evidentiary] objections without analysis applied to specific items of evidence").

Because defendant has not considered the specific items of evidence the government plans to introduce at trial, his motion is premature, overbroad, and baseless. In short, the Court should reject defendant's motion.

## II. ARGUMENT

### A. Defendant's Moton Is Premature, Overbroad, and Baseless

At trial, the government plans to introduce various text messages, emails, and other records into evidence. Before seeking to admit each item into evidence, the government will establish (absent a stipulation): (1) that the item is relevant— i.e., that it has "any tendency" to make a "fact of consequence" in determining the action "more or less probable than it would be without the evidence," see Fed. R. Evid. 401; (2) that it is authentic— i.e., that the item of evidence "is what the [government] claims it is," see Fed. R. Evid. 901; and (3) that it is either not hearsay, for example, because the item constitutes defendant's statements, see Fed. R. Evid. 801(d)(2)(A), or is not being offered for the truth, see Fed. R. Evid. 801(c)(2), or that it falls within an exception to

the hearsay rule.  See Fed. R. Evid. 803; see generally United States v. Morel-Pineda, 829 F. App'x 187, 191 (9th Cir. 2020) (citing Fed. R. Evid. 801(d)(2)(A), 901(a); "an agent testified that the number in the messages was the one Meyers used to communicate with [defendant], and a phone with that number was found upon searching [defendant's] apartment.  This suffices to authenticate texts on that phone as sent by [defendant]."); United States v. Torres, 742 F. App'x 244, 245 (9th Cir. 2018) ("The text messages . . . qualify as statements of a party opponent."); United States v. Acosta-Licerio, No. R1600478021TUCJGZLAB, 2018 WL 9986799, at *2 (D. Ariz. Feb. 21, 2018) ("The text messages were . . . admissible as an opposing party statement [under] Fed. R. Evid. 801(d)(2)(A), and co-conspirator statements [under] Fed. R. Evid. 801(d)(2)(E)."); United States v. Dashner, No. 12-CR-00646-SI-1, 2015 WL 3660331, at *5 (N.D. Cal. June 2, 2015) ("Emails sent by defendant to the IRS . . ., emails sent to the . . . undercover agent . . ., and emails sent by defendant to [certain clients] when offered against defendant are not hearsay.")

Consistent with the Court's Criminal Standing Order (Dkt. No. 8), the government's exhibit list is to be provided at least twelve days before trial.  (See id. at 5-6.)  At that point, defendant can identify any text messages, emails, or other records he believes are inadmissible, and the parties can meet and confer regarding that evidence and attempt to resolve the issue before trial.  Until then, defendant's contention that any and all text messages, emails, or other records the government seeks to introduce are "irrelevant, substantially more prejudicial than probative, and hearsay," (see Mot. at 1), is overbroad and baseless, and should be rejected by the Court.

**B.    The Government Does Not Intend to Introduce the Two Sets of Text Messages Identified in Defendant's Motion in its Case-In-Chief**

Though defendant's motion seeks to exclude all text messages, emails, and other records at trial, without consideration of each specific item of evidence, he does identify two specific sets of text message communications he claims are inadmissible.  The first is a January 10, 2017 text exchange between Toufic Baaklini and Andrew Doran.  The

2

second is a March 28, 2017 text message thread between defendant and Baaklini, and between Baaklini and Doran. At this point, the government does not plan to introduce the January 10 or March 28, 2017 text message exchange between Baaklini and Doran, rendering this aspect of defendant's motion moot.[1]

To the extent the government does seek to admit the March 28, 2017 text message thread, it is direct evidence of defendant's close personal and professional relationship with Baaklini—the same person who arranged for Individual H to host a fundraiser for defendant, and the person Individual H identified to defendant as having funneled $30,000 of illegal foreign money to defendant's campaign. This evidence is relevant because it tends to show both defendant's ease of access to Baaklini (and that defendant could have inquired with Baaklini about his call with Individual H), and defendant's motive to conceal and falsify his knowledge that his close friend, Baaklini, routed illegal contributions to his campaign. In that regard, defendant misses the mark in complaining that these communications were not noticed under Rule 404(b) because the government does not seek to introduce these communications to prove other crimes or bad acts. The admission of these text messages do not run afoul of the hearsay rule: they are admissible as the statement of a party-opponent and the import is that the messages highlight the type of close relationship dynamic defendant had with Baaklini. And the messages will be properly authenticated, either by an agent because the text messages were seized from Baaklini's phone via a proper search warrant or by Baaklini himself, who is on the text message thread.[2]

Defendant's motion also references an FBI report that states phone records show contact between Fortenberry, Baaklini, Fortenberry's staffer, and Fortenberry's fundraising consultant after the government interviewed Baaklini regarding illegal contributions in February 2017, (see Mot. at 1-2), but defendant does not identify any

---

[1] The government does not concede that these text messages are inadmissible.
[2] The foregoing analysis on just one text message thread highlights the importance of conducting an item-by-item analysis to resolve evidentiary disputes.

3

specific communications or evidence he believes should be excluded. Again, once the government produces an exhibit list to defendant, he can identify any specific communications falling within this category that he thinks are inadmissible (to the extent the government seeks to introduce such evidence), and the parties can meet and confer regarding those items of evidence.

### III. CONCLUSION

The Court should deny defendant's motion.

# REP. FORTENBERRY'S REPLY TO GOVERNMENT'S OPPOSITION

### 1. The government should not benefit from violating the Criminal Standing Order by refusing to identify its exhibits to the defense.

The government objects that the defense's motion is "premature" because the defense "has not considered the specific items of evidence the government plans to introduce at trial." Opp'n at 1. This overlooks that considering those specific items was impossible because the government hasn't identified them, in violation of the Criminal Standing Order. In particular, the Criminal Standing Order ("CSO"), Dkt. No. 8 at § F, and subsequent Order Continuing Trial Date, Dkt. No. 23 at 2 ("The final pretrial conference hearing is continued to February 8, 2022, at 8:00 a.m." and "*the parties should not expect a further continuance*"), set the deadline for the government to identify its exhibits five days before the pretrial conference, which was set for February 8, 2022. Thus, the government's deadline to identify its exhibits was February 3, 2022.

This did not change with the district's temporary suspension of jury trials. The government agreed with this proposition at the status conference of January 25, 2022, which took place after the district's trial suspension. AUSA Mack Jenkins stated there: "the parties also currently agreed to act as if—that *all current deadlines continue* . . . to essentially put ourselves in the position to be prepared to try the case wherever it is as soon as possible." Rptr.'s Tr. of Status Conf., Jan. 25, 2022, at 11:9–16 (emphasis added).

The Court may enforce its pretrial deadlines; *see United States v. W.R. Grace*, 526 F.3d 499, 508–11 (9th Cir. 2008) (*en banc*); Fed. R. Crim. P. 16(d)(2); and the parties' agreement here only reinforces the fairness of doing so. At a minimum, the Court should order the government to identify its exhibits forthwith and give the defense the opportunity to file further motions *in limine* on a truncated briefing schedule to exclude such evidence.

### 2. Government-offered evidence of early 2017 communications should be precluded for failure to identify the evidence or specify a theory of admissibility.

The defense motion prompted the government to state that it does not plan to introduce the January 10 or March 28, 2017, text messages between Baaklini and Doran, though the

1

government says it does not concede their inadmissibility. Opp'n at 2–3. Similarly, the government acknowledges the discovery regarding evidence of phone communications in early 2017 but does not state whether it intends to offer this evidence. Opp'n at 3–4. In any event, the government provides no grounds for admitting any of this evidence.

### 3. March 28, 2017, text message thread.

As to some of the March 28, 2017, text messages, a separate discussion is necessary, because the government did at least explain that it may seek to admit these messages, offering two theories of relevance. *See* Opp'n at 3, lines 5–21. (The government calls these messages a "thread," but there are actually only two messages in question for which the government offers any justification—one is an apparent message from Fortenberry to Baaklini, and the other is an apparent message from Baaklini to Fortenberry. *See* Mot. at 1; Opp'n at 3 (referring to evidence of defendant's relationship, but only the first two messages involved Fortenberry).)

The government's theories of relevance are "access to Baaklini" and "motive to conceal and falsify [alleged] knowledge that his close friend, Baaklini, routed illegal contributions to his campaign." Opp'n at 3. Consider each theory in turn. First, while the messages do tend to show access, they also invite prejudicial speculation concerning the topic of the planned meaning. That speculation is unresolvable and therefore confuses the issues and misleads the jury to wonder about a tangential issue, increasing the danger of a conviction that is not based on rational consideration of the admissible evidence alone. There is also no need for these messages as evidence of "access" because the government will call Baaklini as a witness, who can explain his relationship to Fortenberry and ability to communicate with Fortenberry in a manner that does not invite this prejudicial distraction. For these reasons, the dangers under Federal Rule of Evidence 403 substantially outweigh the minimal probative value, particularly once discounted for the availability of other evidence on the same point (Baaklini's testimony) that does not implicate those 403 dangers. *See Old Chief v. United States*, 519 U.S. 172, 183–85 (1997) (calling for discounting the probative value of evidence objected to under Rule 403 in light of the availability of "less risky alternative proof going to the same point").

The government's second theory of relevance raises similar problems. Not least

1  among them is the fact that the messages simply don't have any tendency to show a "close"
2  friendship. And without the friendship being *extremely* close, the motive theory falls apart.
3  No member of Congress would plausibly commit a felony to help a mere acquaintance or
4  even a somewhat loosely connected friend. Moreover, again, *Old Chief* calls for discounting
5  any probative value for the availability of other less risky evidence on the same point.
6  Baaklini's testimony can explain the nature of his relationship with Fortenberry without
7  creating a near-irresistible urge for jurors to wonder what the meeting alluded to in these
8  messages was all about and/or why that question will not be answered by the evidence.
9  Thus, these text messages should be excluded under Federal Rule of Evidence 403.

Respectfully submitted,

Dated: February 3, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

*/s/ Ryan V. Fraser*
John L. Littrell
Ryan V. Fraser
*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

Dated: January 31, 2022

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

   */s/ per email authorization*
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA