John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700
Fax: (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00941-SB |
| *Plaintiff,* | Hon. Stanley Blumenfeld, Jr. |
| | **JOINT MOTION *IN LIMINE* NO. 7** |
| v. | |
| JEFFREY FORTENBERRY, | **HON. JEFFREY FORTENBERRY'S MOTION TO PRECLUDE EVIDENCE OR ARGUMENT THAT FORTENBERRY HAD REASON OTHER THAN THE JUNE 4, 2018, CALL TO BELIEVE HIS 2016 FUNDRAISER RECEIVED ILLEGAL DONATIONS** |
| *Defendant.* | |
| | Hearing Date: February 8, 2022 |
| | Hearing Time: 8:00 a.m. |
| | Indictment: Oct. 19, 2021 |
| | Pretrial Conference: Feb. 8, 2022 |
| | Trial: Feb. 15, 2022 |
| | Last Day: March 2, 2022 |

**TO BE PRECLUDED: Evidence or argument that Congressman Fortenberry had reason or suspicion to believe his 2016 fundraiser received illegal donations on any basis other than the June 4, 2018, call from Individual H.**

### REP. FORTENBERRY'S CONTENTIONS IN SUPPORT OF THE MOTION

**1.  Further description of evidence to be excluded by this motion.**

Evidence the government may offer to suggest that Fortenberry had independent knowledge or suspicions of illegal campaign contributions, apart from the 2018 Call, includes:

(a)  Alexandra Kendrick's anticipated testimony that, based on her experience from a previous campaign, she recognized that Congressman Fortenberry's 2016 campaign fundraiser in Los Angeles had the potential for illegal campaign contributions "because of the donors' cultural background" and that she relayed that concern to Congressman Fortenberry.

(b) Toufic Baaklini's anticipated testimony that approximately one week after the 2016 campaign fundraiser, Congressman Fortenberry asked Baaklini if there was anything wrong with the fundraiser because Individual H's family members made a lot of the donations, and that Baaklini responded by saying that there was nothing wrong with it.

The government may intend to offer still other evidence on this point; in meeting and conferring, the government has not placed any limits on the ways in which it might attempt to suggest Fortenberry had some basis for suspicion other than the 2018 Call.

**2.  The Indictment must be treated as framing the case for trial; otherwise, a constructive amendment or prejudicial variance will result.**

The Indictment charges Congressman Fortenberry with violating 18 U.S.C. § 1001 in three counts by allegedly scheming to falsify and conceal material facts and allegedly making false statements concerning contributions to a 2016 fundraiser. The material facts the government claims Fortenberry lied about—the foreign source of the funds and the use of conduits to convey the funds to his campaign—were allegedly conveyed to Fortenberry in a secretly recorded June 4, 2018, call from Individual H, which the government arranged and which the Indictment refers to as the "2018 Call." *See* Indictment ¶¶ 14–15.

The Indictment does not reference any other possible source of knowledge by Fortenberry that the alleged facts that he allegedly concealed or lied about were or might be facts. In other words, the theory on which the grand jury returned the Indictment is that Fortenberry concealed and/or lied about what he ostensibly learned *in and from the 2018 Call*. *See id.* Indeed, there would have been no reason for the government to stage the 2018 Call at all if the government had had a credible suspicion that Fortenberry had some other reason to believe his campaign received illegal donations two years before.

Therefore, allowing the government to imply or argue knowledge this from a source other than the 2018 Call will violate the Fifth Amendment by a prejudicial variance or a constructive amendment of the Indictment. *See Stirone v. United States*, 361 U.S. 212, 215–17 (1960) (constructive amendment); *United States v. Ward*, 747 F.3d 1184, 1189–92 (9th Cir. 2014) (outlining variance and constructive-amendment doctrines).

### 3.  Further legal bases for exclusion: Federal Rules of Evidence 401–404.

As noted above, evidence or argument along these lines would invite trial jurors to convict on a theory of knowingly false statements that appears unlikely to have been considered by the grand jury. But that is not the only problem. Any probative value of testimony or evidence related to the supposedly suspicious circumstances of the 2016 fundraiser would be substantially outweighed under Federal Rule of Evidence ("FRE") 403 by the need it would create for a mini-trial on the details and apparent legitimacy or suspiciousness of that fundraiser. The defense would, of course, need to call witnesses of its own to rebut the government's suggestion that the fundraiser seemed suspicious. Moreover, one such witness who, the defense believes, would help rebut this inference is Drew Bowling, Fortenberry's chief of staff at the time of the 2016 fundraiser. But the defense and the government are currently informed that Bowling has become medically unavailable to testify in the trial, creating unfair prejudice to the defense. Moreover, the probative value of the "cautionary tale" is minimal because, even by its own terms, it was based on nothing more than cultural bias. After all, the FBI report of interviewing Kendrick states that her concern was "because of the donors' cultural background" (and nothing else). This has minimal or no probative value as a

MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE OR ARGUMENT THAT
CONGRESSMAN FORTENBERRY HAD REASON OTHER THAN THE JUNE 4, 2018, CALL TO
BELIEVE HIS 2016 FUNDRAISER RECEIVED ILLEGAL DONATIONS

warning to Fortenberry, and is irrelevant, because he would have been entitled to reject out of hand a cautionary tale that was based merely on the "cultural background" of donors.

Evidence of Fortenberry's alleged question to Baaklini about the legitimacy of the 2016 fundraiser about a week after should also be excluded under FRE 403 because it, too, has limited probative value for the government—since even Baaklini would say that he told Fortenberry there was nothing wrong with the 2016 fundraiser. This testimony would invite jurors to speculate and, in effect, unduly burden Fortenberry's constitutional right not to testify because he is the only other possible witness to the alleged conversation. *Cf. United States v. Espinoza-Baza*, 647 F.3d 1182, 1191 (9th Cir. 2011) (explaining that even "a small risk of misleading the jury" or a "modest likelihood of unfair prejudice" is enough to outweigh the probative value of marginally relevant evidence).

In addition, to the extent these uncharged acts could otherwise be admissible under FRE 404(b), they also should not be admitted because the government has not provided proper written notice of a 404(b) theory. *See* Fed. R. Evid. 404(b)(3).

Therefore, under the Fifth Amendment and FRE 401 through 404, the Court should preclude evidence or argument referring to a basis for Fortenberry to suspect or believe his campaign received illegal contributions at the 2016 fundraiser other than the "2018 Call" that is referenced in the Indictment.

MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE OR ARGUMENT THAT CONGRESSMAN FORTENBERRY HAD REASON OTHER THAN THE JUNE 4, 2018, CALL TO BELIEVE HIS 2016 FUNDRAISER RECEIVED ILLEGAL DONATIONS

### GOVERNMENT'S OPPOSITION

## I.    INTRODUCTION

Evidence that defendant was suspicious of illegal campaign contributions at the 2016 Los Angeles Fundraiser ("2016 Fundraiser") *before* his June 2018 call with Individual H is highly probative of the charged crimes in the Indictment.  It tends to show that defendant was already on notice of these exact issues at the time of the call with Individual H.  That notice tends to further support the conclusions that defendant absorbed, understood, and remembered what he and Individual H discussed on their 2018 call (specifically, that defendant's campaign had, in fact, received $30,000 in illegal contributions during the fundraiser), which in turn makes it more probable that defendant willfully lied to the government during his March 2019 and July 2019 interviews when he denied having such knowledge.

The Court should reject defendant's motion to exclude at trial that (i) defendant's fundraising consultant, Alexandra Kendrick, told defendant before the 2016 Fundraiser about a cautionary experience she had involving illegal foreign national conduit contributions (the same type of illicit contributions at issue here), and (ii) defendant asked Toufic Baaklini a short time after the fundraiser whether there were any problems with the contributions from the event.  This highly probative evidence will not unfairly prejudice defendant, cause undue delay or waste time, or produce a constructive amendment or variance of the indictment.

## II.    ARGUMENT

### A.    The Testimonies at Issue of Kendrick and Baaklini Are Admissible

The government anticipates that Kendrick will testify in its case-in-chief. Defendant hired Kendrick as his fundraising consultant, and she organized and coordinated the 2016 Fundraiser, with defendant's close involvement.  The government expects that Kendrick will testify that, leading up to the fundraiser, she had significant concerns regarding the possibility of illegal contributions and that she repeatedly relayed these concerns to defendant.  Among other things, Kendrick will testify that she told

1

defendant, as a "cautionary tale," a prior experience she had with illegal foreign, conduit contributions (with a different client) during an event that similarly had ties with foreign nationals all from the same community.

This testimony is extremely probative.  According to defendant's own fundraising consultant, Kendrick was on high alert for foreign and conduit contributions for this specific fundraiser and *she repeatedly made her concerns known to defendant.*  That testimony is significant because it means that, at a minimum, defendant was specifically on notice of the risk for illegal contributions at the 2016 Fundraiser and gives further credence to the fact that the government's investigation also targeted "if and when defendant Fortenberry knew about any illegal foreign contributions."  (See Dkt. No. 1, "Indictment," ¶ 12(e)).[1]  That notice, in turn, makes it more probable that defendant remembered the information that he and Individual H discussed during the June 2018 call, namely, that Individual H gave $30,000 cash to conduits ahead of the fundraiser, that Individual H got the money from Baaklini, and that the ultimate source of the funds was Chagoury, a foreign national billionaire.  (Id. ¶ 15.)  This issue is especially critical, given that a key part of defendant's defense will be that "[h]e told the truth, as he heard and understood it" on the call with Individual H.[2]  (Dkt. No. 51 at 1); see United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) (Evidence is "inextricably intertwined" when it is "necessary to put [defendant's] illegal conduct into context and to rebut his [defense].").  Kendrick's testimony—and the context it provides for defendant's state of mind at the time of the call with Individual H—makes it more probable that defendant was willfully lying when he denied knowing about the illegal contributions from that same 2016 Fundraiser and was deliberately misleading when he stated he would be "horrified" at the suggestion of such facts.  (Indictment ¶ 19(b)(iv)).  These implicate some of the key – if not the most critical – issues in this case.

---

[1] Defendant never told federal investigators during either interview that Kendrick had repeatedly provided him such warnings before the 2016 Fundraiser.

[2] In furtherance of this same defense, defendant has noticed Dr. Alan Castel as a "memory expert," whom the government moves to exclude.

The anticipated testimony by Baaklini is similarly probative.  The evidence at trial will show that Baaklini was defendant's close friend and political ally, and that Baaklini was the one who arranged for Individual H to host the 2016 Fundraiser.  Baaklini will testify that, shortly after the 2016 Fundraiser, defendant asked Baaklini whether there was a problem with the fundraiser.  Defendant specifically noted that he was concerned because the money all came from the same family.[3]  This evidence is especially probative because it is defendant himself articulating his own suspicions that he may have received illegal contributions, which shortly followed Kendrick's warnings of the same; additionally, it shows the facility with which defendant simply asked his friend Baaklini about the issue.  Defendant's question reflects that he flagged the 2016 Fundraiser as a potential issue <u>before</u> his June 2018 call with Individual H, which again makes it more probable that he remembered his subsequent conversation with Individual H about illegal contributions, and that he willfully lied to investigators when he denied any knowledge. [4]  This anticipated testimony is further notable because, like with Kendrick's warnings, defendant did not share the fact of this conversation during either of his two interviews.  Finally, it also casts doubt on defendant's self-serving claim that he could not have followed up with Baaklini after the call with Individual H because it would have been uncomfortable.  Accordingly, this evidence, too, is highly probative of the critical issues in this case, and not evidence of other crimes or bad acts within the meaning of Rule 404(b).  Rather, it is direct and inextricably intertwined evidence of the charged crimes in the indictment.

Neither evidence of Kendrick's cautionary tale to defendant nor of defendant's question to Baaklini poses a "danger of unfair prejudice" to defendant.  <u>See</u> Fed. R. Evid.

---

[3] This conversation is described in Baaklini's Deferred Prosecution Agreement. See https://www.justice.gov/usao-cdca/press-release/file/1382086/download

[4] That Baaklini falsely responded to defendant there was no problem with the fundraiser does not alter this analysis.  Defendant's outreach still shows the issue of illegal donations at the Los Angeles fundraiser was present enough for defendant to immediately inquire about it to one of the originators of the 2016 fundraiser (who also happened to be the United States political proxy for Gilbert Chagoury).

403.  A fundraising consultant relaying a past experience with illegal contributions to defendant will not "provoke[] an emotional response in the jury" or "affect adversely [its] attitude toward the defendant wholly apart from its judgment as to his guilt or innocence."  See United States v. Pineda-Doval, 614 F.3d 1019, 1035 (9th Cir. 2010).  This is true regardless of whether Kendrick's decision to relay the cautionary experience to defendant was motivated by the "cultural background" of the 2016 Fundraiser donors.  (See Mot. at 2-3.)  If anything, it may cause the jury to view Kendrick, as opposed to defendant, slightly less favorably.  Further, evidence that defendant asked Baaklini whether there was a problem with the fundraiser – a question that provides significant insight into defendant's state of mind – will not enflame the jury or cause it to render a verdict unrelated to defendant's guilt or innocence.  Defendant's objections to this testimony seemingly have more to do with the "damage to a defendant's case that results from [the] legitimate probative force of the evidence" than it does actual unfair prejudice.  United States v. Bilderbeck, 163 F.3d 971, 978 (6th Cir. 1999).

The expected testimonies of Kendrick and Baaklini on these points will not cause undue delay, waste time, or create a mini-trial.  (See Mot. at 2.)  Regardless of whether the evidence in question is admitted at trial, the government will still elicit evidence regarding the February 2016 fundraiser, including how and why it came about, the process by which Individual H, Baaklini, and Chagoury made the illegal contributions, and defendant's participation in the event.  Defendant will thus have ample opportunity to probe the "legitimacy or suspiciousness" of the event.

**B.    The Evidence Does Not Deviate from the Indictment**

As set forth above, the significance of this evidence is to show it was more likely that defendant heard, understood, and remembered his call with Individual H and later willfully lied to federal investigators, which forms the central theory of the case.  Thus, defendant's argument that admitting this evidence would constitute a constructive amendment or variance of the indictment, which "does not reference any other possible source of knowledge" regarding illegal contributions, fails.  (See Mot. at 2.)

4

A constructive amendment of the indictment occurs "when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." United States v. Ward, 747 F.3d 1184, 1189 (9th Cir. 2014) (quotation omitted). "A variance, on the other hand, occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Id. (cleaned up). Neither applies here.

First, the indictment deliberately does not allege the specific date defendant first became aware of the illegal contributions, only that defendant learned about them "no later than" his June 2018 call with Individual H. (See Indictment ¶ 20(a) (emphasis added)). Thus, the indictment's plain language reflects that defendant may have learned about, or grew suspicious of, illegal contributions before his call with Individual H. Indeed, the Indictment makes clear this (the timing of defendant's knowledge) was one of the central objects of the underlying investigation and one of the precise facts he sought to obstruct with his lies. (Id. ¶¶ 1, 18). Second, as explained in the government's opposition to defendant's Motion in Limine regarding Rule 404(b) evidence, the government is not required to allege its theory of the case in the indictment or describe all the evidence it will adduce at trial. See United States v. Markee, 425 F.2d 1043, 1047 (9th Cir. 1970) (an indictment need not "specify the theory upon which . . . facts will be proved at trial or the evidence upon which the proof will rest."). Third, the government need not prove the exact date defendant first learned the information about which he later lied; it need only prove that he willfully made material false statements within the jurisdiction of the FBI. See Ninth Circuit Model Criminal Jury Instruction 8.73.

Because admitting the evidence will not create a "complex of facts . . . distinctly different from those set forth in the [indictment]," see United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002), or a "materially different . . . set of facts," see id., defendant's argument should be rejected.

## REP. FORTENBERRY'S REPLY TO GOVERNMENT'S OPPOSITION

Under the Fifth Amendment and FRE 401 through 404, the Court should preclude evidence or argument referring to a basis for Fortenberry to suspect or believe his campaign received illegal contributions other than the June 4, 2018, call from Individual H.

### 1. Analysis under FRE 403.

The government asserts the Kendrick "cautionary tale" is "extremely probative" because Kendrick was "on high alert for foreign and conduit contributions for this specific fundraiser" and "*she repeatedly made her concerns known to the defendant.*" Opp'n at 2. The government was right to italicize that second premise, in that it is the only one that can matter. Kendrick's subjective concerns are irrelevant, after all, to the extent Fortenberry lacked notice of them. But even if Kendrick testifies that she told Fortenberry repeatedly that she was on alert, without further testimony that she gave Fortenberry any objective reason for concern, the warnings were to be taken with a grain of salt. On the "probative value" side of the 403 scales, then, we still have minimal weight.

As for the 403 dangers to weigh against this minimal probative value, the government offers nothing to mitigate the need created for a mini-trial over how suspicious or not suspicious the fundraiser would have seemed to a reasonable observer in Fortenberry's shoes. The government likewise offers nothing to mitigate the unavailability of witness Drew Bowling on that subject. Troublingly, the government suggests that it intends to put on a mini-trial on the subject of the fundraiser's alleged suspiciousness regardless of the ruling on Kendrick's "cautionary tale," *see* Opp'n at 4, which only underscores the need for the government to identify its anticipated evidence now, to avoid unfair surprise and messy mid-trial evidentiary disputes.

Fortenberry also maintains his objection under FRE 403 to anticipated testimony by Baaklini that Fortenberry asked him whether there was a problem with the fundraiser. This, too, raises a heightened need for extrinsic evidence of the apparent legitimacy of the fundraiser, albeit to a lesser extent than the Kendrick "cautionary tale" does. This testimony also creates unfair prejudice because, even with a mini-trial over the apparent legitimacy of the fundraiser,

1  unless Fortenberry testifies, Baaklini's testimony would be the only evidence concerning this
2  alleged question.

3     **2. Fifth Amendment.**

4        Fortenberry agrees with the government that an indictment often will not need to include
5  a detailed factual narrative. But here the Indictment does include lots of factual detail, raising
6  a reasonable inference that the grand jury considered a particular theory of the case—*i.e.*, it
7  appears to have found probable cause to believe Fortenberry remembered more of the June 4,
8  2018, call from Individual H than he disclosed in his interviews by the government, based on
9  evidence of the June 4, 2018, call. The indictment does not fairly suggest the grand jury
10 considered another alleged basis for Fortenberry to have had suspicions contrary to his
11 statements in his government interviews.

12       So, while the government claims the above proposed evidence does not implicate a
13 complex of facts distinctly different from that considered by the grand jury, Opp'n at 5, this
14 rings hollow without assurance from the government that the grand jury at least received
15 Kendrick's and Baaklini's testimony to the foregoing allegations. If the grand jury did not even
16 receive that testimony, then we have a serious constructive amendment risk. The Court should
17 confirm this from the government on the record. Because—

> when conduct necessary to satisfy an element of the offense is charged in the
> indictment and the government's proof at trial includes uncharged conduct that
> would satisfy the same element, we need some way of assuring that the jury
> convicted the defendant based solely on the conduct actually charged in the
> indictment. Typically, that assurance will be provided by jury instructions
> requiring the jury to find the conduct charged in the indictment before it may
> convict. If the jury instructions do not impose that limitation, however, the
> defendant's conviction could be based on conduct not charged in the indictment.
> That possibility results in a constructive amendment of the indictment, requiring
> reversal, because it "destroy[s] the defendant's substantial right to be tried only
> on charges presented in an indictment."

*United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014) (quoting *Stirone v. United States*,
361 U.S. 212, 217 (1960)).

2

REPLY RE MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE OR ARGUMENT THAT
CONGRESSMAN FORTENBERRY HAD REASON OTHER THAN THE JUNE 4, 2018, CALL TO
BELIEVE HIS 2016 FUNDRAISER RECEIVED ILLEGAL DONATIONS

Respectfully submitted,

Dated: February 3, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

John L. Littrell
Ryan V. Fraser
*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

Dated: January 31, 2022

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ per  email authorization*

SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA

REPLY RE MOTION *IN LIMINE* NO. 7 TO PRECLUDE EVIDENCE OR ARGUMENT THAT
CONGRESSMAN FORTENBERRY HAD REASON OTHER THAN THE JUNE 4, 2018, CALL TO
BELIEVE HIS 2016 FUNDRAISER RECEIVED ILLEGAL DONATIONS