John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700
Fax: (949) 369-3701

*Attorneys for Defendant
Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**JOINT MOTION *IN LIMINE* NO. 8**<br><br>**HON. JEFFREY FORTENBERRY'S MOTION TO ADMIT HIS STATEMENTS AS NON-HEARSAY— FOR CONTEXT AND EVIDENCE OF HIS STATE OF MIND—AND PER FED. R. EVID. 803(1), 803(3), AND/OR UNDER THE RULE OF COMPLETENESS**<br><br>Hearing Date: February 8, 2022<br>Hearing Time: 8:00 a.m.<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022<br>Trial: Feb. 15, 2022<br>Last Day: March 2, 2022 |

**TO BE ADMITTED: The Complete Audio Recordings and Transcripts of Congressman Fortenberry's March 23, 2019, (Count Two) and July 17, 2019, (Count Three) statements.**

### REP. FORTENBERRY'S CONTENTIONS IN SUPPORT OF THE MOTION

The government has indicated that it intends to offer into evidence only *selected portions* of Congressman Fortenberry's March 23, 2019, (Count Two) and July 17, 2019, (Count Three) statements at trial. Despite the defense's requests, the government still has not identified *which* portions of those statements it intends to introduce. If the government is permitted to cherry-pick only the portions of Congressman Fortenberry's statements that support its case, the jury will hear a misleading and incomplete version of the facts. The jury should hear Congressman Fortenberry's statements *in their entirety*—and, in the alternative, at least the contextual statements identified below—so that it can assess whether, beyond reasonable doubt, he violated 18 U.S.C. § 1001 as charged.

**1. The Rule of Completeness and the Right to Present a Complete Defense.**

By this motion, Congressman Fortenberry invokes his constitutional rights to present a complete defense, the common-law rule of completeness, and Federal Rule of Evidence ("FRE") 106, to introduce his statements that ought, in fairness, to be considered together with those offered by the government and are necessary context for any statements to be offered by the government. *See, e.g.*, *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002) (guarantee of a meaningful opportunity to present complete defense). Excluding Fortenberry's exculpatory statements from his recorded interviews would infringe his right to put before the jury evidence that might influence the determination of guilt. *See, e.g.*, *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). "Even when evidence is excluded on the basis of a valid application of the hearsay rules, such exclusion may violate due process if the evidence is sufficiently reliable and crucial to the defense," and of course when evidence is excluded by *misapplying* evidentiary rules, due process concerns are magnified even more. *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992). Here, there is no real question of the reliability of the evidence, which consists of a recording and its transcript. To assess whether Congressman

Fortenberry was telling the truth during his March 23 and July 17, 2019, statements, the jury should consider the complete, un-edited audio and transcripts.

Fortenberry is accused of lying by denying knowledge or awareness of foreign or conduit campaign contributions. While he denied having such knowledge, he also recounted receiving information that raised concerns of possible campaign-finance improprieties. This recalls *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1160 (C.D. Cal. 2008), where the defendant "was asked essentially two similar questions regarding citizenship status in immediate succession," and "gave two answers: first, 'Hopefully United States through my mother' and second, 'I guess Mexico until my mother files a petition.'" There, the Court admitted the defendant's statements under the rule of completeness, explaining that without admitting the defendant's entire statement, there would be "significant danger that its meaning [would] be taken out of context and misrepresent to the jury a meaning other than the one Defendant was communicating." *Id.* at 1161.

**2. Congressman Fortenberry's Statements Are Not Hearsay.**

In the alternative, and without prejudice to Congressman Fortenberry's opportunity to seek admission of further statements,[1] he moves to admit the statements identified below as non-hearsay or excepted from hearsay exclusion because they are offered for context and not the truths of the matters asserted and/or because they are statements of his present sense impressions under FRE 803(1) or state of mind under FRE 803(3). *Cf., e.g.*, *Wagner v. County of Maricopa*, 747 F.3d 1048, 1052–53 (9th Cir. 2013) (state-of-mind exception).

The Court must weigh three factors in determining admissibility under FRE 803(1) or 803(3): (1) contemporaneity, (2) chance to reflect, and (3) relevance. *United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988) (FRE 803(3)); *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980) (same test for FRE 803(1)), *overruled on other ground*, *United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984). Here, Fortenberry's statements

---

[1] If this Court holds that the entirety of Congressman Fortenberry's statements are not admissible, but only portions of those statements are admissible, then Congressman Fortenberry reserves the right to identify particular portions of the transcripts he wishes to introduce after the government introduces the excerpts that it wishes to introduce.

were contemporaneous with the charged offense—they were parts of the same interviews for which he is charged. He had no chance to reflect, as the agents arrived at his home without giving advance notice of their interview topics, and the statements are relevant as described below.

### a. March 23, 2019, Interview by the FBI and IRS in Nebraska.

The defense anticipates the government may intend to offer only short excerpts of Congressman Fortenberry's interview by the FBI and IRS at his home in Nebraska. But if short excerpts—again, the defense still doesn't know which ones the government will offer—were all that the jurors saw and heard, they would be left with a distorted impression. *Cf. Castro-Cabrera*, 534 F. Supp. 2d at 1160–61.

To obtain the complete picture of Congressman Fortenberry's attempts to assist the investigation in the Nebraska interview, the jury should hear the entire recording and receive the entire transcript of it. Congressman Fortenberry's course of conduct—and the agents' conduct—during the entire Nebraska interview are relevant to his intent and state of mind.

This includes Congressman Fortenberry's statements about the startling timing and manner in which Special Agent Carter approached him at his home on a Saturday night, his ignored or disregarded requests for information concerning the investigation, and his patient and candid answering, to the best of his ability, of Carter's confusing and repetitive questions. This also includes repeated incidents in which Congressman Fortenberry attempted to answer Carter's questions, only to be interrupted, and his repeated explanation to Carter that he did not have a clear recollection of the events, and that Carter was "forcing [his] memory," an exemplary present sense impression.

It would be a severe injustice to exclude Congressman Fortenberry's sincere attempts to answer Special Agent Carters questions based on his limited memory, while admitting only other excerpts that the government has now carved out selectively in preparation for trial after actively preventing him during the interview from sharing fully what he *was* able to remember.

These statements also provide essential context for the statements to be offered by the government. They are also evidence of Congressman Fortenberry's state of mind, regardless

of their truth, and are therefore not hearsay. And they also satisfy the FRE 803(1) and/or 803(3) exceptions from the rule against hearsay. It is Fortenberry's *making* of these contextual statements that matters, to show his innocent *state of mind*, regardless of whether the information Fortenberry reconveyed from Individual H's call was actually true. *Cf., e.g.*, *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988) ("Where, as here, the statement is offered as circumstantial evidence of [a defendant's] state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted."). Without this essential context, jurors might otherwise be left with the distorted impression that Fortenberry provided only an unqualified "no" in response to questions by the agents on whether Fortenberry was aware of his campaign receiving any illegal donations.[2]

### b. July 17, 2019, USAO/FBI Interview in Washington, D.C.

The government has filed a draft transcript of the Washington, D.C., interview at CM/ECF doc. no. 47-2. Similarly, the full content of this interview is relevant context to interpret Fortenberry's intent in statements to be offered by the government. Fortenberry's contextual statements in this interview would show, for example, that: (1) he identified various individuals involved in the 2016 fundraiser, such as his fundraising consultant and staff members, as well as the location of the 2016 fundraiser and benefactors who supported, hosted, and attended that fundraiser. (2) He discussed other important events from the weekend of the 2016 fundraiser, some involving the same benefactors. (3) He explained what he understood of foreign national Gilbert Chagoury's possible link to IDC and his understanding of Chagoury's foreign citizenship. (4) He explained his memory of the approximate amount of funds raised in the 2016 fundraiser. (5) He explained his memory of following up with Individual H to set up a further fundraiser with Individual H's assistance in 2018. (6) He stated that Individual H told him that a future fundraiser could be less lucrative because Chagoury would not be involved, explaining that this concerned him and what further steps he took to follow up on that apparent news. (7) He identified by name the election-law attorney and chief

---

[2] If Fortenberry testifies and has his credibility attacked, these contextual statements will also become admissible under Federal Rule of Evidence 801(d)(1)(B)(ii).

of staff with whom he consulted in following up on the information that Chagoury may have been involved in the 2016 fundraiser, as well as his treasurer, and explained the nature of that follow-up. (8) He shared his memory of not following up with Individual H to confirm the nature of the concerning information he received from Individual H. (9) He tentatively agreed to waive the attorney-client privilege to allow the government to interview the electron-law attorney.

Fortenberry's statements on these subjects would not be offered to show that these actions and events occurred. Rather, these statements would be offered as evidence of his state of mind and intent to be forthcoming during the July 2019 interview because he made them. They are also essential context for the statements to be offered by the government as evidence of Fortenberry's alleged intent to deceive. *Cf. Castro-Cabrera*, 534 F. Supp. 2d at 1160–61.

**3. Congressman Fortenberry's Statements Are Admissible Under Rule 703.**

Even if Congressman Fortenberry's statements were otherwise inadmissible, which they are not, the defense still would have a separate right to present them to the jury because Professor Alan Castel, the defense's memory expert, relied on them when forming the opinions he intends to offer, they are highly probative in helping the jury evaluate Professor Castel's opinion, and there is no prejudice. *See* Fed. R. Evid. 703.

*       *       *

Under the Constitution and Federal Rules of Evidence, Congressman Fortenberry's contextual statements and statements evincing his present sense impressions, state of mind, and intent from the March 23 and July 17, 2019, interviews should be admitted to prevent the government from creating an unjustifiably selective impression by cherry-picking.

# GOVERNMENT'S OPPOSITION

## I. INTRODUCTION

The government bears the burden of proving defendant's guilt beyond a reasonable doubt and is free to choose how to present its case, including what evidence is offers to the jury. Defendant's motion seeks to usurp that ability by requesting that the Court require the government to play the entirety of defendant's March 2019 and July 2019 interviews with the government based on the rule of completeness. But that rule applies only where the government seeks to present excepts of recordings that distort their true meaning or mislead the jury, which is not the case here. Defendant alternatively asserts that he can present his own statements to the jury – irrespective of the hearsay rule – because he is not offering the statements for their truth, which itself is not true. He goes on to argue that his 2019 statements describing events years before are excepted from the hearsay rule as present sense impressions and statements of his then-existing state of mind, but this argument fails, as well. In short, defendant fails to present a valid legal basis for offering his statements to the jury, and the Court should therefore deny his motion.

## II. ARGUMENT

### A. The Rule of Completeness Does Not Require the Government to Play the Entirety of Defendant's March 2019 and July 2019 Interviews

Federal Rule of Evidence 106 states that "[i]f a party introduces all or part of a . . . recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Importantly, the rule of completeness does not compel admission of a defendant's statements merely because they support his theory of the defense. See United States v. Lewis, 641 F.3d 773, 785 (7th Cir. 2011) (rejecting defendant's theory that Rule 106 required admission of additional portions of his post-arrest statement that showed "lack of connection" with gang). Rather, the Ninth Circuit applies the rule only to statements that are "misleading or taken out of context." See United States v. Liera-Morales, 759

F.3d 1105 (9th Cir. 2014); United States v. Lopez, 4 F.4th 706, 715 (9th Cir. 2021) ("Rule 106 renders additional portions of a complete document or recording relevant when the opposing party distorts the meaning of the document or recording by introducing misleading excerpts into evidence.")  Thus, "it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them."  United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996).  So long as "the complete statement does not serve to correct a misleading impression in the edited statement that is created by taking something out of context," Rule 106 does not apply.  United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (approving redaction of confession to remove details meant to "humanize" defendant by bringing out his character and personal history, which were irrelevant to his factual admissions regarding the commission of the crime.)

      Defendant argues here that the government should not be "permitted to cherry pick only portions of [defendant's] statements that support its case." (See Mot. at 1).  But the government is entitled to do precisely that – i.e., present the sections of the recordings it believes help prove its case beyond a reasonable doubt – provided the portions it shows do not "distort[] the meaning of the . . . recording," see Lopez, 4 F.4th at 715, or create a "misleading impression" by "taking something out of context." See Vallejos, 742 F.3d at 905.  Because the government has not finished selecting the specific excerpts of the interviews it will introduce at trial, defendant has no legitimate basis for asserting the jury the jury will be misled by the government's presentation of the statements.  (See Mot. at 1.)  Rather, it appears defendant wants the jury to receive the interviews in their entirety not because he believes the government's evidence is likely to distort defendant's statements, but because he wants to present his own theory

of the case through the recordings.[1]  See Lewis, 641 F.3d at 785 ("We don't believe [the agent's] testimony was confusing or misleading, nor do we believe the testimony [defendant] wished to pursue was explanatory of or relevant to the admitted testimony. Rather, what [defendant] wished to have admitted was merely explanatory of his theory of the case.").  Indeed, defendant's motion makes this ulterior motive crystal-clear.  (See Mot. at 3-4) (stating that playing the full recordings at trial will show, among other things, that agents "ignored or disregarded [defendant's] requests for information concerning the investigation," that defendant was "patient and candid" when answering questions, that "he did not have a clear recollection of the events," that he "discussed other important events from the weekend of the 2016 fundraiser," and that he explained his memory of various people, events, and information.)

At bottom, defendant's rule of completeness argument is a thinly-veiled attempt to admit self-serving hearsay statements that are otherwise inadmissible.  See Lopez, 4 F.4th at 717 ("the rule of completeness does not compel the admission of inadmissible hearsay evidence simply because such evidence is relevant to the case."); United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (same).  The Court should therefore reject defendant's motion to the extent it seeks to play the recordings in their entirety based on the rule of completeness.[2]

**B.  Unless Introduced by the Government, Defendant's Statements During the March 2019 and July 2019 Interviews Are Hearsay**

Defendant argues alternatively that the entirety of his 2019 statements should be admitted in evidence because they constitute non-hearsay or fall within exceptions to the hearsay rule.  (See Mot. at 2.)  Defendant is wrong.

---

[1] It makes little sense that the jury has to hear every second of the recordings to avoid receiving a distorted view of the evidence.  See Lopez, 4 F.4th at 717 ("To be sure, Rule 106 does not obligate a district court to grant a party's motion to introduce an entire document or recording to correct the misleading impression created by the opposing party's partial introduction.") (emphasis in original).

[2] Once the government selects the excerpts it plans to play at trial, the parties can meet and confer and discuss whether it makes to include any additional segments.

A defendant's out-of-court statements are hearsay and accordingly inadmissible when offered by the defendant.[3]  See Fed. R. Evid. 801(c), 801(d)(2)(A), 802.  Thus, a defendant is barred from offering his own self-serving, out of court statements seeking to exculpate himself or denying criminal culpability.  See United States v. Ortega, 203 F.3d. 675. 682 (9th Cir. 2000).  Otherwise, the defendant would be able to "place his exculpatory statements before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids."  Id.

Seeking to circumvent this authority, defendant contends that his statements during the interviews are non-hearsay "because they are offered for context and not the truth[] of the matters asserted.  (See Mot. at 2.)  However, defendant's motion belies this argument by describing the myriad pieces of information he believes the jury needs to know to get the complete "version of the facts."  (See id. at 1, 3-4).

Likewise, defendant's statements do not fall within the "present sense impression" and "then-existing mental, emotional, or physical condition" exceptions to the hearsay rule.  (See id.)  A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1) (emphasis added).  In the 2019 interviews, however, defendant describes and explains events that occurred days, months, and years before, including the February 2016 fundraiser.  This disqualifies the statements as present sense impressions.

The state of mind hearsay exception encompasses "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including statement[s] of memory or belief to prove the fact remembered or believed."  See Fed. R. Evid. 803(3) (emphasis added).  The Ninth Circuit has explained that "[t]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would

---

[3] Hearsay means a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801.

have induced the state of mind," and instead "limit[s] those admissible statements to declarations of condition—'I'm scared'—and not belief—'I'm scared because [someone] threatened me.'") United States v. Fontenot, 14 F.3d 1364, 1371 (9th Cir. 1994) (cleaned up). Here, defendant's 2019 interview statements do not relate to how he felt in the moment during the 2019 interviews. They instead describe defendant's "memory or belief[s]" regarding past events, see Fed. R. Evid. 803(3), and explain the basis for those beliefs. Hence, the state of mind exception also does not apply.

In sum, because defendant is offering his statements during the 2019 interviews for their truth an no exceptions to the hearsay rule apply, the statements constitute inadmissible hearsay. See Fed. R. Evid. 801(c), 801(d)(2)(A), 802. Defendant thus has no basis to offer them in evidence, whether in segments or in their entirety.

### III. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

## **REP. FORTENBERRY'S REPLY TO THE GOVERNMENT'S OPPOSITION**

The government repeatedly criticizes the defense's motion *in limine* as improperly motivated, while posturing that whenever the government does finish its selection process, the result will be unbiased. *See, e.g.*, Opp'n at 2 ("defendant has no legitimate basis for asserting the jury the jury [*sic*] will be misled by the government's presentation of the statements"), *id.* at 3 ("ulterior motive"), *id.* ("thinly-veiled"); *id.* at 3 n.2 ("Once the government selects the excerpts it plans to play at trial, the parties can meet and confer and discuss whether it makes to include [*sic*] any additional segments."). But, the government is prosecuting this case, after all; it is obviously not disinterested. The government's pretense is all the more problematic for the government's ongoing refusal to identify which portions of Fortenberry's statements it will seek to admit, despite the parties' agreement to work toward the soonest possible trial date and despite the government's having the recordings since July 2019.

The truth, of course, is that *both sides* have opposite "self-serving" purposes in seeking to expand or limit what the jury will hear of Fortenberry's statements. Yes, the defense wants a more comprehensive presentation, and that is because it will tend to negate mens rea. And correspondingly, precisely *because* the government also recognizes the exculpatory contextual value of Fortenberry's statements, the government wants more redaction. What does this reveal about whether the government's unilateral selections would tend to skew the jury's impression of Fortenberry's intent in the recorded statements? *Cf. U.S. v. Bailey*, 322 F. Supp. 3d 661, 668 (D. Md. 2017) (acknowledging the potential for defendants to invoke completeness excessively, "[b]ut it is just as much an abuse of the adversary system for the prosecution to paint a misleading picture to the jury by introducing out-of-context inculpatory statements by the defendant").

**1. Fortenberry's disclosures are not offered for the truth of the matter asserted.**

Fortenberry offers his campaign finance-related revelations to the government—not for their truth (*i.e.*, not to prove what Individual H told him, which, in any event, is conclusively established by a recording)—but to prove the fact Fortenberry made the disclosures, which is essential contextual evidence of his intent in the statements to be offered by the government.

For a short concrete example to fit the page limitation, though the same issue arises with regard to Fortenberry's statements in the Nebraska interview, consider for a moment only the Washington interview. The government charges that Fortenberry lied by denying awareness of illicit donations to his 2016 fundraiser, Indictment ¶ 19.b.ii, and lied about his knowledge of the June 4, 2018, call from Individual H. *Id.* ¶ 21a., b. The fact of Fortenberry's disclosures of significant parts of Individual H's insinuations tends to directly rebut the government's charges. In other words, because Fortenberry is charged with failing to disclose, the fact of his disclosures is independently significant. Fortenberry offers the disclosures to prove they occurred, rather than to prove they were correct or that Individual H's insinuations were true. *Cf., e.g.*, *U.S. v. Dimora*, 750 F.3d 619, 628 (6th Cir. 2014) (trial court erred by sustaining government hearsay objection to defendant's introduction into evidence of his own disclosures in "ethics reports" that he had received gifts from alleged bribers, to prove he made those disclosures). The fact of these disclosures also is relevant to show Fortenberry's attempts to reveal what he could remember, and therefore goes to show his lack of mens rea, regardless of how accurately he recounted the call from Individual H. The government has substantially failed to address these arguments.

Moreover, Fortenberry's disclosures also go to show their effect (or lack of effect) on the government as a listener, which is relevant context for the government's follow-up investigation in response to Fortenberry's statements. In sum, Fortenberry's disclosures are not hearsay because they are offered for all these relevant purposes other than to prove their truth.

**2. Hearsay exceptions: Present sense impressions (FRE 803(1)) and statements of then-existing state of mind (803(3)).**

Next, the government's denial that Fortenberry described "<u>how he felt in the moment</u>" of his interviews is incorrect many times over. Opp'n at 4–5 (original emphasis). Examples include: "'I'm trying to go by memory here"; "you're making me go off memory"; "you're forcing my memory"; "I'm not really clear on the exact words"; "I don't remember exactly"; "I'm sorry, again, it's not, my memory is not clear"; and "I can't remember if I had two conversations with [Individual H], about a football game earlier or a football game in the

middle of that, this one. I just don't remember, but I do remember this comment." These are primarily or exclusively statements of state of mind and present sense impressions, not explanations or memories to prove facts remembered.

### 3. Completeness trumps hearsay as to *an accused's recorded* statements.

Alternatively, Fortenberry's contextual statements suggesting he was attempting to provide a fulsome, candid account of his memory would be admissible even if they *were* hearsay, because completeness and due process trump hearsay. *See U.S. v. Quinones-Chavez*, 641 F. App'x 722, 729–32 (9th Cir. 2016) (unpublished) (Fisher, J., concurring) (noting *U.S. v. Ortega*, 203 F.3d 675 (9th Cir. 2000), did not implicate completeness because "[t]he officer's testimony did not distort").[3] This applies *a fortiori* to the benefit of a criminal defendant offering his own *recorded* statements. *See U.S. v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992) ("Even when evidence is excluded on the basis of a valid application of the hearsay rules, such exclusion may violate due process if the evidence is sufficiently reliable and crucial to the defense . . . ."); *see, e.g., also* Mueller & Kirkpatrick, 1 Federal Evidence § 45 (4th ed.) (explaining that when the prosecution introduces less than all of a recorded statement by the accused, the "accused still has a right then to introduce self-serving or exculpatory portions that are related to the part already admitted").[4]

---

[3] Other circuits agree. *E.g., U.S. v. Harry*, 816 F.3d 1268, 1279–80 (10th Cir. 2016) ("This fairness principle can override the rule excluding hearsay."); *U.S. v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008) ("[O]ur case law unambiguously establishes that the rule of completeness may be invoked to facilitate the introduction of otherwise inadmissible evidence."); *U.S. v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously.").

[4] Under *U.S. v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996), as the government points out on page 2 of its opposition, "'adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them.'" The government's citation fails to note, however, that *Collicott* is quoting Mueller & Kirkpatrick's *Federal Evidence* § 44, which, in § 45, directly rejects the government's position. *See also* Wright & Miller, 21A Fed. Prac. & Proc. Evid. § 5078.1 (2d ed.) ("the federal common law admitted inadmissible evidence to complete truncated statements and documents"; moreover, "[m]ost of the more recent writers take the position that Rule 106 permits inadmissible evidence to be used for completeness").

Respectfully submitted,

Dated: February 3, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

*/s/ Ryan V. Fraser*
John L. Littrell
Ryan V. Fraser
*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

Dated: January 31, 2022

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    */s/ per email authorization*
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA