1  John L. Littrell, State Bar No. 221601
   jlittrell@bklwlaw.com
2  Ryan V. Fraser, State Bar No. 272196
3  rfraser@bklwlaw.com
   BIENERT KATZMAN
4  LITTRELL WILLIAMS LLP
   903 Calle Amanecer, Suite 350
5  San Clemente, California 92673
6  Tel: (949) 369-3700
   Fax: (949) 369-3701
7
8  *Attorneys for Defendant*
   *Hon. Jeffrey Lane Fortenberry*
9

10              IN THE UNITED STATES DISTRICT COURT
11
12             FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
   UNITED STATES OF AMERICA,           Case No. 2:21-cr-00941-SB
14                                      Hon. Stanley Blumenfeld, Jr.
15         *Plaintiff,*
                                        **JOINT MOTION *IN LIMINE* NO. 9**
16   v.
                                        **HON. JEFFREY FORTENBERRY'S**
17 JEFFREY FORTENBERRY,                 **MOTION FOR ATTORNEY-**
                                        **CONDUCTED VOIR DIRE**
18         *Defendant.*
19                                      Hearing Date: February 8, 2022
                                        Hearing Time: 8:00 a.m.
20
21                                      Indictment: Oct. 19, 2021
                                        Pretrial Conference: Feb. 8, 2022
22                                      Trial: Feb. 15, 2022
23                                      Last Day: March 2, 2022
24
25
26
27
28

**TO PERMIT: Sixty minutes per side of attorney-conducted *voir dire*.**

### REP. FORTENBERRY'S CONTENTIONS IN SUPPORT OF THE MOTION

This is a politically charged case involving allegations of false statements by a Republican United States Representative from Nebraska in a heavily Democratic judicial district that is far from his home.[1] It also touches on the subject of Middle East policy and support for religious minorities in the Middle East, which are controversial subjects. Moreover, particular sensitivity will be required for jurors to analyze Congressman Fortenberry's ability to recall in light of scientific research, the teachings of which in several ways refute prevalent assumptions among laypersons. All these factors call for heightened care in jury selection.

Both the law and social-scientific research support Congressman Fortenberry's request. "[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); U.S. Const. amend. VI. The primary process by which the fairness of the jury is ensured is *voir dire*. Although the court may examine prospective jurors or may permit the attorneys for the parties to do so, *see* Fed. R. Crim. P. 24(a)(1), court-conducted *voir dire* is more likely to be flawed and inadequate. The Ninth Circuit Judicial Council recommends that, in addition to Court-directed *voir dire*, attorneys for the parties should be permitted to conduct supplemental *voir dire* of the jury. <u>Exhibit A</u> (Ninth Circuit Jury Trial Improvement Committee, Second Report: Recommendations and Suggested Best Practices, Adopted October 2006) at 8–9. Because "[a]ttorneys have an increased familiarity with the facts of the case and may become aware of important questions that should be asked . . . [a]ttorney-conducted *voir dire* should be allowed for a predetermined, limited time or for clearly defined and explained purposes." *Id*.

---

[1] Wikipedia reports that Los Angeles County, for example—by a factor of three the most populous county in the Central District of California—"has voted Democratic in every Presidential election since 1988, with every Democratic nominee winning the county by a margin of at least 25 points since 1992." https://en.wikipedia.org/wiki/Politics_of_Los_Angeles_County#:~:text=The%20politics%20of%20Los%20Angeles,least%2025%20points%20since%201992.&text=Los%20Angeles%20went%20against%20the,%2C%202000%2C%202004%20and%202016.

Permitting attorneys to conduct *voir dire* reduces the likelihood of error and ensures that the process is fairer because it is aided by the adversary process and a more robust understanding of the facts of the case. The Ninth Circuit has reversed convictions in cases where Court conducted *voir dire* and failed to ask follow-up questions suggested by defense attorneys. *See, e.g.*, *United States v. Washington*, 819 F.2d 221, 224 (9th Cir. 1987); *United States v. Baldwin*, 607 F.2d 1295, 1298 (9th Cir. 1979).

Allowing counsel to question jurors is also more effective for assessing juror bias because jurors are more likely to be honest about their views when questioned by attorneys rather than judges. Studies indicate that people are more willing to disclose information to those whom they perceive as having similar status to themselves than to those of higher status. Suggs & Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 56 Ind. L.J. 245, 268 (1981) ("A large status differential between the interactants will most likely reduce perceived similarity and, in turn, the degree of self-disclosure."). A widely cited experiment bears this out. Experimenters created and observed simulated *voir dire* procedures, some conducted by people posing as attorneys and others by people posing as judges. Those playing each role also performed (with different experimental groups) their roles in different styles, both by changing the language they used and by changing their non-verbal performance. That is, those playing attorneys conducted *voir dire* in a formal style sometimes and in a more casual or personable style others; those playing judges did the same. By comparing the answers given during the *voir dire* to prior responses to surveys, experimenters concluded: "subjects were considerably more candid in disclosing their attitudes and beliefs about a large number of potentially important topics during an attorney-conducted *voir dire*. Importantly, in none of the cases were judges more effective than attorneys. . . ." Susan E. Jones, *Judge-Versus Attorney-Conducted Voir Dire: An Empirical Investigation of Juror Candor*, 11 Law & Hum. Behavior, 131, 143 (Jun. 1987). Notably, the effect was not altered by changes in the tone or delivery, or by jurors' evaluations of the judge's likeability. Jurors were less forthcoming with judges, even those scored as likeable and who delivered questions in a personable tone.

///

The effect appears to be a response to the authority of the judge's role and the respect afforded to judges, and has little to do with the particular judge's personality or style of questioning. Answering to a highly esteemed figure, such as a judge, encourages potential jurors' tendency to offer the "socially desirable"—rather than the most accurate—response. Neil Vidmar, *When All of Us Are Victims: Juror Prejudice and "Terrorist" Trials*, 78 Chi.-Kent L. Rev. 1143, 1150 (2003) ("The tendency to provide such [socially desirable] answers can be enhanced by the authoritative presence of the judge.").

At least one federal judge has recognized the phenomenon:

> [E]mpirical research suggests that potential jurors respond more candidly and are less likely to give socially desirable answers to questions from lawyers than from judges. As a district court judge for over fifteen years, I cannot help but notice that jurors are all too likely to give me the answer that they think I want, and they almost uniformly answer that they can "be fair."

Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 160 (2010).

Here, allowing attorney-conducted *voir dire* by both sides is critical to ensuring a fair trial, and sixty minutes per side is a reasonable time for questioning in this case.

**GOVERNMENT'S OPPOSITION**

I.  INTRODUCTION

Defendant Jeffrey Fortenberry is charged in a straightforward case stemming from his scheme to conceal material facts and make false statements in two interviews with federal investigators. The evidence is limited to a fairly discrete universe of largely recorded and undisputed facts. Nevertheless, at every turn in this litigation and through an active media campaign, defendant's strategy has been to unnecessarily and misleadingly inject politics and personal attacks to deflect away from the facts and the law. This strategy should not infect jury selection too. In fact, defendant's motion in limine for attorney-conducted voir dire ("Mot.") further exemplifies his ongoing attempts to politicize this case and demonstrates why the Court should maintain its stated practice of conducting voir dire and deny defendant's request.

II.  ARGUMENT

The Supreme Court has "stressed the wide discretion granted to trial courts in conducting voir dire in . . . areas of inquiry that might tend to show juror bias." Mu'Min v. Virginia, 500 U.S. 415, 427 (1991); see also United States v. Powell, 932 F.2d 1337, 1340 (9th Cir. 1991) ("It is wholly within the judge's discretion to reject supplemental questions proposed by counsel if the voir dire is otherwise reasonably sufficient to test the jury for bias or partiality."). As this Court made clear at the January 25, 2022 status conference, its usual practice is to conduct its own questioning of the venire. This Court is not alone; generally, federal courts have pushed back against attempts by counsel to encroach on this important part of the trial process. See, e.g., United States v. Lawes, 292 F.3d 123, 128 (2d Cir. 2002) (noting the "long struggle between bench and bar" over juror questioning and observing that "federal courts have successfully resisted such attempts" by counsel to have a greater role). Courts are "resistant" to such efforts because "[c]ourt and counsel have somewhat different goals in" the process. Id. Specifically, "[t]he court wants a fair and impartial jury to be chosen," while "[c]ounsel want a jury favorable to their cause—fair or not." Id. Counsel additionally may "view

voir dire as an opportunity for advocacy similar to, albeit not the equivalent of, openings or summations." Id. The record reflects that these concerns are especially present in this case.

Defendant's opening sentence in this motion is telling: he claims that "[t]his is a politically charged case involving allegations of false statements by a Republican United States Representative from Nebraska in a heavily Democratic judicial district that is far from his home[,]" and he supports it with a reference to a Wikipedia discussion of political demographics in Los Angeles County. (Mot. at 1, fn.1).[1] That defendant and his counsel continuously seek to charge his case with politics, make defendant's political affiliation the focus, and otherwise attack the motives of the prosecution team – none of which are relevant to any legal or factual defense[2] – do not justify attorney-conducted voir dire; indeed, they compel the opposite result.

Nothing about the facts or charges in this case are so unusual or inflammatory to warrant any especially "heightened concern" beyond the appropriate level of concern due every criminal defendant in selecting an impartial jury. However, to the extent heightened concern is due here, it is owed to the manner in which defendant and his counsel have elected to litigate their case and promote their defense in the media. In this context, the government agrees that "heightened care in jury selection"—that is, to protect jurors from defendant's undue influence through attorney-conducted voir dire— is necessary so that defendant is judged "by a panel of impartial, 'indifferent' jurors." (Mot. at 1 (citing Irvin v. Dowd, 366 U.S. 717, 722 (1961).) The jury should deliberate on the facts and the law and not be subjected to improper considerations and misleading

---

[1] Defendant also claims that because the case "touches on . . . Middle East policy" and may include "scientific research," the Court should alter the widely-accepted practice of judge-conducted voir dire. (Mot. at 1.) But neither have been the central focus of his defense and it is unclear how either issue is of a nature such that the Court's effectiveness in its ordinary procedure would be insufficient or lacking.

[2] Government's Motions in Limine Nos. 1 and 2 address this point and seek to exclude such arguments at trial as improper, irrelevant, prejudicial and thus violative of Rules 401 and 403, and unsupported by credible evidence.

2

allegations during their selection. This is precisely why voir dire should be conducted by the Court here.

Defendant's argument here builds on his counsel's claim at the January 25 status conference that counsel, better than the Court, can elicit the necessary information to empanel a fair jury. The government disagrees and believes the record in this case demonstrates why such a significant and sensitive process should be conducted and tightly controlled by the Court to prevent both inadvertent and intentional attempts to make this trial about something that it is not. Of course, the parties should be permitted to present "important questions" for the Court to consider asking through advance written submissions and/or sidebar discussions with the Court during jury selection. Federal Rule of Criminal Procedure 24(a)(2) expressly allows for just that. This squarely addresses defendant's claim that the jury process should benefit from the "adversary process and a more robust understanding of the facts of the case."[3] (Mot. at 2). Those benefits can be achieved through Court-conducted voir dire while removing the demonstrated threat in this case of tainting the jury with improper jury considerations. The government's concerns here are not rooted in hyperbole or speculation; defense counsel has admitted his strategy will be to push his "core defense" not of actual innocence but of a "political prosecution." (Tr. of 12/13/21 Hr'g at 43:17-19). Thus, there is every reason to believe, including based on the arguments in this motion, that defendant will continue to push that false and legally irrelevant narrative during his voir dire, if given the opportunity.

While defendant tries hard to proclaim this case is infected by politics, it is he who keeps injecting it. The indictment neither alleges nor references the political party of any participant. Moreover, the investigation was centered on an individual, Gilbert

---

[3] Defendant's citations to the Washington and Baldwin cases are misplaced. (Mot. at 2.) In both those cases, the district courts refused to ask the jurors if they knew any of the government witnesses or if they would be biased in favor of the testimony of law enforcement officers. See United States v. Washington, 819 F.2d 221, 223-24 (9th Cir. 1987) (citing United States v. Baldwin, 607 F.2d 1295, 1297 (9th Cir. 1979)). That the Ninth Circuit would be critical of a district court's failure to ask such routine questions applicable in virtually every criminal case says nothing of defendant's purported need to take over the voir dire from the Court in this case.

3

Chagoury, who financially supported both parties. Defendant is not a prominent politician in the Central District of California or otherwise widely known outside of his district. Undue consideration of defendant's politics threatens prejudice to *both* sides. Any issues of potential bias can and should be capably handled by the combination of written voir dire questions, Court-conducted voir dire, and the opportunity for counsel to propose appropriate and tailored follow up questions.

Defendant cites no case law of any level to support his proposition that his counsel is better than the Court at voir dire. Instead, he relies on a handful of law review articles. One such article is written by Judge Mark Bennett. (Mot. at 3). Judge Bennett's article advocates for an expansion of attorney-conducted voir dire as a partial remedy for implicit *racial* bias in the legal system, specifically in the context of Batson challenges. 4 Harv. L. & Pol'y Rev. 149, 158 (2010). A district court in the Southern District of New York recently considered this same article in support of a defendant's request for attorney-conducted voir dire. There, the district court noted that Judge Bennett's arguments in support of attorney-conducted voir dire did not meaningfully support the defendant's request under the facts of her case. The same analysis applies here:

> Reading the article as whole, it is clear that Judge Bennett's primary concern is racial bias in the jury selection process, but defendant simply ignores this context and repurposes the article to advocate for wholesale abandonment of judge-conducted voir dire. Even assuming attorney questioning of jurors was a suitable remedy for racial bias, defendant does not claim she is remotely vulnerable to such bias.

United States v. Golfo, 2020 WL 2513445, at *6 (E.D.N.Y. May 15, 2020). Here, the government is similarly "dubious that permitting defense counsel or the government to question prospective jurors would pose any real advantage[.]" Id. at *6. Indeed, the government echoes the need for the Court to establish appropriate guardrails on questioning to ensure the jury is fair to both sides and allowed to do its job untainted. Further, "court-conducted voir dire assures that the parties do not stray into impermissible areas that could potentially taint the prospective jurors' answers or points of view. In addition, court-conducted voir dire also permits each party the opportunity to evaluate the questions proposed by their adversary." United States v. Saipov, 2020 WL

958527, at *7 (S.D.N.Y. Feb. 27, 2020) (emphasis added).  Given the record, including the briefing, defense counsel's numerous statements at hearings, and defendant's extensive comments in the media through his spokesperson, this risk of taint if attorney voir dire is permitted is well founded.

In sum, defendant offers no persuasive reason to abandon the Court's customary practice, the customary practice in this district, and of federal courts generally, to adopt an alternative procedure for this case.  To the contrary, defendant's consistent arguments in this matter and the purported basis he outlines for the instant motion demonstrate he will attempt to use voir dire to politicize the jury selection process; but this is improper and jury selection should be the last place such infection spreads.  Accordingly, perhaps more so than in many other cases, court-conducted voir dire is not only appropriate but necessary to protect the integrity of the jury selection process.  Counsel will be able to submit readily identifiable questions to identify whether potential juror bias exists or whether some other reason demonstrates a juror is unable to be fair to defendant (or the government), and counsel may exercise appropriate strikes and cause challenges.  Caution should be the guide in voir dire, and jurors should be protected from improper influences not required to be subjected to them.

## REPLY TO GOVERNMENT'S OPPOSITION TO THE MOTION

The government's opposition to attorney-conducted *voir dire* rests on two faulty premises: that (1) to the extent there is a risk of juror bias in this case, it is the result of statements made by the defense or media coverage of this case, and (2) the best way to avoid the risk of juror bias is to pretend that it does not exist. Both are wrong.

The reality is that the risk of juror bias is present in every case because jurors (like attorneys, judges, and everyone else) are naturally biased because of their life experience. This bias need not be ignored or shunned as taboo. The best way to identify and mitigate the risk of potential juror bias is to name it and be consciously aware of it, so that jurors can recognize its impact, and attorneys can make an informed use of their peremptory strikes.

The government urges this Court to "tightly control" the jury selection process to prevent politics from "infect[ing] jury selection." But that approach would have the opposite effect. It would result in the parties and the Courts having *less* information about the risk of juror bias, not more. It would *heighten* the risk that biased jurors are seated in this case. That poses just as much risk to the government as it does to the defense.

It is true that the "[c]ourt and counsel have somewhat different goals" in the jury selection process. Gov Opp. At 1 (citing *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). The Court wants to select an impartial jury; the parties want to select a jury that is "favorable to their cause." *Id*. While "cause" challenges are designed to vindicate the court's interest in an impartial jury, peremptory challenges—which can be exercised for any non-discriminatory reason, or no reason at all—exist primarily to identify jurors who are otherwise qualified to serve, but still harbor bias that favors one side over the other. This type of bias can be subtle and difficult to detect. That is why careful, open-ended questioning is vital to ensure that jurors feel comfortable expressing their views. And only after gathering information about jurors non-disqualifying bias can counsel for both sides make intelligent use of their peremptory strikes. *See* Fed. R. Crim. P. 24(b).

///

///

Court-conducted *voir dire* may be effective at screening for unqualified jurors, who are incapable of being fair and impartial. These jurors, when asked whether they can be "fair and impartial" may volunteer that they cannot. That makes for an easy call. However, jurors who answer the same question in the affirmative are not necessarily unbiased. Almost any juror who is asked whether he or she can be "fair and impartial" will say "yes." For these prospective jurors, it is vital that attorneys, who are more familiar with the facts of the case, *see* Exh. A, and likely more focused on detecting bias that uniquely affects their clients, be permitted to ask open-ended questions that probe for more subtle, unconscious forms of bias. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 849, 78 L. Ed. 2d 663 (1984) ("Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious."). It is also important that attorneys be permitted to ask potential jurors questions in a non-judgmental way that enhances the likelihood of candid responses.

Even if the Court shared the goal of the parties to detect bias to aid in the effective use of peremptory strikes, the studies cited in this motion *in limine* show that jurors are less likely to be candid when asked questions by judges. This is true regardless of the Court's intentions, and regardless of any efforts made by the Court to invite honesty. Prospective jurors are simply less likely to admit their bias to the Court because of the Court's stature.

The government's objection to attorney-conducted *voir dire* appears to be the risk that the defense will use the process to "politicize this case" and "taint[] the jury with improper jury considerations." But this misunderstands the purpose of *voir dire*, which is to gather information from jurors. It would be self-defeating to use the opportunity to speak to jurors to "push" a narrative, rather than gather vital information about potential bias. The defense has no intention of doing so if it is permitted to question jurors directly.

///

///

Respectfully submitted,

Dated: February 3, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

*/s/ Ryan V. Fraser*
John L. Littrell
Ryan V. Fraser
*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

Dated: January 31, 2022

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ per email authorization*
SUSAN S. HAR
MACK E. JENKINS
J. JAMARI BUXTON
Assistant United States Attorneys

*Attorneys for Plaintiff*
UNITED STATES OF AMERICA