John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700
Fax: (949) 369-3701

*Attorneys for Defendant*
*Hon. Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>    *Defendant.* | Case No. 2:21-cr-00941-SB<br>Hon. Stanley Blumenfeld, Jr.<br><br>**HON. JEFFREY LANE FORTENBERRY'S REPLY TO OPPOSITION TO MOTION TO TRANSFER CASE TO NEBRASKA**<br><br>Hearing Date: February 8, 2022<br>Hearing Time: 8:00 a.m.<br><br>Indictment: Oct. 19, 2021<br>Pretrial Conference: Feb. 8, 2022<br>Trial: Feb. 15, 2022<br>Last Day: March 2, 2022 |

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................I

TABLE OF AUTHORITIES ......................................................................................... II

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT....................................................................................................... 1

        A.     There is no presumption against transfer, nor is there a general rule
               that cases should remain in the charging district. ................................... 1

        B.     The *Platt* Factors ..................................................................................... 2

               1.      Location of the Defendant ............................................................... 2

               2.      Location of Witnesses..................................................................... 3

               3.      The Location of Events ................................................................... 6

               4.      Location of Documentary Evidence ............................................... 6

               5.      Disruption of Defendant's Business .............................................. 7

               6.      Expense to the Parties .................................................................... 8

               7.      Location of Counsel ........................................................................ 9

               8.      Accessibility of the Place of Trial................................................. 9

               9.      Docket Conditions........................................................................ 10

               10.     The Interests of Justice................................................................. 12

III.    CONCLUSION.................................................................................................. 14

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                    **Page(s)**

3  *Allen v. Scribner,*
   812 F.2d 426 (9th Cir.) ...................................................................... 12
4
   *In re U.S.,*
5  273 F.3d 380 (3d Cir. 2001) ................................................................. 2

6  *Jones v. Gasch,*
   404 F.2d 1231 (D.C. Cir. 1967) ........................................................... 5
7
   *Lindbergh v. United States,*
8  363 F.2d (9th Cir. 1966) ...................................................................... 4

9  *Matter of Balsimo,*
   68 F.3d 185 (7th Cir. 1995) ................................................................. 2
10
   *Miller v. California,*
11 413 U.S. 15 (1973) ............................................................................... 3

12 *Platt v. Minn. Mining Co.,*
   376 U.S. 240 (1964) ............................................................................. 1
13
   *United States v. Bagnell,*
14 679 F.2d 826 (11th Cir. 1982) ............................................................. 3

15 *United States v. Baker,*
   No. 20-cr-288, 2020 WL 4589808 (S.D.N.Y. Aug. 10, 2020) ........................ 6
16
   *United States v. Bowdoin,*
17 770 F.Supp. 2d 133 (D.D.C. 2011) ...................................................... 1

18 *United States v. Brockman,*
   No. CR 20-00371 WHA, 2021 WL 28374 (N.D. Cal. Jan. 4, 2021) .................. 2, 11, 13
19
   *United States v. Burgess,*
20 No. 18-cr-373, 2018 WL 11211501 (S.D.N.Y. Sept. 21, 2018) ........................ 6

21 *United States v. Eshkol,*
   108 F.3d 1025 (9th Cir. 1997) ............................................................. 5
22
   *United States v. Estrada,*
23 880 F. Supp. 2d 478 (S.D.N.Y. 2012) .................................................. 8

24 *United States v. Gurolla,*
   333 F.3d 944 (9th Cir. 2003) ............................................................... 5
25
   *United States v. Haig,*
26 No. 218CR256JCMVCF, 2018 WL 8646839 (D. Nev. Oct. 10, 2018) ............... 8

27 *United States v. Haley,*
   504 F.Supp. 1124 (E.D.Penn.1981) ..................................................... 6
28

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

# TABLE OF AUTHORITIES (continued)

*United States v. Johnson*,
323 U.S. 273 (1944) ...................................................................................................3

*United States v. Jones*,
43 F.R.D. 511 (D.D.C. 1967) ....................................................................................1

*United States v. Kloehn*,
No. CR 03-912(B) DSF, 2011 WL 13308094 (C.D. Cal. Apr. 11, 2011) ...................12

*United States v. McDonald*,
740 F. Supp. 757 (D. Alaska 1990) ...........................................................................3

*United States v. Menendez*,
109 F.Supp.3d 720 (D.N.J. 2015) ...................................................................3, 9, 11

*United States v. Menendez*,
109 F.Supp.3d  (D.N.J 2015) ..................................................................................11

United *States v. Napoli*, No. C,
10-00642 CRB, 2011 WL 1303571 (N.D. Cal. Apr. 5, 2011) .......................................2

*United States v. Robinson*,
No. CRIM 09-00031, 2010 WL 3087446 (D. N. Mar. I. July 29, 2010) .....................11

*United States v. Rodriguez*,
2018 WL 2126429 (W.D.N.Y. May 9, 2018)...............................................................2

*United States v. Sanchez*,
508 F.2d 388 (5th Cir. 1975) ....................................................................................3

*United States v. Tomison*,
969 F. Supp. 587 (E.D. Cal. 1997)............................................................................5

*United States v. Young*,
No. 2:12-CR-502, 2012 WL 5397185 (D. Utah Nov. 5, 2012)....................................1

*Washington v. Texas*,
388 U.S. 14 (1967)....................................................................................................5

**Rules**

Fed. R. Crim. P. 21(b) ..................................................................................12, 13, 14

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

## I.    INTRODUCTION

As has become customary in this case, the government derides the defense for seeking to vindicate Congressman Fortenberry's statutory and Constitutional rights, arguing that Congressman Fortenberry's motion for a transfer of venue is "improper," "baseless," and an effort to seek "special treatment."   It is none of those things. Congressman Fortenberry asks this Court for nothing more than an opportunity to promptly clear his name and defeat the government's unfounded accusations against him.

Because of the suspension of jury trials in this district, this Court can't vindicate that right, at least not now.  The District of Nebraska can.  A straightforward application of the factors set forth in *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243–44 (1964) shows that a transfer of this case to the District of Nebraska for trial is appropriate.

## II.    ARGUMENT

### A.    There is no presumption against transfer, nor is there a general rule that cases should remain in the charging district.

As the government points out, there is little appellate guidance on Rule 21(b) transfers, because the decision to transfer a case is largely left to the sound discretion of the district court.  The parties agree "the district court has very broad discretion to determine the propriety of a transfer under Rule 21(b)."  Dkt. No. 94 at 5.

But the government cites language from a cluster of non-binding cases that could be read to suggest that the Rule 21(b) standard is more stringent, and less flexible, than the text of the statute suggests. Dkt. No. 94 at 5.  *See United States v. Jones*, 43 F.R.D. 511 (D.D.C. 1967) (defendant must show a "substantial balance of inconvenience to himself" and that venue transfers should be granted "only rarely"); *United States v. Young*, No. 2:12-CR-502, 2012 WL 5397185, at *1 (D. Utah Nov. 5, 2012) (the moving party faces a "formidable burden").  Courts in *this* district have not adopted such language.

Also, contrary to the government's contention, there is no "general presumption" against a Rule 21(b) transfer, nor is there a "general rule" that cases remain in the charging district.  *See* Dkt. No. 94 at 5 (citing *United States v. Bowdoin*, 770 F. Supp. 2d 133, 137

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

1   (D.D.C. 2011); *United States v. Rodriguez*, 2018 WL 2126429 (W.D.N.Y. May 9, 2018).
2   The "general presumption" applied by district courts in Washington, D.C., has no clear
3   statutory origin, and it has not been applied by Courts in this district.  As for *Rodriguez*, the
4   Western District of New York did not endorse a "general rule," it merely identified *dicta*
5   from the Second Circuit suggesting that approach.  *Id*. at *3.  Instead, the Court evaluated
6   the *Platt* factors *de novo*, and found that transfer was appropriate because "a majority of the
7   Platt factors at issue favor transfer."  *Id*.  This Court should do the same.  The Court need
8   only weigh each of the *Platt* factors, determine what weight to give each one, and then
9   decide whether they favor transfer or not.  *See United States v. Brockman*, No. CR 20-00371
10  WHA, 2021 WL 28374, at *6 (N.D. Cal. Jan. 4, 2021).  "Nothing in Rule 21(b) or in the
11  cases interpreting it place on the defendant seeking a change of venue the burden of
12  establishing 'truly compelling circumstances' for such a change. It is enough if, all relevant
13  things considered, the case would be better off transferred to another district."  *Matter of*
14  *Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995); *see also In re U.S.*, 273 F.3d 380, 388 (3d Cir.
15  2001).  Congressman Fortenberry has met his burden of showing that.

16          **B.    The *Platt* Factors**

17          The government glosses over the factual representations in Congressman
18  Fortenberry's motion as "perfunctory, illogical, or unsupported by the requisite showing
19  [he] must make" in support of his motion.  Dkt. No. 94 at 6.  But it doesn't seriously dispute
20  any of those facts or contradict the inferences that naturally flow from them.  And the
21  arguments it offers in opposition suffer from some of the same flaws it identifies.

22          **1.    Location of the Defendant**

23          The government rightfully concedes that Congressman Fortenberry's location favors
24  transfer.  Dkt. No. 94 at 7; *see United States v. Napoli*, No. C 10-00642 CRB, 2011 WL
25  1303571, at *1 (N.D. Cal. Apr. 5, 2011) (conceding for similar reasons).  However, relying
26  on non-binding, out of circuit case law, the government argues that Congressman
27  Fortenberry's location has "little relevance to a motion for a change of venue."  Dkt. No.

28

94 at 6 (citing *United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982)).[1]

This makes no sense considering the historical concerns the framers of the Constitution articulated regarding the hardships associated with being tried in a judicial district far from home. *See United States v. Johnson*, 323 U.S. 273, 276 (1944). Not surprisingly, other courts, and a leading treatise, see convenience to the defendant as being a paramount concern. *See United States v. McDonald*, 740 F. Supp. 757, 761 (D. Alaska 1990) (quoting Wright, Federal Prac. & Proc., Crim. 2d § 343, at 260 (1982)); *United States v. Menendez*, 109 F. Supp. 3d 720, 726 (D.N.J. 2015) (holding that Senator Menendez' residence in New Jersey was "paramount" and deserved "real weight").

### 2. Location of Witnesses

The government does not dispute that <u>all but one</u> of its civilian witnesses reside in Washington, D.C. Dkt. No. 94 at 8; Dkt. No. 89 at 6. For three of those witnesses, travel to Nebraska is more convenient than travel to Los Angeles. *See* Dkt. No. 89 at 4. For Individual H, the defense concedes that he would be better off if trial took place in L.A.

The government complains that Congressman Fortenberry's motion fails to consider the government's convenience in the analysis. Dkt. No. 94 at 8. But it does not offer any evidence that the government employee witnesses will be inconvenienced at all.

Starting with the government's key witness, Special Agent Todd Carter, the government has represented that he lives in three places: Los Angeles, Washington, D.C., and "International." *Id.* The government does not contend that he would be inconvenienced by travel to Nebraska. That leaves two government agents, FBI Special Agent Choe and

---

[1]    *Bagnell's* flippant comment that the residence of the defendant has "little relevance" in the Rule 21(b) analysis relied on *United States v. Sanchez*, 508 F.2d 388 (5th Cir. 1975), a case in which the defendants were incarcerated in the district where the trial took place. *Id*. at 394. For those defendants, there was no inconvenience associated with trial in that district. *Id*. Moreover, in *Bagnell*, the Court emphasized that it was essential to have trial in the district where the conduct took place (in that case, distribution of obscene material) because the jury would be required to apply the "contemporary community standards" requirement of *Miller v. California*, 413 U.S. 15 (1973) in judging the defendant's conduct. In sum, it was essential to have trial in the district where the defendant's conduct took place, even if that was different from the place where he lived.

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

1   IRS CI James O'Leary.  The government contends that both reside in Los Angeles.  But
2   both Choe and O'Leary have traveled extensively as part of this investigation.  O'Leary
3   participated in the interview with Congressman Fortenberry in Nebraska.  Choe participated
4   in the interview with Congressman Fortenberry in Washington, D.C.  He also conducted
5   interviews with Jessica Furst Johnson (Washington, D.C.), Toufic Baaklini (Washington,
6   D.C.), and Alexandra Kendrick (Kansas City, MO).  Choe and Special Agent Carter also
7   traveled to London, England, to interview Gilbert Chagoury.

8       Travel imposes a burden on anyone, but when weighing the inconvenience to
9   government employees, the burden of travel is mitigated by the fact that they have traveled
10  extensively to investigate this case, and much of the evidence they have gathered to
11  prosecute this case has been procured from other districts.  The inconvenience to
12  government employees, whose job description requires travel, should not be given the same
13  weight as the inconvenience to civilian employees who live and work elsewhere, and who
14  will not be compensated for the time they lose because they must travel for trial.

15      That brings us to the defense witnesses.  Dkt. No. 89 at 6.  The government argues
16  that the defense has failed to establish that they are "bona fide necessary witnesses."  Dkt.
17  No. 94 at 9.  But the government provides no reason to doubt the defense representation
18  about the place where defense witnesses reside or the fact they will be called to testify.  The
19  government urges the Court to look at the defense representations skeptically and says that
20  the defense failed to make a "concrete demonstration" of the proposed testimony of those
21  witnesses, citing a fifty-six-year-old opinion that is eight sentences long, *Lindberg v. United*
22  *States* 363 F.2d 438, 438–39 (9th Cir. 1966) (*per curiam*).  *Lindberg* reviewed a denial of a
23  Rule 21(b) transfer motion for abuse of discretion and found none where the defendant had
24  given apparently no information at all about his witnesses other than their location.  *Id.*

25      In any event, here, the government has made no "concrete demonstration" about the
26  proposed testimony of its witnesses, either.  *Id.*  Indeed, for IRS CI James O'Leary, his only
27  apparent involvement in this case was to accompany Special Agent Carter during the
28  Nebraska interview.  Thus, his testimony would appear to be wholly cumulative of the

testimony of Special Agent Carter.  Special Agent Choe's primary involvement in this case appears to have been to accompany Special Agent Carter on witness interviews.  *See infra.* The government has made no showing of what Special Agent Choe's proposed testimony would be, or why it is not wholly cumulative of the testimony of Special Agent Carter also.

The government also argues that the defense witnesses are "superfluous" because the government intends to call its own witnesses to the events in question.  Dkt. No. 94 at 10. But the government does not have the exclusive right to present evidence of the events it deems important to this case.  The defense has the right to tell Congressman Fortenberry's side of the story, too.  *See Washington v. Texas*, 388 U.S. 14, 19 (1967).  The government presumes that Celeste Fortenberry will be a character witness only, and therefore doubts the admissibility or relevance of her testimony.  Dkt. No. 94 at 10.  Character is not the sole purpose of her testimony.  But even if it were, it would not be a reason to give her testimony less weight than that of government witnesses.  The same is true for Nibras Bisetkey.

In any case, on the record before the court, <u>neither side has provided a description of the proposed testimony of its witnesses</u>.  The Court should either require a proffer from <u>both sides</u> regarding their witness testimony[2] or accept the representations of the parties that each intends to call all the witnesses it has identified at trial for a proper purpose.

Assuming all the witnesses identified by both parties are counted in the Rule 21(b) analysis, the location of the witnesses favors transfer, because most of the witnesses live closer to the Nebraska courts than to Los Angeles.  *See* Dkt. No. 89.

---

[2]     The government's demand that the defense describe the anticipated testimony of defense witnesses (even as it refuses to describe its own witness testimony) also burdens the right of the defense to preserve the confidentiality of its trial preparation.  *See United States v. Gurolla*, 333 F.3d 944, 953 n.11 (9th Cir. 2003) (approving of *in camera* submission regarding testimony and entrapment defense in order to balance rights under the Fifth and Sixth Amendments); *United States v. Eshkol*, 108 F.3d 1025, 1028 (9th Cir. 1997) (approving of *in camera* memoranda to prevent disclosure of defense theory), *cert. denied*, 522 U.S. 841 (1997): *United States v. Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997); *see also Jones v. Gasch*, 404 F.2d 1231, 1246 (D.C. Cir. 1967) (Bazelon, CJ., dissenting) (noting the "constitutional ramifications" of a disclosure requirement).  If the Court elects to require a proffer of defense witness testimony, the defense respectfully requests that it be permitted to make that proffer to the Court *in camera*.

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

### 3.      The Location of Events

The government appears to treat the Court's ruling on Congressman Fortenberry's motion to dismiss the indictment for failure to allege venue as dispositive on this factor. *See* Dkt. No. 94 at 11.  But the Court did not rule that the "events" in this case occurred in the Central District of California.  Quite to the contrary, it is undisputed that both statements that form the factual basis for this case occurred in Nebraska and Washington, D.C.  In denying Congressman Fortenberry's motion to dismiss, the Court noted that § 1001 offenses require consideration of "both the statement and its potential effect," Dkt. No. 59 at 8, and found venue in this district based on the "potential effects" of the statements in this case.  That does not change the fact that the conduct that underlies this case -- the statements made in Nebraska and Washington, D.C. -- occurred elsewhere.   *See United States v. Haley*, 504 F. Supp. 1124, 1128 (E.D. Penn.1981) (transfer appropriate where "nerve center" of events was in transferee district).  The location of events favors transfer.

### 4.      Location of Documentary Evidence

The government underestimates the significant burdens that the protective order in this case places on the defense, suggesting that reviewing documents, page by page, via video-feed is an adequate substitute for permitting Congressman Fortenberry to review the documents on his own.  Dkt. No. 94 at 12.  Experience and common sense compel the opposite conclusion. Requiring attorneys to be present at any time when a client reviews discovery imposes serious time and resource constraints. *See United States v. Burgess*, No. 18-cr-373, 2018 WL 11211501, at *3 (S.D.N.Y. Sept. 21, 2018) (finding that requiring the presence of attorneys for every review session would "impose undue and substantial burdens on the defendants and counsel"); *United States v. Baker*, No. 20-cr-288, 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2020) (emphasizing the "value and [] interest in the defendant being able to freely review the evidence against him, on his own time, and without a defense lawyer or anyone else looking over his shoulder"); *United States v. Abdelaziz*, No. 19-cr-10080, Dkt. 1659 (D. Mass. Dec. 4, 2020) (videoconference screensharing "is not an adequate substitute" for preparation sessions because of

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

"unavoidable communication lags and other technological issues, as well as the fact that presenting exhibits to a witness remotely … can be cumbersome").

The government can't have it both ways.  If it insists on a restrictive protective order that requires defense counsel to be present for Congressman Fortenberry to review the discovery in his case, then it must concede that the "location" of documentary evidence is the place where both counsel and client are present.  In that case, the relevant "location" of the documents is in Nebraska.  *See* Dkt. No. 89 at 7.  Due to the stringent requirement of the protective order in this case, this factor favors transfer.

## 5.   Disruption of Defendant's Business

The government argues that disruption of the defendant's business carries little weight because trials are "all-consuming" no matter where they take place.  Dkt. No. 94 at 13.  But that argument, taken to its logical end, would make this factor irrelevant in any case.  Congressman Fortenberry has an office and staff in Lincoln, Nebraska that he must work closely with in his role as a U.S. Representative.  Moreover, his "business," in addition to representing the First Congressional District in Nebraska, is to run for re-election in an increasingly competitive primary.  This too requires him to be in Nebraska.

The government's suggestion that he simply "work from home" and its comparison of this trial to a "vacation" ignores these realities (as well as the significant time that must be spent preparing for trial).  The government notes that the House of Representatives has authorized voting by proxy due to the COVID-19 pandemic.  Dkt. No. 94 at 13.  But as the government acknowledges, Republican leadership has taken the position that proxy voting is unconstitutional and has urged Republican members to vote in person.[3]  In the lone example the Government cites in which Congressman Fortenberry voted by proxy, he did so because he was infected with COVID-19.  That is the same reason he was unable to appear for the January 25, 2022, status conference.  *See* Dkt. No. 85.

This factor is not "neutral" as the government implies.  It favors transfer.

---

[3] *See* Dkt. No. 94 at 13 n.9.

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

### 6.    Expense to the Parties

Congressman Fortenberry concedes that a trial in Nebraska may be more expensive for the government because it needs to accommodate the prosecutors and their agents.  But compared to the expenses the government has incurred investigating this case, including frequent travel by both the prosecutors and the agents, the expense associated with a short trial is minimal.  More importantly, the government does not argue that *it can't afford* the additional expense of trying the case in Nebraska.  *See United States v. Estrada*, 880 F. Supp. 2d 478, 484 (S.D.N.Y. 2012).  Nor would such an argument be very persuasive considering the extensive financial resources the government has poured into investigating this case in districts far from California.

Trial in Nebraska would certainly be less expensive for Congressman Fortenberry though.  This makes intuitive sense, so much so that courts have presumed it to be true.  *See United States v. Haig*, No. 218CR256JCMVCF, 2018 WL 8646839, at *7 (D. Nev. Oct. 10, 2018) (presuming that trial in the defendant's home state would be less costly for the defendant).  If this case were tried in California, Congressman Fortenberry would have to bear the costs of travel for himself, his wife, and all his defense witnesses except for Dr. Castel.[4]  If trial were held in Nebraska, he would avoid all those costs.

The government contends that Congressman Fortenberry would bear the additional expense of his defense team traveling to Nebraska, but that is a cost that he must bear because of the onerous protective order anyway.  *See infra.*  Moreover, as set forth below, the cost of transporting the Congressman's defense team to Nebraska should carry little weight in the analysis because he only has a California defense team because of the government's decision to charge him in a district far from home.  *See infra.*

Therefore, this factor favors transfer, or at worst, it is neutral.

---

[4] If this Court excludes Dr. Castel, as the government urges it to do, then Congressman Fortenberry will have no witnesses from the Central District of California.

## 7. Location of Counsel

Congressman Fortenberry does not dispute the government would be more inconvenienced by a trial in Nebraska. Dkt. No. 94 at 15. But that factor carries less weight in this case given the government's willingness to travel extensively to investigate this case. *See Menendez*, 109 F. Supp. 3d at 730 (location of government counsel insignificant to the Rule 21(b) analysis where government counsel 'routinely prosecute[d] cases where they are properly venued, even if that requires travel.'").

As far as the defense team is concerned, trying this case in Nebraska does not add much to the inconvenience of trying this case in California because the defense must travel to Nebraska to prepare for trial, anyway. This Court should not assume a burden on the defense team that the defense team disclaims. *See id*. ("The Court will not impose geographic convenience on the Government's attorneys or any other lawyers against their preference."). Moreover, Congressman Fortenberry's choice of counsel in California was driven in large part by the government's decision to charge the case in California. Had the government charged this case in Nebraska, he may well have selected Nebraska lawyers.

It does not seem fair for the government to charge Congressman Fortenberry with a crime in California, requiring him to retain California lawyers, and then argue that the location of his California lawyers factors against him in the Rule 21(b) analysis.

In sum, the location of counsel is neutral.

## 8. Accessibility of the Place of Trial

The government argues that this factor "slightly disfavors transfer" based on the relative accessibility of the Los Angeles Airports compared to the Nebraska airports. It emphasizes that "LAX alone is serviced by over 50 airlines." Dkt. No. 94 at 16. But anyone who has traveled through LAX in the recent past would debate the government's characterization of the airport (or the city) as "accessible." The airport has long been plagued by outdated facilities, traffic, and congestion, making ground transportation to and

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

from the airport "almost as important as the flight itself."[5]  Those who can avoid flying in and out of LAX generally do.  And those who cannot, generally suffer.

By contrast, Omaha's Eppley Airfield is modern and convenient.  And contrary to the government's representation, there are plenty of direct flights from both Los Angeles and Washington, D.C..[6]  The government claims, without citation, that such flights are "rare."  Dkt. No. 94 at 16.  But American Airlines has daily direct flights from LAX to Omaha (AA Flight 3282), with a flight time of about 3 hours.[7]  Delta Airlines has daily direct flight from Reagan National Airport in Washington, D.C. to Omaha (DL 5817), also with a flight time of about 3 hours.[8]  The fact that there are many *more* options for travelers willing to make a connecting flight does not make daily direct flights "rare."  Lincoln has fewer flights that Omaha, but Lincoln is only an hour's drive (50 miles) away from Omaha.  Traveling from LAX to Downtown LA often takes that long.

Once travelers arrive in Omaha, they have an approximately eight-minute (3.4 mile) drive from the airport to the courthouse.[9]  In sum, in terms of "relative accessibility," Omaha surely wins over Los Angeles.  This factor favors transfer.

### 9.    Docket Conditions

The government concedes that this factor favors transfer.  But even though it admits that "the judges in the CDCA are amongst the busiest in the nation," the government claims

[5] https://spectrumnews1.com/ca/la-west/news/2019/11/27/inside-the-traffic-management-center-that-tracks-traffic-at-lax

[6] https://www.flyoma.com/wp-content/uploads/2021/12/non-stop-destinations_2021-12-01.jpg

[7] https://american-airlines.flight-status.info/aa-3282

[8] https://delta-airlines.flight-status.info/dl-5817

[9]https://www.google.com/maps/dir/Eppley+Airfield+(OMA),+4501+Abbott+Dr,+Omaha,+NE+68110/Roman+L.+Hruska+U.S.+Courthouse,+Hotel+Fontenelle,+South+18th+Street,+Omaha,+NE/@41.2851453,-95.9587287,13z/data=!3m1!4b1!4m13!4m12!1m5!1m1!1s0x8793901bd5ad4ee3:0x5d96bd03573b29c2!2m2!1d-95.8945203!2d41.3014752!1m5!1m1!1s0x87938fb291aba759:0xb938f19bc90f6d27!2m2!1d-95.9391454!2d41.2588462

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER CASE TO NEBRASKA

1    that it is of "minimal significance."  Dkt. No. 94 at 17.

2         The government does not address or distinguish *United States v. Brockman*, No. CR

3    20-00371 WHA, 2021 WL 28374 (N.D. Cal. Jan. 4, 2021), in which the district court

4    transferred a criminal case from the Northern District of California to the Southern District

5    of Texas, largely because of the relative congestion of the dockets.  *Id.* at *6.  The Court

6    emphasized that "although delays in trials everywhere hinge on the COVID-19 pandemic,

7    our district has suspended all in-person proceedings for the time being due to the rate of

8    COVID-19 transmission and the critical dearth of ICU capacity."  By contrast, the Court

9    found, "[t]he Southern District of Texas has also suspended jury trials, but as of early

10   January, intended to resume them on January 19, 2021."  *Id.*

11        *Brockman* is squarely on point and its reasoning applies here.

12        The government cites to *United States v. Robinson*, No. CRIM 09-00031, 2010 WL

13   3087446, at *7 (D. N. Mar. I. July 29, 2010) for the proposition that since the advent of the

14   Speedy Trial Act, several courts have found the relative conditions of the court's dockets

15   to be of "minimal significance."  Dkt. No. 94 at 17.  But in *Robinson*, the parties agreed the

16   docket conditions did not favor a transfer, so the issue was not in dispute.  The government

17   also relies on *United States v. Menendez*, 109 F.Supp.3d 770 (D.N.J. 2015) for support.  But

18   the district court in *Menendez* stated that it was "ready to conduct trial as soon as possible."

19   *Id.* at 732.  By contrast, this Court has stated just the opposite:

20        Well, the reality is that the Court is not going to know if it will be able to
          procure currently the first available date, which is March 1.  What I expect is
21        going to happen is that there is going to be a backlog of cases as a result of the
          suspension, and the Chief Judge will be making a determination based on a
22        number of criteria.  I believe one of the criterion is going to be whether a
23        defendant is in custody or out of custody.  But I'm simply not in a position to
          say whether I could secure March 1, or the beginning of March, as the earliest
24        time to get this case to trial. . . . . [T]o a large extent, your guess is as good as
25        mine, because it depends upon factors outside everyone's control.

26

27   Dkt. No. 106 (January 25, 2022, Hearing Transcript) at 6–7.

28

HON. JEFFREY LANE FORTENBERRY'S REPLY BRIEF IN SUPPORT OF
MOTION TO TRANSFER CASE TO NEBRASKA

### 10. The Interests of Justice

#### a. Judicial Resources

The government cites the conservation of judicial resources as a reason to deny transfer, because this Court has heard and ruled on pretrial motions. Dkt. No. 94 at 19. But this factor does not bear the weight the government attempts to place on it. The government argues that courts "routinely" consider whether judicial economy will be served in transferring venue." *Id*. But in the cases the government relies on, the cases had been pending for far longer than this one. *See Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir.), amended, 828 F.2d 1445 (9th Cir. 1987) (three and a half years). That is particularly true in *United States v. Kloehn*, No. CR 03-912(B) DSF, 2011 WL 13308094, at *2 (C.D. Cal. Apr. 11, 2011), in which Judge Fischer denied a Rule 21(b) transfer after she had <u>already presided over two trials</u> and expended "considerable resources" doing so.

This case has been pending in this Court for only three and a half months. The parties have appeared before this Court three times, and no evidentiary hearings have been held. Although the Court has ruled on Congressman Fortenberry's Rule 12 motions attacking the sufficiency of the indictment, *see* Dkt. No. 59, it has not ruled on the pending discovery motion or motion to suppress Congressman Fortenberry's statements. Finally, although the parties filed several motions *in limine* yesterday, the Court has not ruled on any of them, and it need not even read them if it determines this case should be transferred. The defense does not mean to suggest that the Court has not expended intellectual resources on this case – clearly it has – but there is far more work to be done before trial.

#### b. "Preventing Forum Shopping"

The government also argues that transfer should be denied to deter "forum shopping." But it is not "improper" for Congressman Fortenberry to seek a more convenient forum. That is precisely what Rule 21(b) gives him the right to do. *See* Fed. R. Crim. P. 21(b).

There is also nothing wrong or "improper" about Congressman Fortenberry seeking a trial in his home district, with a jury of his peers. When the government chose to charge this case in California – thousands of miles from any of the offense conduct or the defendant

1    – it too sought a forum it thought would be favorable to it.  *See* Dkt. No. 18.  But when it

2    made that choice, it exposed itself to the risk that Congressman Fortenberry would seek a

3    transfer of the case pursuant to Rule 21(b).  The outcome of this motion depends on the

4    application of the *Platt* factors, and not a subjective judgment about whether a jury of

5    Nebraskans would be more "friendly" to Congressman Fortenberry.

### c.    The Suspension of Jury Trials

7        The government argues that Congressman Fortenberry cannot prove that his case

8    could get to trial *materially faster* in Nebraska.  Dkt. No. 94 at 22.  But the outcome of a

9    Rule 21(b) motion does not depend on the speed with which a case can proceed to trial,

10   which is highly fact-dependent and not always knowable.  Instead, it depends on the

11   application of the *Platt* factors, and that includes docket conditions.

12       Judge Alsup recently responded to a similar argument by the government in

13   *Brockman*, saying: "The government argues that transfer itself will slow the case's

14   progression and offset the benefits of a faster docket.  That felony cases progress in the

15   Southern District of Texas at nearly three times the rate here, however, renders its argument

16   less potent. The government also argues that Brockman has not requested an earlier trial

17   date than this district can accommodate. This factor does not turn on the defendant's request

18   but on the relative conditions of the dockets. As circumstances now stand, the docket-

19   conditions factor favors transfer." *Brockman*, 2021 WL 28374 at *6 (emphasis added). This

20   reasoning applies with even greater force here.   Unlike the defendant in *Brockman*,

21   Congressman Fortenberry *has requested and continues to request* an earlier trial date than

22   this Court can accommodate.   And, given the "backlog of cases" from the suspension of

23   jury trials and factors "outside everyone's control" there is no trial date set for this case,

24   and no guarantee that one will be set anytime soon.  Dkt. No. 106 at 6–7.

25       According to the Jury Administrator and the Chief Deputy Clerk for the District of

26   Nebraska, jury trials are going forward there right now.  Dkt. No. 89 at 12; Dkt. No. 87-1

27   (Declaration of John Littrell) at ¶¶ 4-5.   These facts, taken together, more than satisfy

28   Congressman Fortenberry's burden of establishing that a transfer is warranted.   The

government argues that it has "obtained information from the U.S. Attorney's Office in Nebraska that calls into question how quickly defendant could proceed to trial there." But unlike the defense, the government has not supported its contentions with a sworn declaration. As a result, the Court should reject out of hand the government's contention that there was a "soft COVID pause" of trials, which seems to be contradicted anyway by the government's admission that trials are being conducted, including one this week.

### d.    The Impact on the Nebraska Election

Finally, the government urges the Court to ignore the fact that this Indictment has become a defining factor in Nebraska's Congressional election. It equates Congressman Fortenberry's plea for a trial and an opportunity to clear his name with a request for "special treatment." Dkt. No. 94 at 23. This argument shows a profound lack of respect for Congressman Fortenberry and his constituents. It also shows a lack of regard for separation of powers. The pending charges in this case, if not resolved promptly with a trial, may well determine the outcome of Nebraska's Congressional election. That affects not just Congressman Fortenberry, but the Nebraskans in the First Congressional district.

## III.   CONCLUSION

Congressman Fortenberry does not seek "special treatment" from the Court. He asks only that the Court apply the law to the facts and consider his request. A straightforward application of the *Platt* factors shows that a Rule 21(b) transfer is warranted.

Respectfully submitted,

Dated:  February 4, 2022

BIENERT KATZMAN
LITTRELL WILLIAMS LLP

By: _____
     John L. Littrell
     Ryan V. Fraser
     *Attorneys for Defendant*
     *Hon. Jeffrey Lane Fortenberry*

14