UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL

Case No.  2:21-cr-00491-SB-1                                             Date: February 23, 2022

Present: The Honorable   **STANLEY BLUMENFELD, JR., U.S. District Judge**

Interpreter

| Jennifer Graciano | | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Jeffrey Fortenberry | | | | | | | |

**Proceedings: (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND SUPPRESS STATEMENTS**

Defendant Jeffrey Fortenberry has moved to (1) compel discovery, Dkt. No. 74,[1] and (2) suppress the statements he made during two interviews with federal agents, Dkt. No. 35. For the reasons stated below, Defendant's motions are **DENIED**.

I.

Defendant moves to compel the Government's internal communications relating to the materiality of Defendant's statements pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.

Defendant requests disclosure of any internal communications related to the Government's claim that Defendant's statements affected the federal investigation.[2] Defendant

---

[1] At the hearing on January 11, 2022, the Government asked the Court to physically strike the unredacted version of Defendant's motion to compel. Defendant took no position on this request. Hearing Transcript, Dkt. No. 77, at 29:13–32:14. The Court **grants** this request and directs the clerk to **physically strike** Defendant's unredacted motion to compel discovery, Dkt. No. 30, from the record.

[2] Defendant principally relies on the same incorrect materiality standard that the Court previously rejected. Order, Dkt. No. 59, at 10 (noting that a statement is material if it is "capable of influencing" a federal agency (cleaned up)). Defendant alternatively argues that the

argues that such communications must be disclosed under *Brady* because they are material to his defense. *See United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) ("Under *Brady*, the government must disclose information favorable to the accused that 'is material either to guilt or to punishment.'" (quoting *Brady*, 373 U.S. at 87)). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Mincoff*, 574 F.3d 1186, 1199 (9th Cir. 2009) (cleaned up).

"It is the government, not the defendant or the trial court, that decides prospectively what information, if any, is material and must be disclosed under *Brady*." *Lucas*, 841 F.3d at 807 (emphasis omitted). If a defendant seeks to "challenge the government's representation that it lacks *Brady* information," he must "either make a showing of materiality under Rule 16 or otherwise demonstrate that the government improperly withheld favorable evidence." *Id*. at 808. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in possession of information helpful to the defense." *Id*. at 804 (cleaned up).

The Government represents that it is not withholding any *Brady* information, and Defendant fails to make a threshold showing that any material evidence exists that the Government has not disclosed. Defendant points to descriptions and arguments the Government included in its papers as the basis for his belief that the Government possesses undisclosed *Brady* information. Hearing Transcript, Dkt. No. 77, at 17:14–18:2 (noting the Government's description of its "process of going back to Washington D.C. to interview the Congressman as one where they expected him to, quote, come clean" and Defendant's statements "as doubling down on a lie"). But Defendant offers nothing more than "supposition" that such communications exist. *Id*. at 18:7–16; *see also* Compel Motion at 9–10 (noting that internal communications "*may* undermine the government's case . . . if they reveal bias or animus by its agents" and that agents "*may* have expressed anger or indignation" about Defendant's statements (emphasis added)). This falls short of the threshold showing required under *Brady*. *See Mincoff*, 574 F.3d at 1199–200 (*Brady* request properly denied because "mere speculation about materials in the government's files does not require the district court to make those materials available, or mandate an in camera inspection" (cleaned up)).

---

internal communications sought are material even under this objective standard. Compel Motion at 8–9. Even if so, Defendant has failed to make the required threshold showing under *Brady* that the requested communications exist. *See* discussion *infra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

At the hearing, defense counsel also conceded that if the documents sought are covered by Federal Rule of Criminal Procedure 16(a)(2), then they are exempt from discovery. Rule 16(a)(2) generally exempts from discovery "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The issue, Defendant argues, is that he cannot evaluate whether the information sought is covered by Rule 16(a)(2) because he does not know if the communications exist. Hearing Transcript at 12:11–21. This appears to be an academic question because the Government claims there is nothing material to the defense that is being withheld pursuant to Rule 16(a)(2), nor has Defendant made any showing to the contrary. However, if the Government is withholding any information based on Rule 16(a)(2), it is directed to serve and file a privilege log, as noted at the hearing. Hearing Transcript at 28:13–23; *see also United States v. Ghailani*, 687 F. Supp. 2d 365, 372 n.27 (S.D.N.Y. 2010) (requiring the prosecution to produce a privilege log if it claimed "any responsive documents that may exist" were protected under Rule 16(a)(2)).

Defendant also moves to compel the Government's disclosure of whether it complied with Section 9-85.110 of the Department of Justice (DOJ) Justice Manual. A party may not move to compel information not requested, and it is not clear that Defendant asked for this disclosure. He asked the Government to disclose whether it followed DOJ requirements for secretly recording Defendant and "using a 'ruse' to interrogate" him, Motion to Compel, Ex. C, Dkt. No. 74-1, and Defendant only mentioned Section 9-7.302 of the Justice Manual (which, according to the Government, does not apply), Compel Opp. Dkt. No. 73, at 24. Defendant now seeks to compel disclosure of whether the Government complied with a different provision, Section 9-85.110, not cited in his disclosure request. It is further unclear if the disclosure is material such that Defendant would be entitled to it. The Court need not decide the issue, however, as the Government represented at the hearing that it does not have anything in response to this disclosure request beyond what it has already produced.

Accordingly, Defendant's motion to compel is **denied**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

II.

Defendant also moves to suppress the statements he made during the Nebraska and Washington, D.C. interviews.

In the spring of 2019, Defendant's former counsel, Trey Gowdy, spoke to Assistant United States Attorney (AUSA) Mack Jenkins to arrange for a second interview in Washington, D.C. During the conversation, Gowdy asked for Defendant's "status" in the federal investigation. Gowdy Decl., Dkt. No. 35-1, ¶ 10. In response, AUSA Jenkins said that Defendant was "a subject trending toward a witness." *Id*. ¶ 12. Defendant argues that AUSA Jenkins's allegedly false representation about Defendant's status in the investigation was a "promise" that Defendant relied on when deciding to participate in the interview where he made the alleged false statements. Suppress Motion at 8–11.

A.

As an initial matter, Defendant has not demonstrated that he is entitled to an exclusionary remedy based on any legally cognizable theory.

A motion to suppress evidence in a criminal case ordinarily depends on the applicability of the exclusionary rule, which is "an exceptional remedy typically reserved for violations of constitutional rights." *United States v. Smith*, 196 F.3d 1034, 1040 (9th Cir. 1999). Defendant does not move to suppress his statements based on any traditional constitutional ground—i.e., an unreasonable search or seizure under the Fourth Amendment, a compelled statement in violation of the due process or self-incrimination clauses under the Fifth Amendment, or a statement obtained in violation of the right to counsel under the Sixth Amendment. Here, there is no basis to argue that Defendant's statements resulted from a Fourth Amendment violation, nor is there any argument that his statements were involuntary or made in violation of his right against self-incrimination or right to counsel. Indeed, Defendant offered to meet with federal agents for the second interview in Washington, D.C., where he was represented by counsel, Suppress Motion at 1–2, and the Government informed him that the interview was voluntary, Suppress Opp., Dkt. No. 47, Ex. B, at 2. Given these facts, Defendant necessarily concedes that his statements were voluntary.

Instead, Defendant moves to suppress his statements based on contract principles, arguing that the government's failure to live up to its promises violated his due process rights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

At the motion hearing, Defendant explained his theory of suppression in an exchange with the Court:

> The Court:  All right.  And so you are . . . not seeking to . . . suppress these statements based upon traditional 4th, 5th, or 6th Amendment grounds, but you're moving to suppress these statements because a contract can have a Constitutional cloak of protection, like a plea agreement, and so it therefore was a Constitutional violation based on your theory, and that is the predicate for your motion to suppress?
>
> Defense Counsel:  Correct, your Honor.

Hearing Transcript at 34.

Defendant has not cited any authority applying an exclusionary remedy for a breach of contract, even if the breach were to implicate due process concerns.  The U.S. Supreme Court has emphasized that plea agreements and other government promises supported by consideration are, for the most part, treated under principles of contract, including remedies for breach.  *Puckett v. United States*, 556 U.S. 129, 137 (2009).  In the criminal context, the remedy might allow for rescission or specific performance.  *Id*.  Defendant has not moved for any recognizable contract remedy but instead seeks to invoke the exclusionary rule.

And there is reason to be cautious about extending the exclusionary rule to the type of allegations made here, which are cast in contract and quasi-contract terms but which appear grounded in claims of prosecutorial misconduct.  The first line of the motion frames the issue as follows:  "Can a prosecutor mislead a defense attorney to induce a waiver of his client's right to silence and then use the resulting statements to convict the client."  Suppress Motion at 1.  In addressing this question, the motion argues that "the law does provide a remedy for prosecutorial deceit in this context."  *Id*.  Allegations of prosecutorial misconduct permeate the motion, starting with a purported government "plot[] to indict Congressman Fortenberry even before he was interviewed by the FBI," and leading to a prosecutor in this case "falsely represent[ing] to attorney Trey Gowdy that Congressman Fortenberry was not a target of the investigation."  *Id*. at 4.

Determining the proper procedural vehicle for asserting the requested remedy is not a mere legal nicety, for the applicable legal standard turns on this determination.  A motion to suppress is the procedural vehicle used to invoke the exclusionary rule, and the U.S. Supreme

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Court has developed a body of law that defines the scope of this judicially created remedy to address constitutional violations. A motion to dismiss for prosecutorial misconduct is a separate procedural vehicle that applies a different legal framework. Even within the context of a motion to dismiss, a court must be careful to distinguish between the two different grounds for dismissal:

> A district court may dismiss an indictment for government misconduct for one of two reasons, each with its own standard: either because it finds a serious due-process violation or because it concludes that dismissal is warranted under its supervisory powers. Dismissal for a due-process violation requires the government's conduct to be so grossly shocking and outrageous as to violate the universal sense of justice. The due process argument is usually raised in situations where law enforcement conduct involves extreme physical or mental brutality or where the crime is manufactured by the government from whole cloth.
>
> A district court may dismiss an indictment under its inherent supervisory powers (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.

*United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (cleaned up).

The standards to obtain dismissal of an indictment for prosecutorial misconduct are notably stringent. And if these standards apply, Defendant cannot circumvent them by styling his pleading as a motion to suppress—which effectively seeks dismissal by moving to exclude the very statements that form the basis of the crimes charged in the indictment. Here, Defendant does not directly raise a claim of governmental misconduct warranting dismissal and has not shown that the standards applicable to such a claim have been satisfied based on the facts of this case.

In short, Defendant fails to demonstrate that he is entitled to the remedy he seeks under the exclusionary rule. The motion to suppress is therefore **denied** on procedural grounds.

B.

The motion also fails on the merits. Defendant has filed two separate submissions raising different but related legal theories in support of his challenge to the allegedly false statements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

charged in the indictment: (1) promissory estoppel; and (2) fraudulent inducement and equitable estoppel.

1.

Promissory estoppel has been applied in the criminal context in limited circumstances to enforce a clear and definite promise by the government that it will take specific action, which foreseeably and reasonably induces detrimental reliance, such as—a promise to dismiss, a promise to grant immunity, or a promise to recommend leniency for cooperation. *See, e.g.*, *United States v. Moore*, No. 2:16-CR-00090-JAM, 2016 WL 5340649, at *2 (E.D. Cal. Sept. 23, 2016) (analyzing a specific promise to dismiss). When enforceable, these promises are typically made "during plea-bargaining and analogous contexts." *See Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985). A defendant who seeks to enforce a promise by an authorized government agent must prove the elements of promissory estoppel—i.e., a promise, foreseeable reliance, actual reliance, reasonable reliance, and the need to avoid injustice. *United States v. Washington*, 887 F. Supp. 2d 1077, 1099 (D. Mont. 2012) (citing *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 445 (9th Cir. 1992)). "The promise must be 'clear and unambiguous.'" *Id*. (quoting *Aguilar*, 966 F.2d at 446).

Defendant points to no clear and definite promise made to him. At the hearing, defense counsel articulated the promise as follows: "[t]he promise would be, Congressman Fortenberry is not a target of our investigation, number one. Number two, he is not only [not] a target, there is a continuum, and in our opinion, he's moving on that continuum away from being a target . . . ." Hearing Transcript at 63:25–64:5. Even if this statement, as characterized, could qualify as a "promise," it is not sufficiently clear and definite to be enforceable under the doctrine of promissory estoppel. An ambiguous statement or opinion about Defendant's status at that moment in the investigation is not a promise that the government will take, or refrain from taking, specific action if he participates in the interview. *See Aguilar*, 966 F.2d at 446 ("The fact that inferences might be drawn from these representations . . . does not transform them into an enforceable promise."). "[A] promise that is vague, general or of indeterminate application is not enforceable." *Id*. (cleaned up). The prosecutor's statement—that Defendant was a "subject trending toward a witness"—was vague on its face and raised at least as many questions as it answered. The statement does not explain (a) why Defendant was then considered to be a subject, (b) why he was "trending toward a witness," or (c) what, if anything, had to occur for Defendant to cross the threshold and achieve the desired status as a witness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Accordingly, even if promissory estoppel theoretically could provide Defendant with the remedy he seeks in his motion, he has not shown that the government promised not to use his statements in any future prosecution, offered him immunity from prosecution in the event that he made false statements, or made any other specifically enforceable promise. And even if Defendant relied on the prosecutor's response about Defendant's status in the investigation in deciding whether to continue to participate in the interview, it is doubtful that his reliance would be reasonable to the extent that he construed the response to allow him to make false statements with impunity.[3]

2.

After the hearing on his motion to suppress, Defendant submitted both a supplemental brief that responded to arguments the Government made at the hearing, Dkt. No. 79, and a second motion to suppress that raises new arguments in support of his first suppression motion, Dkt. No. 80. In his "second" motion, Defendant seeks to suppress his Washington, D.C. statements as allegedly made pursuant to a contract procured by fraud, and his Nebraska statements under a theory of equitable estoppel. Second Motion at 5–10. These belated filings are procedurally flawed and substantively without merit.

The supplemental filings are procedurally flawed not only because they continue to rely on the exclusionary rule without a proper legal basis (*see* discussion *supra*), but also because they constitute improper supplemental briefs filed without court approval. The "Post-Argument Brief" is an unadorned supplemental brief that, among other things, improperly addresses arguments made at the hearing. The separately filed "Second Motion to Suppress Statements" is nothing more than a transparent effort to raise new theories to support the "first" motion, as is evident from the fact that Defendant includes these same theories in his "Post-Argument Brief" supporting the "first" motion. For that reason, the Court vacated the hearing date on this "second" motion and did not require a response from the Government. Dkt. No. 83.

Defendant offers no plausible basis for advancing new theories and arguments that were available when he brought his "first" motion—and doing so while the matter was under submission. It is a fundamental principle of motion and appellate practice that a party must

---

[3] Defendant also argues that the Government made an additional promise when Gowdy asked AUSA Jenkins during the Washington, D.C. interview if this was a "bullshit 1001 case," and Jenkins "assured [him] it was not." Gowdy Decl. ¶ 17. This argument fails for the same reasons as previously discussed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

raise all supporting arguments in his or her opening papers. See *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). This principle is based on considerations of fairness to the opposing party and the need for the orderly administration of justice. The rules of motion practice are not petty points of procedure to be disregarded for adversarial advantage. Were it otherwise, parties could severely tax their adversaries and the judicial system by resorting to piecemeal litigation that tests one argument or theory at a time. This does not mean that there is no room in the rules to allow for a supplemental filing or a second, related motion when the need arises or justice requires. The rules merely require that a party first seek leave of court with an explanation supporting the request. See *Leong v. Potter*, 347 F.3d 1117, 1125 (9th Cir. 2003) (affirming a district court's decision to strike a "supplemental brief that was over-length and filed late" without leave of court). Despite the procedural irregularity, the Court declines to strike the supplemental brief or the "second" motion and considers the new arguments on the merits.

In his "second" motion, Defendant moves to suppress the Washington, D.C. statements based on a passing comment made by the Government about a "contract." At the beginning of the interview, AUSA Jenkins explained:

> And we will again sort of go just a few, call them admonitions or house-keeping matters . . . . [T]his is a voluntary interview which is important for the reasons that most people understand. Voluntary that means that you can stop, you can take a break you can have private time with your counsel, private time with yourself, you can tell us to go home you can tell us to stop the recording, all those options available to you and will remain available to you as long as you sit through the interview. If the, you sort of counterpoint or *part of that contract if you will, is that obviously, they are the FBI we're the Federal Government, lying to the FBI Federal Government is a Federal crime*. Not to say that you have any motive . . . to do that, or intend to do that, we just got to make that admonition your counsel alluded to beforehand.

Suppress Opp., Ex. B, at 2 (cleaned up) (emphasis added).

Seizing on the reference to the word "contract," Defendant argues that "AUSA Jenkins acknowledged that he and Fortenberry had an informal agreement—a 'contract if you will'—in relation to Fortenberry's cooperation and the Washington Interview." Second Motion at 5 (quoting Suppress Opp., Ex. B, at 2). This is not a reasonable interpretation of the statement made by AUSA Jenkins, however. AUSA Jenkins was merely explaining the standard ground

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

rules of the interview, which he referred to as "admonitions or house-keeping matters." This explanation cannot reasonably be construed as forming a cooperation or any other type of similar agreement. While the reference to a "contract" may have been inartful and imprecise, its meaning in context was clear: Defendant had no legal obligation to submit to the interview (i.e., it was entirely voluntary); and the only legal constraint was that, if he elected to do so, he had to tell the truth. This, of course, is an advisement of rights—not a contract. And to the extent that this exchange could be viewed as a "contract," the only agreement was that Defendant agreed to tell the truth if he opted to be interviewed. Accordingly, Defendant is not entitled to the suppression of his Washington, D.C. statements based on a claim of breach of contract or fraudulent inducement.

Defendant separately seeks suppression of his statements during the Nebraska interview under a theory of equitable estoppel. He vaguely asserts: "The related doctrine of equitable estoppel also applies to this fact pattern and should estop the government from arguing that Fortenberry committed a crime in his Nebraska Interview." Second Motion at 8. In limited circumstances, a defendant may establish estoppel against the government:

> [A party] must first demonstrate that the four traditional elements of equitable estoppel are met. Those elements are (1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct. In addition, a party seeking to estop the government must establish two additional factors: (1) the government has engaged in affirmative misconduct going beyond mere negligence and (2) the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest.

United States v. Gamboa-Cardenas, 508 F.3d 491, 502 (9th Cir. 2007) (cleaned up).

Defendant contends that AUSA Jenkins informed his lawyer before the Washington, D.C. interview that "its evidence of the Nebraska interview was not 'substantial evidence' of a crime," and that Defendant relied on that information in granting the Washington, D.C. interview. Second Motion at 10. This contention does not make out a claim of equitable estoppel to suppress the statements made at the Nebraska interview. Defendant could not have relied on anything that AUSA Jenkins stated after the Nebraska interview in deciding whether to agree to an interview that already had occurred. See Gamboa-Cardenas, 508 F.3d at 503

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

(finding that the government's promise did not cause defendant to suffer harm by leading him to give a "safety valve" interview because he already had made the same statement before the promise).

Equitable estoppel, as asserted here, requires a showing that the government's conduct produced the challenged evidence. *See id*. ("Had [the defendant] refused to talk during his safety valve interview, the government would still have possessed the same information it presented at trial, and thus [the defendant's] reliance on the government's promise regarding the safety valve had no impact on the trial outcome."). *See generally* 4 Williston on Contracts § 8:3 (4th ed. 2021) (noting that equitable estoppel applies when "permitting the party making the representation to deny it would cause injury *by virtue of the reliance*" (emphasis added)).  Here, even if AUSA Jenkins had never commented on Defendant's status before the Washington, D.C. meeting, the government still would have the statements made during the Nebraska interview.

Accordingly, Defendant fails to demonstrate that his Nebraska statements were procured through any government misconduct.

## CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendant's motion to compel discovery and his motions to suppress.  The Court also **DENIES** the Government's motion to strike Defendant's Post-Argument Brief, Dkt. No. 82.

cc

:
Initials of Deputy Clerk   jgr