UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL

| | |
|---|---|
| Case No.  2:21-cr-00491-SB-1 | Date: March 9, 2022 |

Present: The Honorable: **STANLEY BLUMENFELD, JR., U.S. District Judge**

Interpreter   N/A

| Jennifer Graciano | None Present | None Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Jeffrey Fortenberry (Not Present) | | | | None Present | | | |

**Proceedings: (IN CHAMBERS) ORDER RE: MOTIONS IN LIMINE**

Before the Court are eight joint motions in limine (JMILs).[1]  The Court addresses the merits of each JMIL below.  The Court reminds the parties that its rulings are necessarily tentative and may change if new or unanticipated facts are brought to its attention.  *McNally v. Riis*, No. 18-CV-1150 JLS (AGS), 2020 WL 209141, at *1 (S.D. Cal. Jan. 14, 2020).

A.   **JMIL #1**

The Government seeks to preclude Defendant from making two arguments about materiality:  (1) that materiality requires that Defendant's statements have an actual effect on the agency's decisions or activities and (2) that the subjective intent or state of mind of the federal investigators is relevant to materiality.  JMIL 1, Dkt. No. 95.

The first argument is clearly improper—as the Court has previously explained, a statement need not have an actual effect to be material because materiality is satisfied if the statement is "capable of influencing or affecting a federal agency." Dkt. No. 59, at 10 (quoting *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998)).

As to the second argument, Defendant contends he should be permitted to inquire about the subjective intent of the federal investigators who took the actions the Government will present as part of its evidence of materiality.  The Government proffered seven investigative actions taken in response to Defendant's allegedly false and misleading statements.  Dkt. No.

---

[1] The Court previously denied the ninth motion in limine for attorney voir dire. Dkt. No. 139.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

132.  At the status conference on February 17, 2022, the Government explained that these follow-up actions will be offered for three reasons:  (1) to demonstrate that the statements were capable of influencing the investigation, (2) to show that the statements actually affected the investigation (because one investigative function is to determine the credibility of persons questioned), and (3) to show that Defendant was lying.  The first two reasons squarely go to the materiality element, while the third reason appears to address the false-statement element by offering the results of the investigation as evidence of falsity.

The introduction of this evidence to demonstrate that the statements actually affected the investigation opens the door for Defendant to fairly respond.  The Government cannot produce evidence designed in part to show that the statements actually affected the investigation and then preclude Defendant from trying to demonstrate that it had no actual effect.  While there are limits to what Defendants can introduce in response, the limitations are governed by those set forth in Rule 403.  As applied here, Defendant will be permitted to respond to the suggestion that his statements actually affected the investigation by introducing evidence that they had no such effect because federal investigators already believed he was lying or had already decided to prosecute him before the statements were made.  This responsive information can be explored for the limited responsive purpose of demonstrating that the challenged statements were not capable of influencing the investigation.  And its probative value for that limited purpose is not substantially outweighed by any unfair prejudice or issue confusion.  Defendant will not be allowed to argue that the Government must prove actual effect, and the jury will be properly instructed on the materiality standard.

Accordingly, the Government's motion to exclude arguments about materiality is **GRANTED in part and DENIED in part**.  Defendant, however, may not argue that the Government must prove an actual effect under the materiality standard.  Nor can Defendant argue that this prosecution is driven by political motivations.  *See* discussion *infra* (JMIL #2).

B.     **JMIL #2**

The Government moves to exclude any evidence or argument attacking this case or the prosecution team as politically motivated.  JMIL 2, Dkt. No. 97.  Defendant acknowledges that he has no evidence of actual bias by the prosecution team and that the lead prosecutor, AUSA Mack Jenkins, "has a strong reputation for integrity." *Id*. at 4.  Instead, Defendant suspects that AUSA Jenkins is implicitly biased based on tenuous circumstantial evidence of the investigation's timeline and AUSA Jenkins's political affiliation and campaign donations. *Id*. at 2–4.  On what Defendant has presented, the Court finds the evidence of political bias or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

motivation to have limited, if any, probative value, which is substantially outweighed by the danger of causing undue prejudice, confusing the issues, and wasting time. Fed. R. Evid. 403.

This conclusion does not mean that a defendant can never attack the prosecution itself as motivated by some discriminatory purpose. But the proper mechanism for asserting this argument is a selective prosecution claim. *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018); *see also United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997) (analyzing a selective prosecution claim based on political affiliation); *United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979) (same). At the status conference on February 17, 2022, Defendant argued that under *Kyles v. Whitley*, 514 U.S. 419 (1995), he has the right to attack the integrity of the criminal investigation outside of a such a claim. Defendant's proposed attack, however, exceeds the bounds discussed in *Kyles*. There the U.S. Supreme Court considered the impact of a violation of a prosecutor's obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). In that context, the court explained that the withheld evidence could have been used to challenge the reliability of the police investigation, which potentially would cast doubt on the evidence resulting from that investigation. *Kyles*, 514 U.S. at 445–49. To that end, the wrongfully withheld evidence provided substantial fodder "for a vigorous argument that the police had been guilty of negligence." *Id*. at 447.

In this case, Defendant does not seek to attack the reliability of the evidence uncovered during the investigation based on sloppy or negligent police work that calls into question its trustworthiness. Defendant instead wishes to challenge the prosecutorial motive in pursuing this case, which is in the nature of selective prosecution—and which is based on threadbare inferences of discriminatory animus. On balance, even if this case fell within the scope of *Kyles*, the evidence should be excluded under Rule 403 because the limited probative value is substantially outweighed by the risk of undue prejudice, confusing the issues, and wasting time.[2]

Accordingly, the Government's motion to exclude evidence or argument of political bias or motivation is **GRANTED**.

---

[2] At the pretrial conference on March 8, 2022, defense counsel argued that Defendant does intend to challenge the reliability of the evidence based on allegedly careless police work. As discussed at the conference, this order addresses the defense's stated intent to attack the prosecutorial motive in pursuing and filing this case and does not foreclose the type of legitimate challenge recognized in *Kyles*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

C. **JMIL #3**

The Government moves to admit evidence of news articles reporting Gilbery Chagoury's public reputation to establish Defendant's motive to lie during his interviews with federal investigators. JMIL 3, Dkt. No. 99. Absent direct or circumstantial evidence that Defendant read any of these articles, the Government does not have an adequate foundation to admit this evidence. While the Government suggests that it has sufficient circumstantial evidence, including Defendant's position as a congressman and his relationship with Chagoury, *id.* at 13–14, the Court is not satisfied that these general facts reasonably support the specific inference of familiarity with the proffered articles.

Accordingly, the Government may not introduce this evidence in its case-in-chief, and its motion is **DENIED**. To the extent that the defense presents a case that allows the Government to establish the necessary foundation for admission of this evidence, the Court will revisit its ruling, upon proper request, outside the presence of the jury.

D. **JMIL #4**

The Government moves to exclude the testimony of Dr. Alan Castel, who will opine on issues related to memory. JMIL 4, Dkt. No. 98.

Defendant has disclosed that he intends to offer Dr. Castel to testify about both general and specific memory issues:

- Dr. Castel generally would testify about (1) inaccuracies in memory perception, (2) the technical aspects of how memories are stored, and (3) memory erosion and contamination.

- Dr. Castel specifically would offer opinions, based on his analysis of Defendant's two interviews, that: (1) Defendant retrieved his memory of the June 2018 call several times, which may have altered the contents of the memory; (2) Defendant might have remembered the gist of the phone call but not the details; and (3) repetitive and suggestive questioning might have affected Defendant's memory of the call.

Dr. Castel also would testify that Government witness Jessica Johnson might have reconstructed her memory of the call in response to an agent's questioning because she then had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

a motivation to remember the call that didn't exist when Defendant originally told her about it. JMIL 4 Exs. A, B.

Dr. Castel's general opinions on memory are not admissible as expert testimony because the idea that memory fades or alters over time is a concept jurors understand without the need for expert assistance. *See, e.g.*, *United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996) ("It is common knowledge that memory fades with time."); *United States v. Carter*, 410 F.3d 942, 950 (7th Cir. 2005) ("[J]urors understand that memory can be less than perfect."); *United States v. Libby*, 461 F. Supp. 2d 3, 12 (D.D.C. 2006) ("Although the average juror may not understand the scientific basis and labels attached to causes for memory errors, jurors inevitably encounter the frailties of memory as a commonplace matter of course."). Nor is his opinion on Johnson's testimony admissible, as it appears to be little more than an expert attempt to undermine her credibility by speculating that she "may have experienced interference with her memory" and that the agents, through repeated questioning, "could bias her and lead her to reconstruct a supposed memory of the event." JMIL 4 Exs. A, B. At the pretrial conference, defense counsel argued that Dr. Castel would not comment on Johnson's honesty but rather on "the inferences that the jury should draw from [her] testimony." This is not a meaningful distinction. A court should be wary of the use of an expert to directly bolster or undermine a witness's trustworthiness. *See United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("An expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility."). This is especially true where, as here, the proffered witness draws on general principles, articulated in scientific terminology, to largely speculate about the reliability of a witness's testimony. On balance, the limited probative value of Dr. Castel's opinions about inferences that may be drawn from Johnson's testimony is far outweighed by the potential to invade the jury's province. Moreover, Defendant does not need an expert to challenge Johnson's testimony but instead can use all the tools the justice system has developed to test witness memory and reliability. *See Libby*, 461 F. Supp. 2d at 13 (noting that defendant had "an arsenal of litigation tools at his disposal to challenge the recollection of the government witnesses").

Dr. Castel's specific opinions of Defendant's two interviews appear too speculative to hold much probative value. He notes certain factors that "may have influenced Fortenberry's ability to retrieve memory in the March and July 2019 government interviews," including "prior retrievals," "gist," and "repetitive, suggestive questioning, and stress." He goes on to state that prior retrievals are "potentially important because retrieving certain memories can alter their contents through modifications and reconstruction." JMIL 4 Ex. B, at 1. That human memory is subject to fallible reconstruction does not seem to be a concept that requires expert testimony.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Dr. Castel next states that "we tend to remember general themes, or gist," and that "Fortenberry might have remembered a phone call that seemed concerning as a gist," and that "it is possible that information Fortenberry received" after the call affected his memory of it. *Id*. at 2. That humans often remember only the "gist" of a conversation that could be influenced by subsequent discussions about it does not appear to be a concept that requires expert explanation. Dr. Castel also states that "repetitive and suggestive questioning can potentially bias and contaminate memory," especially under stressful conditions, and that Defendant's memory "could" have been influenced by this type of questioning. *Id*. Once again, Dr. Castel seems to draw speculative conclusions from general memory phenomena.

In short, Dr. Castel appears to offer speculative opinions based on general memory principles, most of which are understood—or through the trial process, including cross-examination and closing argument, readily could be communicated—to ordinary jurors. The probative value of Dr. Castel's opinions is limited in light of the weak foundation upon which they are based and is substantially outweighed by the potential for undue prejudice, confusion, and delay—as explained in *Libby*, 461 F. Supp. 2d at 18. Jurors generally understand the limitations of memory, and Dr. Castel's speculation about the potential effect of memory and cognition principles risks invading the jury's role of assessing witness credibility. Indeed, defense counsel argued at the pretrial trial conference that Dr. Castel, if permitted to testify, would "explain [to the jury] what inferences [from testimony] may or may not be reasonable and how the jury should interpret the recordings [of the interviews of Defendant]." Once again, on balance, the proffered evidence should be excluded under the principles of Rule 403.

Accordingly, the Government's motion is **GRANTED** as to all Dr. Castel's opinions, as identified in Defendant's disclosures.

E.     **JMIL #5**

Defendant moves to exclude the Government's evidence of "other acts" under Federal Rule of Evidence 404(b). JMIL 5, Dkt. No. 100. The Government proffered a nonexhaustive list of the acts it intends to present at trial:

> [D]efendant was close friends with and communicated with Baaklini; defendant knew and communicated with Individual H; defendant, through Baaklini, arranged to meet Chagoury in 2015 and thereafter regularly asked Baaklini about Chagoury; ahead of the February 2016 fundraiser, defendant's fundraising consultant, Alexandra Kendrick, told defendant about a cautionary experience she had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

involving illegal campaign contributions; defendant asked Baaklini, a short time after the February 2016 fundraiser, whether there was a problem with the fundraiser because Individual H's family members donated most of the money; and that after defendant's July 2019 interview with the government, defendant's then-counsel produced to the government an April 2018 email exchange between defendant and an aide regarding Individual H that materially deviated from defendant's description of the communications during the interview.

Opp. to JMIL 5 at 2.

These acts do not fall within the scope of Rule 404(b). The Government does not offer any of these acts to prove propensity, and these acts are "inextricably intertwined" with the charged offenses because they are either part of the transaction charged (i.e., Defendant's alleged scheme to conceal material facts) or are part of the context for the commission of the crimes. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). Accordingly, Defendant's motion is **DENIED**.

F.  **JMIL #6**

Defendant moves to exclude evidence of irrelevant texts, phone calls, and emails. JMIL 6, Dkt. No. 101. At the time Defendant filed his motion, the Government had yet to provide a list of what texts, phone calls, or emails would be offered at trial. Defendant identified two sets of text messages in his motion that he argues should not be admitted, but the Government represents that none of these messages will be presented at trial. Opp. to JMIL 6, at 2–3. The Court ordered the parties to meet and confer after the Government presented its full list of texts, phone calls, and emails to be used at trial and provided them until March 2, 2022 to file a joint list of any remaining disputed items. Dkt. No. 139. Defendant submitted a large number of boilerplate objections in a format that made it difficult for the Court to discern the exact number of challenged exhibits and whether every single exhibit must be reviewed for the Court to rule on the various categories of objections. The Court ordered Defendant to submit a hard-copy binder of his objections organized in a reader-friendly format by no later than 10:00 a.m. on March 7, 2022. Dkt. No. 147. On March 4, 2022, the parties submitted a joint statement on the status of Defendant's objections. Dkt. No. 148. In light of the parties' efforts to narrow the number of disputes and the likelihood that any objections would be more efficiently resolved at trial, Defendant withdrew his objections without prejudice to raising them at trial. *Id*. at 1.

**CRIMINAL MINUTES – GENERAL**

Accordingly, Defendant's motion to exclude evidence of irrelevant texts, phone calls, and emails is **DENIED** without prejudice to any objections Defendant may raise at trial.

### G.  JMIL #7

Defendant moves to exclude the testimony of Alexandra Kendrick and Toufic Baaklini as to whether Defendant had reason, other than the June 2018 call, to believe the donations to his campaign were illegal. JMIL 7, Dkt. No. 102. Kendrick, Defendant's fundraising consultant, will testify that she recognized the potential for illicit campaign contributions at the 2016 fundraiser and informed Defendant of her concerns. Baaklini will testify that Defendant called him a week after the 2016 fundraiser to ask if there was anything wrong with the fundraiser because Individual H's family members made a lot of donations. *Id*. at 1.

Defendant first argues that this evidence constitutes a constructive amendment to or variance from the indictment. "A constructive amendment occurs 'when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them,'" typically by "expanding the conduct for which the defendant could be found guilty" beyond the bounds of the indictment. *United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014) (quoting *United States v. Cusmano*, 659 F.2d 714, 718 (6th Cir. 1981)). A variance does not alter the charging terms of the indictment, but instead occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id*. at 1189.

The Government offers these alleged facts as circumstantial evidence to show it was likely that Defendant remembered the contents of the 2018 call when he spoke to federal investigators in 2019. Opp. to JMIL 7, at 4. As such, this evidence does not constitute a constructive amendment, because it does not allow the jury to convict Defendant of any uncharged conduct, and it does not constitute a variance, because it is offered to prove facts alleged in the indictment. The indictment alleges that Defendant knew by "no later than the June 2018 call" that illegal conduit contributions had been made to his campaign at the 2016 fundraiser. Dkt. No. 1, at ¶ 20(a). The fact that Defendant might have known about the illegal contributions prior to June 2018 follows from this allegation and cannot be deemed a variance, let alone a prejudicial one. *Ward*, 747 F.3d at 1190 (holding that only prejudicial variances require reversal of a defendant's conviction). The relevant issue, as charged, is whether—and not exactly when—Defendant knew about the contributions prior to the interviews. *See id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Defendant also moves to exclude this evidence under Rule 403.  JMIL 7 at 2–3.  The fact that Defendant was made aware of potential concerns about illegal contributions around the time of the 2016 fundraiser is probative because it makes it more likely he would have remembered the June 2018 call.  And the Court is not persuaded that Kendrick's or Baaklini's testimony risks undue prejudice or delay in the form of a resulting mini-trial over the legitimacy of the 2016 fundraiser.  Neither the proffered evidence nor an appropriate response to it leads to that conclusion.  As such, the Court finds that the probative value of this testimony is not substantially outweighed by any unfair prejudice or delay.  Accordingly, Defendant's motion is **DENIED**.

**H.     JMIL #8**

Finally, Defendant moves to admit additional statements made during his March 2019 and July 2019 interviews with federal investigators.  JMIL 8, Dkt. No. 103.  At a prior conference, the Court ordered Defendant to provide a list of the specific statements he seeks to introduce beyond what the Government will admit.  Dkt. No. 117.  Defendant timely provided a supplement.  Dkt. No. 133.

Defendant seeks to admit the entirety of his March 2019 interview or, in the alternative, two segments that demonstrate disruptive questioning by the agents.  The Court will not allow Defendant to admit the entire interview, as he has not shown that the full interview is admissible for non-hearsay purposes or that its probative value outweighs the resulting delay.  However, the Court will grant Defendant's alternative request to admit the two identified segments (38:22 to 39:30 and 43:16 to 47:6).  Defendant does not seek to admit these segments for their truth, but instead to show the agents' disruptive questioning and its effect on Defendant's memory during the interview.

Defendant also seeks to admit five omitted segments of his July 2019 interview.  One of these segments (65:42 to 66:25) is already fully included in what the Government will admit at trial.  The Court will allow Defendant to admit one of the remaining four segments: the first portion (31:9 to 31:41) is not offered for its truth and contains relevant statements on Defendant's memory during the interview.  However, the other three statements are not admissible.  Defendant offers the third segment (54:30 to 54:32) as evidence of his state of mind and good faith.  But this segment is unintelligible and does not contain any statement from Defendant; its meaning is not clear, and its relevance even less so.  Defendant's counsel merely asks the federal agent what he would advise—with no indication as to the subject of that advice—and the agent gives an incoherent response before changing subjects.  The fifth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

segment (70:37–71:6) is offered as evidence of a verbal act (i.e., waiver of attorney-client privilege) and Defendant's good faith in assisting the Government. But it is not clear this demonstrates either: Defendant does not waive his attorney-client privilege but merely defers to his lawyer's judgment on the issue (without answering whether he would agree to waive). Thus, Defendant has not shown that this segment is relevant. Finally, the second segment (52:37 to 53:41) appears to be offered for its truth (i.e., that Defendant sometimes ignored or rejected campaign contributions), and Defendant has not identified any applicable hearsay exception.

Accordingly, Defendant's motion to admit additional statements is **GRANTED in part and DENIED in part**. Defendant may admit both segments (38:22 to 39:30 and 43:16 to 47:6) from the March 2019 interview and one of the segments (31:9 to 31:41) from the July 2019 interview. Defendant may present the admissible segments in his case-in-chief. If Defendant wishes to use these segments on cross-examination during the Government's case-in-chief, he may raise the issue with the Court at the conference on March 15, 2022.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. The Government's motion to exclude improper argument re: materiality (JMIL #1) is **GRANTED in part and DENIED in part**.

2. The Government's motion to exclude evidence or argument of political bias or motivation (JMIL #2) is **GRANTED**.

3. The Government's motion to admit evidence of Defendant's motive (JMIL #3) is **DENIED**.

4. The Government's motion to exclude the testimony of Dr. Castel (JMIL #4) is **GRANTED**.

5. Defendant's motion to exclude "other acts" evidence (JMIL #5) is **DENIED**.

6. Defendant's motion to exclude irrelevant texts, phone calls, and emails (JMIL #6) is **DENIED**.

7. Defendant's motion to exclude the testimony of Alexandra Kendrick and Toufic Baaklini (JMIL #7) is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL

8.     Defendant's motion to admit his statements (JMIL #8) is **GRANTED in part and DENIED in part**.

cc

 

|  | : |
|---|---|
| **Initials of Deputy Clerk** | JGR |