John L. Littrell, State Bar No. 221601
jlittrell@bklwlaw.com
Ryan V. Fraser, State Bar No. 272196
rfraser@bklwlaw.com
BIENERT KATZMAN
LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700
Fax: (949) 369-3701

Glen E. Summers, State Bar No. 176402
glen.summers@bartlitbeck.com
BARTLIT BECK LLP
1801 Wewatta St., Suite 1200
Denver, Colorado 80202
Tel: (303) 592-3100
Fax: (303) 592-3400

*Attorneys for Defendant Jeffrey Lane Fortenberry*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

  *Plaintiff,*

v.

JEFFREY FORTENBERRY,

  *Defendant.*

Case No. 2:21-cr-00941-SB
Hon. Stanley Blumenfeld, Jr.

**DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AND MEMORANDUM IN SUPPORT**

Hearing Date: June 28, 2022
Hearing Time: 8:00 a.m.

Indictment: Oct. 19, 2021
Trial: March 16, 2022

**TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE**, at the above time and date, in the courtroom of the Honorable Stanley Blumenfled, Jr., United States District Judge, located at 350 West 1st Street, Los Angeles, California, 90012, Courtroom 6C, by and through his attorneys of record, Defendant Jeffrey Fortenberry will move, and hereby does move, for judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. This motion is based on this Notice, the Memorandum of Points and Authorities concurrently filed herewith, the files and records in this case, and any evidence and argument that may be presented at the hearing in this matter.

Counsel for the parties met and conferred regarding this motion before its filing and so agreed upon the following proposed briefing schedule and hearing date:

- Motion and supporting memorandum to be filed on April 25, 2022;
- Government's opposition to be filed by May 25, 2022;
- Defense's reply, if any, to be filed by June 14, 2022;
- Motion to be heard on June 28, 2022.

Date: April 25, 2022

BARTLIT BECK LLP

By: _____
Glen E. Summers

BIENERT KATZMAN
LITTRELL WILLIAMS LLP
John L. Littrell
Ryan V. Fraser

Kally A. Kingery, Esq.

*Attorneys for Jeffrey Lane Fortenberry*

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD .......................................................................................... 3

ARGUMENT ...................................................................................................... 3

I.     THE PROSECUTION FAILED TO INTRODUCE SUBSTANTIAL
       EVIDENCE CONGRESSMAN FORTENBERRY'S STATEMENTS
       WERE MATERIAL ................................................................................... 3

       A.     A False Statement or Act of Concealment Is Material Only if
              Capable of Influencing a Specific Governmental Decision ................ 4

       B.     A False Statement or Act of Concealment Is Not Material
              Simply Because It Causes Law Enforcement to Investigate
              the Defendant for Potential False Statements .................................... 6

       C.     The Prosecution Introduced No Substantial Evidence
              Congressman Fortenberry's Statements Were Material to
              Any Government Decision Other than to Further Investigate
              the Congressman for False Statements ................................................ 7

II.    SECTION 1001 IS VOID FOR VAGUENESS .................................... 10

III.   THE CONGRESSMAN'S COMMENTS REGARDING HIS FEC
       REPORTS AND DENIALS OF BEING "AWARE" OF CAMPAIGN
       FINANCE VIOLATIONS CANNOT SUPPORT A CONVICTION
       UNDER SECTION 1001 BECAUSE THEY WERE LITERALLY
       TRUE, RESPONDED TO AMBIGUOUS QUESTIONS, AND
       IMMATERIAL AS A MATTER OF LAW WHEN CONSIDERED IN
       CONTEXT ................................................................................................ 14

CONCLUSION ................................................................................................. 18

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Case**                                                              **Page(s)**

*Brogan v. United States,*
  522 U.S. 398 (1998) ................................................................. 11

*Bronston v. United States,*
  409 U.S. 352 (1973) ............................................................. 14, 15

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ................................................................. 17

*Johnson v. United States,*
  675 U.S. 591 (2015) ................................................................. 13

*Kolender v. Lawson,*
  461 U.S. 352 (1983) ......................................................... 2, 10, 11

*Kungys v. United States,*
  485 U.S. 759 (1988) .............................................................. 4, 6

*Sessions v. Dimaya,*
  138 S.Ct. 1204 (2018) ......................................................... 10, 13

*Sherman v. United States,*
  356 U.S. 369 (1958) ................................................................. 11

*United States v. Boone,*
  951 F.2d 1526 (9th Cir. 1991) ............................................... 14, 17

*United States v. Camick,*
  796 F.3d 1206 (10th Cir. 2015) .................................................... 5

*United States v. Davis,*
  138 S.Ct.  (2019) .................................................................... 13

*United States v. Earp,*
  812 F.2d 917 (4th Cir. 1987) ................................................. 16, 17

*United States v. Gaudin,*
  515 U.S. 506 (1995) .............................................................. 4, 5

*United States v. Good,*
  326 F.3d 589 (4th Cir. 2003) .................................................... 14

*United States v. Jiang,*
  476 F.3d 1026 (9th Cir. 2007) .................................................... 17

*United States v. Johnson,*
  19 F.4th 248 (3d Cir. 2021) ....................................................... 5

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

**TABLE OF AUTHORITIES (continued)**

*United States v. Leon-Reyes*,
   177 F.3d 816 (9th Cir. 1999) .......................................................................... 10

*United States* v. *Litvak*,
   808 F.3d 160 (2d Cir. 2015) ........................................................................ 5, 6

*United States v. Mandanici*,
   724 F.2d 914 (2d Cir. 1984) .......................................................................... 14

*United States v. Matanky*,
   482 F.2d 1319 (9th Cir. 1973) ....................................................................... 14

*United States v. McKenna*,
   327 F.3d 830 (9th Cir. 2003) ................................................................... 10, 17

*United States v. Moore*,
   612 F.3d 698 (D.C. Cir. 2010) ....................................................................... 13

*United States v. Moses*,
   94 F.3d 182 (5th Cir. 1996) ........................................................................... 14

*United States v. Service Deli Inc.*,
   151 F.3d 938 (9th Cir. 1998) ........................................................................... 3

**Statutes**

8 U.S.C. § 1451(a) .................................................................................... 7, 11

18 U.S.C. §1001 ................................................................................... *passim*

18 U.S.C. § 16(b) ......................................................................................... 18

18 U.S.C. § 924(c) ........................................................................................ 18

**Rules**

Federal Rule of Criminal Procedure 29 ........................................................... 1, 4

**Other Authorities**

FALSE STATEMENTS TO FEDERAL AGENTS: INDUCED LIES AND THE EXCULPATORY NO,
   57 U. Chi. L.Rev. 1273 (1990) ...................................................................... 16

Defendant Jeffrey Lane Fortenberry, by and through undersigned counsel, hereby respectfully moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## INTRODUCTION

Pursuant to 18 U.S.C. §1001, it can be a crime to willfully make false statements to the government or to conceal information from the government. However, the law criminalizes only false statements or acts of concealment that are *material* to a matter within the jurisdiction of the executive, legislative or judicial branches of government. For a statement to be material under Section 1001, the alleged false statement must affect, or at least be capable of affecting, a specific decision of the government.

As a matter of law, it is insufficient that an alleged false statement caused, or was capable of causing, law enforcement to investigate the veracity of the statement itself or to otherwise investigate whether it gives rise to a charge under Section 1001. If that were sufficient to satisfy the element of materiality, the element of materiality would effectively be rendered a nullity and would automatically be satisfied in virtually all prosecutions under Section 1001.

At trial, the prosecution introduced no evidence that former Congressman Fortenberry's statements actually affected, or were even capable of affecting, any specific decision by the government. Instead, the evidence offered by the prosecution established that the government was already aware of the true facts and that the only impact the statements at issue had was to cause the government to further investigate Mr. Fortenberry for violations of Section 1001. Because the prosecution failed to introduce sufficient evidence to support a finding of materiality as to any of the statements at issue in this case, Mr. Fortenberry is entitled to judgment of acquittal.

Mr. Fortenberry is also entitled to judgment of acquittal because Section 1001 is unconstitutionally void for vagueness. It is well established as a matter of due process that a penal statute is void for vagueness if it fails to define the criminal offense with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

that does not encourage arbitrary and discrimatory treatment." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Sadly, Section 1001 was written with such extreme breadth—and has been unconstrained by clear standards of enforcement—that it has lead to precisely the sort of arbitrary and discrimatory application that the void-for-vagueness doctrine is intended to prevent.

## BACKGROUND

In February 2016, Congressman Fortenberry held a campaign fundraiser in Los Angeles. Unbeknownst to the Congressman, certain individuals made approximately $30,000 in conduit contributions to the Congressman's campaign in connection with the fundraiser. The hidden source of that money was a foreign national named Gilbert Chagoury.

On June 4, 2018, Congressman Fortenberry received a telephone call from Dr. Elias Ayoub, one of the people who had hosted the 2016 fundraiser. By that time, Dr. Ayoub was cooperating with the FBI and had informed the FBI of the illicit contributions made to Fortenberry's campaign in 2016. At the request of FBI agent Todd Carter, during the call, Dr. Ayoub made statements suggesting that conduit contributions had been made at the 2016 fundraiser which "probably" came from Mr. Chagoury. Agent Carter recorded the call in its entirety.

Government agents interviewed Congressman Fortenberry approximately nine months later at his home in Lincoln, Nebraska. The interview followed an unannounced visit to the Congressman's home and was procured using a "ruse" that the agents were conducting a "background" investigation with a "national security" aspect. Agents again interviewed the Congressman approximately 13 months later, in Washington, D.C.

In the interviews, Congressman Fortenberry volunteered that he heard a "concerning" comment in the call from Dr. Ayoub to the effect that if another fundraiser were held they wouldn't be able to raise as much money because Gilbert Chagoury would not be involved. While volunteering this information about the concerning comment from Dr. Ayoub, Congressman Fortenberry maintained in both interviews that he was not aware of any illicit

2

contributions to his campaign. In the Nebraska interview, he also noted that the contributors to his 2016 fundraiser had all been disclosed in his Federal Election Commission ("FEC") reports, as have all contributions to his campaign. In the Washington, D.C., interview, Congressman Fortenberry also denied being informed by Dr. Ayoub that a person named Toufic Baaklini had provided $30,000 cash to Dr. Ayoub for conduit contributions.

On the basis of the statements described above and the failure to amend FEC reports to reflect as facts what Dr. Ayoub had told him, Congressman Fortenberry was charged with one count of falsifying and concealing material facts, 18 U.S.C. § 1001(a)(1), and two counts of making false statements, 18 U.S.C. § 1001(a)(2).

At trial, no evidence was offered that the Congressman knew of the contributions' illicit character at the time they were made in February 2016. To the contrary, both of the trial witnesses who committed the underlying campaign finance violations, Ayoub and Baaklini, testified that they did ***not*** tell Congressman Fortenberry about the illicit nature of the contributions. The sole basis for Congressman Fortenberry's asserted knowledge of the falsity of his statements was the statements made to him by Dr. Ayoub at the FBI's request during the recorded June 4, 2018, phone call.

## LEGAL STANDARD

In connection with a Rule 29 motion, a district court "may rule that a false statement is *not* material as a matter of law, that is, that the evidence is insufficient for a the jury to find the statement is material." *United States v. Service Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) (emphasis in original). In this context, "the issue before the court is whether substantial evidence was present to support the jury's verdict on materiality." *Id.*

## ARGUMENT

## I.   The Prosecution Failed to Introduce Substantial Evidence Congressman Fortenberry's Statements Were Material

The law does not criminalize every false statement that is made to the government. Nor does it criminalize any act of concealment from the government. On the contrary, 18 U.S.C. § 1001(a)(2) criminalizes only a "materially false, fictitious, or fraudulent statement

or representation," and 18 U.S.C. § 1001(a)(1) criminalizes only the falsification or concealment by "trick, scheme or device" of a "material fact." In addition, any such misstatement or act of concealment must be material to a "matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a).

### A. A False Statement or Act of Concealment Is Material Only if Capable of Influencing a Specific Governmental Decision

Materiality is an "essential element" of any offense under 18 U.S.C. §1001. *United States v. Gaudin*, 515 U.S. 506, 511 (1995). In order to be material, a false statement or act of concealment must be more than merely of interest to the government. Rather, it must have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *Gaudin*, 515 U.S. at 509 (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)).

As Justice Scalia wrote in the Supreme Court's unanimous opinion in *Gaudin*, "[d]eciding whether a statement is 'material' requires the determination of at least two subsidiary questions." *Id.* at 512. First, one must determine "what statement was made." *Id.* Second, one must determine "what decision was the agency trying to make." *Id*. Only after a court has identified the "statement" and the relevant "decision" can the court determine "whether the statement was material to the decision." *Id*.

The analysis in *Gaudin* cannot be dismissed as mere dicta or surplusage. In *Kungys*, the Supreme Court previously held (in a decision also authored by Justice Scalia) that defendant's misrepresentations about his date and place of birth on his naturalization petition were not material for purposes of the "concealment or misrepresentation" provision of 8 U.S.C. § 1451(a). 485 U.S. at 770. In *Gaudin*, the Court adopted the same standard of materiality applied in connection with Section 1001. Justice Scalia went on to explain the need to "fix as the central object of the inquiry" whether the misrepresentation or concealment was capable of affecting the "official decision in question." *Id.* at 771-72.

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

Lower courts now properly assess materiality in the context of what *decision* the agency was trying to make. In *United States v. Johnson*, for instance, the defendant was convicted of making a false statement to a district court judge under Section 1001 because he "posed as an attorney and filed a fabricated document on the civil docket of one of the lawsuits against [Bill] Cosby." 19 F.4th 248, 252 (3d Cir. 2021). The Third Circuit reversed the conviction. Focuing on the question of ""what decision was the agency trying to make,'" the court found that it was "fatal to the Government's case" that there was simply "no decision entrusted to the Judge [that] could have possibly been influenced by the [document]." *Id*. at 257 (quoting *Gaudin*, 515 U.S. at 509). The Third Circuit held that absent "evidence of some decision entrusted to the Judge that could have been affected by Johnson's no doubt false statement," the government failed to "establish materiality." *Id*.

Similarly, in *United States v. Camick*, the defendant was convicted of making a false statement in violation of Section 1001 by using his "deceased brother's name and identity" in filing a provisional patent application to the Patent and Trademark Office ("PTO"). 796 F.3d 1206, 1210-11 (10th Cir. 2015). On appeal, the Tenth Circuit reversed the conviction. Focusing on "the decision to be made by the relevant decisionmaking body," the court noted that "the information contained in a provisional application will only become relevant to a PTO decision if the applicant takes additional action on the application within one year of filing," which had not been done. *Id*. at 1219. The defendant's false statements in his provisional patent application thus could not influence "the decision of the decisionmaking body" for the simple reason that "there [was] no decision to be made," and the statements were "therefore immaterial." *Id*. (citation omitted).

Likewise in *United States v. Litvak*, the defendant securities broker was convicted of making fraudulent misrepresentations to Public-Private Investment Funds ("PPIFs") funded, in part, by the Department of Treasury. 808 F.3d 160, 165-66 (2d Cir. 2015). On appeal, the Second Circuit held that the government had to identify an "actual decision of the Treasury that was reasonably capable of being influenced by Litvak's misstatements." *Id*. at 172. Because the Treasury had "cast itself as a limited partner in the PPIFs, and

retained 'no authority to tell the investment managers' which [securities] to purchase or at what price to transact" the Second Circuit held that the government failed to articulate how "Litvak's misstatements were capable of influencing a decision of the Treasury." *Id.*

## B.    A False Statement or Act of Concealment Is Not Material Simply Because It Causes Law Enforcement to Investigate the Defendant for Potential False Statements

*Gaudin* and *Kungys* make clear that materiality in a false statements case cannot be based solely on an investigation into the veracity of the statement itself. In *Kungys*, the Supreme Court held that a petitioner's misrepresentations about his date and place of birth on his naturalization petition were not material for purposes of the "concealment or misrepresentation" provision of 8 U.S.C. § 1451(a). The Court explicitly rejected the Third Circuit's reasoning that if Kungys had "told the truth at the time he applied for citizenship, the discrepancies between the truth and his visa materials would have *resulted in either a field investigation or an outright denial of the petition*." *Id.* at. 774-75.  The Court concluded that even if "one or another of those consequences would have resulted," it would be insufficient to "establish that Kungys' misrepresentation was material." *Id.* Justice Scalia explained that "for purposes of determining the natural tendency of a misrepresentation to affect a decision . . . what is relevant is what would have ensued from *official knowledge of the misrepresented fact* (in this case, Kungys' true date and place of birth), not what would have ensued from *official knowledge of inconsistency*" between the truth and his statement. *Id.* at 775. Because the date and place of the defendant's birth were not "relevant to his qualifications for citizenship," Justice Scalia explained that the false statements were immaterial regardless of the fact that discovery of the true facts and their inconsistency with his prior visa application may have led to a field investigation. *Id.* at 774-75.

A reading of the materiality element that would allow a false statement to be deemed material merely because it caused law enforcement to investigate the veracity of the statement itself would be inconsistent with *Kungys*. It would eviscerate the critical limiting function that this "essential element" serves and open the door to prosecution of virtually

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

any false statement to any government official. The materiality element would effectively be read out of the statute, leading to results that Congress could not have intended.

## C. The Prosecution Introduced No Substantial Evidence Congressman Fortenberry's Statements Were Material to Any Government Decision Other than to Further Investigate the Congressman for False Statements

Applying the foregoing precedents, it is clear on the trial record that the statements at issue in this case were immaterial as a matter of law. At trial, the prosecution introduced no evidence that any of Congressman Fortenberry's statements or alleged acts of concealment actually affected, or were even capable of affecting, any government decision beyond the decisions to further investigate and prosecute him under Section 1001.

At trial, the only witness to address the issue of materiality was Special Agent Choe of the FBI. As the Court will recall, the prosecution did not question Special Agent Carter about the Lincoln interview or subsequent matters. And the prosecution called no witnesses from the U.S. Attorney's office. The only other witnesses who addressed either interview was Agent O'Leary of the Internal Revenue Service. Agent O'Leary testified about the Nebraska interview, but offered no testimony on the issue of materiality.[1]

With respect to the Nebraska interview, Agent Choe testified that the purpose of the interview was "to see what information, if any, the Congressman would provide about the June 4th, 2018, phone call" from Dr. Ayoub and to thereby "test his credibilty." Trial Tr. 2/23/2022 at 124:12-17; 125:19-21.

When asked "what impact" the "Nebraska interview" had on the "Federal investigation's concerns regarding the defendant," Agent Choe testified only that the perceived inconsistencies between what the Congressman was told by Dr. Ayoub and his characterizations of the call "heightened [the FBI's] concerns about the defendant." The relevant testimony was as follows:

---

[1] Prior to submitting the case to the jury, the prosecution abandoned any claim that the alleged misstatements or acts of concealment were material to any matter within the jurisdiction of the IRS.

7

Q.   Now, what impact, if any, did the Nebraska interview have on the Federal investigation's concerns regarding the defendant?

A.   I would say they heightened our concerns about the defendant.

Q.   And why is that?

A.   Because the statements that the defendant made during that interview were inconsistent with . . . the information that had been told to him by Elias Ayoub during the phone call.

Trial Tr. 3/22/2022 at 22:9-18.

Here, as elsewhere, Agent Choe offered no link between the government's "concerns" and any government decision or action then under consideration. Nor did he link any such concerns to any specific false statement or set of false statements. Therefore, this testimony is no evidence of how the Congressman's perceived inconsistencies were material.

The only other testimony possibly relevant to the issue of materiality was a single question as to whether the FBI took "any action" as a result of Congressman Fortenberry's statement to the effect that the contributors at the 2016 fundraiser were disclosed in his FEC reports. The only action Agent Choe identified in response to that question was that they reviewed Congressman Fortenberry's FEC reports.

Q.   During the Nebraska interview, what, if anything, did the defendant say about his FEC disclosures?

A.   He stated that they reflected the contributors to his campaign.

Q.   And did Federal investigators take any action as a result of that statement by the defendant?

A.   Yes.  We reviewed the defendant's FEC filings.

Trial Tr. 3/22/2022 at 60:18-24. Agent Choe then went on to suggest that the Congressman's 2016 FEC filings were inaccurate in that they failed to identify which contributions were in fact conduit contributions (information the Congressman never had), but provided no testimony that the review of the Congressman's FEC filings served any

8

investigative purpose other than to develop evidence of the false statements charge against him.

As for the subsequent interview in Washington, D.C., Agent Choe again provided only vague testimony that the interview caused the FBI to have increased concerns about the defendant and to engage in further investigative steps to develop a false statements charge against him. Agent Choe testified:

> Q.    After this interview, did Federal investigators have more or less concerns about the issues being investigated as it related to the defendant?
>
> A.    More issues.
>
> Q.    What investigative steps, other than what you already testified to, did – were taken as a result of the interviews?
>
> A.    The FBI set up additional interview for example, of Andrew Doran and Reyn Archer.  The FBI also, as I mentioned, obtained text messages from Toufic Baaklini.  The Government also obtained a cell site warrant which I mentioned earlier, et cetera.
>
> Q.    And did the Federal investigators attempt to interview Drew Bowling?
>
> A.    Yes.

Trial Tr. 3/22/2022 at 80:24-81:12. Again, Agent Choe identified no government decision under consideration that could have been affected by the Congressman's statements. Nor did he offer any testimony to establish that any of these additional investigative steps had any purpose other than to develop a false statements charge against the Congressman.

The relevant testimony from Agent Choe ended with the prosecution establishing that the FBI and U.S. Attorney's Office took recordings of the two interviews back with them and "reviewed," "transcribed" and "analyzed" them. Agent Choe was then asked whether the FBI and U.S. Attorney's Office made "decisions about the next steps for the Federal investigation" based on that review and analysis, to which Agent Choe answered "yes" without any further explanation. Trial Tr. 3/22/2022 81:24-82:2. No specific government

9

decisions were identified. Nor did Agent Choe offer any evidence that any of the statements made by Congressman Fortenberry could have impacted any decisions other than to prosecute him for false statements. This vague testimony, which identified no government decision other than the decision to further investigate the Congressman for alleged statements is insufficient as a matter of law. See *United States v. McKenna*, 327 F.3d 830, 842-43 (9th Cir. 2003) ("We have held that in order to prove that a false statement was material, 'the prosecution must offer evidence from the prior trial to show that the defendant's statements were material; simply offering the allegedly false statement itself is not enough.'") (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 819-20 (9th Cir. 1999)).

The bottom line is simple. The government had a complete recording of the June 4, 2018, call from Dr. Ayoub. None of the statements or acts of concealment alleged in the Indictment—all of which related to that call—could have possibly impacted the investigation other than by causing the government to further investigate the Congressman for potentially making false statements. That is why the prosecution was unable to offer any substantial evidence of materiality at trial.

## II.    Section 1001 Is Void for Vagueness

Congressman Fortenberry is also entitled to judgment of acquittal because Section 1001 is unconstitutionally void for vagueness, both on its face and as applied in this case.

It is well established as a matter of due process that a penal statute is void for vagueness if it fails to define the criminal offense with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discrimatory treatment." *Kolender*, 461 U.S. at 357. The void-for-vagueness doctrine "not only guarantees that people have 'fair notice' of the conduct a statute proscribes" but also, and more importantly, "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018).

In her opinion concurring in the judgment in *Brogan v United States*, Justice Ginsburg (joined by Justice Souter) wrote separately "to call attention to the extraordinary

authority Congress, perhaps unwittingly, has conferred on prosecutors to manufacture crimes" using Section 1001. 522 U.S. 398, 409 (1998). Justice Ginsburg's powerful opinion highlights how persons may be convicted under Section 1001 of false statements that "misled no one," sometimes based on "encounters between agents and their targets under extremely informal circumstances which do not alert the person interviewed to the danger that false statements may lead to a felony conviction." *Id.* at 410-11.

Justice Ginsburg also explained in her *Brogan* opinion how even well-intentioned investigators and prosecutors can generate crimes using Section 1001. As Justice Ginsburg explained: "[I]f an investigator finds it difficult to prove some elements of a crime, she can ask questions about other elements to which she already knows the answers. If the suspect lies, she can then use the crime she has prompted as leverage or can seek prosecution for the lie as a substitute for the crime she cannot prove." *Id.* at 411 (quoting FALSE STATEMENTS TO FEDERAL AGENTS: INDUCED LIES AND THE EXCULPATORY NO, 57 U. Chi. L.Rev. 1273, 1278 (1990) (footnote omitted). "Prosecution in these circumstances is," Justice Ginsburg wrote, "Government generation of a crime when the underlying suspected wrongdoing is or has become nonpunishable." *Id.* at 411-12.

Justice Ginsburg found it "doubtful Congress intended § 1001 to cast so large a net." *Id.* at 412. "The function of law enforcement" she explained, "is the prevention of crime and the apprehension of criminals," not "the manufacturing of crime." *Id.* at 415 (quoting *Sherman v. United States*, 356 U.S. 369, 372 (1958)).

Justice Ginsburg acknowledged that "under the statute currently in force, a false statement must be 'material' to violate § 1001." *Id.* at 416. Nevertheless, she concluded: "The controls now in place, however, do not meet the basic issue, i.e., the sweeping generality of § 1001's language." *Id.* "Thus, the prospect remains that an overzealous prosecutor or investigator—aware that a person has committed some suspicious acts, but unable to make a criminal case—will create a crime by surprising the suspect, asking about those acts, and receiving a false denial." *Id.*

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

This case powerfully illustrates the validity of Justice Ginsburg's concerns in *Brogan*. In this case, Congressman Fortenberry was deliberately caught off guard late at night at his home in Lincoln, Nebraska following a week of sleepless international travel and unprecedented flooding in his district, and at a time when he warned the agents he was "not in the right frame of mind" because of the way they had frightened and upset his wife.

Even more importantly, Congressman Fortenberry was misled to believe that the agents' purpose in questioning him was not to investigate whether Fortenberry himself had knowingly participated in foreign-national or conduit contributions. According to Agent Choe, the purpose of the interview in Lincoln, Nebraska was "to see what information, if any, the Congressman would provide about the June 4th, 2018, phone call" and to "test his credibility." Trial Tr. 2/23/2022 124:12-17; 125:19-21. But the agents never told him that. Instead, the FBI admittedly used a "ruse" to procure the interview, falsely telling the Congressman that they were conducting a "background" investigation with a "national security" aspect. Unaware of the true nature of the government's investigation, Congressman Fortenberry had no way to know with reasonable certainty what information might or might not be material to the government's "investigation."

And therein lies one of the reasons Section 1001 is unconstitutionally void for vagueness. When a person applies for some government benefit and knows the criteria to be applied, the person may have reasonable notice of the type of information that may be material to the government's decision. But when individuals are questioned by law enforcement officers and are not informed of the true purposes of the agents' questions or the exact nature of their investigation—as is often the case—the individuals being questioned have no way to know what sort of statements might impact that investigation and potentially lead to severe criminal penalties.

Justices Ginsburg and Souter are not the only distinguished jurists to express grave concerns about the validity of Section 1001. While a Circuit Judge, Justice Kavanaugh likewise expressed concern over the "difficult issues that can arise in prosecutions under the ever-metastasizing § 1001" and noted that such "prosecutions can pose a risk of abuse

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

and injustice." *United States v. Moore*, 612 F.3d 698, 702-03 (D.C. Cir. 2010) (Kavanaugh, J., concurring).

Similar concerns have caused the Supreme Court in recent years to invalidate several federal statutes under the void-for-vagueness doctrine. Writing for the Court in *Johnson v. United States*, 675 U.S. 591 (2015), Justice Scalia held the definition of "violent felony" in the residual clause of the Armed Career Criminal Act void for vagueness because it invited "more unpredictability and arbitrariness" than the Constitution allows. More recently, in *Sessions v. Damaya*, 138 S.Ct. 1204 (2018), the Supreme Court, in an opinion by Justice Kagan, invalidated 18 U.S.C. § 16(b), a statute defining certain "crimes of violence" for immigration and other purposes, as unconstitutionally vague. And in *United States v. Davis*, 138 S.Ct. 2319 (2019), the Supreme Court, in an opinion by Justice Gorsuch, held 18 U.S.C. § 924(c), which made it a crime to use a firearm during or in relation to a "crime of violence," to be void for vagueness.

Justice Gorsuch's recent opinion for the Court in *United States v. Davis* eloquently makes clear why Section 1001 must be invalidated.

> In our constitutional order, a vague law is no law at all. Only the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them. Vague laws transgress both of those constitutional requirements. They hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct. When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again.

138 S.Ct. at 2323.

As Justice Ginsburg explained over twenty years ago, Section 1001 is an extraordinarily broad statute that is plainly subject to arbitrary application and abuse. Two former Supreme Court Justices have drawn attention to these concerns and called upon Congress to remake it. Other distinguished jurists and commentators, including Justice

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF

Kavanaugh, have voiced similar concerns.

Forty-nine years ago, the Ninth Circuit followed a cursory discussion by "find[ing] no vagueness problems with section 1001." *United States v. Matanky*, 482 F.2d 1319, 1322 (9th Cir. 1973). However, the Supreme Court's intervening authority on the void-for-vagueness doctrine has effectively overruled *Matanky* and requires a different result today.

**III.   The Congressman's Comments Regarding His FEC Reports and Denials of Being "Aware" of Campaign Finance Violations Cannot Support a Conviction Under Section 1001 Because They Were Literally True, Responded to Ambiguous Questions, and Immaterial as a Matter of Law When Considered in Context**

In *Bronston v. United States*, the Supreme Court held that a statement which is literally true cannot suppport a perjury conviction, even if the statement is "false by negative implication." 409 U.S. 352, 361 (1973). Indeed, the Court in *Bronson* admonished that a literally truthful answer cannot support a perjury conviction even if the witness "intended to sidetrack his questioner" and "shrewdly calculated to evade." *Id.* at 361-62. *Bronson* forecloses perjury prosecutions for statements that are literally true "even assuming the witness intends to mislead his questioner by the answer." *United States v. Boone*, 951 F.2d 1526, 1536 (9th Cir. 1991).

The rule established by the Supreme Court in *Bronston* in the context of perjury applies with equal force in the context of Section 1001. *United States v. Good*, 326 F.3d 589, 592 (4th Cir. 2003) ("The principle articulated in Bronston holds true for convictions under Section 1001."); *United States v. Mandanici*, 724 F.2d 914, 921 (2d Cir. 1984) (citing *Bronston* for the proposition that "a defendant may not be convicted under § 1001 on the basis of a statement that is, although misleading, literally true"); *United States v. Moses*, 94 F.3d 182, 188-89 (5th Cir. 1996) ("We cannot uphold a conviction ... where the alleged statement forming the basis of a violation of section 1001 is true on its face.").

The reasoning of *Bronston* also applies with equal force in the context of Section 1001. The very same "serious literal problem" exists regardles whether it is Section 1621

being enforced or Section 1001. *Bronson*, 409 U.S. at 357-58. A statement that is literally true is, by definition, not a false statement. Moreover, just as it is imperative that "the measures taken against [perjury] must not be so severe as to discourage witnesses from appearing or testifying," *id*. at 360, so is it imperative that the measures taken against false statements to law enforcement not be so severe as to discourage people from cooperating with law enforcement. And just as "perjury is not the sole, or even primary, safeguard against errant testimony" so too in the context of Section 1001 is "the burden on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.*

Two of the three statements charged in Count Two were Congressman Fortenberry's statements in Lincoln, Nebraska, to the effect that "the individuals who contributed to the 2016 Fundraiser were all publicly disclosed" and that "every campaign contribution that he had received was publicly disclosed." The prosecution offered no evidence that either of these statements was literally untrue. In fact, the evidence offered at trial confirmed that every contribution made in connection with the February 2016 fundraiser was publicly disclosed in Congressman Fortenberry's FEC reports. *See* Trial Exhibit 12 (FEC reports identifying every contributor and the amount of each contribution at the February 2016 fundraiser). The prosecution may contend that these statements were misleading because they *implied* that the contributors had not been reimbursed by others such that they were prohibited conduit contributions, but under *Bronston* that is insufficient as a matter of law.

Similarly, the Congressman's statements in both interviews to the effect that he was not "aware" of any campaign finance violations were also literally true. At trial, the prosecution introduced no evidence that Congressman Fortenberry had any personal knowledge that any illegal contributions were made to his campaign at the 2016 fundraiser. Nor did the prosecution introduce any evidence that Congressman Fortenberry *accepted as fact* everything that Dr. Ayoub said to him during the June 4, 2018, phone call. Even if Congressman Fortenberry heard everything Dr. Ayoub said, understood every word as intended, and believed it all to be true, Dr. Ayoub never identified any specific contributions to the Congressman's campaign as conduit contributions originating with Gilbert Chagoury.

The statements made by Dr. Ayoub were much more general. It was thus not false for Congressman Fortenbeery to say that he was not "aware" of any illegal contributions to his campaign.

It is important to keep in mind that in both interviews, Congressman Fortenberry disclosed the fact that he had heard a "concerning" comment from Dr. Ayoub suggesting that Gilbert Chagoury, a foreign national, may have been involved in the 2016 fundraiser. He further admitted at the Washington, D.C. interview that it gave him concern that contributions originating with a foreign national might have been made through conduits. In the context of those disclosures, the Congressman's statement that he was not "aware" of foreign or conduit contributions indicated a lack of personal knowledge or belief, not the lack of any basis for concern that there may have been improper contributions.

It is also important to keep in mind that in the Nebraska interview, Agent Carter repeatedly asked Congressman Fortenberry vague questions as to whether he was "aware" of illegal conduct or foreign contributions. In response to those questions, the Congressman said "no" but also mentioned the concerning comment from Dr. Ayoub. Agent Carter could have asked any number of more precise questions, such as whether the Congressman had ever been "told" or "had reason to think" that his campaign received improper contributions. For some reason, Agent Carter chose not to do so.

In situations like this where questioners fail ask precise questions, courts have refused to allow perjury or false statement convictions to stand where the responses to the vague questions were arguably literally true. The Fourth Circuit's decision in *United States v. Earp* is instructive. 812 F.2d 917 (4th Cir. 1987). In that case, the defendant was asked if he burned a cross at a particular incident, which he denied. *Id.* at 919. However, the defendant had *attempted* to burn a cross during that same incident, albeit without success. *Id.* The Fourth Circuit reversed the defendant's perjury conviction, holding that "the district court should not have allowed the jury to speculate" as to whether the defendant understood the question the way the prosecution suggested he should have. *Id.* at 919-20. The Fourth Circuit noted that the defendant was not asked whether he had ever attempted to burn a

cross, or even whether he participated in the incident in question. But a review of the record indicated "that in questioning other witnesses the questioner was able easily to attain the requisite specificity." *Id.* at 919.

Ninth Circuit authority similarly requires, under *Bronston*, that the Court consider "the context in which the questions were asked, as well as the potentially ambiguous wording." *United States v. McKenna*, 327 F.3d 830, 841 (2003) (quoting *Boone*, 951 F.2d at 1534); *see also United States v. Jiang*, 476 F.3d 1026 (9th Cir. 2007) (reversing a Section 1001 conviction and emphasizing the importance of examining alleged false statement in the context of other statements made by the defendant and all of the relevant circumstances). Indeed, a conviction under Section 1001 can never be sustained where the questions asked are "fundamentally ambiguous."

Given that Congressman Fortenberry disclosed that he had heard a concerning comment from Dr. Ayoub suggesting that a foreign national might have been involved in the 2016 fundraiser, no reasonable jury could have found beyond a reasonable doubt that Congressman Fortenberry's denials of vague questions as to whether he was "aware" of illegal contributions to his campaign were substantially false or material.

Finally, applying Section 1001 to these sorts of statements raises significant First Amendment issues. A person being questioned by law enforcement officers or prosecutors has a right to speak in defense of his conduct. If the person may then be charged under Section 1001 for making statements that are reasonable characterizations of his conduct, important First Amendment freedoms are necessarily imperilled. See *Grayned v. City of Rockford*, 408 U.S. 104, 114-17 (1972) (explaining that "overbroad law, like vague ones, deter privileged activity" and must be narrowly tailored when "communication is involved"). Congressman Fortenberry cannot be convicted of violating Section 1001 on the basis of literally true statements concerning his FEC reports or his lack of personal awareness of any campaign finance violations without doing violence to privileged First Amendment speech.

**CONCLUSION**

For the foregoing reasons, former Congressman Fortenberry respectfully requests that the Court enter judgment of acquittal in his favor on all counts.

Dated: April 25, 2022

Respectfully submitted,

BARTLIT BECK LLP

By: _____
Glen E. Summers

BIENERT KATZMAN
LITTRELL WILLIAMS LLP
John L. Littrell
Ryan V. Fraser

Kally A. Kingery, Esq.

*Attorneys for Jeffrey Lane Fortenberry*

DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL
AND MEMORANDUM IN SUPPORT THEREOF