UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Case No.  2:21-cr-00491-SB-1                                                                Date: July 5, 2022

Present: The Honorable: **STANLEY BLUMENFELD, JR., U.S. District Judge**

Interpreter

| Jennifer Graciano | None Present | None Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter / Recorder* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorneys for Defendants: | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| Jeffrey Fortenberry (Not Present) | | | | | | | |

**Proceedings:  ORDER TO SHOW CAUSE**

 John Littrell represented the defendant, former Congressman Jeffrey Fortenberry, in this case.  At trial, Defendant exercised his constitutional right not to testify.  During his closing argument, Mr. Littrell addressed this fact, explaining to the jury:

 So . . . the Court instructed you, rightfully so, that you cannot consider the fact that the Congressman didn't testify.  He has an absolute right not to testify and you cannot consider it, but that's a hard instruction to follow, especially in a case where we're talking about what's in his mind, what he knew, what he remembered, and what he understood.  And we don't have to explain the decision not to testify, but I'm going to.  And the answer is that he did testify.  Remember, most of what we listened to during our, I think, six days of trial were his statements.  And the testimony, essentially, that he gave in those recordings was unvarnished, unprepared, uncounseled.  Well, I suppose in D.C. he told the prosecutors what he knew and remembered, and you got to hear that, too.  I can't improve on that.  I can't—his memory is not better today than it was in 2019, so there's really nothing to add.  And so here you are, some of you may be thinking, why didn't he testify? Why didn't he explain this?  But what do you think would have happened if he got up there on the stand and tried to explain and his memory is worse than it was before and the Government confronts him with the call and asks him to explain it? He would say the same thing as what he said before, this is what I heard, this is what I understood.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

Dkt. No. 204, at 207–08.  At this point, the prosecutor objected, and the Court sustained the objection.

Mr. Littrell's argument was improper.  Mr. Littrell did not simply remind the jury of the instruction and implore them to follow it.  He told the jury the purported reason his client did not testify.  The reason, he said, was that his client's "memory is not better today than it was in 2019" when his client spoke to the government.  As a result, Mr. Littrell continued, he could not "improve on" what the jury already had heard from the 2019 recorded statements.

Mr. Littrell did not stop there.  In case the jury somehow missed the point, Mr. Littrell went on to explain what his client would have stated had he taken the witness stand.  According to Mr. Littrell, his client would have testified that "his memory is worse than it was before," and "[h]e would say the same thing as what he said before, that is what I heard, this is what I understood."

It is an elementary principle of law that a lawyer in closing argument may only argue facts admitted into evidence and reasonable inferences to be drawn therefrom.  Mr. Littrell, an experienced lawyer, knew there were no facts in evidence about why his client chose not to testify or about what his client would have said had he elected to testify.  Despite this knowledge, Mr. Littrell made a calculated decision to cross the line.  When the Court confronted him about his conduct outside the presence of the jury, Mr. Littrell explained:

> I will tell you this, having done this for a long time:  Jurors have a real problem with [a defendant's decision not to testify], and I think that's why the Court emphasized that instruction is because jurors really struggle with that and so I feel some obligation to say something about it.  But if I've gone too far, and it sounds like the Court feels I have, I certainly apologize.  And I guess I would acknowledge that the risk falls on the defense when we do that.  I don't—I felt it was a fair comment on the issue and on the instruction on the issue, but certainly reasonable minds can disagree about that.

Id. at 245.

Mr. Littrell's explanation demonstrates that he knew full well what he was doing, and that he decided to take the risk because of his concern that jurors might disregard the law.  In Mr. Littrell's view, his argument to the jury about why his client did not testify and what his client would have stated had he testified was "a fair comment on the issue."  It is difficult to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**

imagine how Mr. Littrell could believe that it was "fair" to introduce facts that were not presented at trial and subject to cross examination—particularly these facts. Indeed, Mr. Littrell maintained this position even after the Court explained the manifest unfairness of this tactic given that the prosecutor could not meaningfully respond to the defense's argument in rebuttal without risking reversible error and a charge of misconduct. *Griffin v. California*, 380 U.S. 609, 615 (1965) (reversing conviction because prosecutor commented on a defendant's decision not to testify).

Because of the seriousness of this issue and Mr. Littrell's response to it, the Court does not believe that it can let this matter stand without taking any action. Mr. Littrell is an experienced lawyer who gave substantial thought before making the argument about his client's decision not to testify. And when confronted about the impropriety, Mr. Littrell responded that he believed "it was a fair comment" and that "reasonable minds can disagree about that." The response suggests that Mr. Littrell not only fails to see anything wrong with his argument, but also that he may continue to so argue in future cases because of his view that juries are unable to follow the law. The Court therefore issues an order to show cause (OSC) why Mr. Littrell should not be sanctioned and/or referred to the Standing Committee on Discipline pursuant to Local Rule 83-3.1. Mr. Littrell shall file a declaration in response to the OSC **by no later than July 15, 2022**. In his declaration, Mr. Littrell shall disclose whether any judge has ever criticized, admonished, or otherwise spoken to him about his commenting on the fact that his client did not testify (by stating the name of the judge, the name of the case, and the case number).

**IT IS SO ORDERED**.