GUY C. IVERSEN, State Bar No. 150883
1810 Chapala, Unit 4
Santa Barbara, California 93101
Tel: (213) 500-9506
Email: guyiversen@gmail.com

*Attorney for Respondent*
*John L. Littrell*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY FORTENBERRY,<br><br>Defendant. | Case No. 2:21-cr-00491-SB-1<br>Hon. Stanley Blumenfeld, Jr.<br><br>**MOTION TO VACATE ORDER TO SHOW CAUSE; DECLARATION OF JOHN LITTRELL; DECLARATION OF GUY IVERSEN** |

1     **PLEASE TAKE NOTICE THAT** John L. Littrell, through his counsel of record, hereby moves to vacate the Court's Order to Show Cause (Dkt. No. 225). This motion is based on this Notice, the attached Memorandum of Points and Authorities, and the concurrently filed declarations.

    It is unclear that the government has standing to take a position with respect to this motion. However, in an abundance of caution, counsel served AUSA Mack Jenkins with a PDF version of the manually filed motion via e-mail.

Date: July 25, 2022

                                                By:   */s/ Guy C. Iversen*
                                                                 Guy C. Iversen
                                                                 *Attorney for John L. Littrell*

## TABLE OF CONTENTS

I. Introduction..........................................................................................1

II. Argument ............................................................................................2

   A. Commenting on the Defendant's Decision Not to Testify............................2

   B. Arguing Facts and Reasonable Inferences Therefrom.................................4

   C. There was no Intentional Misconduct.............................................................7

   D. This Court's Inherent Power to Regulate Attorney Conduct........................8

   E. The Standing Committee on Discipline .........................................................9

III. Conclusion........................................................................................10

## TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Doyle v Ohio*,
  426 U.S. 610 (1976) ...........................................................................................3

*Griffin v. California*,
  380 U.S. 609 (1965) ...........................................................................................3

*Matter of Yagman*,
  796 F.2d 1165 (9th Cir.) ................................................................................ 9, 10

*Strickland v. Washington*,
  466 U.S. 668 (1984) ...........................................................................................1

*United States v. Blueford*,
  312 F.3d 962 (9th Cir. 2002) ..........................................................................5, 8

*United States v. Hasting*,
  461 U.S. 499 (1983) ........................................................................................7, 9

*United States v. Koon*,
  34 F.3d 1416 (9th Cir. 1994) ............................................................................10

*United States v. Robinson*,
  485 U.S. 25 (1988) .................................................................................... 2, 3, 4

*United States v. Sayetsitty*,
  107 F.3d 1405 (9th Cir. 1997) ............................................................................5

*United States v. Tucker*,
  641 F.3d 1110 (9th Cir.2011) .............................................................................4

*United States v. Vaccaro*,
  816 F.2d 443 (9th Cir. 1987) ..............................................................................5

*United States v. Weatherspoon*,
  410 F.3d 1142 (9th Cir. 2005) ............................................................................5

**Rules**

Fed. R. Evid. 801(d)(2)(A) .....................................................................................5

Fed.R.Civ.P. 11 .......................................................................................................9

# TABLE OF AUTHORITIES

**Other Authorities**

Advisory Committee Notes,
   97 F.R.D. 198 (1983)..................................................................................8

American Bar Association,
   Model Rules of Professional Conduct, Rule 1.3 ......................................1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Criminal defense attorneys have an ethical duty to zealously advocate for their clients. That means taking "whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." *See* American Bar Association, Model Rules of Professional Conduct, Rule 1.3: Diligence, cmt., n.1. Defense counsel must also make time-sensitive, difficult decisions about how to best advocate for their clients, considering the risks and benefits of each choice. *See Strickland v. Washington*, 466 U.S. 668, 698 (1984). Due to the difficulty of these decisions and the speed at which these must be made, there is always a risk of getting them wrong.

The remedy for all but the most egregious trial errors is embedded in the adversary process. A prosecutor who objects to an argument by defense counsel has an obligation to state that objection and seek relief. Defense attorneys have a similar obligation. The Court is responsible for ruling on those objections. Although the Court has inherent authority to manage the proceedings before it, it must take care not to use that authority in a way that unreasonably chills advocacy by defense counsel.

In the Court's Order to Show Cause, the Court takes issue with two aspects of Mr. Littrell's closing argument. First, the Court faults Mr. Littrell's choice to comment on his client, Jeffrey Fortenberry's, right not to testify. Second, it takes issue with the substance of the argument, which the Court felt was not appropriately limited to facts that were admitted into evidence and reasonable inferences to be drawn therefrom. Dkt. No. 225 at 2. The Court asks Mr. Littrell to show cause why he should not be sanctioned and/or referred to the Standing Committee on Discipline on that basis. *Id*.

As set forth below, although a prosecutor is prohibited from commenting on a defendant's choice not to testify, there does not appear to be any legal authority that prohibits defense counsel from doing so. A defense lawyer that does so runs the risk

1
MOTION TO VACATE ORDER TO SHOW CAUSE

that the prosecutor responds to that argument in rebuttal. *See United States v. Robinson*, 485 U.S. 25, 32 (1988).  But doing so does not constitute misconduct.

As the Court also noted, lawyers are required to confine their arguments to facts admitted at trial or reasonable inferences therefrom.  But lawyers are given a broad latitude to draw such inferences, and both the prosecution and the defense did so in this case.  Mr. Littrell's closing argument fell within that broad latitude.  To the extent it did not, it was trial error, and not sanctionable misconduct.  The government objected, the Court instructed the jury to disregard Mr. Littrell's comments related to the reasons Mr. Fortenberry did not testify, and there was no prejudice to the government.

Nonetheless, Mr. Littrell takes the court's criticism seriously.  As set forth in the attached declaration, this was not a calculated effort to violate any rule.  But Mr. Littrell acknowledges both that his comments were not carefully worded and that as phrased, they could have been interpreted as arguing facts not in the record.  He has reflected on how that happened and how to ensure it does not happen again.  Thus, this Court's Order to Show Cause has already achieved the deterrent effect the Court seeks.

## II. Argument

### A. Commenting on the Defendant's Decision Not to Testify.

Mr. Fortenberry had a Constitutional right not to testify, and he also had a right not to have that decision held against him.  The Court instructed the jury accordingly, pursuant to Ninth Circuit Model Criminal Jury Instruction No. 6.3.

In addition to the Court's instruction, Mr. Littrell made a strategic decision to address the fact that Mr. Fortenberry did not testify during his closing argument. That strategic choice opened the door for the prosecution to comment on Mr. Fortenberry's choice not to testify also, which it otherwise could not have done.  *See Robinson*, 485 U.S. at 32.  No rule appears to forbid Mr. Littrell to make that choice.

//

2
MOTION TO VACATE ORDER TO SHOW CAUSE

The Court cited *Griffin v. California*, 380 U.S. 609, 613 (1965) for the proposition that the government could not meaningfully respond to those arguments in rebuttal. Dkt. No. 225 at 3.[1] But *Griffin* was explicitly limited by the Supreme Court in *Robinson*, which addressed a factually similar scenario to this case. In *Robinson*, the defense attorney argued in closing that the government had not allowed his client to "explain his side of the story." 485 U.S. at 26. The defense attorney went on to argue that although "it would be natural to draw an adverse inference" against the defendant based on his choice not to testify, the jury "could not and should not do so." *Id*. at 27-28. Following the defense closing, the prosecution objected and contended that the defense had "opened the door." In rebuttal, the prosecutor argued that the defendant "explained himself away on tape right into an indictment. He explained himself to the insurance investigator, to the extent that he wanted to. He could have taken the stand and explained it to you, anything he wanted to." *Id*. at 28.

The Court held that the prosecutor's rebuttal closing "did not violate respondent's privilege to be free from compulsory self-incrimination guaranteed by the Fifth Amendment to the United States Constitution." *Id*. The Court distinguished *Griffin*, saying "[w]here the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege against compulsory self-incrimination is violated. But whereas in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." *Id*. at 32.

*Robinson* applies to this case. Like the defense attorney in *Robinson*, Mr. Littrell reinforced the Court's instruction about the defendant not testifying, saying that his client "has an absolute right not to testify and you cannot consider it." Dkt. No. 204

---

[1] The Court also indicated that the prosecutor could not respond without committing *Doyle* error. Dkt. No. 204 at 243-44; *see Doyle v Ohio*, 426 U.S. 610 (1976). But *Doyle* concerns a different issue, that is, a prosecutor commenting on the defendant's choice to remain silent in response to out-of-court questioning.

3
MOTION TO VACATE ORDER TO SHOW CAUSE

(3/24/22 TX) at 207. But he also acknowledged "that's a hard instruction to follow . . . ." *Id*. Mr. Littrell went on to suggest that Mr. Fortenberry "did testify" in the form of his previous statements to the government and argued that because Mr. Fortenberry's "memory is not better today than it was in 2019," there was "really nothing to add." *Id*. Pursuant to *Robinson* the government objected. The Court sustained that objection and ordered the jury to disregard it. Dkt. No. 225 at 2. The government could have sought leave of the Court to respond to Mr. Littrell's comments in its rebuttal but did not elect to do so. This too was a reasonable strategic choice.

### B.  Arguing Facts and Reasonable Inferences Therefrom.

As the Court noted, it is an "elementary principal of law" that attorneys may only argue facts admitted into evidence and reasonable inference to be drawn therefrom. Dkt. No. 225 at 2. But litigants have considerable leeway to make arguments based on reasonable inferences from the evidence presented. *See United States v. Tucker*, 641 F.3d 1110, 1120-21 (9th Cir.2011) ("Prosecutors can argue reasonable inferences based on the record, and have considerable leeway to strike hard blows based on the evidence and all reasonable inferences from the evidence."); *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002) ("It is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true."); *United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) (noting "wide latitude" both prosecutors and defense attorneys are allowed in closing argument" which "embraces reasonable inferences from the evidence presented at trial."); *United States v. Vaccaro*, 816 F.2d 443, 451 (9th Cir. 1987), abrogated on other grounds in *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). In this context the Ninth Circuit has "stress[ed] that the ethical bar is set higher for the prosecutor than for the criminal defense lawyer—a proposition that has been clear for at least seven decades." *United States v. Weatherspoon*, 410 F.3d 1142, 1148 (9th Cir. 2005).

The Court finds fault in the fact that Mr. Littrell argued that Mr. Fortenberry's "memory is not better today than it was in 2019," and thus, Mr. Littrell could not "improve on" Mr. Fortenberry's prior statements in 2019. Dkt. No. 225 at 2. But those arguments are reasonable inferences from the facts in the record.

First, it was proper for Mr. Littrell to ask the jury to credit Mr. Fortenberry's prior statements as truthful. Having been admitted as non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(A), they were admissible for all purposes, and each side was free to comment on them. During its closing argument, the government repeatedly characterized Mr. Fortenberry's prior statements as "lies." *See* Dkt. No. 204 at 155 ("you know that the defendant lied to the Federal investigators."). And it urged the jurors to agree based on their "reason, common sense, and life experience." *Id*.

Second, it was proper for Mr. Littrell to argue that Mr. Fortenberry's memory would not be better in 2022 than it was in 2019. When the Court granted the government's motion to exclude the testimony of Dr. Alan Castel, a defense expert on memory, the Court noted "the idea that memory fades or alters over time is a concept jurors understand without the need for expert assistance" and Dr. Castel's "opinions based on general memory principles, most of which are understood—or through the trial process, including cross-examination and closing argument, readily could be communicated—to ordinary jurors." Dkt. No. 152 at 5. Mr. Littrell's argument that Mr. Fortenberry's memory is "not better today than it was in 2019" is the type of argument this Court posited as one that is commonly understood by jurors and could "readily . . . be communicated" to them, including in closing argument.

In its closing argument, the government also commented on Mr. Fortenberry's memory and urged the jury to draw conclusions based on their "common sense" about what Mr. Fortenberry "must have remembered and *did remember*." *See* Dkt. No. 204 at 152 ("[Y]ou know the defendant remembered this call for a lot of the same reasons that you know he understood the call in the first place and because common sense tells

5

MOTION TO VACATE ORDER TO SHOW CAUSE

you that this is something the defendant *must have remembered and that he did remember*.") (emphasis added); *id*. at 153 ("that is not something the defendant *could or did forget*.") (emphasis added); *id*. at 154 ("It defies common sense and it contradicts the evidence to say that the defendant did not remember."). There was no evidence in the record about what Mr. Fortenberry actually remembered from the 2018 call from Dr. Ayoub. But these too were reasonable inferences from the record.

Mr. Littrell went on to argue, in response to a rhetorical question "what do you think would have happened if he got up there on the stand and tried to explain [?]" that Mr. Fortenberry "would say the same thing as what he said before." Although in retrospect Mr. Littrell would have phrased this argument differently, *see* Declaration of John Littrell at ¶ 9, this was not an effort to paraphrase the actual testimony Mr. Fortenberry would have given, but a reasonable extension of the previous argument that Mr. Fortenberry's memory would not have been better in 2022 than it was in 2019.[2]

These arguments created a risk that the government might respond in rebuttal, but they were reasonable inferences from the record and based on common sense. To the extent these arguments suggested reliance on facts outside the record, the government had a right to object to them, which it did. When the Court sustained the objection, Mr. Littrell moved on. The defense also objected when the government appeared to stray from the facts in the record and vouched during its closing remarks, and the Court sustained at least one such objection. *See, e.g.,* Dkt. No. 204 at 239.

///

///

---

[2]   Mr. Littrell did not argue that Mr. Fortenberry "would have testified *that* 'his memory is worse than it was before.'" Dkt. No. 225 at 2 (citing Dkt. No. 204 at 207-08 (emphasis added). Rather, Mr. Littrell said "what do you think would have happened if he got up there on the stand and tried to explain *and* his memory is worse than it was before?" Dkt. No. 204 at 207 (emphasis added).

6
MOTION TO VACATE ORDER TO SHOW CAUSE

### C. There was no Intentional Misconduct.

Mr. Littrell has commented during closing argument on his client's decision to not testify in several previous trials. *See* Declaration of John Littrell at ¶ 5. The theme of Mr. Littrell's comments has generally been to reinforce the jury instruction that the decision to testify cannot be considered by the jury, but also to acknowledge the difficulty jurors may have in following that instruction, and to try to place the decision not to testify in context of the risks it places on the defendant. *Id*; *See also United States v. Hasting*, 461 U.S. 499, 515 (1983) (Stevens, J. concurring) ("[A] defendant's election not to testify 'is almost certain to prejudice the defense no matter what else happens in the court room.'") (citation omitted). Until this case, no prosecutor has objected to those comments. *Id*.

Nearly 12 years ago, in *United States v. Williams*, 10-cr-535-PSG, Mr. Littrell referenced his client's decision not to testify in his closing argument, but he went one step further and stated to the jury that he told his client not to testify. *See* Declaration of John Littrell at ¶ 7. There was no objection. After closing arguments were complete, Judge Gutierrez pointed out to Mr. Littrell that his commenting on any conversation he may have had with his client about testifying was improper. *Id*. Mr. Littrell acknowledged the Court's comments, and he agrees that Judge Gutierrez was right. *See* Declaration of John Littrell at ¶ 7. No other judge has criticized or commented on Mr. Littrell's comments during closing argument about his client's decision not to testify since. *Id*. at ¶ 8.

It is not always improper for a defense attorney to address the defendant's choice not to testify in closing argument. In reviewing the end points of potential comments a defense attorney may make about the defendant's decision not to testify, the range is from saying nothing up to saying it was on advice of counsel. Arguing advice of counsel is inappropriate and saying nothing warrants no analysis. Between those two end points is a spectrum that is not always clear. Mr. Littrell's argument that Mr.

Fortenberry's testimony at trial would not have added anything to his previous statements in 2019 because of the failings of memory and the passage of time was within the "considerable leeway" given counsel in closing argument. *See Blueford*, 312 F.3d at 968. It was an argument made in good faith. At a minimum it was not the type of conduct that warrants sanctions or discipline.

However, upon reflection Mr. Littrell acknowledges that any attempt to explain or contextualize the decision not to testify creates a risk of alluding to facts not in the record, because the client's decision to testify is made in private and based on facts that are not in the record. Declaration of John Littrell at ¶ 10. This Court's Order to Show Cause has caused him to reconsider whether the risks of commenting on his client's decision not to testify are ever worth taking. *Id*.

### D.   This Court's Inherent Power to Regulate Attorney Conduct.

"The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (internal citations omitted).

The Court must also be mindful of the risk that imposing sanctions could chill effective advocacy by defense counsel in future cases. *Cf. Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir.), opinion amended on denial of reh'g sub nom. *In re Yagman*, 803 F.2d 1085 (9th Cir. 1986) "[Z]ealous advocacy is the attorney's ideal. Hard-fought, energetic, and honest representation is at the bedrock of our judicial process. None of the various rules and statutes that authorize sanctions are intended, nor should they be implemented, 'to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.'" (citing Proposed Amendments to Fed.R.Civ.P. 11, Advisory Committee Notes, 97 F.R.D. 198, 199 (1983)).

There is no need for the Court to invoke its inherent power here. There is no need to vindicate a recognized right of the government—the government's timely objection to Mr. Littrell's argument was sustained, and it secured a conviction on all three counts in the indictment. Mr. Littrell's closing argument cannot be characterized as the type of "illegal conduct" the inherent power is intended to deter. And sanctioning Mr. Littrell based on a brief statement in closing argument creates a substantial risk of chilling effective advocacy by the defense bar in future cases.[3]

### E. The Standing Committee on Discipline.

Considering the substantive arguments above it would also be inappropriate and unnecessary to refer this matter to the Standing Committee on Discipline pursuant to Local Rule 83-3.1. Local Rule 83-3.1.2 states that attorneys practicing in this District "shall be familiar with and comply with the standards of professional conduct . . . of the State Bar of California . . .State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." Mr. Littrell is familiar with those rules. The issue is whether he knowingly and intentionally violated any of them, warranting the severe discipline that the Standing Committee can impose.[4] The answer to that question is no. But even if there is ambiguity on that point, a referral to the Standing Committee would be unwarranted. *Cf. Matter of*

---

[3] The Court arguably could provide in its standing order that defense counsel may not comment on the defendant's right not to testify, or alternatively require defense counsel to give notice of the intent to make such an argument. *See Tucker*, 8 F.3d at 674 (courts can, "within limits, formulate procedural rules not specifically required by the Constitution or the Congress."). It could also require defense counsel to choose between making such an argument and having the Court instruct the jury pursuant to Ninth Circuit Model Criminal Instruction No. 6.3.

[4] The serious consequences of a disciplinary investigation sheds light on the nature of conduct warranting referral. Local Rule 83-3.1.3 lists potential penalties as 1) disbarment; 2) suspension; 3) public or private reproval; 4) monetary penalties; or 5) resignation. For any of these sanctions to be imposed requires serious, intentional, unmitigated conduct with significant harm.

*Yagman*, 796 F.2d at 1183 ("This means foremost that the conduct in question must in fact be sanctionable under the authority relied upon."); *id.* (reversing the imposition of disciplinary sanctions against plaintiff's counsel, despite allegations of serious, repeated, and intentional conduct, because the attorney's conduct "does not fall within these guidelines and, therefore, poses a direct threat to the balance between sanctioning improper behavior and chilling vigorous advocacy.").

### III. Conclusion

Mr. Littrell respectfully asks that the Court vacate the Order to Show Cause.

First, Mr. Littrell's closing argument did not reflect a calculated decision to "cross [a] line," but rather a decision about how best to advocate for his client, within the framework of *Robinson*. As Mr. Littrell indicated in his declaration, his closing argument was not scripted, and he could have articulated his arguments more precisely, but his arguments were made in good faith and not sanctionable misconduct.

Second, what constitutes permissible argument is not subject to a rigid metric of analysis as in other areas of the law. As with what constitutes improper argument in an opening statement, it is an area that is open to subjective interpretation by both litigants and courts. Once there was an objection, Mr. Littrell was on notice. Once that objection was sustained, he moved on. Had he continued to argue the point in violation of the Court's ruling he may have entered the area warranting sanctions. He did not.

Third, there was no prejudice to the government. Mr. Littrell's argument was brief, and the court sustained the government's objection. The Court also instructed the jury that "closing argument is not evidence, so if the lawyers describe something about the evidence that disagrees or is inconsistent with your memory of it, it's your memory that controls." Dkt. No. 204 at 138. "Such instructions dilute the potential prejudice arising from improper statements." *United States v. Koon*, 34 F.3d 1416, 1445 (9th Cir. 1994), aff'd in part, rev'd in part, 518 U.S. 81 (1996).

Finally, this circumstance is unlikely to reoccur. Mr. Littrell acknowledges that his arguments attempting to contextualize or explain Mr. Fortenberry's choice not to testify in this case created substantial risks that outweighed any benefit they could have had. He has also reconsidered whether doing so in future cases would be appropriate.

Date: July 25, 2022

By: /s/ Guy C. Iversen
     Guy C. Iversen.
     *Attorney for John Littrell*