UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JEFFREY FORTENBERRY,<br><br>　　　　Defendant. | Case No. 2:21-cr-00491-SB-1<br><br><br>ORDER IMPOSING SANCTIONS ON ATTORNEY JOHN LITTRELL |

　　　　After the conviction and sentencing of Defendant Jeffrey Fortenberry, the Court issued an order to show cause (OSC) why defense counsel John Littrell should not be sanctioned or referred to the Standing Committee on Discipline for his improper argument at trial about Fortenberry's decision not to testify, which included Littrell's representations about what Fortenberry would have said if he had testified. Dkt. No. 225. Littrell then retained his own counsel and filed a response in which he moves to vacate the OSC. Dkt. No. 233.[1] The Court finds that Littrell acted in bad faith and that a monetary sanction of $500 is warranted.

I.

　　　　On the final day of Fortenberry's trial, March 24, 2022, Fortenberry elected not to testify, and the defense rested. Before closing arguments, the Court

---

[1] Littrell has not requested a hearing on the matter. The Court has carefully considered both Littrell's oral responses to the Court's questions at trial and his brief and declaration in response to the OSC. No hearing is required under these circumstances. *See Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (explaining that an attorney subject to sanctions must be afforded notice and an opportunity to be heard, but "an opportunity to be heard does not require an oral or evidentiary hearing on the issue").

instructed the jury on the law. The Court's written instructions on the right not to testify, to which the parties agreed, stated that "[a] defendant in a criminal case has a constitutional right not to testify. In arriving at your verdict, the law prohibits you from considering in any manner that the defendant did not testify." Dkt. No. 183 at 5–6. The Court expanded on this instruction orally, repeatedly emphasizing the importance of not considering the lack of testimony in any way:

> Now, as I told you at the beginning of the case and during voir dire, a defendant in a criminal case has a Constitutional right not to testify. In arriving at your verdict, the law prohibits you from considering in any manner that the defendant did not testify. And let me just elaborate. This means you cannot take this into account whatsoever in deliberating in this case. It further means that you cannot, therefore, of course, discuss it. And if anybody raises this issue in your deliberations, the rest of you are to shut that person down and then tell me with a note that the issue has been raised, because it may not be, and you may not consider it.

Dkt. No. 204 at 125:8–19.

Notwithstanding this instruction, when Littrell made his closing argument less than three hours later, he not only discussed Fortenberry's decision not to testify but also opined on both the reasons for that decision and what Fortenberry would have said if he had testified:

> So it is natural for you—which the Court instructed you, rightfully so, that you cannot consider the fact that the Congressman didn't testify. He has an absolute right not to testify and you cannot consider it, but that's a hard instruction to follow, especially in a case where we're talking about what's in his mind, what he knew, what he remembered, and what he understood. And we don't have to explain the decision not to testify, but I'm going to. And the answer is that he did testify. Remember, most of what we listened to during our, I think, six days of trial were his statements. And the testimony, essentially, that he gave in those recordings was unvarnished, unprepared, uncounseled. Well, I suppose in D.C. he told the prosecutors what he knew and remembered, and you got to hear that, too. I can't improve on that. I can't—his memory is not better today than it was in 2019, so there's really nothing to add. And so here you are, some of you may be thinking, why didn't he testify? Why didn't he explain this? But

2

> what do you think would have happened if he got up there on the stand and tried to explain and his memory is worse than it was before and the Government confronts him with the call and asks him to explain it? He would say the same thing as what he said before, this is what I heard, this is what I understood.

*Id*. at 207:5–208:2.  At this point, the prosecutor objected, and the Court sustained the objection and directed the jury to disregard Littrell's argument.

After the jury left to begin its deliberations, the Court confronted Littrell about the impropriety of his commenting on Fortenberry's decision not to testify. In response, Littrell's made clear that he had heard the Court's admonishment to the jury and made a calculated decision to address Fortenberry's not testifying, which he believed he "had to address":

> MR. LITTRELL:  I think there's two issues.  The fact of the not testifying I think I had to address, and I think I did that by saying essentially he did, he spoke through exhibits that were presented.
>
> THE COURT: And cite to the Court authority where you have—you have the ability to tell the jury, essentially to comment, to say that, in fact, he did testify, which the subtext, of course, is explaining why he didn't testify.
>
> MR. LITTRELL:  I understand, your Honor.  I can't point to a certain authority.  I guess what I would say is that the risk of making that argument falls on the defense.  I mean, that could potentially open the door for the Government to respond.
>
> THE COURT:  And let me ask you, did you hear how strongly and sternly, not just now but previously, the Court admonished the jury with respect to that issue?
>
> MR. LITTRELL:  I did, your Honor.
>
> THE COURT:  And would you acknowledge that that was a particularly stern admonition that the Court provided?
>
> MR. LITTRELL:  It did sound that way, your Honor.

>THE COURT:  And so that's the Court's role, and it's counsel's role to make sure that they're preserving the Constitutional rights of the defendant.  And that's your—your obligation as well, too.
>
>MR. LITTRELL:  Understood, your Honor.
>
>THE COURT:  And yet you either potentially invited [*Griffin*] error by allowing a fair response or you were being unfair because you then would preclude the prosecution from responding.  And that troubles me, Counsel.
>
>MR. LITTRELL:  I certainly wasn't trying to be unfair.  And, you know, your Honor, we do the best we can.  I will tell you this, having done this for a long time:  Jurors have a real problem with that, and I think that's why the Court emphasized that instruction is because jurors really struggle with that and so I feel some obligation to say something about it.  But if I've gone too far, and it sounds like the Court feels I have, I certainly apologize.  And I guess I would acknowledge that the risk falls on the defense when we do that.  I don't—I felt it was a fair comment on the issue and on the instruction on the issue, but certainly reasonable minds can disagree about that.

*Id*. at 244:6–245:21.

The jury convicted Fortenberry on all charges.  After sentencing, the Court ordered Littrell to show cause why he should not be sanctioned or referred to the Standing Committee on Discipline, explaining that the OSC was necessary because of the seriousness of the issue and because Littrell's defense of his argument "suggests that Mr. Littrell not only fails to see anything wrong with his argument, but also that he may continue to so argue in future cases because of his view that juries are unable to follow the law."  Dkt. No. 225 at 3.

II.

Courts have inherent power to manage their own affairs and sanction conduct that abuses the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991).  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Id*. at 44.  A sanction under the court's inherent powers requires a specific finding that the attorney's conduct "constituted or was tantamount to bad faith."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980);

4

accord *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("[W]e have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power."). "The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and 'preserves a balance between protecting the court's integrity and encouraging meritorious arguments.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)). The amount of monetary sanctions imposed under the court's inherent authority must also be reasonable. *Id*.

### III.

#### A.

It is well established that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). In his response to the OSC, Littrell first argues that while prosecutors are prohibited from commenting on a defendant's choice not to testify, it is not misconduct for defense counsel to do so. He relies on *United States v. Robinson*, 485 U.S. 25 (1988), for the proposition that defense counsel may make a strategic decision to comment on the lack of testimony and merely run the risk that the prosecutor may be allowed to respond in rebuttal.

Littrell misreads *Robinson*. In that case, defense counsel argued in closing that the government had not allowed the defendant to explain his side of the story. The district court sustained the prosecutor's objection, found that the defendant had "opened the door," and allowed the prosecutor in rebuttal to state that the defendant "could have taken the stand and explained it to you." 485 U.S. at 28. The court of appeals held that the defendant had been denied a fair trial because *Griffin* prohibited the prosecutor from making any direct reference to the fact that the defendant had not testified. The Supreme Court reversed, finding that the appellate court had read *Griffin* too broadly and holding that "the prosecutor's statement that respondent could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon respondent's Fifth Amendment rights." *Id*. at 31.

*Robinson* focused exclusively on the propriety of the prosecutor's statement. The Supreme Court did not approve of defense counsel's comments or suggest that—as Littrell urges—defendants are free to comment on their decision not to

5

testify, provided they accept the risk of the prosecutor being allowed to respond. To the contrary, the Court recounted that the prosecutor's objection to defense counsel's argument had been sustained because the argument was unfair to the prosecution. Although it did not directly address the defense's misconduct, the thrust of the Supreme Court's decision was that defense counsel's unfair argument turned what would otherwise have been an unconstitutional statement by the prosecutor into "a fair response to a claim made by defendant or his counsel." *Id*. at 32. The existence after *Robinson* of a remedy to mitigate the unfairness of a defense attorney's improper statement does not render the statement proper, and Littrell cites no authority approving of defense counsel commenting on their clients' exercise of the right not to testify.

Nor does *Robinson* address the unfairness of the argument made in this case. The Supreme Court's decision was highly fact-specific and was not an open invitation to prosecutors to freely comment on a defendant's decision not to testify whenever it has been mentioned by the defense. Contrary to Littrell's suggestion, if the prosecutor on rebuttal had responded to Littrell's statements about the reasons Fortenberry chose not to testify or the content of testimony Fortenberry would have provided, the prosecutor would have invited a serious risk of a mistrial or reversal on appeal. In *Robinson*, the defense lawyer argued that the government had unfairly denied the defendant an opportunity to "explain" his actions. Given the limits of this argument, the prosecutor was able to narrowly respond with facts that addressed the defense charge, noting that the defendant had the chance to explain his actions by electing to take the witness stand. Littrell's statements, on the other hand, were not so limited. He purported to explain the reason his client opted not to testify, stating that "his memory is not better today than it was in 2019, so there is really nothing to add." And he did not stop there. Littrell went on to tell the jury what his client would have stated had he testified:

> But what do you think would have happened if he got up there on the stand and tried to explain and his memory is worse than it was before and the Government confronts him with the call and asks him to explain it? He would say the same thing as what he said before, this is what I heard, this is what I understood.

Dkt. No. 204 at 207:22–208:2.

The impropriety of this argument offers no easy remedy for an ethical prosecutor. Littrell offered his own direct and cross-examination in the guise of closing argument. He went outside the record to explain what his client would

6

have said at trial—and he did so without any fear of contradiction. How could the prosecutor fairly respond to the state of Fortenberry's memory or the reasons that Fortenberry may have chosen not to testify without any record evidence to support the response? Without such evidence, much less the ability to test the truth of the claim through cross-examination, the prosecutor was severely constrained. Any substantive response would necessarily have been speculative because Fortenberry did not testify, and an ethical prosecutor reasonably would avoid that treacherous terrain.

Moreover, while Littrell is correct that the Fifth Amendment does not directly prohibit his commenting on a defendant's decision not to testify, his comments squarely contradicted the Court's instructions to the jury. The Court emphasized to the jury that "the law prohibits you from considering in any manner that the defendant did not testify," that "you cannot take this into account whatsoever in deliberating in this case," and that "you cannot . . . discuss it." Dkt. No. 204 at 125:11–15. Littrell's argument invited the jury to violate this instruction by considering Fortenberry's decision not to testify, the reasons for it, and what he would have said if he had testified. Littrell fails to provide any basis for thinking his argument was permissible in light of the Court's instructions. Discussing Fortenberry's decision not to testify was improper, even apart from the more specific problem of arguing facts not in evidence.

B.

Turning to the more specific focus of the Court's OSC, Littrell concedes that attorneys may only argue facts admitted into evidence and the reasonable inferences that can be drawn therefrom, but he argues that his comments merely raised reasonable inferences about Fortenberry's memory based on the evidence in the record. This may be true as to some of Littrell's comments if taken in isolation. But others unambiguously crossed the line. As observed in the OSC, Littrell is an experienced litigator who knew there were no facts in evidence about why Fortenberry chose not to testify or what he would have said had he elected to testify. Yet Littrell took it upon himself to "explain the decision not to testify" and vouched for both the reason Fortenberry did not testify ("I can't improve on [what Fortenberry told the prosecutors].") and what Fortenberry would have said if he had testified ("He would say the same thing as what he said before, this is what I heard, this is what I understood."). *Id*. at 207:12–208:2. These explanations plainly told the jury what Littrell, as Fortenberry's lawyer, purportedly knew about Fortenberry's decision and potential testimony. They were not reasonable

inferences from any evidence in the record, and they were presented so as to shield them from scrutiny through the adversarial process.

C.

Attorney misconduct is not sanctionable under the Court's inherent power without a finding of bad faith. *Roadway*, 447 U.S. at 767. Littrell concedes "both that his comments were not carefully worded and that as phrased, they could have been interpreted as arguing facts not in the record." Dkt. No. 233 at 2. He contends, however, that he did not engage in intentional misconduct, but rather made arguments in good faith that were similar to arguments he had made in previous trials without objection.

Littrell admits that he previously was criticized for making an improper closing argument in a criminal case before Judge Philip S. Gutierrez. In 2010, he purported to explain to the jury why his client had not testified, arguing that his client's testimony was unnecessary and risky in light of the evidence presented at trial. Dkt. No. 233-2 ¶ 7 (Littrell decl.) Littrell states that he then "took it a step further" by telling the jury that he had advised his client not to testify. *Id*. Although the prosecutor did not object, Judge Gutierrez later pointed out that the argument was improper, and Littrell agrees that "[h]e was right." *Id*. Littrell's comments in this case are not, as he suggests, meaningfully different from those he admits were improper in the case before Judge Gutierrez—at least not in any mitigating way. In both instances, Littrell offered an explanation for his client's decision not to testify; and in both instances, he did so based on facts outside the record. To the extent there is a difference, the closing argument in this case seems more troubling. Littrell took it a step further still by disclosing what his client purportedly would have said on the witness stand—a step he did not take 12 years ago.

In response to the OSC, Littrell appears to acknowledge the impropriety of his argument, stating: "In hindsight, I see that my comments were inartful and capable of being interpreted as arguing facts not in the record." *Id*. But he attributes any wrongdoing to imprecision borne out of spontaneity. See *id*. ¶ 9 ("One risk of speaking without notes is that I may make an argument that is imprecise or poorly worded."). Based on its observation of Littrell, the Court is not persuaded that the improper argument was nothing more than a poor word choice or slip of the tongue. Littrell is a seasoned, skillful, and deliberate lawyer who admittedly made an intentional, strategic decision. See *id*. ¶ 4 ("I made a strategic decision to address the fact that Mr. Fortenberry chose not to testify

during closing argument in this case."). While he was not reading from a script, the closing argument was guided by a PowerPoint presentation and delivered in a carefully prepared, high-profile case. Having previously been admonished, Littrell knew of the need to tread carefully in this area. He also has had occasion to reflect upon the issue over the years because he has continued to comment on his clients' decisions not to testify. See *id*. ¶ 8 ("I have not heard a judge comment on or criticize my remarks about the defendant's choice not to testify since Judge Gutierrez did so in 2010."). On this record, the Court finds that Littrell acted deliberately and in bad faith when he made representations to the jury about his client's reasons for not testifying and about what he would have said had he testified.

Sanctions are warranted. In strategically deciding to comment on his client's choice to exercise his right to remain silent, Littrell knew that he was taking a risk. Relying on *Robinson*, he claims that the risk was merely to "open the door for the prosecution to comment on that choice too." *Id*. ¶ 4. But *Robinson* does not grant counsel a license to engage in objectionable conduct during closing argument so long as he is willing to take the risk. The Supreme Court has long ago made "clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." *United States v. Young*, 470 U.S. 1, 8 (1985). Not only did Littrell stray out of bounds after careful calculation, but he also elected to go beyond the improper comments in *Robinson*—and even beyond the improper comments he made in 2010.[2] In considering the type of sanction that should be imposed, the Court takes into account that Littrell previously had been admonished. A further admonition is not sufficient. The Court finds that monetary sanctions are fitting at this point. In considering the amount of monetary sanctions, the Court takes into account that Littrell has never been disciplined or censured. *Id*. ¶ 3. Under all the circumstances, a monetary sanction in the amount of $500 is reasonable and appropriate here. The Court declines to refer him to the Standing Committee on Discipline.

In imposing sanctions, the Court does not do so lightly. A lawyer must be given reasonable leeway to provide effective advocacy for his or her client, and a trial can present difficult challenges that require hard judgment calls, particularly

---

[2] Littrell acknowledges that it is improper for a defense lawyer to disclose that he or she has advised a defendant not to testify. It is worse still, in this Court's view, to disclose what a defendant purportedly would say if he had testified. *See* discussion *supra*.

for defense counsel in a criminal case.  As a result, a court should be cautious about sanctioning a lawyer except when demonstrably necessary, as is the case here.  In this Court's view, Littrell decided to go down a dangerous path after much thought and a prior warning.  This was no mistake, and the danger was greater than Littrell admits.  Ethical prosecutors know to steer clear of *Griffin* error; and criminal defense lawyers know of the importance of safeguarding their clients' constitutional right to remain silent.  At every criminal trial, a defense lawyer has a choice to make about whether to advise his or her client to testify.  This is a *binary* choice:  a defendant either testifies (waiving his right to remain silent) or elects not to testify (preserving his constitutional right).  This is often a difficult choice because testifying opens the door to cross-examination.  But there is no third option to remain silent and have defense counsel explain the reason for the silence and convey what the defendant would have stated on the witness stand, all unencumbered by cross-examination.  When a lawyer decides to create this third option, he risks undermining or distorting the protections of the Fifth Amendment and inviting serious error and resulting uncertainty about the integrity of the verdict.  The weight of these considerations is substantial and cannot be overlooked on the facts of this case.

Accordingly, the motion to vacate the OSC is DENIED, and the Court SANCTIONS attorney John Littrell in the amount of $500 to be paid into the Fiscal Section of the Clerk's Office no later than April 17, 2023.

IT IS SO ORDERED.


Date: February 2, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge